## CASE NO. 20-10650

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

IN RE MARK INCH, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE
FLORIDA DEPARTMENT OF CORRECTIONS, AND THE FLORIDA
DEPARTMENT OF CORRECTIONS, *PETITIONERS*

ON PETITION FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO. 4:19-CV-00212-MW-CAS

## APPENDIX TO PETITION FOR WRIT OF MANDAMUS

DANIEL J. GERBER
Florida Bar No.
RUMBERGER, KIRK & CALDWELL
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407-872-7300
Fax: 407-841-2133
Email: dgerber@rumberger.com

NICOLE SIEB SMITH
Florida Bar No.
RUMBERGER, KIRK & CALDWELL
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel: 850-222-6550
Fax: 850-222-8783
Email: nsmith@rumberger.com

Attorneys for Petitioners

# INDEX TO APPENDIX

| DESCRIPTION | DOCKET/ TAB NO. |
|---|---|
| **Volume 1** | |
| District Court Docket Sheet | A |
| First Amended Class Action Complaint for Declaratory and Injunctive Relief | DE 13 |
| Plaintiffs' First Request for Production of Documents and Electronically Stored Information to Defendant Mark Inch | B |
| Plaintiffs' First Request for Production of Documents and Electronically Stored Information to Defendant Florida Department of Corrections | C |
| Plaintiff Harvard's First Set of Interrogatories to Defendant Florida Department of Corrections | D |
| Florida Department of Corrections' Response to Defendant Harvard's First Interrogatories | E |
| **Volume 2** | |
| Plaintiffs' Motion for Entry of Confidentiality Order With Incorporated Memorandum of Law | DE 49 |
| Defendants' Response and Incorporated Memorandum of Law in Opposition to Plaintiffs' Motion for Entry of Confidentiality Order | DE 51 |
| Confidentiality Order | DE 58 |
| Plaintiffs' Motion to Compel | DE 65-1 |

| **DESCRIPTION** | **DOCKET/ TAB NO.** |
|---|---|

**Volume 3**

| Defendants' Response to Plaintiffs' Motion to Compel........................... | DE 83 |
| Defendants' Motion for Entry of a Protective Order and Incorporated Memorandum of Law ........................................................ | DE 84 |

**Volume 4**

| Plaintiffs' Memorandum in Opposition to Defendants' Motion for Entry of a Protective Order ....................................................................... | DE 90 |
| Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion to Compel Discovery, ECF 83 ......................................................................... | DE 93 |
| Order Denying Defendants' Motion for Entry of a Protective Order...... | DE 94 |
| Order on Motion to Compel.................................................................... | DE 98 |
| *Dunn v. Dunn* Confidentiality Order ....................................................... | F |
| Certificate of Service .............................................................................. | G |

# Tab 90

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | | |
|---|---|---|
| HARVARD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00212-MW-CAS |
| | ) | |
| | ) | |
| MARK S. INCH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR ENTRY OF
A PROTECTIVE ORDER (ECF 84)**

Defendants' Motion for Entry of a Protective Order, ECF 84, is a thinly veiled attempt to seek reconsideration of the Court's Confidentiality Order, ECF 58. Rather than present new facts or law, Defendants recycle arguments the Court has already considered and rejected. The Court should not fall for this trap. Even under the "good cause" standard applicable to motions for protective order under Rule 26(c) of the Federal Rules of Civil Procedure, Defendants have not presented a viable basis for relief.

The existing Confidentiality Order strikes the right balance between Plaintiffs' need for discovery and the Florida Department of Corrections' (FDC) need to preserve safety and security. The additional layers of "protection"

1

Defendants seek through a protective order are unnecessary and will hinder the progress of this case. The Court already recognized this when it denied Defendants' first request that the Confidentiality Order should include an "Attorneys' Eyes Only" provision. ECF 51, 58. The Court should reject Defendants' second attempt to shield from Plaintiffs' use, for any legitimate, practical purpose in litigating this case, a non-exhaustive list of discoverable items; reinforce its prior ruling that the Confidentiality Order governs the exchange of Confidential discovery in this matter; and deny the instant motion.

## Background

Plaintiffs bring this case on behalf of a class of approximately 10,000 people incarcerated in the Florida Department of Corrections and challenge FDC's use of isolation. Recognizing that prison administrators have a legitimate interest in limiting the dissemination of information implicating safety and security, Plaintiffs attempted to negotiate a Confidentiality Order with Defendants Mark Inch and FDC in the early stages of discovery. ECF 49 at ¶¶ 2, 4.

The Parties did not agree on the contours of such an order. Defendants wanted to be able to designate an amorphous subcategory of Confidential documents as "Attorneys' Eyes Only," a classification Plaintiffs viewed as overly restrictive, unnecessary, and impractical. ECF 49 at ¶¶ 5-6. Plaintiffs therefore moved the Court for entry of a Confidentiality Order and argued against the

2

"Attorneys' Eyes Only" designation.   ECF 49.  Defendants attempted to convince the Court that an "Attorneys' Eyes Only" subcategory was actually necessary. ECF 51.  The Court was not persuaded.  ECF 58 at 2.  It "adopt[ed] Plaintiff's proposed confidentiality order in toto."  ECF 58 at 1.

Still, Defendants have refused to produce certain categories of discovery under the terms of the Confidentiality Order. [1]  ECF 84 at 9-11.  They now move the Court for a Protective Order, requesting the identical relief they sought with respect to the Confidentiality Order.  ECF 84.

### I.  Defendants' Request is a Meritless Motion for Reconsideration and Should be Denied.

The instant motion is a transparent attempt to relitigate the Court's Confidentiality Order.  The Court should construe it as a motion for reconsideration.  Defendants have not provided any legal basis or new evidence to justify reconsideration or the relief they seek.

A court may reconsider a prior ruling under Rule 59(e) of the Federal Rules of Civil Procedure.[2]  *Estate of Miller ex rel. Miller v. Toyota Motor Corp.*, No. 6:07CV1358ORL-19DAB, 2008 WL 1848357, at *1 (M.D. Fla. Apr. 22, 2008).

---

[1] Defendants identify four categories of documents to which they contend the Court should apply the "Attorneys' Eyes Only" designation, but "anticipate that they will find additional responsive documents, including e-mail communications, which contain highly sensitive security information."  ECF 84 at 2, 10.

[2] Rule 60 offers an alternate avenue for reconsideration, *see Estate of Miller ex. Rel. Miller*, 2008 WL 1848357, at *1, but Defendants do not invoke any of the bases for relief under this rule.  *See* Fed. R. Civ. P. 60(b).

Defendants' motion is untimely under this provision's 28-day time limit and should be denied for that reason alone. *See* Fed. R. Civ. P. 59(e).

Defendants' motion fails on its merits, too. A motion for reconsideration is not a vehicle to simply reargue an issue the Court has already determined. *American Ass'n of People with Disabilities v. Hood,* 278 F. Supp. 2d 1337, 1340 (M.D. Fla. 2003). "Court opinions 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" *Id.* (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D. Ill. 1988)). Reconsideration is an extraordinary remedy and, thus, is a power that should be used sparingly. *Id.* at 1339.

Courts have distilled three major grounds that could justify this extraordinary remedy: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Cover v. Wal–Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citations omitted); *see also Sowell v. GEICO Cas. Ins. Co.*, No. 3:12CV226/MCR/EMT, 2013 WL 11521847, at *4 (N.D. Fla. Nov. 26, 2013) (applying standard for reconsideration set forth in *Cover* to the plaintiff's motion for reconsideration of protective order). Defendants have neither alleged nor established any of these grounds.

There has been no change in controlling law.  Defendants' reliance on cases they did not raise when the Court first considered this issue does not satisfy this requirement.[3]  *Id.*

There is no new evidence to justify the extraordinary relief Defendants seek, either.  Defendants attach the declaration of Carl Wesley Kirkland, Jr., FDC's Deputy Director of Institutional Operations, ECF 84-1, but this is not "new evidence" of the nature that would warrant reconsideration.  *See Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994) (rejecting defendants' request for reconsideration on summary judgment because there was no indication that the "new evidence" was not available before defendants filed their initial motion).

The declaration does not shed light on any new developments.  Mr. Kirkland discusses general FDC safety and security concerns regarding the dissemination of Confidential information and emphasizes that FDC "has always" sought protection of such materials.  ECF 84 at ¶¶ 4-6.  He references some of Plaintiffs' specific discovery requests, *id.* at ¶¶ 7-10, but Defendants were on notice of these requests when litigating the Confidentiality Order: Plaintiffs served Defendants with their First Requests for Production on August 13, 2019, and did not file a Motion for Entry of Confidentiality Order until October 2, 2019.  Indeed, the Parties

---

[3] None of these cases post-date Defendants' briefing or the Court's Confidentiality Order.  And as detailed below, the cases Defendants cite do not support their position, anyway.

5

specifically discussed post orders and technical manuals when litigating the Confidentiality Order.  *See* ECF 49, ¶ 7; ECF 51 at 3.

Finally, Defendants have not alleged that reconsideration is needed to correct a clear error or manifest injustice.  Nor could they.  *See Reeves Constr. Co. v. Hayward Industries, Inc.*, No. 5:16-CV-329 (LJA), 2017 WL 9516560, at *1 (M.D. Ga. May 30, 2017) (finding that no manifest injustice occurs when a motion for reconsideration is based on previously rejected arguments).  In addition, as Plaintiffs demonstrated, and the Court considered, FDC has agreed to similar Confidentiality Orders without an "Attorneys' Eyes Only" designation in the past. ECF 49 at 6-7; ECF 58 at 2.  There is no evidence that the agreements in these cases led to assault, escape, contraband, or disruption to "the orderly and secure operations of a correctional facility."  ECF 84 at 9.

Defendants' motion is merely an alarmist request that the Court rewrite its Confidentiality Order.  This request should be denied.

## II.   Defendants Have Not Demonstrated Good Cause to Justify a Protective Order.

Even if the Court were to construe Defendants' motion as properly filed under Rule 26(c) of the Federal Rules of Civil Procedure, the motion should be denied.  On a showing of "good cause," a court may enter a protective order to protect a party from "from annoyance, embarrassment, oppression, or undue

burden or expense." Fed. R. Civ. P. 26(c). This requires the court to balance between one party's interest in gaining access and the other's in keeping information confidential. *Chicago Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). Defendants have not demonstrated good cause for the relief they seek.

Defendants assert that they have "legitimate safety and security concerns." ECF 84 at 2. They cite *Turner v. Safley*, 482 U.S. 78 (1987), and related cases for the proposition that the Court should afford FDC great deference in the administration of prison affairs. *Id.* at 2-3. But as this Court has recognized, "this deference is not absolute." ECF 82 at 2. When weighing interests in federal litigation, a court is not required to rubber stamp every request prison officials make under the guise of safety and security. Instead, a court enjoys "broad discretion" in doing so. *Id.* This is the type of discretion the Court exercised when entering the Confidentiality Order after considering, and rejecting, the same arguments Defendants make again here. ECF 58.

Defendants have set forth neither facts nor law establishing good cause for the Court to allow them to use an unworkable "Attorneys' Eyes Only" designation to manage discovery in this case. Plaintiffs do not dispute that FDC has legitimate safety and security concerns regarding the dissemination of highly sensitive information. But Mr. Kirkland's declaration does not demonstrate that

extraordinary interests are at play here, requiring a burdensome, unnecessary, and convoluted process that restricts Plaintiffs' ability to meaningfully use an amorphous but potentially large body of discovery.  Instead, he describes concerns that militate against granting the general public access to sensitive information. ECF 84-1.  That is not the issue here.

What's more, Defendants' position regarding the highly sensitive nature of the materials they identify in their motion is incongruous with their past actions. For example, Defendants have previously disclosed to Plaintiffs in response to public records requests technical manuals related to the use of isolation.  *See* Ex. A;[4]  *see also Ellis v. City of Anniston, Ala.*, 289 F.R.D. 352, 357 (N.D. Ala. 2013) (denying a motion for a protective order for videos and diagrams of a jail because anyone who is detained in the jail sees it).

The authority Defendants rely on does not support their overreaching request.[5]  Several of the cases involve protective orders to prevent incarcerated plaintiffs from receiving discovery that implicated safety and security concerns— something the current Confidentiality Order already ensures.  *See, e.g., Perasso v.*

---

[4] Defendants have produced both redacted and unredacted technical manuals.  In recognition of FDC's legitimate safety and security concerns, Plaintiffs have not included an unredacted one as an exhibit.

[5] When litigating the parameters of the Confidentiality Order, Defendants presented the Court with a different litany of cases to support their request for an "Attorneys' Eyes Only" designation.  ECF 51 at 4-7.  As the Court recognized, they were inapposite.  ECF 58 at 1-2.  The cases Defendants cite at present are not materially distinguishable from the first batch of unpersuasive cases that they relied on.

*Wa. State Dep't of Corr.*, No. 3:18-CV-05934-BHS-DWC, 2019 WL 2172857, at *2 (W.D. Wash. May 20, 2019) (entering protective order that allowed plaintiff's counsel and staff to review prison video surveillance but prohibited incarcerated plaintiff from viewing the video); *Butler v. Bessinger*, No. CV 4:16-3662-RMG-TER, 2018 WL 387999, at *1-2 (D.S.C. Jan. 11, 2018) (finding good cause that *pro se* incarcerated plaintiff should not have access to a use-of-force policy that was minimally relevant to his claims); *McCoy v. Heimgartner*, No. 17-3139-JWB, 2018 WL 4334298, at *3 (D. Kan. Sep. 11, 2018) (denying defendant's motion for protective order for failing to establish good cause but recognizing there were security concerns in providing a *pro se* plaintiff certain confidential documents).

Defendants' citations to other cases are, at best, misleading. In *Williams v. Williams*, No. C 07-04464 CW (LB), 2011 WL 863500, at *4 (N.D. Cal. Mar. 10, 2011), the court agreed to allow a *pro se* incarcerated plaintiff to receive the prison's use-of-force policy once the plaintiff signed a confidentiality agreement, finding the agreement was enough to protect against the dissemination of confidential information to other incarcerated people. In *Sarnowski v. Peters*, No. 2:16-CV-00176-SU, 2017 WL 4467542, at *6 (D. Or. Oct. 6, 2017), the court's ruling was based on safety and security concerns specific to plaintiff's counsel who had, in an unrelated case, lost a thumb drive with surveillance video footage from the prison. The court found that a protective order, under unique circumstances

involving prior misconduct by counsel, did not allay confidentiality and security concerns. *Id.*; *see also Ulibarri v. City & Cty. of Denver*, No. CIV.A. 07-CV-01814-WDM-MJW, 2009 WL 260945, at *4 (D. Colo. Feb. 4, 2009) (excluding certain documents from disclosure where defendants had established that the Official Information Privilege applied).

**III.   The Confidentiality Order strikes the right balance between Plaintiffs' right to discovery and FDC's safety and security concerns.**

On balance, the competing interests tip in Plaintiffs' favor. *See Chicago Tribune Co.*, 263 F.3d at 1313. Despite Defendants' concern, the Confidentiality Order is sufficient to address safety and security concerns as to the discovery necessary to prosecute this case. The Court has already determined that its terms protect against the dissemination of highly sensitive information to incarcerated people, their relatives, and the public, which appears to be the crux of Defendants' concerns. ECF 58 at ¶ 9; ECF 84 at 5. Defendants have not demonstrated, nor is there any reason to believe, that the categories of information identified in their Motion for Protective Order are somehow more likely to "fall[] into the wrong hands," ECF 84 at 8, or "place all stakeholders in Florida's penal system at risk for security breaches," ECF 84 at 7, necessitating extra protection.[6] *See Baxter v. Fla.*

---

[6] Defendants argue that information contained in post orders is confidential and exempt under Section 119.071(3) of the Florida's Public Records Act. ECF 84 at 8-9. Significantly, this subsection has a carveout for the disclosure of confidential information on a showing of good cause—the exemption is not absolute. § 119.071(3)(a)3.d. In addition, the potential applicability of a statutory exemption is not reason enough to restrict disclosure when there is a

*Dep't of Corr.*, No. 5:09cv213/RS/EMT, 2010 WL 11520202, at *2 (holding that the burden for a protective order "requires a particular and specific demonstration of fact; conclusory statements are not sufficient.")

Conversely, an "Attorneys' Eyes Only" designation will effectively shield from Plaintiffs, for any practical purpose, an indeterminate amount of discovery. Plaintiffs anticipate that the discovery Defendants are concerned about—post orders, technical manuals, and video surveillance footage—will prove highly relevant to their claims. But the utility of this information quickly diminishes if Plaintiffs cannot rely on it for any purpose at any stage of the case without jumping through unnecessary, arbitrary hoops dictated by Defendants, if at all.

Expert testimony in this case is essential, but Plaintiffs' experts cannot reach informed opinions without access to discovery. Similarly, Plaintiffs are entitled to use relevant evidence at a deposition, hearing, or trial. And contrary to what Defendants assert, there are in fact circumstances that may require Plaintiffs' counsel to discuss some of the contents of, for example, post orders, with Plaintiffs. Plaintiffs are the experts in their own experiences and best positioned to corroborate whether correctional officers follow proper protocol regarding isolation.

---

Confidentiality Order in place. *See Dukes v. Miami-Dade County*, No. 05-22665-CIV, 2007 WL 3342793, at *1 (S.D. Fla. Nov. 9, 2007).

Defendants assume bad faith on the part of Plaintiffs' counsel, when there is no basis for them to do so. ECF 84 at 7-8. Plaintiffs' attorneys have substantial experience litigating cases involving correctional institutions and recognize the importance of safeguarding sensitive security information. Counsel will disclose only as much Confidential information to Plaintiffs as necessary. They will not arbitrarily "tag" someone a witness or a declarant or an expert.

The Court has already ruled on the issue raised in Defendants' Motion for Protective Order. It entered a narrowly tailored Confidentiality Order that balances between the Parties' competing interests. For reasons Defendants do not satisfactorily explain in their motion, they refuse to follow its terms. At its core, their motion is not based on articulable facts or law, but on speculative fears. This is not good cause. *See Baxter*, 2010 WL 11520202 at *2. The Court should reject Defendants' invitation to alter its prior ruling and deny the instant motion.

Respectfully Submitted,

Dated: January 19, 2020

*/s Sumayya Saleh*
Sumayya Saleh
Fla. Bar No. 119372
Shalini Goel Agarwal
Fla. Bar No. 90843
Southern Poverty Law Center
106 East College Ave., #1010
Tallahassee, FL 32302
Telephone: (850) 521-3024
sumayya.saleh@splcenter.org

12

shalini.agarwal@splcenter.org

Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org

Lisa Graybill*
Texas Bar No. 24054454
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro

13

Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**

## Local Rule 7.1(F) Certificate

Under Rule 7.1(F) of the Local Rules of the Northern District of Florida, undersigned counsel certifies that this motion contains 2,691 words.

*/s Sumayya Saleh*
Sumayya Saleh

14

**EXHIBIT A TO PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR ENTRY OF
A PROTECTIVE ORDER (ECF 84)**

Technical Manual Produced by FDC
in Response to Plaintiffs' Public Records Request (PRR 18-820)

# TECHNICAL MANUAL

## Florida Department of Corrections

Bureau of Classification Management

## Alternative Housing



**Date of Issue:** May 2016

**Last Revision Date:** February 2017

# RESTRICTED DOCUMENT

This document is restricted and must not be distributed to any non-departmental employee without authorization from the Bureau of Classification Management. Refer requests for copies of this document to Classification Services.

For further information or assistance regarding the contents of this technical manual, please contact:

**Classification Services**

**850-717-3563**

# Revision History

**First Edition- May 2016**

**Updated- February 2017**

# Table of Contents

Introduction...................................................................................Page 3

Concept.........................................................................................Page 4

Goals............................................................................................Page 5

Eligibility......................................................................................Page 5

Guidelines for the OBIS Application..............................................Page 6

Disciplinary Hearing......................................................................Page 6

████████████ Screens..............................................................Page 9

Monitoring.....................................................................................Page 10

Weekly Reviews............................................................................Page 10

Housing.........................................................................................Page 10

Staffing.........................................................................................Page 10

Restrictions...................................................................................Page 10

Tracking........................................................................................Page 11

Daily Schedule and Rules.............................................................Page 11

# Introduction

*For several decades, prisons in the United States have increasingly relied on the use of segregation to manage difficult populations in their overcrowded systems and the FDC is no exception. According to the U.S. Department of Justice's Bureau of Justice Statistics, the number of people in restricted housing units nationwide increased from 57,591 in 1995 to 81,622 in 2005. Evidence-based research shows that holding people in isolation with minimal human contact for extended periods of time is exceptionally expensive and in many cases counterproductive as long-term segregation can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people, have negative outcomes for institutional safety, and increase the risk of recidivism after release. Therefore the FDC is establishing ways to transition its current practices concerning long-term segregation into viable alternatives that can maintain the same or similar amount of control and effectiveness while simultaneously reducing the overall number of inmates who fall into the category of "long-term" segregation status. When a determination is made that an inmate must be segregated from the general population, that inmate should be housed in safe, humane conditions that, ideally, prepare the inmate for reintegration into both the general prison population and society at large. For this purpose, "Long-Term" is considered more than **60** consecutive days in a segregated/isolated status.*

# The Alternative Housing Concept

The FDC currently supervises the third largest prison population in the United States with an average daily count of approximately 100,000 inmates. The challenges inherent in effectively managing this type of population with the limited resources that are available along with the constantly evolving nature of corrections as a whole present numerous obstacles that must be overcome. One element that has always been an issue of high priority is the management of populations through the use of segregation units that are designed to provide an additional level of control for inmates who have shown an inability or unwillingness to function within the parameters of a general population setting; thereby creating an environment that has a negative impact on a Facility's daily operations.

Historically, when an inmate's behavior rose to a level that resulted in formal disciplinary action being taken, they would either be placed in administrative confinement (A/C) or receive a walking disciplinary report pending the disposition of the disciplinary investigative and hearing process.  If the decision was to find the inmate guilty, the punitive process resulted in either placement in disciplinary confinement (D/C) or in the general population with one or more other restrictions being imposed. Statistically, a large majority of the inmates who receive a finding of guilt are placed in D/C as part of the Disciplinary Hearing Team's disposition.

The alternative housing concept is being introduced in an effort to provide an intermediate level of impunity for certain prohibited actions that need to be addressed but should not necessarily result in automatic placement in D/C status when found guilty by the Hearing Team. Inmates in this status will be housed together in a designated area within an existing general population secure-cell environment but will be subjected to a more restrictive level of supervision, which will be explained in detail further in this manual. *As with many other facets of the correctional landscape, it should be stressed that this information is intended to be used as a guide, and should not completely supplant sound judgment and professional experience as elements of this or any other decision making process.*

# Goals of Alternative Housing

- Develop additional punitive actions that are more proportionate to the inmate's prohibited action.
- Reduce the amount of time spent in-cell while in this status.
- Incentivize good behavior.
- Reduce the amount of "critical incidents" in segregation units.
- Develop and maintain metrics that accurately capture the results of this initiative as it relates to the overall impact of the amount of inmates who are in a full-time disciplinary status as well as other disciplinary-related measures at specific intervals throughout this process.
- Create a substantial overall decrease in the amount of inmates whose disciplinary status is considered long-term in nature.

# Eligibility

As is currently the practice with other disciplinary-based statuses, consideration for alternate housing will be at the sole discretion of the Disciplinary Hearing Team. In addition, this option will also be available for the Disciplinary Hearing Officer to utilize in cases where the particular disciplinary report meets the definition of a designated minor DR as outlined in F.A.C. 33-601.306.

*The Disciplinary Hearing Team or the Hearing Officer should make their decision based upon the totality of the circumstances that precluded the infraction receiving a formal disciplinary report, and should also continue to exercise sound correctional judgment when determining the punitive portion of this process.*

# Guidelines for the OBIS Application

A new code has been created for use in all applicable facets of the CDC that will be affected by the Alternative Housing initiative. "██" will be used to identify inmates who are in an alternative housing status and will also be used to designate the ██████ of the ████ that have been allocated for this purpose by Population Management.

## ADIOS (Automated Discipline and Integrated Offender System)

When a determination is made by the Disciplinary Hearing Team/Hearing Officer that alternative housing is the appropriate punitive action for an inmate's finding of guilt, the current ████ subsystem will continue to be used when entering the findings. "██" will be entered in the ██████████ column when an inmate is sentenced to alternate housing, and logic has been developed that programmatically creates an ████ at the ██████ of the screen if the decision is made ████ to █████ "██" (Cashless Canteen restrictions) and/or "██" (Used to designate Phone Privilege restrictions) as well. The ████ key shall be used to ███████ this alert, and justification be provided in the ██████████ section if this is the decision that is made. As is the case when ██ is entered, an inmate's visitation will programmatically be suspended for the duration of an inmate's AH status as well.



(▓ *when* ▓ *and* ▓ *are not entered)*

*(Entry with all three ▮▮▮▮▮▮▮)*



*(▮▮ will display an "▮" in the ▮▮▮▮▮▮▮▮▮)*



## ████████████████ **Screens**

As stated earlier, Population Management has designated "███" as the ████████ for inmates who are assigned to an alternative housing status and has also created a new ████████ with the ████ code. As with existing programmatic controls that are in place in the ████████ system, if an attempt is made to house an inmate with an ███ status in a bed that ████████ have an ████████ or an attempt is made to house an inmate who has an ████████ with an inmate who has any ████████, a ████████ will be generated. In addition, the ███ ████████ option will not work for the following ████████ – ███ ████████████ & ████████ and ████████.

*(Example of ████ and ████████)*

## Monitoring

A new ▮▮▮▮ has been created to assist with monitoring inmates who are in an AH status. It is ▮▮▮▮▮▮▮▮, and it mirrors the look of the existing ▮▮▮▮ This should be provided to the security staff who supervise the AH inmates daily, as well as any other key Staff who would need it to assist with maintaining supervision, i.e., Internal Gate Staff, Job Supervisors, etc.

## Weekly Reviews

 In addition to daily monitoring, a weekly review will be conducted by the Classification Supervisor or designee along with the Alternative Housing Supervisor to determine each inmate's behavioral progress while in this status. This review should be conducted in the presence of the inmate. The goal shall be toward returning an inmate to the open population as soon as the facts of the case indicate that this can be done safely. These reviews can also result in a recommendation that telephone, canteen, or visitation privileges be reinstated, if applicable.

# Implementation

## Housing

A portion of a secure cell housing unit will be utilized for this purpose, and based upon the ▮▮▮ ▮▮▮▮ and other ▮▮▮▮▮▮▮ specific to each institution, alternative housing may be established in an entire quad/wing or it may be split with an existing general population setting.

## Staffing

A minimum of ▮▮▮▮▮▮▮ will be assigned to the dorms at all times if a GP Secure Cell Dorm is utilized and ▮▮▮▮▮▮▮ will be assigned to the dorms at all times if a dedicated Confinement or Hybrid Secure Cell Dorm is utilized.

## Restrictions

Inmates who are assigned to this status will have their canteen and telephone privileges suspended throughout this duration, unless the Hearing Team/Officer does not impose these sanctions or a recommendation is made as a result of the weekly review to re-instate one or both privileges. Inmates in Alternative Housing are considered to be in a special status. As such their visitation privileges will be consistent with Chapter 33-601.713 F.A.C. and 33-601.733 F.A.C. while in

Case 4:19-cv-00212-MW-CAS   Document 90-1   Filed 01/19/20   Page 12 of 13
USCA11 Case: 20-10650   Document: 5-4   Date Filed: 02/28/2020   Page: 30 of 250
Alternative Housing Technical Manual

this status, and they will also not be eligible for any additional out-of-cell activities that are not explicitly authorized in the daily schedule. Visitation can be approved by the Warden in the form of a Special Visit based on recommendations made from the weekly review.

# Tracking

The DC6-209, Housing Unit Log will be used to capture any movement or activity that affects the entire group, i.e. **Work or Program movement, Feeding, Showers**, etc.

# Daily Schedule and Rules

*Because each institution is unique in one or more ways, it is understood that the schedules and rules will be subject to many varying factors. Therefore the following information is provided for use as a framework for further development specific to your institutional needs –*

### Schedule

***Monday thru Friday** (Approximately 11 hours in-cell per day)*

- Lights on/wake up time(this would be the same time as general population inmates)

- Morning meal

- Morning count

- Morning work call, program assignment, or scheduled appointments

- Noon meal

- Afternoon/Evening work call, program assignment, or scheduled appointments.

- Evening meal

- Report to the dorm as a group and take showers

- Evening lock down (approximately 5:30pm)

Page
11

### ***Weekends and Holidays** (Approximately 20 hours in-cell per day)*

*This schedule will require the presence of the housing supervisor during the movements in order to ensure that they are conducted in a controlled manner.*

- Morning meal

- Morning lock down

- Noon meal

- Noon lock down

- Evening meal

- Showers

- Evening lock down

## Rules



Alternative
Confinement Rules.do



# Tab 93

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | | |
|---|---|---|
| HARVARD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00212-MW-CAS |
| | ) | |
| | ) | |
| MARK S. INCH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO COMPEL DISCOVERY, ECF 83**

Plaintiffs, by and through their undersigned counsel, reply to Defendants'

Response to Plaintiffs' Motion to Compel Discovery (ECF 83).

## I.   INTRODUCTION

Defendants' misinterpretation of this case is impeding nearly all discovery.

*See, e.g.,* Ex. A and B.  Through meritless objections, Defendants maintain a hardline

stance that Plaintiffs cannot have information about what is happening to putative

class members in isolation at specific prisons.  Based on their responses and

production so far, Plaintiffs are concerned that Defendants are not searching for all

responsive documents because of their unreasonably narrow interpretation of

Plaintiffs' claims.[1]  For many specific requests, the Parties have been unable to productively meet and confer because there is no shared understanding of the issues in this case.  Discovery is stalled because Defendants refuse to accept the scale and complexity of this litigation.

Plaintiffs agree that "[t]his case is about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee."  ECF 52 at 1.  But this case is also about how Defendants' implementation of these policies and practices lead to "specific conditions of confinement" that subject people to a substantial risk of serious harm and disability discrimination.  ECF 54 at 21.  There is no inconsistency, as Defendants claim.  ECF 83 at 4.  Plaintiffs' discovery is reasonably calculated to lead to admissible evidence about the specific conditions of confinement in isolation in at least 67 prisons throughout the state,[2] and the manifestation of the risk of harm and disability discrimination for the approximately

---

[1] The vast majority of the almost 40,000 pages that Defendants have produced in discovery since August 2019 (ECF 83 at 72) are documents they had already produced in response to Plaintiffs' public records requests or are Plaintiffs' individual healthcare and correctional records.  They have produced an average of approximately 6,680 pages of Plaintiffs' individual records over five productions, and an average of approximately 2,500 pages of other documents over four productions.

[2] Defendants embellish that 143 facilities are at issue.  ECF 83 at 32.  To arrive at this figure, Defendants counted facilities such as work release and re-entry centers where, through their discovery responses, Defendants indicate there is no isolation.  *See* Florida Department of Corrections, *Institutions*, http://www.dc.state.fl.us/ci/index.html (last visited Jan. 16, 2020).

10,000 people living in those conditions.  To facilitate discovery, the Court should grant Plaintiffs' Motion to Compel (ECF 65-1).

## II.    ARGUMENT

### A. Plaintiffs' Discovery Seeks Relevant Information to Support their Eighth and Fourteenth Amendment and ADA/Section 504 Claims.

Defendants' Response betrays their misunderstanding of Eighth Amendment claims, generally.  Plaintiffs allege that the totality of the conditions in isolation violate the Eighth Amendment because they deprive people of basic human needs.  Thus, contrary to Defendants' assertion, ECF 83 at 5, nearly all aspects of life in isolation are directly relevant.  *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (finding that conditions of confinement, "in combination," may violate the Eighth Amendment "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need…"); *Hutto v. Finney*, 437 U.S. 678, 687 (1978) (holding that "taken as a whole, conditions in the isolation cells continued to violate the prohibition against cruel and unusual punishment").

Defendants argue in response to Requests for Production (RFPs) 107 and 108 that the duration and reasons for isolation are not relevant.[3]  ECF 83 at 41; *see also*

---

[3] Defendants raise this particular relevance objection for the first time in their response.  As a result, they have waived it.  *Socas v. Nw. Mut. Life Ins. Co.*, No. 07-20336-CIV, 2008 WL 619322, at *6 (S.D. Fla. Mar. 4, 2008).

Ex A.[4]  Applying Defendants' logic, it matters not whether FDC holds someone in isolation for 30 minutes or 30 years, or because they murdered their cellmate or for no reason at all.   This logic is at odds with well-settled Eighth Amendment principles.  *Hutto,* 437 U.S. at 686 ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards."); *Quintanilla v. Bryson,* 730 F. App'x 738, 746-747 (11th Cir. 2018) (concluding that in evaluating the conditions of confinement in isolation, the court must consider the reasons for and duration of isolation); *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004) (explaining that the "Eighth Amendment is concerned with both the 'severity' and the 'duration' of the prisoner's exposure" to the allegedly unconstitutional condition); *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. Appx. 739, 754, 759 (10th Cir. 2014) (relying on the length of time and reasons for isolation to determine cruel and unusual conditions); *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1099 (E.D. Cal. 2014) (finding that placement of people with serious mental illness in isolation for non-disciplinary reasons longer than needed to effect transfer to other housing violates the Eighth Amendment).

Defendants further argue that Plaintiffs do not need policies dating back to January 1, 2015, because "pertinent state-wide policies, most of which are codified

---

[4] This includes Requests for Admissions (RFAs): 98, 105, 106, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 144, 145, 146, 180, and 181.

in the administrative code, have not been materially amended in the past five years."

ECF 83 at 13.  But Defendants' policies regarding isolation *have* changed in the past

five years.  Ex. C at 7-8.  And even if the policies had not changed, Defendants do

not operate their prisons solely based on the administrative code or "officially

established" policies, ECF 83 at 9.  *See, e.g.,* Ex. D (email from 2016 directing

reductions in the durations for isolation based on an unapproved change to the

administrative code).[5]  Changes to official or unofficial policies, or a lack thereof,

are highly relevant to Plaintiffs' deliberate indifference claims.  *G.H. v. Marstiller*,

No. 4:19CV431-MW/CAS, 2019 WL 6694738, at *6 (N.D. Fla. Dec. 6, 2019)

(finding that plaintiffs had adequately pleaded deliberate indifference based in part

on the defendant's alleged refusal to change solitary confinement policy).

Defendants' proposed timeframe for policies going back to only September 1, 2018,

would impermissibly shield from discovery Defendants' policy reforms, if any,

during the two years after Secretary Jones recommended changes to their isolation

policies and practices.  ECF 65-3 at 10-13.

Also, the four-year statute of limitations Defendants invoke, ECF 83 at 13, is

immaterial because Defendants' isolation policies and practices are a "continuing

violation."  *Smith v. Shorstein*, 217 F. App'x 877, 881 (11th Cir. 2007) ("When the

---

[5] This is an example of a document that Defendants produced in response to a public records request before producing it in discovery.

5

violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases.").

For the reasons Plaintiffs have already described, Defendants' relevance objections regarding the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU) are meritless.  ECF 83 at 65-66; ECF 65-1 at 60-61.  Plaintiffs add that, in response to an interrogatory, Defendant Inch demonstrated the relevance of these units—Defendants established the DTU and CTU for people with disabilities as a result of Secretary Jones' recommended changes to isolation policies and practices. Ex. C at 8; ECF 65-3.

### B. Plaintiffs' Requested Discovery is Proportional to the Needs of the Case.

Plaintiffs' requested discovery meets each of the factors in the Rule 26 proportionality test.  Fed. R. Civ. P. 26(b)(1); *Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV, 2016 WL 7048363, at *6, *11 (S.D. Fla. Dec. 5, 2016) (compelling discovery after applying Rule 26 proportionality factors).  First, the issues in this case (allegations of violations of constitutional and statutory rights) are important.  Second, the amount in controversy does not apply because Plaintiffs seek only injunctive relief.  Third, Defendants have exclusive access to and control of the information.  Fourth, Defendants have massive resources; FDC is the third largest

state prison system in the country with a $2.4 billion annual budget.[6]  Fifth, as Plaintiffs explained in their motion and below, each request seeks relevant information that will help resolve questions related to both class certification and the merits.  Sixth, also for the reasons stated in Plaintiffs' motion, the likely benefits of the discovery outweigh any burden.

Defendants have not met their burden to show with specificity why Plaintiffs' requests are unduly burdensome, overbroad, and disproportional.  *Young v. Hancock*, No. 17-21473-CIV, 2017 WL 3113417, at *2 (S.D. Fla. Apr. 24, 2017) ("[T]he burden is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable.").  Burden is assessed on a request-by-request basis, not globally as Defendants suggest, ECF 83 at 42.  *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.,* No. 2:10CV-753-FTM-36, 2011 WL 3841557, at *3 (M.D. Fla. Aug. 29, 2011) ("Defendant must state the specific grounds for each objection.").  To support their burden objections, Defendants have not submitted affidavits or offered evidence "revealing the nature of the burden" for each request.  *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005); *Russell v. Fast Payday Loans, Inc.*, No. 4:07CV488-SPM/WCS,

---

[6] *See*, Florida Department of Corrections, *2017-2018 Annual Report,* at 3, http://www.dc.state.fl.us/pub/annual/1718/FDC_AR2017-18.pdf (last visited Jan. 18, 2020).

2008 WL 11338347, at *1 (N.D. Fla. June 27, 2008) ("Burden cannot be determined without knowing how the information is organized, how much there is, and where the information is kept.").

Defendants' overbreadth objection is also unsupported because it is primarily based on their misconception of this case. They complain, for example, that Plaintiffs refused to limit discovery to only those institutions where there is Close Management, ECF 83 at 34, even though this Court expressly rejected Defendants' argument that this case is only about Close Management, ECF 54 at 15. Defendants also argue that Plaintiffs' requests do not provide them with enough guidance to conduct reasonable searches. *See, e.g.,* ECF 83 at 11 (claiming there was no guidance for searches regarding meal delivery policies); ECF 83 at 41 (claiming to not understand the meaning of "impact of isolation"). But "[a] party does not meet its discovery obligations by sticking its head in the sand and refusing to look for documents." *Robinson v. Arkansas City*, No. 10-1431, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) (internal citation omitted). "Lawyers must do some thinking here, and apply the relevant legal concepts to the relevant facts. . . . The breadth of a discovery request cannot be determined without examining the issues in the suit." *Russell,* 2008 WL 11338347 at *1.

The allegations in the Amended Complaint, in conjunction with the discovery requests, provide Defendants with a roadmap to conduct their searches. *See*, *e.g.*,

8

ECF 13 ¶¶ 44, 89, 123 (specific allegations related to meal delivery policies); ECF 13 ¶¶ 128-132 (describing the impact of isolation to include worsening psychiatric symptoms and suicide). If the Court compels discovery, the parties can meet and confer about the search terms and custodians for each request.

In sum, Plaintiffs' discovery requests are proportional to the needs of the case. Defendants' boilerplate objections should be rejected.

### C. Plaintiffs are Entitled to the Requested Discovery before Class Certification.

For the first time, in their Response, Defendants object to RFPs Nos. 27, 29, 31, 33, 35, 37, 39, 51, 92, and 93 to Defendant Inch and Interrogatory 15 to Defendant FDC, on the grounds that this discovery is not appropriate before class certification. ECF 83 at 32, 63. Regardless of whether this objection is valid, Defendants have waived it "by mentioning it for the first time in [their] response to the instant motion to compel and failing to timely raise it as an objection to [Plaintiffs'] original request for production." *Socas*, 2008 WL 619322, at *6. *See also* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

In addition to being untimely, this objection is invalid. Courts have regularly overruled attempts to withhold merits discovery before class certification when there is no bifurcated discovery. *See, e.g.*, *Bellenger v. Accounts Receivable Mgmt., Inc.*,

No. 19-60205-CIV, 2019 WL 4284070, at *6 (S.D. Fla. Sept. 10, 2019) (granting motion to compel because "[t]he Defendant did not move to bifurcate discovery in this case and the type of discovery sought is within the bounds of Rule 26(b)(1)"); *Cabrera v. CEICO*, No. 12-61390-CIV, 2014 WL 2999206, at *8 (S.D. Fla. July 3, 2014) ("Here, the District Court has chosen not to bifurcate class-certification discovery and merits discovery; instead, it has set one deadline for completion of all discovery. The undersigned, therefore, will not limit class-based discovery nor delay merits discovery until the District Court has ruled on Plaintiff's class certification motion."). The parties agreed not to bifurcate discovery,[7] and, so, the Court set one deadline for discovery. ECF 43 at 4-5; ECF 44.

Even if the parties had bifurcated discovery, discovery related to whether staff provided services to putative class members, including whether staff were available to deliver those services, is appropriate before class certification. Contrary to Defendants' assertion, ECF 83 at 35, class certification cannot turn on the files of just seven named Plaintiffs.[8] *See, e.g., Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 356 (2011) (noting that evidence of discrimination against one named plaintiff

---

[7] "[B]ifurcation can actually increase the costs of litigation because of disputes over what constitutes merits and what constitutes class discovery." *Coleman v. Lennar Corp.*, No. 18-MC-20182, 2018 WL 3672251, at *6 (S.D. Fla. June 14, 2018) (internal citation omitted).

[8] Defendants seek to obstruct Plaintiffs' access to discovery related to specific individuals or staffing availability regardless of whether it supports Plaintiffs' class or merits-based claims. *See, e.g.,* Ex. A, RFA Nos. 62, 70, 76, and 79; Ex B, RFPs 163, 164, 190, and 191.

was insufficient to show that discriminatory treatment was typical of the employer's practices).

Plaintiffs bring class claims under Federal Rules of Civil Procedure 23(a). ECF 13 ¶ 161.  Defendants deny Plaintiffs' allegations of numerosity, commonality, typicality, and adequacy.  ECF 62 at ¶ ¶ 163–166, 170–173.  To make their claims and to challenge these defenses, Plaintiffs must "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Dukes*, 564 U.S. at 350 (emphasis in original).

Often in systemic prison cases, "policies and practices are the 'glue' that holds together the putative class and the putative subclass." *Parsons v. Ryan*, 754 F.3d 657, 678, 684-85 (9th Cir. 2014).  Evidence of this glue can "run the gamut from those that have been expressly adopted (such as the mental-health staffing levels defendants set by contract) to others which constitute a failure to act that evinces deliberate indifference (such as the practice of failing to appropriately monitor or provide follow-up care for prisoners in crisis)." *Braggs v. Dunn*, 317 F.R.D. 634, 655 n. 25 (M.D. Ala. 2016).  Plaintiffs are therefore entitled to evidence of the services provided and staff available to provide those services to support class certification and the merits.

**D. Discovery Related to all People in Isolation is Appropriate.**

Also for the first time, in their Response, Defendants object to RFP 115 to Defendant Inch based on standing because it relates to pregnant women in isolation and none of the Named Plaintiffs are pregnant.[9]  ECF 83 at 41-42.  Defendants waived this objection.  *Socas*, 2008 WL 619322 at *6.

Regardless, it is meritless.  The Court has already held that Plaintiffs have standing to challenge Defendants' policies and practices for all types of isolation. ECF 54 at 15.  This is because Plaintiffs allege a systemic, statewide policy of isolation and their claims do not rest on specific types of isolation at specific prisons. *Id.*

The same rationale applies here.  Plaintiffs' claims do not rest on, for example, the delivery of specific pregnancy-related accommodations or healthcare.  Instead, Plaintiffs' claims stem from the cumulative effects of Defendants' isolation policies and practices that subject all people to the same risk of harm, albeit people with disabilities or health conditions (e.g., pregnancy) to a heightened risk.  *See Parsons,* 754 F.3d at 678 (noting that "every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide [prison] policy or practice that creates a substantial risk of serious harm.").  Plaintiffs' claims for people with disabilities

---

[9] Defendants also make a similar standing objection in response to RFAs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, and 74 (Ex. A).

also stem from the same injury of disability discrimination caused by Defendants'

isolation policies and practices.   Given Plaintiffs' claims, discovery about

Defendants' isolation of pregnant women falls squarely within the scope of

permissible discovery.  *See* Fed. R. Civ. P. 26(b)(1).

Defendants' position is untenable because it would require countless

individuals with every type of disability or health condition to represent the class of

all people in isolation, or everyone would need to bring separate claims to challenge

the same systemic policy and practice.[10]  But this question—whether Plaintiffs can

represent class members with different disabilities or healthcare conditions—is for

class certification, not discovery.  In other words, Defendants' standing objection is

merely a premature and misplaced attack on commonality and typicality[11] that

should be overruled.

---

[10] Defendants position is also inconsistent.  Although Defendants admit that Plaintiff Hill has a vision impairment, ECF 62 ¶ 47, Defendants refuse to respond to discovery regarding putative class members with vision impairments.  *See*, *e.g.,* Ex. A, RFAs 63, 64, 65, and 66.

[11]  Even if it were appropriate to resolve this question now, it is well established that commonality and typicality are not destroyed by factual variations in disabilities and healthcare conditions.  *See*, *e.g.*, *Braggs,* 317 F.R.D. at 660-61, 663 (certifying a class of incarcerated people with various mental health disorders because "the allegations in this case involve overarching inadequacies of staffing which, plaintiffs' experts have opined, contribute to a range of other systemic inadequacies that affect mentally ill prisoners irrespective of their particular diagnoses"); *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1038-39 (8th Cir. 2018); *Parsons,* 754 F.3d at 678, 686; *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

13

## III.   CONCLUSION

Defendants' Response reveals that their refusal to comply with discovery is rooted in their fundamental misunderstanding of Plaintiffs' claims.  Plaintiffs ask the Court to compel discovery on a request-by-request basis, but also to provide Defendants a clear mandate as it relates to the issues raised in the instant motion and Reply.  Without such clarification, Plaintiffs fear that Defendants will continue to recycle the same objections, impeding the flow of discovery and the orderly progression of this case.

Respectfully Submitted,

Dated: January 22, 2020

Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
2 South Biscayne Boulevard
Miami, FL 33131
Telephone: (786) 347-2056
kelly.knapp@splcenter.org

Sumayya Saleh
Fla. Bar No. 119372
Shalini Goel Agarwal
Fla. Bar No. 90843
Southern Poverty Law Center
106 East College Ave., #1010
Tallahassee, FL 32302
Telephone: (850) 521-3024
sumayya.saleh@splcenter.org
shalini.agarwal@splcenter.org

14

Lisa Graybill*
Texas Bar No. 24054454
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org

15

sthypin-bermeo@floridajusticeinstitute.org

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**

## **Local Rule 7.1(F) Certificate**

Under Rule 7.1(F) of the Local Rules of the Northern District of Florida,

undersigned counsel certifies that this motion contains 3,116 words.

_____
Kelly Knapp

16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

      Plaintiffs,

vs.                                                                 CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

      Defendants.

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS

Defendants, Mark Inch and Florida Department of Corrections (collectively

the "Defendants"), hereby respond to the Plaintiffs' First Request for Admissions,

served October 21, 2019, as follows:

## **OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Defendants incorporate these objections to Plaintiffs' "Instructions" and "Definitions" into each specific response to Plaintiffs' request for production listed below:

1.     Defendants object to the instructions to the extent they require anything other than what is required under the Federal Rules of Civil Procedure.

2.     Defendants object to the instruction for a requested timeframe of January 1, 2014, through the present.  This action is for solely for injunctive relief; therefore, a time period of almost six years is vastly overly broad and not proportional to the needs of the case considering that the undue burden and expense of discovery for the requested time period outweighs the likely benefit. As such, unless otherwise indicated, Defendants have limited their response to the present policies in effect as of the date of these responses.

3.     Defendants object to the definition of "communication(s)" as being overly broad and because it purports to include oral communications regardless of whether such oral communications are documented or otherwise recorded in some manner. Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.

4.     Defendants object to the definition of "document" and "documents" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case, as electronic information stored in databases, such as OBIS, cannot be readily produced in any format other than print-screens.

5.     Defendants object to the definition of "disability" and "disabilities" as being overly broad in scope and different from the definition(s) contained in FDC's rules, policies, practices and/or procedures.  Defendants also object on the basis that "disability" and "disabilities" are not ascertainable on a class-wide basis, but instead must be determined on a case-by-case basis.

6.     Defendants object to the definition of "facility" and "facilities" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case at this stage, pre-class certification. Defendants object to the definition of "facility" and "facilities" because it includes any institution "where there is ISOLATION."  Such definition is overly broad and not relevant to the issues in this case, as "isolation" in turn "refers to Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management, as described in Chapters 33-601 and 33-603 of the Florida Administrative Code."

7.     Defendants object to the definition of "isolation," as it is different than the definition Plaintiffs set forth in the First Amended Class Action Complaint for Declaratory Relief and Injunctive Relief" ("Complaint"), overly broad in scope and

3

not proportional to the needs of the case considering the undue burden and expense of discovery attendant to such a broad definition.

8.      Defendants object to the definition of "policy" and "policies" as this definition is overly broad and unduly burdensome. Defendants also object to this definition as including unwritten or otherwise unrecorded "policies." Additionally, Defendants object to the relevance of "policies" that have not been officially approved. Defendants also object on the basis of relevance and overbreadth because the definition includes "policies" in effect only at particular facilities, where the claims in this case "stem from one overarching policy and practice" of Defendants (D.E. 42, p.1), or stated another way, Defendants' "systematic statewide policy and practice of isolating people . . ." D.E. 42, pp. 2-3 (emphasis added), citing D.E. 13 ¶¶ 57-59. Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature. Defendants further object to producing any "policy" that is no longer in effect as this is an action for injunctive relief and FDC's policies which are no longer in effect are not relevant to any issue asserted in this case.

9.      Defendants object to the definition of "staff" based upon overbreadth and relevance, as it includes non-employees of FDC, such as employees of vendors

with whom FDC contracts, and "staff" at non-CM facilities.  See objection to "facility" and "facilities," at ¶ 6.

## REQUEST FOR ADMISSIONS NO. 1:

Admit that all STAFF must follow Chapter 33 of the Florida Administrative Code.

## RESPONSE:

Denied as phrased.  All "staff" as defined by Plaintiffs are not required to follow all provisions of Chapter 33 of the F.A.C. as some aspects of the code do not relate to certain staff members' job responsibilities or duties.

## REQUEST FOR ADMISSIONS NO. 2:

Admit that all STAFF must follow FDC POLICIES.

## RESPONSE:

Defendants object to this request because the term phrase "FDC POLICIES" is vague and ambiguous and not narrowly defined.  Defendants cannot respond as to whether "all" staff must follow such a vague and ambiguous definition.

## REQUEST FOR ADMISSIONS NO. 3:

Admit that FDC houses only one PRISONER in each Administrative Confinement cell at Florida State Prison at a time.

## RESPONSE:

Defendants object to this request on the basis of relevance because it seeks information as to a specific facility when the claims in this case are centered on "a

statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells."  Doc. 54, p. 3.

## REQUEST FOR ADMISSIONS NO. 4:

Admit that FDC houses only one PRISONER in each Close Management cell at Florida State Prison at a time.

## RESPONSE:

Defendants object to this request on the basis of relevance because it seeks information as to a specific facility when the claims in this case are centered on "a statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells."  Doc. 54, p. 3.

## REQUEST FOR ADMISSIONS NO. 5:

Admit that FDC houses only one PRISONER in each Maximum Management cell at Florida State Prison at a time.

## RESPONSE:

Defendants object to this request on the basis of relevance because it seeks information as to a specific facility when the claims in this case are centered on "a statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells."  Doc. 54, p. 3.

## REQUEST FOR ADMISSIONS NO. 6:

Admit that FDC houses only one PRISONER in each Disciplinary Confinement cell at Florida State Prison at a time.

**RESPONSE:**

Defendants object to this request on the basis of relevance because it seeks information as to a specific facility when the claims in this case are centered on "a statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells."  Doc. 54, p. 3.

**REQUEST FOR ADMISSIONS NO. 7:**

Admit that under FDC POLICIES, PRISONERS in Administrative Confinement are locked in their cells for an average of at least 22 hours a day during each week they spend in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in administrative confinement be locked in their cells for an average of at least 22 hours a day.  As a result, the length of time any particular inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in administrative confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in administrative confinement, as well as the particular facility in which that inmate was in administrative confinement.

**REQUEST FOR ADMISSIONS NO. 8:**

Admit that under FDC POLICIES, PRISONERS in Disciplinary Confinement are locked in their cells for an average of at least 22 hours a day during each week they spend in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in disciplinary confinement be locked in their cells for an average of at least 22 hours a day.  As a result, the length of time any particular inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in disciplinary confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in disciplinary confinement, as well as the particular facility in which that inmate was in disciplinary confinement.

**REQUEST FOR ADMISSIONS NO. 9:**

Admit that under FDC POLICIES, PRISONERS in Close Management I are locked in their cells for an average of at least 22 hours a day during each week they spend in Close Management I.

**RESPONSE:**

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in close management I be locked in their cells for an average of at least 22 hours a day.  As a result, the length of time any particular

8

inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in close management I confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in close management I confinement, as well as the particular facility in which that inmate was in close management I confinement.

## REQUEST FOR ADMISSIONS NO. 10:

Admit that under FDC POLICIES, PRISONERS in Close Management II are locked in their cells for an average of at least 22 hours a day during each week they spend in Close Management II.

## RESPONSE:

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in close management II be locked in their cells for an average of at least 22 hours a day.  As a result, the length of time any particular inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in close management II confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in close management II confinement, as well as the particular facility in which that inmate was in close management II confinement.

**REQUEST FOR ADMISSIONS NO. 11:**

Admit that under FDC POLICIES, PRISONERS in Maximum Management are locked in their cells for an average of at least 22 hours a day during each week they spend in Maximum Management.

**RESPONSE:**

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in maximum management be locked in their cells for an average of at least 22 hours a day. As a result, the length of time any particular inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in maximum management confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in maximum management confinement, as well as the particular facility in which that inmate was in maximum management confinement.

**REQUEST FOR ADMISSIONS NO. 12:**

Admit that no written POLICY requires the senior correctional officer who "places" OR exercises his OR her authority to "place" a PRISONER in Administrative Confinement," as REFERENCED in Section 33-602.220, to review the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.03.04.

**RESPONSE:**

Defendants object to this request as vague and ambiguous. There is no reference in Health Services Bulletin ("HSB") No. 15.03.04 to a "Special Housing

Health Screening" that can be reviewed.  Therefore, Defendants cannot respond to this request.

## REQUEST FOR ADMISSIONS NO. 13:

Admit that no written POLICY requires the Institutional Classification Team to review the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.03.04.

## RESPONSE:

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can be reviewed.  Therefore, Defendants cannot respond to this request.

## REQUEST FOR ADMISSIONS NO. 14:

Admit that the State Classification Office STAFF members do not include medical STAFF.

## RESPONSE:

Defendants object to this request as vague and ambiguous as the term "staff" is so broadly defined.  Further, the term "medical staff" is further not sufficiently defined.

## REQUEST FOR ADMISSIONS NO. 15:

Admit that the State Classification Office STAFF members do not include mental health STAFF.

**RESPONSE:**

Defendants object to this request as vague and ambiguous as the term "staff" is so broadly defined.  Further, the term "medical staff" is further not sufficiently defined.

**REQUEST FOR ADMISSIONS NO. 16:**

Admit that no written POLICY requires the State Classification Office to review the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.03.04.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can be reviewed.  Therefore, Defendants cannot respond to this request.

**REQUEST FOR ADMISSIONS NO. 17:**

Admit that no written POLICY requires mental health STAFF to complete the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.03.04.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can completed.  Therefore, Defendants cannot respond to this request.

**REQUEST FOR ADMISSIONS NO. 18:**

Admit that no written POLICY requires mental health STAFF to perform a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, of every PRISONER in Administrative Confinement during the PRISONER'S first 29 days in Administrative Confinement.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 19:**

Admit that no written POLICY requires mental health STAFF to perform a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, of every PRISONER in Disciplinary Confinement during the PRISONER'S first 29 days in Disciplinary Confinement.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 20:**

Admit that no written POLICY requires mental health STAFF to perform a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, of every PRISONER in Close Management during the PRISONER'S first 29 days in Close Management.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 21:**

Admit that no written POLICY requires mental health STAFF to perform a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, of every PRISONER in Maximum Management during the PRISONER'S first 29 days in Maximum Management.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 22:**

Admit that no written POLICY requires medical STAFF to perform any "screening," as REFERENCED in Health Services Bulletin No. 15.03.04, of every PRISONER in Administrative Confinement after the Special Housing Health Screening is completed, for as long as the PRISONER remains in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can be completed.  Subject to this objection, Defendants deny.

**REQUEST FOR ADMISSIONS NO. 23:**

Admit that no written POLICY requires medical STAFF to perform any "screening," as REFERENCED in Health Services Bulletin No. 15.03.04, of every PRISONER in Disciplinary Confinement after the Special Housing Health Screening is completed, for as long as the PRISONER remains in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can completed.  Subject to this objection, Defendants deny

**REQUEST FOR ADMISSIONS NO. 24:**

Admit that no written POLICY requires medical STAFF to perform any "screening," as referenced in Health Services Bulletin No. 15.03.04, of every PRISONER in Close Management after the Special Housing Health Screening is completed, for as long as the PRISONER remains in Close Management.

14

**RESPONSE:**

Defendants object to this request as vague and ambiguous. There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can completed. Subject to this objection, Defendants deny.

**REQUEST FOR ADMISSIONS NO. 25:**

Admit that no written POLICY requires medical STAFF to perform any "screening," as referenced in Health Services Bulletin No. 15.03.04, of every PRISONER in Maximum Management after the Special Housing Health Screening is completed, for as long as the PRISONER remains in Maximum Management.

**RESPONSE:**

Defendants object to this request as vague and ambiguous. There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health Screening" that can completed. Therefore, Defendants cannot respond to this request. Subject to this objection, Defendants deny.

**REQUEST FOR ADMISSIONS NO. 26:**

Admit that no written POLICY requires medical STAFF to perform a "physical examination" as REFERENCED in Health Services Bulletin 15.03.04, of every PRISONER in Administrative Confinement after the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.04.04, is completed, for as long as the PRISONER remains in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health Screening" that can completed. Further, HSB No. 15.04.04 refers to "Dental

Entries in the Medical Record" and therefore it is not clear how that HSB relates to the issues asserted in this case.

**REQUEST FOR ADMISSIONS NO. 27:**

Admit that no written POLICY requires medical STAFF to perform a "physical examination" as REFERENCED in Health Services Bulletin 15.03.04, of every PRISONER in Disciplinary Confinement after the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.04.04, is completed, for as long as the PRISONER remains in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health Screening" that can completed. Further, HSB No. 15.04.04 refers to "Dental Entries in the Medical Record" and therefore it is not clear how that HSB relates to the issues asserted in this case.

**REQUEST FOR ADMISSIONS NO. 28:**

Admit that no written POLICY requires medical STAFF to perform a "physical examination" as REFERENCED in Health Services Bulletin 15.03.04, of every PRISONER in Close Management after the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.04.04, is completed, for as long as the PRISONER remains in Close Management.

**RESPONSE:**

Defendants object to this request as vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health

16

Screening" that can completed.  Further, HSB No. 15.04.04 refers to "Dental

Entries in the Medical Record" and therefore it is not clear how that HSB relates to

the issues asserted in this case.

## REQUEST FOR ADMISSIONS NO. 29:

Admit that no written POLICY requires medical STAFF to perform a "physical examination" as REFERENCED in Health Services Bulletin 15.03.04, of every PRISONER in Maximum Management after the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.04.04, is completed, for as long as the PRISONER remains in Maximum Management.

## RESPONSE:

Defendants object to this request as vague and ambiguous and not

reasonably calculated to lead to the discovery of admissible evidence.  There is no

reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health

Screening" that can completed.  Further, HSB No. 15.04.04 refers to "Dental

Entries in the Medical Record" and therefore it is not clear how that HSB relates to

the issues asserted in this case.

## REQUEST FOR ADMISSIONS NO. 30:

Admit that no written POLICY requires mental health STAFF to provide written OR verbal input to the disciplinary team prior to disciplinary action taken against any PRISONER in Administrative Confinement who has a diagnosed mental illness.

## RESPONSE:

Denied.

**REQUEST FOR ADMISSIONS NO. 31:**

Admit that no written POLICY requires mental health STAFF to provide written OR verbal input to the disciplinary team prior to disciplinary action taken against any PRISONER in Disciplinary Confinement who has a diagnosed mental illness.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 32:**

Admit that no written POLICY requires mental health STAFF to provide written OR verbal input to the disciplinary team prior to disciplinary action being taken against any PRISONER in Close Management who has a diagnosed mental illness.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 33:**

Admit that no written POLICY requires mental health STAFF to provide written OR verbal input to the disciplinary team prior to disciplinary action being taken against any PRISONER in Maximum Management who has a diagnosed mental illness.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 34:**

Admit that FDC POLICY permits STAFF to change a PRISONER's Close Management assignment to a more restrictive level of Close Management if the PRISONER commits a major rule violation while receiving in-patient mental health treatment.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 35:**

Admit that no written POLICY prohibits housing PRISONERS classified as mental health grade S-3 in Administrative Confinement.

**RESPONSE:**

Admitted there is no written statewide policy; the determination of the placement of any particular inmate in administrative confinement is performed on a case-by-case basis depending on that inmate's circumstances and particular mental health needs.

**REQUEST FOR ADMISSIONS NO. 36:**

Admit that no written POLICY prohibits housing PRISONERS classified as mental health grade S-3 in Close Management.

**RESPONSE:**

Admitted there is no written statewide policy; the determination of the placement of any particular inmate in close management is performed on a case by case basis depending on that inmate's circumstances and particular mental health needs.

**REQUEST FOR ADMISSIONS NO. 37:**

Admit that no written POLICY prohibits housing PRISONERS classified as mental health grade S-3 in Disciplinary Confinement.

**RESPONSE:**

Admitted there is no written statewide policy; the determination of the placement of any particular inmate in disciplinary confinement is performed on a

case by case basis depending on that inmate's circumstances and particular mental

health needs.

**REQUEST FOR ADMISSIONS NO. 38:**

Admit that no written POLICY prohibits housing PRISONERS classified as mental health grade S-3 in Maximum Management.

**RESPONSE:**

Admitted there is no written statewide policy; the determination of the

placement of any particular inmate in maximum management is performed on a

case by case basis depending on that inmate's circumstances and particular mental

health needs.

**REQUEST FOR ADMISSIONS NO. 39:**

Admit that no written POLICY prohibits housing PRISONERS with traumatic brain injury in Administrative Confinement.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named

Plaintiff claims to have suffered a traumatic brain injury; therefore, no named

plaintiff has standing to assert claims on behalf of inmates that may have a

traumatic brain injury.

**REQUEST FOR ADMISSIONS NO. 40:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with traumatic brain injury in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. Whether or not a single inmate with a traumatic brain injury was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 41:**

Admit that no written POLICY prohibits housing PRISONERS with traumatic brain injury in Close Management.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

**REQUEST FOR ADMISSIONS NO. 42:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with traumatic brain injury in Close Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.   Defendants also object to this request as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a traumatic brain injury was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 43:**

Admit that no written POLICY prohibits housing PRISONERS with traumatic brain injury in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

**REQUEST FOR ADMISSIONS NO. 44:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with traumatic brain injury in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a traumatic brain injury was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

23

**REQUEST FOR ADMISSIONS NO. 45:**

Admit that no written POLICY prohibits housing PRISONERS with traumatic brain injury in Maximum Management.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

**REQUEST FOR ADMISSIONS NO. 46:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with traumatic brain injury in Maximum Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a traumatic brain

24

injury was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 47:

Admit that no written POLICY prohibits housing PRISONERS with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Administrative Confinement.

## RESPONSE:

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.  Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

## REQUEST FOR ADMISSIONS NO. 48:

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Administrative Confinement.

## RESPONSE:

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of

relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a developmental disability was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

## REQUEST FOR ADMISSIONS NO. 49:

Admit that no written POLICY prohibits housing PRISONERS with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Close Management.

## RESPONSE:

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

**REQUEST FOR ADMISSIONS NO. 50:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Close Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a developmental disability was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act. Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

**REQUEST FOR ADMISSIONS NO. 51:**

Admit that no written POLICY prohibits housing PRISONERS with developmental disabilities, as REFERENCED in Health Services Bulletin 15.03.13, in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.  Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

**REQUEST FOR ADMISSIONS NO. 52:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging

in this case. See Doc. 54. Whether or not a single inmate with a developmental

disability was housed in disciplinary confinement says nothing as to whether or not

the "statewide policies" that are being challenged are constitutional or violate the

ADA/ Rehab Act.

Further, HSB 15.04.13 relates to Dental Services therefore this request is

vague and ambiguous.

**REQUEST FOR ADMISSIONS NO. 53:**

Admit that no written POLICY prohibits housing PRISONERS with
developmental disabilities, as REFERENCED in Health Services Bulletin
15.03.13, in Maximum Management.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named

Plaintiff claims to have a developmental disability; therefore, no named plaintiff

has standing to assert claims on behalf of inmates that may have a developmental

disability.

**REQUEST FOR ADMISSIONS NO. 54:**

Admit that YOU have housed PRISONERS who STAFF knew were
diagnosed with developmental disabilities, as REFERENCED in Health Services
Bulletin 15.04.13, in Maximum Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the

knowledge of thousands of employees encompassed within "YOU" and "STAFF"

at a given point in time.  Defendants also object to this request on the basis of

relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a developmental disability was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 55:

Admit that no written POLICY prohibits housing PRISONERS diagnosed with a seizure disorder in Close Management.

## RESPONSE:

Admitted there is no written statewide policy prohibiting the housing of any inmate diagnosed with a seizure disorder in close management; the determination of the placement of an inmate in close management is performed on a case-by-case basis, taking into consideration the inmate's particular circumstances and medical needs.

## REQUEST FOR ADMISSIONS NO. 56:

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with seizure disorders in Close Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a seizure disorder was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 57:**

Admit that no written POLICY prohibits housing PRISONERS diagnosed with seizure disorders in Maximum Management.

**RESPONSE:**

Admitted there is no written statewide policy prohibiting the housing of any inmate diagnosed with a seizure disorder in maximum management; the determination of the placement of an inmate in maximum management is performed on a case-by-case basis, taking into consideration the inmate's particular circumstances and medical needs.

**REQUEST FOR ADMISSIONS NO. 58:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with seizure disorders in Maximum Management.

31

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.   Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a seizure disorder was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 59:**

Admit that no written POLICY prohibits housing PRISONERS diagnosed with seizure disorders in Administrative Confinement.

**RESPONSE:**

Admitted there is no statewide written policy prohibiting the housing of any inmate diagnosed with a seizure disorder in administrative confinement; the determination of the placement of an inmate in administrative confinement is performed on a case-by-case basis, taking into consideration the inmate's particular circumstances and medical needs.

**REQUEST FOR ADMISSIONS NO. 60:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with seizure disorders in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a seizure disorder was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 61:**

Admit that no written POLICY prohibits housing PRISONERS diagnosed with seizure disorders in Disciplinary Confinement.

**RESPONSE:**

Admitted there is no statewide policy prohibiting the housing of any inmate diagnosed with a seizure disorder in disciplinary confinement; the determination of the placement of an inmate in disciplinary confinement is performed on a case-by-case basis, taking into consideration the inmate's particular circumstances and medical needs.

**REQUEST FOR ADMISSIONS NO. 62:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with seizure disorders in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" at a given point in time.  Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a seizure disorder was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 63:**

Admit that YOU have housed PRISONERS classified as vision health grade ED5 (Total Blindness) in Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a vision health grade of ED5 was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act. Defendants also object to this request on the basis of relevance as no named Plaintiff claims to a vision health grade of ED5; therefore, no named

plaintiff has standing to assert claims on behalf of inmates that may have this health grade.

## REQUEST FOR ADMISSIONS NO. 64:

Admit that YOU have housed PRISONERS classified as vision health grade ED5 (Total Blindness) in Administrative Confinement.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a vision health grade of ED5 was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act. Defendants also object to this request on the basis of relevance as no named Plaintiff claims to a vision health grade of ED5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have this health grade.

## REQUEST FOR ADMISSIONS NO. 65:

Admit that PRISONERS classified as vision health grade ED5 (Total Blindness) have been housed in Disciplinary Confinement.

35

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a vision health grade of ED5 was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act. Defendants also object to this request on the basis of relevance as no named Plaintiff claims to a vision health grade of ED5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have this health grade.

**REQUEST FOR ADMISSIONS NO. 66:**

Admit that YOU have housed PRISONERS classified as vision health grade ED5 (Total Blindness) in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a vision

health grade of ED5 was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants also object to this request on the basis of relevance as no named Plaintiff claims to a vision health grade of ED5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have this health grade.

## REQUEST FOR ADMISSIONS NO. 67:

Admit that YOU have housed PRISONERS classified as hearing health grade HD5 (Profound hearing loss or deaf) in Administrative Confinement.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a hearing health grade of HD5 was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have a hearing health grade HD5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a hearing health grade HD5.

**REQUEST FOR ADMISSIONS NO. 68:**

Admit that YOU have housed PRISONERS classified as hearing health grade HD5 (Profound hearing loss or deaf) in Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a hearing health grade of HD5 was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have a hearing health grade HD5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a hearing health grade HD5.

**REQUEST FOR ADMISSIONS NO. 69:**

Admit that YOU have housed PRISONERS classified as hearing health grade HD5 (Profound hearing loss or deaf) in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a hearing health grade of HD5 was housed in close management says nothing as to whether or not the

"statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have a hearing health grade HD5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a hearing health grade HD5.

**REQUEST FOR ADMISSIONS NO. 70:**

Admit that YOU have housed PRISONERS classified as hearing health grade HD5 (Profound hearing loss or deaf) in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a hearing health grade of HD5 was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have a hearing health grade HD5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a hearing health grade HD5.

**REQUEST FOR ADMISSIONS NO. 71:**

Admit that YOU have housed PRISONERS who STAFF have identified as pregnant in Administrative Confinement while pregnant.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time. Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single pregnant inmate was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have been pregnant while in prison; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have been pregnant.

**REQUEST FOR ADMISSIONS NO. 72:**

Admit that YOU have housed PRISONERS who STAFF have identified as pregnant in Close Management while pregnant.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or

40

not a single pregnant inmate was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have been pregnant while in prison; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have been pregnant.

**REQUEST FOR ADMISSIONS NO. 73:**

Admit that YOU have housed PRISONERS who STAFF have identified as pregnant in Disciplinary Confinement while pregnant.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single pregnant inmate was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have been pregnant while in prison; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have been pregnant.

**REQUEST FOR ADMISSIONS NO. 74:**

Admit that YOU have housed PRISONERS who STAFF have identified as pregnant in Maximum Management while pregnant.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single pregnant inmate was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have been pregnant while in prison; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have been pregnant.

**REQUEST FOR ADMISSIONS NO. 75:**

Admit that YOU have housed PRISONERS who STAFF have identified as requiring the use of a wheelchair to ambulate in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF"

have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate requiring the use of a wheelchair to ambulate was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 76:**

Admit that YOU have housed PRISONERS who STAFF have identified as requiring the use of a wheelchair to ambulate in Close Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate requiring the use of a wheelchair to ambulate was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 77:**

Admit that YOU have housed PRISONERS who STAFF have identified as requiring the use of a wheelchair to ambulate in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate requiring the use of a wheelchair to ambulate was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 78:**

Admit that YOU have housed PRISONERS who STAFF have identified as requiring the use of a wheelchair to ambulate in Maximum Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate requiring the use of a wheelchair to ambulate was housed in

maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 79:**

Admit that FDC currently does not have enough correctional STAFF to fill all correctional officer positions.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not there are enough correctional staff to fill all correctional officer positions says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 80:**

Admit FDC currently does not have enough correctional STAFF to fill all Level I correctional officer positions.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not there are enough correctional staff to fill all correctional officer positions says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 81:**

Admit that FDC currently does not have enough correctional STAFF to fill all Level II correctional officer positions.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not there are enough correctional staff to fill all correctional officer positions says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 82:**

Admit that the only exercise area used for PRISONERS in Administrative Confinement is located outdoors at each FACILITY.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 83:**

Admit that the only exercise area used for PRISONERS in Disciplinary Confinement is located outdoors at each FACILITY.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 84:**

Admit that the only exercise area used for PRISONERS in Close Management is located outdoors at each FACILITY.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 85:**

Admit that the only exercise area used for PRISONERS in Maximum Management is located outdoors at each FACILITY.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 86:**

Admit that FDC has no written POLICY requiring that PRISONERS in Administrative Confinement be given access to exercise equipment inside their cells.

**RESPONSE:**

Defendants object to the extent "exercise equipment" is not defined, but otherwise this request is denied.

**REQUEST FOR ADMISSIONS NO. 87:**

Admit that FDC has no written POLICY requiring that PRISONERS in Disciplinary Confinement be given access to exercise equipment inside their cells.

**RESPONSE:**

Defendants object to the extent "exercise equipment" is not defined, but otherwise this request is denied

**REQUEST FOR ADMISSIONS NO. 88:**

Admit that FDC has no written POLICY requiring that PRISONERS in Close Management be given access to exercise equipment inside their cells.

**RESPONSE:**

Defendants object to the extent "exercise equipment" is not defined, but otherwise this request is denied

**REQUEST FOR ADMISSIONS NO. 89:**

Admit that FDC has no written POLICY requiring that PRISONERS in Maximum Management be given access to exercise equipment inside their cells.

**RESPONSE:**

Defendants object to the extent "exercise equipment" is not defined, but otherwise this request is denied

**REQUEST FOR ADMISSIONS NO. 90:**

Admit that the only equipment FDC provides for exercise to PRISONERS in Administrative Confinement is metal bars fixed to the ground in the designated exercise areas.

**RESPONSE:**

Defendants object to the extent "equipment . . . for exercise" is not defined, but otherwise this request is denied.

**REQUEST FOR ADMISSIONS NO. 91:**

Admit that the only equipment FDC provides for exercise to PRISONERS in Disciplinary Confinement is metal bars fixed to the ground in the designated exercise areas.

**RESPONSE:**

Defendants object to the extent "equipment . . . for exercise" is not defined, but otherwise this request is denied.

48

**REQUEST FOR ADMISSIONS NO. 92:**

Admit that the only equipment FDC provides for exercise to PRISONERS in Close Management is metal bars fixed to the ground in the designated exercise areas.

**RESPONSE:**

Defendants object to the extent "equipment . . . for exercise" is not defined, but otherwise this request is denied.

**REQUEST FOR ADMISSIONS NO. 93:**

Admit that the only equipment FDC provides for exercise to PRISONERS in Maximum Management is metal bars fixed to the ground in the designated exercise areas.

**RESPONSE:**

Defendants object to the extent "equipment . . . for exercise" is not defined, but otherwise this request is denied.

**REQUEST FOR ADMISSIONS NO. 94:**

Admit that for PRISONERS FDC identified as requiring the use of a wheelchair to ambulate in Administrative Confinement, FDC does not provide "exercise stations," as REFERENCED in Section 33-601.800, designed to take into account the PRISONER'S particular limitations.

**RESPONSE:**

Defendants object to this request as compound, vague and ambiguous. Section 33-601.800 concerns close management, not administrative confinement. Defendants otherwise deny that there is a state-wide policy, as each inmate identified as having a disability is given an individualized Disabled Inmate

49

Management and Service Plan and their needs are determined on a case-by-case basis.

**REQUEST FOR ADMISSIONS NO. 95:**

Admit that for PRISONERS FDC identified as requiring the use of a wheelchair to ambulate in Disciplinary Confinement, FDC does not provide "exercise stations," as REFERENCED in Section 33-601.800, designed to take into account the PRISONER'S particular limitations.

**RESPONSE:**

Defendants object to this request as compound, vague and ambiguous. Section 33-601.800 concerns close management, not disciplinary confinement. Defendants otherwise deny that there is a state-wide policy, as each inmate identified as having a disability is given an individualized Disabled Inmate Management and Service Plan and their needs are determined on a case-by-case basis.

**REQUEST FOR ADMISSIONS NO. 96:**

Admit that for PRISONERS FDC identified as requiring the use of a wheelchair to ambulate in Close Management, FDC does not provide "exercise stations," as REFERENCED in Section 33-601.800, designed to take into account the PRISONER'S particular limitations.

**RESPONSE:**

Defendants object to this request to the extent is suggests that the "exercise stations" referenced in Section 33-601.800 are not provided to all close management inmates. Defendants further object to this request as compound, vague and ambiguous as it is not clear whether it is asking whether the exercise

stations are provided to inmates identified as requiring the use of a wheelchair to ambulate or whether it is asking whether an alternative to those exercise stations is provided. Defendants otherwise deny that there is a state-wide policy, as each inmate identified as having a disability is given an individualized Disabled Inmate Management and Service Plan and their needs are determined on a case-by-case basis.

**REQUEST FOR ADMISSIONS NO. 97:**

Admit that for PRISONERS FDC identified as requiring the use of a wheelchair to ambulate in Maximum Management, FDC does not provide "exercise stations," as REFERENCED in Section 33-601.800, designed to take into account the PRISONER'S particular limitations.

**RESPONSE:**

Defendants object to this request as vague and ambiguous. Section 33-601.800 concerns close management, not maximum management. Defendants otherwise deny that there is a state-wide policy, as each inmate identified as having a disability is given an individualized Disabled Inmate Management and Service Plan and their needs are determined on a case-by-case basis.

**REQUEST FOR ADMISSIONS NO. 98:**

Admit that FDC POLICIES permit STAFF to concurrently assign PRISONERS to both Disciplinary Confinement AND Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. See Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 99:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their reading materials are restricted as described in Section 33-602.222(4)(o).

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 100:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their exercise is restricted as described in Section 33-602.222(4)(p).

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 101:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their visits are restricted under Section 33-602.222(4)(i).

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 102:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their personal property is restricted under Section 33-602.222(4)(c).

**RESPONSE:**

Admitted.

## REQUEST FOR ADMISSIONS NO. 103:

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their telephone privileges are restricted under Section 33-602.222(4)(l).

## RESPONSE:

Admitted

## REQUEST FOR ADMISSIONS NO. 104:

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their canteen privilege are restricted under Section 33-602.222(4)(g).

## RESPONSE:

Admitted.

## REQUEST FOR ADMISSIONS NO. 105:

Admit that FDC houses PRISONERS assigned to only Close Management, and not Disciplinary Confinement, in wings that are designated for Disciplinary Confinement because there are not enough cells in wings designated as Close Management for all PRISONERS assigned to Close Management.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular institution on a particular day as to a particular inmate houses that inmate assigned to Close Management in wings

designated for disciplinary confinement says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

Defendants also object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. See Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 106:**

Admit that FDC houses PRISONERS assigned to only Close Management, and not Administrative Confinement, in wings that are designated for Administrative Confinement because there are not enough cells in wings designated as Close Management for all PRISONERS assigned to Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular institution on a particular day as to a particular inmate houses that inmate assigned to Close Management in wings designated for administrative confinement says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

Defendants also object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. See Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 107:**

Admit that for PRISONERS assigned to Close Management but not housed at a FACILITY designated to house PRISONERS assigned to Close Management, FDC POLICIES do not require STAFF to provide all the privileges described in Section 33-601.800(10).

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 108:**

Admit that for PRISONERS assigned to Close Management but not housed at a FACILITY designated to house PRISONERS assigned to Close Management, FDC STAFF do not provide all the privileges described in Section 33-601.800(10).

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular institution on a particular day does not provide all the privileges described to an inmate assigned to Close Management says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 109:**

Admit that for PRISONERS assigned to Close Management but not housed in a wing designated to house PRISONERS assigned to Close Management, FDC POLICIES do not require STAFF to provide all privileges described in Section 33-601.800(10).

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 110:**

Admit that for PRISONERS assigned to Close Management but not housed at a FACILITY designated to house PRISONERS assigned to Close Management, FDC STAFF do not provide all the privileges described in Section 33-601.800(10).

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular institution on a particular day does not provide all the privileges described to an inmate assigned to Close Management says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 111:**

Admit that for PRISONERS assigned to Close Management but not housed at a wing designated to house PRISONERS assigned to Close Management, FDC STAFF do not provide all the privileges described in Section 33-601.800(10).

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular institution on a particular day does not provide all the privileges described to an inmate assigned to Close Management says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 112:**

Admit that FDC POLICIES permit STAFF to find a PRISONER guilty of violating more than one department rule arising out of the same transaction, incident, OR occurrence.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern

the "conditions of confinement" but rather the reasons a particular inmate may be

confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 113:**

Admit that when PRISONERS are found guilty of violating more than one department rule arising out of the same transaction, incident, OR occurrence, FDC POLICIES permit STAFF to sentence them to a term of Disciplinary Confinement for each violation.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern

the "conditions of confinement" but rather the reasons a particular inmate may be

confined and/or the length of time confined. See Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 114:**

Admit that FDC POLICIES permit STAFF to impose Disciplinary Confinement terms consecutively.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern

the "conditions of confinement" but rather the reasons a particular inmate may be

confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 115:**

Admit that FDC POLICIES permit a PRISONER to serve multiple Disciplinary Confinement terms consecutively for violating more than one department rule arising out of the same transaction, incident, OR occurrence.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 116:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than 60 continuous days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 117:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than six continuous months.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 118:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than 365 continuous days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 119:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than three continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 120:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than five continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 121:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than seven continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 122:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than ten continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 123:**

Admit that there is no written POLICY creating a maximum limit for the amount of time a PRISONER may be required to spend in Disciplinary Confinement for consecutive terms.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 124:**

Admit that there is no written POLICY creating a maximum limit for the amount of time a PRISONER may be required to spend in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 125:**

Admit that there is no written POLICY creating a maximum limit for the amount of time a PRISONER may spend in any level of Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 126:**

Admit that there is no written POLICY creating a maximum limit for the amount of time a PRISONER may be required to spend in Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 127:**

Admit that there is no written POLICY creating maximum limit for the amount of time a PRISONER may spend in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 128:**

Admit that there are PRISONERS who have been assigned to Close Management for more than three continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 129:**

Admit that there are PRISONERS who have been assigned to Close Management for more than five continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 130:**

Admit that there are PRISONERS who have been assigned to Close Management for more than ten continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 131:**

Admit that there are PRISONERS who have been assigned to Close Management for more than 15 continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 132:**

Admit that there are PRISONERS who have been assigned to Maximum Management for more than 60 continuous days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 133:**

Admit that there are PRISONERS who have been assigned to Maximum Management for more than six continuous months.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

## REQUEST FOR ADMISSIONS NO. 134:

Admit that there are PRISONERS who have been assigned to Maximum Management for more than 365 continuous days.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

## REQUEST FOR ADMISSIONS NO. 135:

Admit that there are PRISONERS who have been assigned to Maximum Management for more than two continuous years.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

## REQUEST FOR ADMISSIONS NO. 136:

Admit that no written POLICY prohibits STAFF from finding a PRISONER guilty of violations of department rules RELATED TO the PRISONER's suicide attempt.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related

to the prisoner's suicide attempt" is not clear based on the overly broad definition

of "related to" in Plaintiffs' definitions.

**REQUEST FOR ADMISSIONS NO. 137:**

Admit that no written POLICY prohibits STAFF from finding a PRISONER
guilty of violations of department rules RELATED TO the PRISONER's self-
injurious behavior.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related

to the prisoner's self-injurious behavior" is not clear based on the overly broad

definition of "related to" in Plaintiffs' definitions.

**REQUEST FOR ADMISSIONS NO. 138:**

Admit that no written POLICY prohibits STAFF from placing a PRISONER
in Disciplinary Confinement for violations of department rules RELATED TO the
PRISONER'S suicide attempt.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related

to the prisoner's suicide attempt" is not clear based on the overly broad definition

of "related to" in Plaintiffs' definitions.

**REQUEST FOR ADMISSIONS NO. 139:**

Admit that no written POLICY prohibits STAFF from placing a PRISONER
in Disciplinary Confinement for violations of department rules RELATED TO the
PRISONER's self-injurious behavior.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related to the prisoner's self-injurious behavior" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions.

**REQUEST FOR ADMISSIONS NO. 140:**

Admit that STAFF have placed PRISONERS in Disciplinary Confinement for disobeying a verbal order because the PRISONERS allegedly refused to comply with a demand to cease a suicide attempt.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular staff member on a particular institution on a particular day placed an inmate in disciplinary confinement for disobeying a verbal order says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 141:**

Admit that STAFF have placed PRISONERS in Disciplinary Confinement for disobeying a verbal order because the PRISONERS allegedly refused to comply with a demand to cease a self-injurious behavior.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular staff member on a particular

institution on a particular day placed an inmate in disciplinary confinement for disobeying a verbal order says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 142:

Admit that STAFF have placed PRISONERS in Disciplinary Confinement for destruction of state property because the PRISONERS allegedly destroyed state property RELATED TO a suicide attempt.

## RESPONSE:

Defendants object to this Request as vague and ambiguous because "related to a suicide attempt" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions. Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular staff member on a particular institution on a particular day placed an inmate in disciplinary confinement for the destruction of property says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 143:

Admit that STAFF have placed PRISONERS in Disciplinary Confinement for destruction of state property because the PRISONERS allegedly destroyed state property RELATED TO self-injurious behavior.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related to self-injurious behavior" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions.  Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular staff member on a particular institution on a particular day placed an inmate in disciplinary confinement for the destruction of property says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 144:**

Admit that PRISONERS have been assigned to Administrative Confinement for more than 90 consecutive days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 145:**

Admit that PRISONERS have been assigned to Administrative Confinement for more than 180 consecutive days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 146:**

Admit that PRISONERS have been assigned to Administrative Confinement for more than 365 consecutive days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 147:**

Admit that no written POLICY requires STAFF to open cell doors when chaplains visit PRISONERS in ISOLATION wings, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendants object to this request as compound and to the extent it suggests that prisoners in close management, maximum management, administrative confinement, and/or disciplinary confinement are not an "immediate" safety or security risk. There is no statewide written policy that allows for an ad hoc determination by "staff" that a prisoner who is in one of those classifications is not

70

an "immediate" safety or security risk thereby allowing unfettered access to staff,

visitors and volunteers at the institution.

## REQUEST FOR ADMISSIONS NO. 148:

Admit that chaplains communicate with PRISONERS in ISOLATION through locked cell doors when they come to ISOLATION wings unless correctional STAFF agree to open cell doors.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern

"a statewide policy" which is what Plaintiffs are purportedly challenging in this

case. See Doc. 54.  Whether or not a particular chaplain at a particular institution

on a particular day communicated with a particular inmate through a locked cell

door says nothing as to whether the statewide policies being challenged violation

the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 149:

Admit that no written POLICY requires STAFF to open cell doors when education STAFF visit PRISONERS in ISOLATION wings, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

## RESPONSE:

Defendants object to this request as compound and to the extent it suggests

that prisoners in close management, maximum management, administrative

confinement, and/or disciplinary confinement are not an "immediate" safety or

security risk.   There is no statewide written policy that allows for an ad hoc

determination by "staff" that a prisoner who is in one of those classifications is not

an "immediate" safety or security risk thereby allowing unfettered access to staff,

visitors and volunteers at the institution.

**REQUEST FOR ADMISSIONS NO. 150:**

Admit that education STAFF communicate with PRISONERS in ISOLATION through locked cell doors when they come to ISOLATION wings unless correctional STAFF agree to open cell doors.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern

"a statewide policy" which is what Plaintiffs are purportedly challenging in this

case. See Doc. 54.  Whether or not a particular education staff member at a

particular institution on a particular day communicated with a particular inmate

through a locked cell door says nothing as to whether the statewide policies being

challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 151:**

Admit that no written POLICY requires STAFF to open cell doors when mental health STAFF perform mental health "rounds," as REFERENCED in Health Services Bulletin 15.05.08, in ISOLATION, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendants object to this request as compound and to the extent it suggests

that prisoners in close management, maximum management, administrative

confinement, and/or disciplinary confinement are not an "immediate" safety or

security risk.   There is no statewide written policy that allows for an ad hoc determination by "staff" that a prisoner who is in one of those classifications is not an "immediate" safety or security risk thereby allowing unfettered access to staff, visitors and volunteers at the institution.

**REQUEST FOR ADMISSIONS NO. 152:**

Admit that mental health STAFF observe AND communicate with PRISONERS in ISOLATION during mental health "rounds," as REFERENCED in Health Services Bulletin 15.05.08, through locked cell doors unless correctional STAFF agree to open cell doors.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.   Whether or not a particular mental health staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 153:**

Admit that no written POLICY requires STAFF to remove PRISONERS in ISOLATION from their cells to receive individual therapy from mental health STAFF, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendant objects to this request as compound.  Otherwise, denied.

**REQUEST FOR ADMISSIONS NO. 154:**

Admit that mental health STAFF provides individual therapy to PRISONERS in ISOLATION through locked cell doors unless correctional STAFF agree to remove PRISONERS from their cells.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular mental health staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 155:**

Admit that no written POLICY requires STAFF to remove PRISONERS in ISOLATION from their cells to receive psychiatry services, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendant objects to this request as compound.  Otherwise, denied.

**REQUEST FOR ADMISSIONS NO. 156:**

Admit that mental health STAFF provide psychiatry services to PRISONERS in ISOLATION through locked cell doors unless correctional STAFF agree to remove PRISONERS from their cells.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this

case. See Doc. 54.  Whether or not a particular mental health staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 157:

Admit that no written POLICY requires STAFF to remove PRISONERS in ISOLATION from their cells to receive a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

## RESPONSE:

Defendant objects to this request as compound.  Otherwise, denied.

## REQUEST FOR ADMISSIONS NO. 158:

Admit that mental health STAFF provide "mental status examinations," as REFERENCED in Health Services Bulletin No. 15.05.08, to PRISONERS in ISOLATION through locked cell doors unless correctional STAFF agree to remove PRISONERS from their cells.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular mental health staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 159:**

Admit that no written POLICY require STAFF to remove PRISONERS in ISOLATION from their cells to receive medical care, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendant objects to this request as compound.  Otherwise, denied.

**REQUEST FOR ADMISSIONS NO. 160:**

Admit that healthcare STAFF have administered insulin injections to Plaintiff Kendrick in ISOLATION through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular medical staff member at a particular institution on a particular day administered insulin to Plaintiff Kendrick through the cuff/food port in the cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 161:**

Admit that healthcare STAFF administer insulin injections to PRISONERS in ISOLATION through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular medical staff member at a particular

institution on a particular day administered insulin to a particular inmate through the cuff/food port in the cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 162:

Admit that healthcare STAFF draw blood from PRISONERS in ISOLATION through the cuff/food port in the cell door.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular medical staff member at a particular institution on a particular day drew blood from a particular inmate through the cuff/food port in the cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 163:

Admit that healthcare STAFF have requested to draw blood from Plaintiff KENDRICK in ISOLATION through the cuff/food port in the cell door.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular medical staff member at a particular institution on a particular day requested to draw blood from Plaintiff Kendrick

through the cuff/food port in the cell door says nothing as to whether the statewide

policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 164:**

Admit that FDC's Medication and Treatment Record form (FORM DC4-701A) does not require healthcare STAFF to document the actual time that each dose of insulin is administered.

**RESPONSE:**

Defendants object to this Request because the form speaks for itself.

**REQUEST FOR ADMISSIONS NO. 165:**

Admit that no written POLICY requires correctional STAFF to review the time that insulin was administered to PRISONERS with diabetes in ISOLATION.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 166:**

Admit that PRISONERS in Administrative Confinement receive their meals in their cells through the cuff/food port in the cell door.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 167:**

Admit that PRISONERS in Maximum Management receive their meals in their cells through the cuff/food port in the cell door.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 168:**

Admit that PRISONERS in Close Management receive their meals in their cells through the cuff/food port in the cell door.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 169:**

Admit that PRISONERS in Disciplinary Confinement receive their meals in their cells through the cuff/food port in the cell door.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 170:**

Admit that STAFF have administered Oleoresin Capsicum in Administrative Confinement through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. Whether or not a particular staff member administered Oleoresin Capsicum through the cuff/ food port in the cell door at a particular institution on a particular day says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 171:**

Admit that STAFF have administered Oleoresin Capsicum in Disciplinary Confinement through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54.   Whether or not a particular staff member administered Oleoresin Capsicum through the cuff/ food port in the cell door at a particular institution on a particular day says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 172:**

Admit that STAFF have administered Oleoresin Capsicum in Close Management through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54.   Whether or not a particular staff member administered Oleoresin Capsicum through the cuff/ food port in the cell door at a particular institution on a particular day says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 173:**

Admit that STAFF have administered Oleoresin Capsicum in Maximum Management through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54.   Whether or not a particular staff member administered Oleoresin Capsicum through the cuff/ food port in the cell door at a particular institution on a particular day says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 174:**

Admit that correctional STAFF are responsible to ensure that meals are delivered to PRISONERS in ISOLATION.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54.   Defendants further object to this request as vague and ambiguous because "responsible to ensure" is unclear.

**REQUEST FOR ADMISSIONS NO. 175:**

Admit that there is no type of electronic alert system located inside any Close Management cells that PRISONERS can use to alert STAFF of an emergency.

**RESPONSE:**

Admitted.

## REQUEST FOR ADMISSIONS NO. 176:

Admit that there is no type of electronic alert system located inside any Administrative Confinement cells that PRISONERS can use to alert STAFF of an emergency.

**RESPONSE:**

Admitted.

## REQUEST FOR ADMISSIONS NO. 177:

Admit that there is no type of electronic alert system located inside any Disciplinary Confinement cells that PRISONERS can use to alert STAFF of an emergency.

**RESPONSE:**

Admitted.

## REQUEST FOR ADMISSIONS NO. 178:

Admit that there is no type of electronic alert system located inside any Maximum Management cells that PRISONERS can use to alert STAFF of an emergency.

**RESPONSE:**

Admitted.

## REQUEST FOR ADMISSIONS NO. 179:

Admit that FDC STAFF attended the International and Interdisciplinary Perspectives on Prolonged Solitary Confinement conference at the University of Pittsburg in April 2016.

**RESPONSE:**

Defendants cannot admit nor deny this Request at this time.  Defendants'

investigation is ongoing.

**REQUEST FOR ADMISSIONS NO. 180:**

Admit that if a PRISONER is released from FDC custody while assigned to
Close Management and returns to the custody of FDC, FDC POLICY is to return
that PRISONER to Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern

the "conditions of confinement" but rather the reasons a particular inmate may be

confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 181:**

Admit that if a PRISONER is released from FDC custody while assigned to
Close Management, and returns to the custody of FDC within two years of her OR
his release date, FDC POLICY is to return that PRISONER to Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern

the "conditions of confinement" but rather the reasons a particular inmate may be

confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 182:**

Admit that FDC has "assigned," as REFERENCED in Section 33-601.800,
correctional STAFF on Temporary Employment Authorization Status to work in
wings that contain cells designated for PRISONERS assigned to Close
Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. The particular assignment of a particular staff member at a particular institution says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 183:**

Admit that FDC has "assigned," as REFERENCED IN Section 33-601.800, correctional STAFF on Temporary Employment Authorization Status to work in wings that contain cells designated for PRISONERS assigned to Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. The particular assignment of a particular staff member at a particular institution says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 184:**

Admit that FDC has "assigned," as REFERENCED in Section 33-602.222, correctional STAFF on Temporary Employment Authorization Status to work in wings that contain cells designated for PRISONERS assigned to Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. The particular assignment of a particular staff member at a particular institution says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 185:**

Admit that FDC has "assigned," as REFERENCED in Section 33-602.220, correctional STAFF on Temporary Employment Authorization Status to work in wings that contain cells designated for PRISONERS assigned to Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. The particular assignment of a particular staff member at a particular institution says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 186:**

Admit that there is currently no "Alternative Housing Program" as REFERENCED in DOCUMENTS produced in response to Public Records Response Number 18-820, in any FACILITY.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this

case. *See* Doc. 54. Whether or not a particular facility is currently operating the Alternative Housing Pilot Program says nothing about whether any statewide policy being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 187:

Admit that there is currently no "Alternative Housing Pilot Program," as REFERENCED in DOCUMENTS produced in response to Public Records Response Number 18-820, in any FACILITY.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. Whether or not a particular facility is currently operating the Alternative Housing Pilot Program says nothing about whether any statewide policy being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 188:

Admit that there is currently no Automated Discipline and Integrated Offender System in use at any FACILITY.

## RESPONSE:

Denied.

**REQUEST FOR ADMISSIONS NO. 189:**

Admit that there are currently no programs that attempt to reduce the population of PRISONERS in Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Programs are facility specific and whether or not a particular facility has a particular program says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 190:**

Admit that there are currently no programs that attempt to reduce the population of PRISONERS in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Programs are facility specific and whether or not a particular facility has a particular program says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 191:**

Admit that there are currently no programs that attempt to reduce the population of PRISONERS in Close Management.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Programs are facility specific and whether or not a particular facility has a particular program says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 192:

Admit that there are currently no programs that attempt to reduce the population of PRISONERS in Maximum Management.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Programs are facility specific and whether or not a particular facility has a particular program says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 193:

Admit that there are currently no pilot projects that attempt to reduce the population of PRISONERS in Administrative Confinement.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Pilot projects are facility specific and whether or not a particular

facility has a pilot project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 194:

Admit that there are currently no pilot projects that attempt to reduce the population of PRISONERS in Disciplinary Confinement.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Pilot projects are facility specific and whether or not a particular facility has a pilot project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 195:

Admit that there are currently no pilot projects that attempt to reduce the population of PRISONERS in Close Management.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Pilot projects are facility specific and whether or not a particular facility has a pilot project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 196:**

Admit that there are currently no pilot projects that attempt to reduce the population of PRISONERS in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Pilot projects are facility specific and whether or not a particular facility has a pilot project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 197:**

Admit that the Segregation Processes Project has ended.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Projects are facility specific and whether or not a particular facility has a project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 198:**

Admit that YOU approved the DOCUMENT entitled, "Technical Manual: Alternative Housing," dated May 2016.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 199:**

Admit that the DOCUMENT entitled, "Technical Manual: Alternative Housing," is not in effect.

**RESPONSE:**

Admitted.

        Respectfully submitted,

        / s / Samantha C. Duke
        DANIEL J. GERBER
        Florida Bar No. 0764957
        RUMBERGER, KIRK & CALDWELL
        A Professional Association
        Lincoln Plaza, Suite 1400
        300 South Orange Avenue (32801)
        Post Office Box 1873
        Orlando, Florida  32802-1873
        Telephone:  (407) 872-7300
        Telecopier:  (407) 841-2133
        Email:      dgerber@rumberger.com

        and

        NICOLE SMITH
        Florida Bar No. 0017056
        RUMBERGER, KIRK & CALDWELL
        A Professional Association
        Post Office Box 10507
        Tallahassee, Florida  32302-2507
        Telephone:  (850) 222-6550
        Telecopier:  (850) 222-8783
        E-mail:  nsmith@rumberger.com

        Attorneys for Florida Department of Corrections

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 20, 2019, I emailed the foregoing to: Christopher Michael Jones at cjones@filsinc.org; Jennifer Morrissey Painter at jennifer.painter@floridalegal.org; Shalini Goel Agarwal at shalini.agarwal@splcenter.org; Sumayya Saleh at sumayya.saleh@splcenter.org; Kelly Jean Knapp at Kelly.knapp@splcenter.org; Lisa S. Graybill at lisa.graybill@splcenter.org; Dante Pasquale Trevisani at dtrevisani@floridajusticeinstitute.org; and Laura Anne Ferro at lferro@floridajusticeinstitute.org.

/ s / Samantha C. Duke
_____

DANIEL J. GERBER
Florida Bar No. 0764957
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:        dgerber@rumberger.com

and

NICOLE SMITH
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
A Professional Association
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  nsmith@rumberger.com

Attorneys   for   Florida   Department   of
Corrections

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

        Plaintiffs,

vs.                    CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

        Defendants.
_____/

**DEFENDANT, MARK INCH'S**
**RESPONSE TO PLAINTIFFS' SECOND REQUEST FOR PRODUCTION**

      Defendant, Mark Inch, in his official capacity as Secretary of the Florida

Department of Corrections, hereby responds to Plaintiffs' Second Request for

Production, served November 6, 2019, as follows:

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

Defendants incorporate these objections to Plaintiffs' "Instructions" and "Definitions" into each specific response to Plaintiffs' request for production listed below:

1.      Defendants object to the "Instructions" as they require Defendants to comply with ESI protocols different than what the parties have agreed upon and/or are more burdensome than the requirements of the Federal Rules of Procedure.

2.      Defendants object to the "Instructions" as requiring Defendants to "identify" each person Defendants have reason to believe had or has knowledge of any Document or ESI not presently in FDC's possession or subject to its control. Rule 34 authorizes discovery of documents and things, and there is no requirement to respond as instructed by Plaintiffs.

3.      Defendants object to the instruction for a requested timeframe of January 1, 2014, through the present.  This action is for solely for injunctive relief; therefore, a time period of almost six years is vastly overly broad and not proportional to the needs of the case considering that the undue burden and expense of discovery for the requested time period outweighs the likely benefit. As such, unless otherwise indicated, FDC has limited its search to one year previous to the filing of the lawsuit, or May 8, 2018, through the present.  *See*

2

*O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief").

4.      Defendants object to the definition of "communication(s)" as being overly broad and because it purports to include *oral* communications regardless of whether such oral communications are documented or otherwise recorded in some manner.  Rule 34 authorizes discovery of documents and things, and there is no requirement to produce oral communications as broadly defined by Plaintiffs. Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.

5.      Defendants object to the definition of "document" and "documents" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case, as electronic information stored in databases, such as OBIS, cannot be readily produced in any format other than print-screens. Additionally, Defendants object the inclusion of e-mails in the definition of "document" and "documents," and state that non-objectionable e-mails will be produced in response to those requests that seek "communications."

6.      Defendants object to the definition of "disability" and "disabilities" as being overly broad in scope and different from the definition(s) contained in FDC's rules, policies, practices and/or procedures.  Defendants also object on the basis

that "disability" and "disabilities" are not ascertainable on a class-wide basis, but instead must be determined on a case-by-case basis.

7.     Defendants object to the definition of "facility" and "facilities" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case at this stage, pre-class certification.  As such, Defendants object to the definition of "facility" and "facilities" to the extent it includes non-CM institutions. Additionally, Defendants object to the definition of "facility" and "facilities" because it includes any institution "where there is ISOLATION."  Such definition is overly broad and not relevant to the issues in this case, as "isolation" in turn "refers to Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management, as described in Chapters 33-601 and 33-603 of the Florida Administrative Code."

8.     Defendants object to the definition of "isolation," as it is different than the definition Plaintiffs set forth in the First Amended Class Action Complaint for Declaratory Relief and Injunctive Relief" ("Complaint"), overly broad in scope and not proportional to the needs of the case considering the undue burden and expense of discovery attendant to such a broad definition.

9.     Defendants object to the definition of "policy" and "policies" as including unwritten or otherwise unrecorded "policies."  Rule 34 authorizes discovery of documents and things, and there is no requirement to create "policies"

4

that have not been memorialized.  Additionally, Defendants object to the relevance of "policies" that have not been officially approved.  Defendants also object on the basis of relevance and overbreadth because the definition includes "policies" in effect *only* at particular facilities, where the claims in this case "stem from one overarching policy and practice" of Defendants (D.E. 42, p.1), or stated another way, Defendants' "systematic *statewide* policy and practice of isolating people . . ." D.E. 42, pp. 2-3 (emphasis added), citing D.E. 13 ¶¶ 57-59.  Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.  Defendants further object to producing any "policy" that is no longer in effect as this is an action for injunctive relief and FDC's policies which are no longer in effect are not relevant to any issue asserted in this case.

10.    Defendants object to the definition of "staff" based upon overbreadth and relevance, as it includes non-employees of FDC, such as employees of vendors with whom FDC contracts, and "staff" at non-CM facilities.  *See* objection to "facility" and "facilities," at ¶ 6.

**REQUEST FOR PRODUCTION NO. 152:**

All DOCUMENTS that describe POLICIES; criteria for admission, completion, and removal from; programming; and curriculums for the "Restrictive Housing Program" referenced in YOUR response to Plaintiff Harvard's Interrogatory 5 to FDC.

**RESPONSE:**

Please see documents produced in response to requests 52, 56, 57, 60 and 61 to Inch (of which Defendants have agreed to produce unredacted copies). FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 153:**

All DOCUMENTS that describe POLICIES; criteria for admission, completion, and removal from programming; and curriculums for the "New River Step-Down" referenced in YOUR response to Plaintiff Harvard's Interrogatory 5 to FDC.

**RESPONSE:**

Please see documents produced in response to requests 52, 56, 57, 60 and 61 to Inch (of which Defendants have agreed to produce unredacted copies). FDC will produce documents responsive to this request. Otherwise, FDC objects that the meaning of "removal" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 154:**

All DOCUMENTS and training materials provided to STAFF in paper or electronic form as part of "FDC's ADA training" referenced in YOUR response to Plaintiff Harvard's Interrogatory 6 to FDC.

**RESPONSE:**

Please see Master Training Plans produced in response to requests 49, 88, 89

and 95 to Inch.  FDC will produce additional documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 155:**

All DOCUMENTS that describe programs available to PRISONERS in
ISOLATION, including all DOCUMENTS that indicate the maximum number of
PRISONERS in ISOLATION that each program has the capacity to accept in each
program at each FACILITY. This request seeks DOCUMENTS in YOUR custody,
control, OR possession except for DOCUMENTS that are solely kept in individual
PRISONERS' electronic or paper records

**RESPONSE:**

Please see documents produced in response to requests 25, 26 and 60 to

Inch.  FDC will produce additional documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 156:**

All DOCUMENTS entitled, "Report of Administrative Confinement, DC6-
233A," dated from August 1, 2019, through October 31, 2019.

**RESPONSE:**

Upon agreement of the parties, FDC will produce a log of such reports

identifying the date, the inmate's name, DC number and facility, and the

disposition, i.e., reason for placement in administrative confinement. Otherwise,

Defendants object on the grounds that the request is not proportional to the needs

of the case and on the basis of overbreadth and undue burdensomeness, as

Defendant has identified approximately 28,000 reports, which are stored in an

electronic database from which the reports cannot be readily produced in any format other than print-screens.

**REQUEST FOR PRODUCTION NO. 157:**

All DOCUMENTS entitled, "Report of Close Management, DC6-233C," dated from August 1, 2019, through October 31, 2019.

**RESPONSE:**

Upon agreement of the parties, FDC will produce a log of such reports identifying the date, the inmate's name, DC number and facility, and the disposition, i.e., reason for placement in administrative confinement. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendant anticipated identifying thousands of these reports, which are stored in an electronic database from which the reports cannot be readily produced in any format other than print-screens.

**REQUEST FOR PRODUCTION NO. 158:**

All DOCUMENTS entitled, "Referral for Maximum Management, DC6-101," dated from November 1, 2018, through November 1, 2019.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 159:**

All DOCUMENTS entitled, "Report of Close Management, DC6-233C" dated from November 1, 2018, through July 31, 2019, and prepared for PRISONERS who were in Maximum Management at the time the report was prepared.

**RESPONSE:**

Defendants will search for such documents and provide any to the extent they exist.

**REQUEST FOR PRODUCTION NO. 160:**

All DOCUMENTS entitled, "Florida Department of Corrections Housing Unit Log", form DC6-209, from any housing unit where there is ISOLATION dated from August 1, 2019, through October 31, 2019.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 161:**

All DOCUMENTS entitled "Disciplinary Reports," dated from July 15, 2019, through July 22, 2019.

**RESPONSE:**

Upon agreement of the parties, FDC will produce a log of such reports identifying the date, the inmate's name, DC number and facility, and the type of disciplinary report, i.e., reason for disciplinary report. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendant has identified approximately 2,000 reports, which are stored in an electronic database from which the reports cannot be readily produced in any format other than print-screens.

**REQUEST FOR PRODUCTION NO. 162:**

All DOCUMENTS entitled, "Disciplinary Reports," prepared for violations of department rules arising out of transactions, occurrences, or incidents by PRISONERS assigned to ISOLATION during the time period of August 1, 2019, through October 31, 2019.

**RESPONSE:**

Upon agreement of the parties, FDC will produce a log of such reports identifying the date, the inmate's name, DC number, facility, and housing status at the time of the disciplinary report and the type of disciplinary report, i.e., reason for disciplinary charge. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendant has identified approximately 5,000 reports, which are stored in an electronic database from which the reports cannot be readily produced in any format other than print-screens.

**REQUEST FOR PRODUCTION NO. 163:**

All DOCUMENTS reporting or describing the number of PRISONERS who received, OR in the alternative provide any lists of the names of PRISONERS scheduled to receive, "group therapy" OR "group counseling" as referred to in Health Services Bulletin 15.05.08, in ISOLATION during the time period of August 1, 2019, through October 31, 2019.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants also object that "All DOCUMENTS reporting or describing the number of PRISONERS who received, OR in the alternative provide any lists of

the names of PRISONERS scheduled to receive, 'group therapy' OR 'group counseling' . . . in ISOLATION" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Attendance at programs by specific inmates at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

## REQUEST FOR PRODUCTION NO. 164:

All DOCUMENTS showing the attendance at any programs available to PRISONERS in ISOLATION during the time period of August 1, 2019, through October 31, 2019. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants also object that "All DOCUMENTS showing the attendance at any programs available to PRISONERS in ISOLATION" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Attendance at programs by specific inmates at the institution level do not address whether the

11

"overarching policy" is constitutional and/or discriminatory.   Thus, Plaintiffs'

request is not relevant to the claims being asserted.

## REQUEST FOR PRODUCTION NO. 165:

All tables of contents OR indexes of correctional, medical, mental health, and education procedures, post orders, technical instructions, and health service bulletins currently in effect.

## RESPONSE:

FDC will produce documents responsive to this request. Otherwise,

Defendants object to this request to the extent it seeks safety and security-sensitive

materials, including but not limited to, technical instructions and post orders.


## REQUEST FOR PRODUCTION NO. 166:

All written POLICIES that exclude PRISONERS with "intellectual disabilities," as defined by YOU in YOUR response to Plaintiff Harvard's Interrogatory 12 to FDC, from ISOLATION.

## RESPONSE:

FDC will produce documents responsive to this request.


## REQUEST FOR PRODUCTION NO. 167:

The classification, medical, mental health, education, and substance abuse records for Delonte Miller, DC #C90119. A signed authorization to release these records is attached to these requests.

## RESPONSE:

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 168:**

The DOCUMENT entitled, "Restrictive Housing," that Daniel Gerber sent to Plaintiffs' counsel by email on August 23, 2019.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 169:**

The DOCUMENT entitled. "Florida Department of Corrections, Restrictive Housing, Short-term Confinement & Mental Health Designations," including all versions and drafts.

**RESPONSE:**

FDC will produce the document and drafts if they can be located.

**REQUEST FOR PRODUCTION NO. 170:**

All DOCUMENTS, including any data and survey responses, that YOU prepared, drafted, OR generated in response to any ASCA (Association of State Correctional Administrators)-Liman Restrictive Housing Surveys, including survey responses YOU completed in 2015.

**RESPONSE:**

Please see documents in response to request 42 to Inch.

**REQUEST FOR PRODUCTION NO. 171:**

All POLICIES that describe OR provide directives, guidelines, OR instructions to STAFF regarding the procedures for assigning mental health grades to PRISONERS.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the mental health grade" are vague, ambiguous, overly broad,

13

unduly burdensome and not proportional to the needs of this case. Plaintiffs' case

as alleged is a challenge to overarching state-wide policies, and not a "challenge to

a series of distinct incidents." DE 42, p. 4. The request arguably encompasses

millions of correctional, classification, education, mental health, medical and other

records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 172:

All curriculums regarding, and DOCUMENTS provided to STAFF during, "suicide and self-injury prevention and response" trainings and in-service trainings referred to in Procedure 404.001.

## RESPONSE:

FDC will produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 173:

FDC Procedure 401.002, and all blank "Relevant DC Forms" listed in the Procedure.

## RESPONSE:

Defendants object based upon relevance, as this procedure was rescinded in

2012.

## REQUEST FOR PRODUCTION NO. 174:

FDC Procedure 403.009, and all blank "Relevant DC Forms" listed in the Procedure.

## RESPONSE:

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 175:**

Health Services Bulletin 15.01.06, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 176:**

Health Services Bulletin 15.02.01.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 177:**

Health Services Bulletin 15.03.04, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 178:**

Health Services Bulletin 15.03.05, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 179:**

Health Services Bulletin 15.03.06.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 180:**

Health Services Bulletin 15.03.22, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 181:**

Health Services Bulletin 15.03.24, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 182:**

Health Services Bulletin 15.03.25, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

Please see documents produced in response to requests 65, 68 and 70 to Inch and requests 1-7 to FDC.  FDC will produce documents responsive to this request not previously produced.

**REQUEST FOR PRODUCTION NO. 183:**

Health Services Bulletin 15.03.26, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

16

**REQUEST FOR PRODUCTION NO. 184:**

Health Services Bulletin 15.03.29, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 185:**

Health Services Bulletin 15.05.05, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 186:**

Health Service Bulletin 15.06.04.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 187:**

Health Services Bulletin 15.09.04, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 188:**

Technical Instruction 15.03.39.

**RESPONSE:**

Defendants object to this request to the extent it seeks safety and security-

sensitive materials and is irrelevant to the claims in this case.

**REQUEST FOR PRODUCTION NO. 189:**

Nephrology Nursing Standards of Care.

**RESPONSE:**

FDC will produce documents responsive to this request to the extent they

exist and are in FDC's possession.

**REQUEST FOR PRODUCTION NO. 190:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the mental health grade, as referenced in Health Services Bulletin 15.03.13, of PRISONERS in each type of ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any

databases, that report, describe, summarize, analyze, discuss, calculate OR

comment on" and "the mental health grade" are vague, ambiguous, overly broad,

unduly burdensome and not proportional to the needs of this case. Plaintiffs' case

as alleged is a challenge to overarching state-wide policies, and not a "challenge to

a series of distinct incidents." DE 42, p. 4. The request arguably encompasses

millions of correctional, classification, education, mental health, medical and other

records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 191:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the medical

grade, as referenced in Health Services Bulletin 15.03.13, of PRISONERS in each type of ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the medical grade" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 192:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the impairment grade, as referenced in Health Services Bulletin 15.03.13, of PRISONERS in each type of ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the impairment grade" are vague, ambiguous, overly broad,

19

unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 193:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on PRISONERS diagnosed with "mental retardation" as referenced in Health Services Bulletin 15.03.25; developmental disabilities; OR intellectual disabilities, as referenced in YOUR response to Interrogatory 12 to FDC; in ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "PRISONERS diagnosed with 'mental retardation' . . . developmental disabilities; OR intellectual disabilities," are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health,

medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 194:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of Inmate Sick Call Request Forms, DC4-698A, submitted by PRISONERS in ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the number of Inmate Sick Call Request Forms, DC4-698A, submitted by PRISONERS in ISOLATION" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 195:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of Inmate Sick Call Request Forms, DC4-698A, submitted by PRISONERS in the general population during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR

21

possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the number of Inmate Sick Call Request Forms, DC4-698A, submitted by PRISONERS in general population" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 196:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the frequency of or number of emergency responses by medical STAFF to PRISONERS in ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR

comment on" and "the frequency of or number of emergency responses by medical STAFF to PRISONERS in ISOLATION" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 197:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the frequency of or number of "man-down drills," as referred to by the National Commission on Correctional Health Care, in ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the frequency of or number of "man-down drills," as referred to by the National Commission on Correctional Health Care, in ISOLATION" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request is broad enough that it would require the search of millions of

23

correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 198:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the frequency of or number of "man-down drills," as referred to by the National Commission on Correctional Health Care, in the general population during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the frequency of or number of "man-down drills," as referred to by the National Commission on Correctional Health Care, in the general population" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request is broad enough that it would require the search of millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 199:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the delivery, frequency, OR adequacy of "necessary mental health care," including interviews, mental health evaluations, scheduled appointments stemming from Individualized Service Plans, and mental status examinations, as referenced in Health Services Bulletin 15.05.08, for PRISONERS in ISOLATION during the time period of November 1, 2018, through the present, This request seeks DOCUMENTS in YOUR custody, control, OR possession except for  DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records

## RESPONSE:

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the delivery, frequency, OR adequacy of "necessary mental health care," including interviews, mental health evaluations, scheduled appointments stemming from Individualized Service Plans, and mental status examinations . . . for PRISONERS in ISOLATION" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

25

**REQUEST FOR PRODUCTION NO. 200:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the transfers of PRISONERS to OR from ISOLATION to isolation management rooms, hospitals, mental health treatment facilities, infirmaries, crisis stabilization units, transitional care units, secure treatment units, diversion treatment units, cognitive treatment units, OR other higher levels of medical OR mental health care during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the transfers of PRISONERS to OR from ISOLATION to isolation management rooms, hospitals, mental health treatment facilities, infirmaries, crisis stabilization units, transitional care units, secure treatment units, diversion treatment units, cognitive treatment units, OR other higher levels of medical OR mental health care" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

26

## REQUEST FOR PRODUCTION NO. 201:

All DOCUMENTS that report, describe, summarize, discuss, OR comment on self-injuries, as referred to in Procedure 404.001, by PRISONERS requiring medical treatment at a location outside of a FACILITY OR medical treatment at a FACILITY during the time period of November 1, 2018, through the present.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "self-injuries, as referred to in Procedure 404.001, by PRISONERS requiring medical treatment at a location outside of a FACILITY OR medical treatment at a FACILITY" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 202:

All DOCUMENTS that report the number of self-injuries, as referred to in Procedure 404.001, by PRISONERS by month AND housing unit OR FACILTY during the time period of November 1, 2018, through the present.

## RESPONSE:

There are no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 203:**

All MINS Reports RELATED TO self-injuries, as referred to in Procedure 404.001, by PRISONERS in ISOLATION requiring medical treatment at a location outside of a FACILITY OR medical care at a FACILITY during the time period of November 1, 2018, through the present.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 204:**

All DOCUMENTS authored by the FDC Office of the Inspector General that describe self-injuries, as referred to in Procedure 404.001, by PRISONERS requiring medical treatment outside of a FACILITY OR medical care at a FACILITY during the time period of November 1, 2018, through the present.

**RESPONSE:**

No documents are responsive to this request. Otherwise, Defendants object

that "All DOCUMENTS authored by" is overbroad, vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 205:**

All DOCUMENTS authored by the Florida Department of Law Enforcement that describe self-injuries, as referred to in Procedure 404.001, by PRISONERS requiring medical treatment outside of a FACILITY OR medical care at a FACILITY during the time period of November 1, 2018, through the present.

**RESPONSE:**

No documents are responsive to this request.  Otherwise, Defendants object

that "All DOCUMENTS authored by" is overbroad, vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 206:**

The Overall Inmate Summary (DC 14) for each PRISONER who committed self-injuries, as defined in Procedure 404.001, requiring medical treatment outside

of a FACILITY OR medical care at a FACILITY during the time period of January 1, 2018, through the present.

**RESPONSE:**

Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome.  The Overall Inmate Summary for any inmate "who committed self-injuries . . . requiring medical treatment outside of a FACILITY OR medical care at a FACILITY," regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

**REQUEST FOR PRODUCTION NO. 207:**

All DOCUMENTS summarizing or describing job descriptions for all positions held by STAFF listed in "Defendants Mark Inch and Florida Department of Corrections' Initial Rule 26 Disclosures," dated October 3, 2019.

**RESPONSE:**

FDC will produce documents responsive to this request to the extent they exist.

**REQUEST FOR PRODUCTION NO. 208:**

The complete education files for Plaintiffs Jac'Quann Harvard, Jeremiah Hill, Angel Meddler, Juan Espinosa, Johnny Hill, James Kendrick, AND Jerome Burgess, as described in YOUR initial disclosures.

**RESPONSE:**

FDC will produce documents responsive to this request not previously produced to the extent they exist.  Otherwise, Defendants object, as FDC is required to maintain only five years of education records.

## REQUEST FOR PRODUCTION NO. 209:

The complete substance abuse files for Plaintiffs Jac'Quann Harvard, Jeremiah Hill, Angel Meddler, Juan Espinosa, Johnny Hill, James Kendrick, AND Jerome Burgess, as described in YOUR initial disclosures.

## RESPONSE:

FDC will produce responsive documents not previously produced for Meddler and Jeremiah Hill.  There are no responsive documents for Hill and Kendrick.  Otherwise, Defendants object on the grounds that documents for the following Plaintiffs do not exist as they exceed the records retention period: Harvard, Espinosa and Johnny Hill.

## REQUEST FOR PRODUCTION NO. 210:

Plaintiffs' visitor logs, including e-mail and phone logs, as described in YOUR initial disclosures.

## RESPONSE:

FDC will produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 211:

Programming and education materials offered to inmates in restrictive housing, as described in YOUR initial disclosures.

## RESPONSE:

Please see documents produced in response to requests 25, 26 and 60 to Inch.  FDC will produce additional documents responsive to this request.

Respectfully submitted,

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
            sduke@rumberger.com
and
NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and
Florida Department of Corrections**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 10, 2020, I emailed the foregoing to:

Christopher Michael Jones at cjones@filsinc.org; Jennifer Morrissey Painter at

jennifer.painter@floridalegal.org;        Shalini        Goel        Agarwal        at

shalini.agarwal@splcenter.org; Sumayya Saleh at sumayya.saleh@splcenter.org;

Kelly   Jean   Knapp   at   Kelly.knapp@splcenter.org;   Lisa   S.   Graybill   at

31

lisa.graybill@splcenter.org; Dante Pasquale Trevisani at dtrevisani@floridajusticeinstitute.org; Laura Anne Ferro at lferro@floridajusticeinstitute.org; Sam Thypin-Bermeo at sthypin-bermeo@floridajusticeinstitute.org; Andrea Costello at andrea@floridalegal.org; Christopher M. Jones at Christopher@floridalegal.org; Jennifer Painter at Jennifer.painter@floridalegal.org; and Aimee Lim at aimee.lim@floridalegal.org.

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133
Email: dgerber@rumberger.com
            sduke@rumberger.com
and
NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida 32302-2507
Telephone: (850) 222-6550
Telecopier: (850) 222-8783
E-mail: nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and Florida Department of Corrections**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

       Plaintiffs,

vs.                    CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

       Defendants.
_____/

## DEFENDANT MARK INCH'S VERIFIED RESPONSES TO PLAINTIFF HARVARD'S FIRST SET OF INTERROGATORIES

Defendant, Mark Inch, in his official capacity as Secretary of the Florida

Department of Corrections and Florida Department of Corrections ("Defendant"),

hereby responds to the Plaintiff, Jac'quann (Admire) Harvard's First Set of

Interrogatories, served November 4, 2019, as follows:

## **OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Defendant incorporates these objections to Plaintiff's "Instructions" and "Definitions" into each specific response to Plaintiff's request for production listed below:

1.      Defendant objects to the instruction for a requested timeframe of January 1, 2014, through the present.  This action is solely for injunctive relief; therefore, a time period of almost six years is vastly over broad and not proportional to the needs of the case considering that the undue burden and expense of discovery for the requested time period outweighs the likely benefit, and, as such, Defendant has limited its search to one year previous to the filing of the lawsuit, or May 8, 2018, through the present, unless otherwise indicated.  *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief").

2.      Defendant objects to the definition of "DISABILITY" and "DISABILITIES" as being overly broad in scope and different from the definition(s) contained in FDC's rules, policies, practices and/or procedures. Defendant also objects on the basis that "DISABILITY" and "DISABILITIES" are not ascertainable on a class-wide basis, but instead must be determined on a case-by-case basis.

2

3.      Defendant objects to the definition of "FACILITY" and "FACILITIES" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case at this stage, pre-class certification. Additionally, Defendant objects to the definition of "FACILITY" and "FACILITIES" because it includes any institution "where there is ISOLATION." Such definition is overly broad and not relevant to the issues in this case, as "isolation" in turn "refers to Administrative Confinement, Close Management, Disciplinary Confinement, and Maximum Management, as described in Chapters 33-601 and 33-603 of the Florida Administrative Code."

4.      Defendant objects to the definition of "ISOLATION," as it is different than the definition Plaintiffs set forth in the First Amended Class Action Complaint for Declaratory Relief and Injunctive Relief" ("Complaint"), overly broad in scope and not proportional to the needs of the case considering the undue burden and expense of discovery attendant to such a broad definition.

5.      Defendant objects to the definition of "POLICY" and "POLICIES" as including unwritten or otherwise unrecorded "POLICIES."  Defendant also objects on the basis of relevance and overbreadth because the definition includes "policies" in effect only at particular facilities, where the claims in this case "stem from one overarching policy and practice" of Defendants (D.E. 42, p.1), or stated another way, Defendants' "systematic statewide policy and practice of isolating

people . . ."  D.E. 42, pp. 2-3 (citing D.E. 13 ¶¶ 57-59).  Defendant also objects

because the definition includes safety and security-sensitive materials, including

but limited to, technical manuals, post orders, and other security-related procedures

that are highly-confidential in nature.  Defendant further objects to producing any

"policy" that is no longer in effect as this is an action for injunctive relief and

FDC's policies which are no longer in effect are not relevant to any issue asserted

in this case.

6.     Defendant objects to the definition of "STAFF" based upon

overbreadth and relevance, as it includes non-employees of FDC.  *See* objection to

"facility" and "facilities," at ¶ 3.

### INTERROGATORY NO. 1:

Provide the name, job title, address, phone number, AND email address for
each person who participated in answering these Interrogatories AND state which
Interrogatory each person is answering.

### RESPONSE:

These interrogatory responses were prepared by the Florida Department of

Corrections ("FDC"), with the assistance of counsel, based on a review of

documents kept by the FDC in the ordinary course of business. For specific

interrogatories, the following persons directly participated in preparing the

interrogatory responses:

- Name: Rusty McLaughlin
  Job Title: Bureau Chief-Classification Management
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1 thru 8, 12, 13, 25

- Name: Amber Vargas
  Job Title: Assistant Bureau Chief-Classification Management
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 5, 6, 12, 13

- Name: Ricky Dixon
  Job Title: Deputy Secretary
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 2, 5, 6, 9, 10, 11, 12, 23

- Name: Richard Comerford
  Job Title: Assistant Deputy Secretary of Institutions
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 2, 5, 6, 12, 13

- Name: Jeremy Edwards
  Job Title: Correctional Services Consultant-Classification Management
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 12, 13, 15 thru 22, 24

- Name: Ezri Rediker
  Job Title: Correctional Officer Captain
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 14

**INTERROGATORY NO. 2:**

Provide the name, address, telephone number, email address, place of employment, AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the January 13, 2016 DOCUMENT, including all versions AND

drafts, entitled, "Analysis of Segregation Processes". For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

**RESPONSE:**

The following persons participated in the writing and editing of the referenced document and/or were provided a copy of the referenced document. Those involved could not recall specifically the exact timing of their involvement:

- Name: Rusty McLaughlin
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Bureau Chief-Classification Management
  Involvement: drafted and edited.

- Name: Sheryle (Sherry) Cosson (former employee)
  Address: Unknown
  Telephone Number: Unknown
  Place of Employment: Formerly Florida Department of Corrections
  Job Title: Former Assistant Bureau Chief- Classification Management
  Involvement: drafted and edited.

- Name: Richard Comerford
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Deputy Secretary of Institutions
  Involvement: edited.

- Name: Ricky Dixon
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Deputy Secretary
  Involvement: provided.

Defendant reserves the right to supplement this response should additional persons be identified.

## INTERROGATORY NO. 3:

Explain the basis for, OR describe the facts that YOU relied on to support, YOUR statement "[i]n the last several months, it has become apparent that there needed to be a thorough review and discussion regarding our Close Management process as it pertains to the initial placement of and the continued management (level modifications/reductions to include release from this status) of this particular inmate population" in the January 13, 2016 DOCUMENT entitled, "Analysis of Segregation Processes".

## RESPONSE:

The basis is provided in the document. Directly following the quote in the interrogatory, the document states: "[T]his need has become evident due to the number of inmates housed at non-close management institutions pending transfer to a close management institution and the number of inmates presently housed at designated close management institutions."

## INTERROGATORY NO. 4:

Describe in detail any AND all changes to POLICIES that resulted from the recommendations made in the January 13, 2016 DOCUMENT entitled, "Analysis of Segregation Processes".

## RESPONSE:

The following changes in policies were made following the recommendations made in the January 13, 2016 referenced document:

- Close Management 3 (CM3) will no longer be utilized as an entry point for close management. Instead, CM3 will be used as a "step-down" intended to be short-term with focus placed on programming to prepare the inmate for return to general population.

- Subsequent State Classification Office (SCO) reviews in conjunction with the Institutional Classification Team's interaction with the inmate will

shorten the time between reviews of the inmate's close management status when appropriate.  During a routine formal close management review conducted by the Classification Officer, Institutional Classification Team and State Classification Office, the inmate will be informed that if he completes a specified period of time (i.e. 60 days, 90 days, etc.) with no serious incidents that he/she will be reduced in CM level or released by the State Classification Office completing a subsequent decision entry.  The State Classification Office already has the ability to complete subsequent reviews to modify the CM level downward or to release the inmate from CM, but this will bring the inmate into the process by letting him/her know up front what will happen in the specified time period if they perform appropriately.  This process, while moving the inmate through the levels of close management faster without increasing the Classification Officer and Institutional Classification Team's current work load will increase the State Classification Officer's work load.

- Changes incorporated in the document entitled "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens dated October 26, 2016 and produced in PRR#18-0785.

- Changes incorporated in the document entitled "Disciplinary Process Follow up" with the attachments entitled "Proposed Penalty Changes attachment" and "Penalty Matrix-Updated" from Richard Comerford to Regional Directors, Wardens, Ricky Dixon, Rusty McLaughlin, Robert (Lee) Adams, Wes Kirkland, Bradford Locke, and Amber Vargas dated December 12, 2016.

- Enhanced close management programming when appropriate.

- Established the Residential Continuum of Care (RCC) Unit at Wakulla C.I.-Annex to provide outpatient mental health treatment and habilitation services in a protective environment. There are three residential mental health units within the RCC: Cognitive Treatment Unit, Diversion Treatment Unit and Secure Treatment Unit.

Defendant reserves the right to supplement this response should additional information be identified through discovery and/or its investigation.

**INTERROGATORY NO. 5:**

Provide the name, address, telephone number, email address, place of employment, AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENT, including all versions AND drafts, entitled "Disciplinary Confinement" from Ricky Dixon to Regional Directors and Wardens, and produced in response to PRR#18-0785. For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

**RESPONSE:**

The following persons participated in the writing and editing of the referenced document and/or were provided a copy of the referenced document. Those involved could not recall specifically the exact timing of their involvement:

- Name: Rusty McLaughlin
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Bureau Chief-Classification Management
  Involvement: wrote, edited.

- Name: Richard Comerford
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Deputy Secretary of Institutions
  Involvement: edited.

- Name: Ricky Dixon
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Deputy Secretary
  Involvement: provided.

- Name: Robert (Lee) Adams (former employee)
  Address: Unknown
  Telephone Number: Unknown
  Place of Employment: Formerly Florida Department of Corrections
  Job Title: Former Bureau Chief- Admission and Release

9

Involvement: edited.

- Name: Leah Berg
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Correctional Program Consultant
  Involvement: edited.

- Name: Amber Vargas
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Bureau Chief- Classification Management
  Involvement: provided.

Defendant reserves the right to supplement this response should additional persons be identified.

## INTERROGATORY NO. 6:

Provide the name, address, telephone number, email address, place of employment AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENTS, including all versions AND drafts, entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, and produced in response to PRR#18-0785. For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

## RESPONSE:

The following persons participated in the writing and editing of the referenced document and/or were provided a copy of the referenced document. Those involved could not recall specifically the exact timing of their involvement:

- Name: Rusty McLaughlin
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Bureau Chief-Classification Management

10

Involvement: wrote, edited.

- Name: Richard Comerford
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Deputy Secretary of Institutions
  Involvement: edited.

- Name: Ricky Dixon
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Deputy Secretary
  Involvement: provided.

- Name: Robert (Lee) Adams (former employee)
  Address: Unknown
  Telephone Number: Unknown
  Place of Employment: Formerly Florida Department of Corrections
  Involvement: edited.

- Name: Amber Vargas
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Bureau Chief- Classification Management
  Involvement: provided.

Defendant reserves the right to supplement this response should additional persons be identified.

**INTERROGATORY NO. 7:**

Describe in detail the "practices" that are of "questionable value," as referenced in the following DOCUMENTS: Memorandum entitled, "Disciplinary Confinement" from Ricky Dixon, to Regional Directors and Wardens, dated September 26, 2016; Memorandum entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated

11

September 27, 2016; and Memorandum entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 4, 2016. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

This statement directly relates to the preceding sentence "we confine too many inmates for too long a period of time without adequate programming for the confined population."

## INTERROGATORY NO. 8:

Describe in detail the "practices" that "undermine [FDC's] commitment to preparing inmates for their eventual release back into society," as referenced in the following DOCUMENTS: Memorandum entitled, "Disciplinary Confinement" from Ricky Dixon to Regional Directors and Wardens, dated September 26, 2016; Memorandum entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated September 27, 2016; and Memorandum entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 4, 2016. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

This statement directly relates to the preceding sentences "we confine too many inmates for too long a period of time without adequate programming for the confined population." And "[i]n terms of positive behavioral outcomes, these practices are of questionable value."

## INTERROGATORY NO. 9:

Have YOU determined that there is a "nationwide effort to reduce the number of inmates in confinement status," as referenced in the DOCUMENT entitled, "Disciplinary Confinement" from Ricky Dixon to Regional Directors and Wardens, dated September 21, 2016, and produced in response to PRR#18-0785? Describe in detail the basis for this determination OR YOUR determination to the contrary.

**RESPONSE:**

No. The statement "nationwide effort to reduce the number of inmates in confinement status," is a generalized statement summarizing information provided and available through various sources (e.g. correctional/law enforcement conferences, media reports, statistical reports, etc.) regarding the topic of confinement (i.e. restrictive housing, solitary confinement, time-in-cell, segregation, etc.).

**INTERROGATORY NO. 10:**

Have YOU determined that "restrictive housing is under significant scrutiny nationwide," as referenced in the DOCUMENTS entitled: "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 4, 2016; "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 18, 2016; and "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 19, 2016? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "restrictive housing is under significant scrutiny nationwide," is a generalized statement summarizing information provided and available through various sources (e.g. correctional/law enforcement conferences, media reports, statistical reports, etc.) regarding the topic of confinement (i.e. restrictive housing, solitary confinement, time-in-cell, segregation, etc.).

**INTERROGATORY NO. 11:**

Have YOU determined that "Florida is among other states that are on the higher end of the spectrum in terms of utilization of this management tool," restrictive housing, as referenced in DOCUMENTS entitled: "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 4, 2016; "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 18, 2016; "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated

13

October 19, 2016? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "Florida is among other states that are on the higher end of the spectrum in terms of utilization of this management tool," is a generalized statement summarizing information provided and available through various sources (e.g. correctional/law enforcement conferences, media reports, statistical reports, etc.) regarding the topic of confinement (i.e. restrictive housing, solitary confinement, time-in-cell, segregation, etc.).

**INTERROGATORY NO. 12:**

Provide the name, address, telephone number, email address, place of employment AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENTS entitled, "Long Term Segregation – Team Report", including all versions AND drafts, with the subjects:

(a) "Reduced Restraint Requirement for Confinement Inmates";

(b) "Conduct review as to how we currently view CM inmates who are receiving in-patient mental health treatment";

(c) "Reduction of the use of confinement as a punitive sanction, including reducing DC during CM";

(d) "Provide release programming at 180 days from release and remove appropriate inmates from CM who are within 60 days of release from prison to a non-CM unit";

(e) "Close Management Programming"; and

(f) "Viable Alternatives for the Long-Term Segregation of Inmates".

For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

14

**<u>RESPONSE:</u>**

The following persons participated in the writing and editing of the referenced documents and/or were provided a copy of the referenced documents. Those involved could not recall specifically the exact timing of their involvement:

(a)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Amber Vargas. Assistant Bureau Chief- Classification Management
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Christopher Hodgson. Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

John Kolodziej. Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

Angela Gordon. Regional Director
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

Herberk Foskey. Former Assistant Warden (former employee).
Address: unknown

15

Involvement: wrote, drafted, edited, provided.

Carlos (Eddie) Norman. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

Marshall Herring. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

Bradford Locke. Bureau Chief – Applied Science and Research
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided

Edward Hand (contract employee)
Address: unknown
Involvement: wrote, drafted, edited, provided.

William Gibson. Former Government Analyst II (former employee)
Address: unknown
Involvement: wrote, drafted, edited, provided.

(b)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

16

Stephen (Steve) Rossiter. Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

Vicki Newsome. Bureau Chief- Population Management
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

Stephanie Crawford. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

Michael Davis. Former classification supervisor (former employee)
Address: unknown
Involvement: wrote, drafted, edited.

Lee Messina (contract employee)
Address: unknown
Involvement: wrote, drafted, edited.

Eric Canida. Correctional Officer Sergeant.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

James (Jim) Friedle. Assistant Chief of Mental Health Services
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

(c)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell

Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Robert (Lee) Adams. Former Bureau Chief- Admission and Release
(former employee)
Address: unknown
Involvement: wrote, drafted, edited

Jeffrey McClellan. Assistant Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Christopher Lane. Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Randall Polk. Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Gina Gay. Classification Supervisor.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Tammy Roberts. Former classification supervisor (former employee)
Address: unknown.
Involvement: wrote, drafted, edited

Peggy Watkins-Ferrell (contract employee)
Address: unknown
Involvement: wrote, drafted, edited

Leah Berg. Correctional Program Consultant
c/o Rumberger, Kirk & Caldwell

18

Involvement: wrote, drafted, edited

Herman (Adam) Finch. Senior Classification Officer.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Michael Harrell. Bureau Chief- Security Operations
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Amber Vargas. Assistant Bureau Chief- Classification.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Tifani Knox. Assitant Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

(d)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Hope Gartman. Director of Institutional Operations.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Michael Booker. Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Susan Dove. Classification Supervisor.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Curtis (Bryant) Goodwin. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Margaret (Maggie) Agerton. Assistant Bureau Chief- Readiness and
Community Transition.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Michael (Mike) Workman. Correctional Program Administrator
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Kristina Hartman. Former Bureau Chief- Programs (former employee)
Address: unknown
Involvement: wrote, drafted, edited

Julie Jean. Correctional Program Consultant
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Peggy Watkins-Ferrell (contract employee)
Address: unknown
Involvement: wrote, drafted, and edited.

(e)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Hope Gartman. Director of Institutional Operations.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Michael Booker. Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited

Susan Dove. Classification Supervisor.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Curtis (Bryant) Goodwin. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Margaret (Maggie) Agerton. Assistant Bureau Chief- Readiness and
Community Transition.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Michael (Mike) Workman. Correctional Program Administrator
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

21

Kristina Hartman. Former Bureau Chief- Programs (former employee)
Address: unknown
Involvement: wrote, drafted, edited

Julie Jean. Correctional Program Consultant
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Peggy Watkins-Ferrell (contract employee)
Address: unknown
Involvement: wrote, drafted, and edited.

(f)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Robert (Lee) Adams. Former Bureau Chief-Admission and Release
(former employee)
Address: unknown
Involvement: edited

Richard Johnson. Former warden (former employee)
Address: unknown.
Involvement: wrote, drafted, and edited.

James Blackwood. Former warden (former employee).
Address: unknown
Involvement: wrote, drafted, and edited.

Jeremy Edwards. Correctional Services Consultant.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Trampus Gray. Assistant Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

James Sikes. Former Correctional Officer- Major (former employee)
Address: unknown
Involvement: wrote, drafted, and edited.

William Davis. Former Correctional Officer Sergeant (former employee)
Address: unknown
Involvement: wrote, drafted, and edited.

James Sikes. Former Correctional Officer- Major (former employee)
Address: unknown
Involvement: wrote, drafted, and edited.

Robert Everett Jr. Correctional Officer.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Steven Roddenberry. Former Assistant Warden (former employee).
Address: unknown
Involvement: wrote, drafted, and edited.

Mitchell Brown. Assistant Warden.

c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


William Schwarz III. Correctional officer major.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


Jonathan Mullins. Correctional Officer Sergeant.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


Defendant reserves the right to supplement this response should additional persons be identified.


## INTERROGATORY NO. 13:

Provide the name, address, telephone number, email address, place of employment AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENTS entitled, "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing", provided in response to PRR#18-0785. For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

## RESPONSE:

The following persons participated in the writing and editing of the referenced document and/or were provided a copy of the referenced document. Those involved could not recall specifically the exact timing of their involvement:

- Jeremy Edwards. Correctional Services Consultant
  c/o Rumberger, Kirk & Caldwell
  Involvement: wrote, drafted, edited.


- Amber Vargas. Assistant Bureau Chief- Classification Management
  c/o Rumberger, Kirk & Caldwell

24

Involvement: wrote, drafted, edited.

- Rusty McLaughlin. Bureau Chief- Classification Management
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

- Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Defendant reserves the right to supplement this response should additional persons be identified.

## INTERROGATORY NO. 14:

Provide the name, address, telephone number, email address, place of employment AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENTS entitled, "Alternative Housing: Training Presentation", provided in response to PRR#18-0785. For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

## RESPONSE:

Ezri Rediker. Correctional Officer Captain.
c/o Rumberger, Kirk & Caldwell.
Involvement: wrote, drafted, edited.

Mr. Rediker cannot recall the specific date in 2017 in which he drafted the referenced document.

## INTERROGATORY NO. 15:

Identify the "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is exceptionally expensive," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections

Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

The statement "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time exceptionally expensive," was provided as a summary from various research sites (such as Bureau of Justice Statistics). The sites would need to identify the "Evidence-based research" as the FDC did not conduct the research.

**INTERROGATORY NO. 16:**

Have YOU determined that "holding people in isolation [in FDC custody] with minimal human contact for extended periods of time is exceptionally expensive," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates"? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "holding people in with minimal human contact for extended periods of time is exceptionally expensive," was provided as a summary from various research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The FDC has not made this determination on those in FDC custody.

**INTERROGATORY NO. 17:**

Identify the "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can create or exacerbate serious

mental health problems and antisocial behavior among incarcerated people," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

The statement "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people," was provided as a summary from various research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The sites would need to identify the "Evidence-based research" as the FDC did not conduct the research.

## INTERROGATORY NO. 18:

Have YOU determined that "long-term segregation," defined for this Interrogatory as more than 60 consecutive days in "segregation," "can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people" in FDC custody, as referenced by the DOCUMENTS entitled: "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing" and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates"? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people" was provided as a summary from various research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The FDC has not conducted evidence-based research on "long-term segregation" as defined for this Interrogatory as more than 60 consecutive days in "segregation" and has not made a determination that it "can

create or exacerbate serious mental health problems and antisocial behavior among incarcerated people" in FDC custody

## INTERROGATORY NO. 19:

Identify the "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can . . . have negative outcomes for institutional safety," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

## RESPONSE:

The statement "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can . . . have negative outcomes for institutional safety," was provided as a summary from various statistical research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The sites would need to identify the "Evidence-based research" as the FDC did not conduct the research.

## INTERROGATORY NO. 20:

Have YOU determined that "long-term segregation," defined for this Interrogatory as more than 60 consecutive days in "segregation," can "have negative outcomes for institutional safety" in FDC, as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing" and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates"? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "have negative outcomes for institutional safety" was provided as a summary from various statistical research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The FDC has not conducted evidence-based research on "long-term segregation" as defined for this Interrogatory as more than 60 consecutive days in "segregation" and has not made a determination that it can "have negative outcomes for institutional safety".

**INTERROGATORY NO. 21:**

Identify the "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can . . . increase the risk of recidivism after release," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

The statement "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can . . . increase the risk of recidivism after release," was provided as a summary from various statistical research sites (such as Bureau of Justice Statistics ) however they were not cited in the document. The sites would need to identify the "Evidence-based research" as the FDC did not conduct the research.

**INTERROGATORY NO. 22:**

Have YOU determined that "long-term segregation," defined for this Interrogatory as more than 60 consecutive days in "segregation," can "increase the risk of recidivism after release" from FDC, as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative

Housing" and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates"? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "increase the risk of recidivism after release" was provided as summary from various statistical research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The FDC has not conducted evidence-based research on "long-term segregation" as defined for this Interrogatory as more than 60 consecutive days in "segregation" and has not made a determination that it can "increase the risk of recidivism after release" of those in FDC custody

**INTERROGATORY NO. 23:**

Define "long-term segregation," as used by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

60 or more days.

**INTERROGATORY NO. 24:**

Define "isolation with minimal human contact" as used by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

30

**RESPONSE:**

The statement "isolation with minimal human contact" was provided as summary from various statistical research sites (such as Bureau of Justice Statistics), however they were not cited in the document. The FDC does not have a definition for what the statistical research sites consider or any internal definition for "isolation with minimal human contact".

**INTERROGATORY NO. 25:**

Describe in detail the approval process, including but not limited to who approved it, when they approved it, AND what it means for the document to be "approved," for the "approved" "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing", as referenced in the DOCUMENT entitled, "Alternative Housing Pilot Directive," dated May 9, 2016, and sent by Ricky Dixon. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

Rusty McLaughlin met with Richard Comerford and Ricky Dixon to discuss plans with moving forward with the Alternative Housing Pilot Directive. This included the referenced DOCUMENTS' in interrogatory number 25.

31

## <u>VERIFICATION</u>

Florida Department of Corrections

By: _____

Authorized Agent

STATE OF _Florida_

COUNTY OF _Leon_

_Amber Vargas_ _____ says that he/she is authorized by Florida Department of Corrections under applicable law and rules to verify and does verify these Responses to Interrogatories on behalf of Florida Department of Corrections.

SWORN TO AND SUBSCRIBED before me this _17th_ day of _December_ , 2019.

_____
Signature of Notary

FELICIA KAREN BLITCH
MY COMMISSION # FF948636
EXPIRES January 06, 2020
FloridaNotaryService.com

_____
PRINT, TYPE OR STAMP NAME OF NOTARY

Personally known _✗_

OR Produced Identification _____

Type of Identification Produced _____

**Adams, Robert (Lee)**

| | |
|---|---|
| **From:** | McLaughlin, Rusty |
| **Sent:** | Wednesday, September 20, 2017 11:45 AM |
| **To:** | Gordon, Angela; Hummel, Erich; Riedl, Brian; Reid, Thomas |
| **Cc:** | Comerford, Richard; Adams, Robert (Lee); Becker, John; Vargas, Amber |
| **Subject:** | FW: Disciplinary Process Follow up |

Regional Directors

There have been concerns expressed about the below matrix and the fact that the 1-6 (Lewd or lascivious exhibition) and 4-1 (Escape or escape attempt ) infractions were not omitted from the matrix. The inclusion of these charges in the matrix simply means that written justification is required in order to impose a penalty outside the matrix framework. I want to emphasize that this does not limit in any way the disciplinary alternatives available to punish these infractions.  That is, you may continue to penalize these infractions *exactly as you have in the past*, based on the facts of the case. Staff discretion as to 1-6 and 4-1 remains *as it has always been*. The only difference is that now, to impose a penalty outside the matrix framework, you must provide written justification for the penalty.

The matrix structure was discussed by the team, comprised of field and central office staff, assigned with responsibly reducing the use of DC. The matrix is meant to guide discretion, not remove it, with the qualification that when the decision is to impose a sanction outside the matrix, it needs to be explained. The team felt this approach balanced the need to diminish the frequency of DC with the reality that some infractions absolutely warrant DC as a penalty regardless of the inmate's past conduct record. Requiring written justification will help ensure that we are making careful, well-considered decisions about handling these offenses which vary in scope considerably, depending on the facts of the case. In addition, this approach will create a much stronger record in the event we are called on to defend how we use confinement, especially when responding to non-assaultive offenses.

Florida's Classification system is complex and one of the cornerstones of the system is our ability to clearly articulate the reasons for our decisions. This is the foundation of a professional and credible system. Field staff are trusted to use their discretion wisely, but should be able to explain each decision made. Again, all that is required to exceed the matrix is a justification when these infractions occur.

Thanks
Rusty

**From:** Comerford, Richard
**Sent:** Monday, December 12, 2016 10:19 AM
**To:** RegionalDirectorsInstitutions <RegionalDirectors@mail.dc.state.fl.us>; Wardens-All <Wardens-All@mail.dc.state.fl.us>
**Cc:** Dixon, Ricky <Ricky.Dixon@fdc.myflorida.com>; McLaughlin, Rusty <Rusty.McLaughlin@fdc.myflorida.com>; Adams, Robert (Lee) <Robert.Adams2@fdc.myflorida.com>; Kirkland, Wes <Wes.Kirkland@fdc.myflorida.com>; Locke, Bradford <Bradford.Locke@fdc.myflorida.com>; Vargas, Amber <Amber.Vargas@fdc.myflorida.com>
**Subject:** Disciplinary Process Follow up

Regional Directors
Wardens

As a follow up to our conference call several weeks ago regarding the Disciplinary Process, the attached documents outline the proposed rule changes to certain penalties as well as the new matrix. Although the rule change has not officially occurred, this matrix and reduction in penalties is to be <u>implemented immediately</u>.

DHA00006853

**Penalty Changes**

The maximum penalty for a number of non-violent infractions is being reduced. As discussed, the change in the penalties only denotes the maximum allowed sanctions. The amount of confinement days or loss of gain time should still be decided on a case by case basis. The affected penalties are highlighted.

**Penalty Matrix**

In reference to the matrix, which pertains to non-violent infractions, the attached provides the exact wording for the rule and immediate use by the disciplinary team.   The only portion of the matrix that cannot be implemented is AH (Alternative Housing).  In the case of AH (Alternative Housing), a temporary alternative is provided in the gray highlighted area below and in the attached penalty matrix document.   Please keep in mind that once the rule is in effect, there will be database updates to assist with this process. Until such time as the database is updated, manual processing will be necessary.   Penalties imposed by the team will be guided by the inmate's disciplinary record, as measured by the time since the last infraction, and as is referenced in the matrix. However, if circumstances indicate that the presumptive sanction, based on disciplinary history, is inadequate to address the misconduct, the team may impose a penalty up to the maximum but such penalty must be accompanied by sufficient written justification. Our success in this effort will predominately depend on the local administration's critical evaluation of such written justification.

If you have any questions, please contact Amber Vargas at 850-717-3563.

Proposed Matrix in rule:

| Time since last infraction | 0-30 Days | 31-59 Days | 60-89 Days | 90-119 Days | 120-149 Days | 150-179 Days | 180+ Days; no prior infraction |
|---|---|---|---|---|---|---|---|
| Suggested Penalty | 30DC/30GT Or 30AH | 20DC/20GT or 30AH | 15DC/15GT or 30AH | 30AH/15GT | 30AH | 15AH | Other sanction authorized by 33-601.314. |

Temporary Matrix until AH (Alternative Housing) becomes available:  Gray areas denote temporary changes.

| Time since last infraction | 0-30 Days | 31-59 Days | 60-89 Days | 90-119 Days | 120-149 Days | 150-179 Days | 180+ Days; no prior infraction |
|---|---|---|---|---|---|---|---|
| Suggested Penalty | 30DC/30GT Or 30AH | 20DC/20GT or 30AH | 15DC/15GT or 30AH | 15DC/15GT | 15GT | Other sanction authorized by 33-601.314 | Other sanction authorized by 33-601.314. |

Thank you!!

*Richard D. Comerford*
Director of Institutional Operations
850-717-3037

4

DHA00006854

Our Vision: "Inspiring success by transforming one life at a time."
Our Vision: "Inspiring success by transforming one life at a time."

DHA00006855

# Tab 94

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAC'QUANN (ADMIRE)
HARVARD, et al.,**

      *Plaintiffs,*

**v.**                              **CASE NO.:  4:19cv212-MW/CAS**

**MARK INCH, Secretary of Florida
Department of Corrections, et al.,**

      *Defendants.*

_____/

**ORDER DENYING DEFENDANTS' MOTION FOR ENTRY OF A
<u>PROTECTIVE ORDER</u>**

This Court has considered, without hearing, Defendants' Motion for Entry of

a Protective Order. ECF No. 84. Specifically, Defendants' request entry of a

protective order limiting the disclosure to only Plaintiff's counsel of (1) post orders,

(2) technical manuals, (3) video surveillance of correctional facilities, and (4)

information related to correctional institution's physical security, including, but not

limited to, cell locations, prison layouts, and positioning of officers and cameras.

ECF No. 84, at 1–2. Plaintiffs oppose this motion. ECF No. 90. For the reasons

provided below, Defendants' motion, ECF No. 84, is **DENIED**.

**I**

This Court entered a Confidentiality Order, ECF No. 58, based on parties'

agreement that certain documents may contain information that FDC believes threatens prison safety or security if disclosed without the protections of a confidentiality order. The main disagreement was whether certain documents should be marked with the "Attorneys' Eyes Only" provision. ECF No. 58. This provision would allow certain documents to be reviewed only by attorneys working as counsel in this case. ECF No. 58. This Court rejected Defendants' arguments and, therefore, did not include the "Attorneys' Eyes Only" provision to the Confidentiality Order. ECF No. 58. Defendants now argue that the Confidentiality Order entered by this Court is insufficient to protect their interest in safety and security of the prison system. ECF No. 84. In doing so, Defendants raise the same arguments they did in opposing Plaintiffs' proposed confidentiality order, *Compare* ECF No. 51, at 6–8 *with* ECF No. 84, at 7–9, which this Court adopted in toto. ECF No. 58.

## II

Defendants' motion appears to be a motion for reconsideration of this Court's Confidentiality Order. A motion for reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Wendy's Int'l, Inc. v. Nu-Cape Const., Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996). A court will reconsider a previous order "only if there has been an intervening change in law, if new evidence has become available, or if there is a need to correct clear error or manifest injustice." *Buffkin v. Reliance Standard Life*

2

*Ins. Co.*, No. 3:16-cv-21-MCR/CJK, 2017 WL 3000031, at \*1 (N.D. Fla. May 30, 2017). Defendants have neither alleged nor established any of these grounds in their motion. Controlling law remains unchanged—every case Defendants cite in their motion for protective order pre-dates Defendants' motion related to this Court's Confidentiality Order. Defendants do not allege that new evidence has become available that requires this Court to reconsider its previous order. Indeed, Defendants specifically raised the documents at issue in their motion for protective order when litigating the Confidentiality Order. *See* ECF No. 51, at 3. And finally, Defendants have not alleged that reconsideration is needed to correct clear error or manifest injustice.

For these reasons, this Court refuses to reconsider its Confidentiality Order. Defendants' motion for protective order, which this Court construes as a motion for reconsideration, is denied.

### III

Assuming that Defendants' motion is properly brought under Federal Rule of Civil Procedure 26(c), the motion is still denied. This Court may, for good cause, issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Under Rule 26(c), a "party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from

3

stereotyped and conclusory statements' supporting the need for a protective order."

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 427, 429–30 (M.D.

Fla. 2005). In determining whether good cause exists, a court should balance the

interests of the parties. *See Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d

1304, 1313 (11th Cir. 2001).

This Court took into consideration Defendants' safety and security concerns

and Plaintiffs' interest in conducting full and fair discovery when it entered the

Confidentiality Order. The Confidentiality Order ensures that the documents marked

confidential will not be disclosed to people currently or formerly incarcerated in the

FDC without written permission from the producing party. ECF No. 58, ¶ 9(c). An

exception to this rule is the named Plaintiffs in this case. For the named Plaintiffs,

Plaintiffs' counsels will not give copies of the confidential documents to the named

Plaintiffs but may discuss the contents of the confidential documents with the named

Plaintiffs if reasonably necessary to prosecute this case. ECF No. 58, ¶ 9(c). As far

as Defendants' concern regarding the broad definition of qualified persons who may

view the confidential documents, this Court defined qualified persons based on, in

large part, the cases Defendants cited in its opposition to Plaintiffs' proposed

confidentiality order. ECF No. 58, at 1–2.

Defendants' motion for a protective order is based on a fear of mischief

because there is an opportunity for mischief. This Court expects the parties to

conduct discovery of highly sensitive information in a reasonable manner, and will not assume bad faith on the part of Plaintiffs' counsel without specific demonstration of fact. In moving for a protective order, Defendants merely recite the concerns they had in opposing Plaintiffs' proposed confidentiality order without demonstrating any specific facts that would show that additional protection is needed.

For these reasons, Defendants' motion, ECF No. 84, is **DENIED**.

**SO ORDERED on January 22, 2020.**

**s/Mark E. Walker**
**Chief United States District Judge**

# Tab 98

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD, et al.,

      *Plaintiffs*,

v.                                    CASE NO.:  4:19cv212-MW/CAS

MARK INCH, Secretary of Florida
Department of Corrections, et al.,

      *Defendants*.

_____/

## ORDER ON MOTION TO COMPEL

This Court has considered, without hearing, Plaintiffs' Motion to Compel. ECF No. 65-1. Defendants filed a response opposing the motion. ECF No. 83. Plaintiffs, under Federal Rule of Civil Procedure 37 and Local Rule 26.1, move for an order (1) compelling Defendant Mark Inch and Defendant Florida Department of Correction ("FDC") to produce documents responsive to Plaintiffs' First Request for Production; (2) compelling Defendant FDC to respond to Plaintiff Harvard's First Set of Interrogatories; (3) overruling Defendants' objections; (4) setting deadlines for production; and (5) awarding reasonable fees and costs because Defendants' objections are not substantially justified. ECF No. 65-1, at 1–2. For the reasons provided below, Plaintiffs' motion is **GRANTED**.

**I**

This is a civil rights case about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee. Plaintiffs allege that Defendants promulgated a statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells. ECF No. 13, ¶¶ 2, 59, 75. Plaintiffs further allege that this statewide policy and practice exposes all persons in isolation to a substantial risk of serious harm to their mental and physical health in violation of the Eighth Amendment and that policymakers in Tallahassee have exhibited deliberate indifference towards these risks. ECF No. 13, ¶¶ 5, 7, 54, 59, 75, 83. Finally, Plaintiffs allege that Defendants discriminate against people with disabilities through this same policy and practice. ECF No. 13, ¶¶ 8, 151–60.

Plaintiffs served their First Request for Production of Documents ("RFP") to Defendants on August 13, 2019. ECF No. 65-1, at 2–3; ECF No. 83, at 5. In October, Defendants responded with objections and produced limited documents. ECF No. 65-1, at 3. On August 28, 2019, Plaintiff Harvard served her First Set of Interrogatories ("ROG") to Defendant FDC. ECF No. 65-1, at 3. Defendant responded to the interrogatories in October, objecting in part. ECF No. 65-1, at 3. The parties met and conferred on November 12, 2019, to discuss the discovery objections. ECF No. 65-1, at 3. The parties are now at an impasse, and Plaintiffs have, therefore, moved to compel discovery.

2

**II**

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). District Courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

**III**

First, although Defendants state that they have agreed to produce documents responsive to RFPs 52, 56, 57, 60, and 61 to Defendant Inch, they have lodged objections to these requests. *See* Defendants' Response to RFPs 52, 56–57, 60–61.[1] Therefore, Plaintiffs' motion to compel, as it relates to RFPs 52, 56, 57, 60, and 61 to Defendant Inch, is not moot.

Second, Defendants repeatedly rely on the pre-2015 amendment formulation of Federal Rule of Civil Procedure 26 in objecting on the basis that Plaintiffs' requests are not "reasonably calculated to lead to discovery of admissible evidence." *See* Defendants' Response to RFPs 27, 29, 31, 33, 35, 37, 39, 46–49, 51, 84–89, 92–93, 95–97 to Defendant Inch and ROG 15 to Defendant FDC. Such objections are

---

[1]   Plaintiffs' requests and Defendants' response can be found in ECF No. 65-1, ECF No. 83, ECF No. 83-1, and ECF No. 83-2.

3

meaningless and without merit.[2] This Court overrules any such objections.

Third, Defendants' objections are not well taken. "The law in the Eleventh Circuit makes clear that boilerplate discovery objections are tantamount to no objections being raised at all and may constitute a waiver of the discovery being sought." *Rivera v. 2K Clevelander, LLC*, No. 16-21437-Civ, 2017 WL 5496158, at *4 (S.D. Fla. Feb. 22, 2017). Here, most of Defendants' objections are boilerplate objections. *See, e.g.*, Defendants' Response to RFP 12 to Defendant Inch ("Defendants further object that 'ALL POLICIES RELATED TO' and 'retention' and 'management' are vague, ambiguous, overly broad and burdensome"); Defendants' Response to RFP 27 to Defendant Inch ("Defendants object to this request as overly broad, not proportional to the needs of this case . . . ."). This Court may overrule such objections on this basis alone. *See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); N.D. Fla. Loc. R. 26.1(C) ("Boilerplate objections are strongly disfavored."); *see also FDIC v. Brudnicki*, 291 F.R.D. 669, 674 n.4 (N.D. Fla. 2013) ("[T]he form boilerplate objections shall not be considered by the Court and are nullity."); *Walton Constr. Co., LLC v. Corus Bank*, No. 4:10cv137, 2012 WL 13029592, at *1 (N.D. Fla. Apr. 18, 2012) (rejecting boilerplate objections as

---

[2] "At least one court has imposed sanctions upon an attorney, in part due to the attorney's reliance on 'caselaw that analyzed the version of Rule 26 that existed before the highly publicized amendments took effect on December 1, 2015.' " *Sharbaugh v. Beaudry*, No. 3:16cv126, 2017 WL 5988221, at *2 n.3 (N.D. Fla. May 5, 2017) (quoting *Fulton v. Livingston Fin. LLC*, No. C15-0574JLR, 2016 WL 3976558 (W.D. Wash. July 25, 2016)).

"meaningless").

Boilerplate objections such as "vague," "ambiguous," "overly broad," "not proportional to the needs of this case," or "burdensome," without an explanation, do not inform this Court or Plaintiffs of the justification underlying Defendants' objections. That is to say, boilerplate objections beg the question—why, for example, is the request vague or ambiguous? Further, they do not provide Plaintiffs a reasonable roadmap to correct any defect in their requests before asserting their remedies through a motion to compel. That Defendants subsequently attempt to provide specific objections in its response to Plaintiffs' motion to compel is unavailing. *See Lorenzano v. Sys., Inc.*, No. 6:17-cv-422, 2018 WL 3827635, at *3 (M.D. Fla. Jan. 24, 2018) ("[T]he Court will not rely on Systems' post hoc justifications for its boilerplate objections. To the extent that Systems tried to raise specific objections in its Response, the Court finds that Systems waived these objections."). For these reasons, this Court finds that Defendants have waived their objections and overrules any boilerplate objections contained in Defendants' Response to RFPs 12–19, 21–39, 42–43, 45–49, 51–57, 60–65, 68–76, 84–89, 92–99, 104–05, 107–17, and 136[3]  to Defendant Inch and ROG 15 to Defendant FDC.

---

[3] Defendants also object to RFP 136 to Defendant Inch on the grounds that the request might contain privileged attorney-client and work product information. To the extent Defendants believe that responsive documents may contain privileged information, they need not disclose it. However, Defendants must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable [Plaintiffs] to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

5

Fourth, Defendants object to certain requests because the response may lead to information that would raise safety and security concerns. *See, e.g.*, Defendants' Response to RFP 12 to Defendant Inch ("Defendants also object based upon the confidentiality, safety, and security issues raised in the general objections to 'policies.' "). This Court entered a Confidentiality Order, ECF No. 58, based on parties' agreement that certain documents may contain information that FDC believes threatens prison safety or security if disclosed without the protections of a confidentiality order. ECF No. 94. Subsequently, this Court denied Defendants' motion for a protective order which sought additional protection for documents that might raise safety or security concerns. ECF No. 94. This Court's Order denying Defendants' request for a protective order demonstrates that there is no good cause to object to Plaintiffs' requests for production or interrogatories based on safety or security. This is because, when entering the Confidentiality Order, "[t]his Court took into consideration Defendants' safety and security concerns and Plaintiffs' interest in conducting full and fair discovery . . . ." ECF No. 94. For these reasons, this Court overrules any safety and security objections contained in Defendants' Response to RFPs 12–15, 22–23, 34–39, 46–49, 53–55, 107–17, and 135–36 to Defendant Inch.

Fifth, Defendants object to RFPs 64–65, 68–76, and 107–17  to Defendant Inch and RFPs 1–5, and 7 to Defendant FDC because the documents are "exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and

6

119.071(3)a, Fla. Stat." and that Defendants will not produce them "without an agreement and/or order governing confidentiality." Plaintiffs' requests relate to mental or medical care for prisoners. *See, e.g.* Plaintiffs' RFP 64 to Defendant Inch ("ALL POLICIES RELATED TO mental health care for PRISONERS in effect from January 1, 2019, through present."). This Court entered a HIPPA Qualified Protective Order to facilitate the discovery of protected health information. ECF No. 46. Defendants have not moved for a confidentiality order seeking additional protection for information sought by Plaintiffs. Therefore, these objections to RFPs 64–65, 68–76, 107–17 to Defendant Inch and RFPs 1–5, 7 to Defendant FDC are overruled.

Finally, Defendants raise some objections for the first time in their response to Plaintiffs' motion to compel. For example, Defendants object to producing information related to class members before the proposed class has been certified. ECF No. 83, at 6, 32. But, by raising objections for the first time in their response, Defendants have waived them. *See Socas v. Nw. Mut. Life Ins. Co.*, No. 07-20336-CIV, 2008 WL 619322, *6 (S.D. Fla. Mar. 4, 2008) (finding that Plaintiff "waived the argument by mentioning it for the first time in her response to the instant motion to compel and failing to timely raise it as an objection to Northwestern's original request for production.").[4]

---

[4] Even assuming that Defendants have not waived their class-based discovery objection, it

7

Based on the foregoing analysis, all of Defendants' objections to RFPs 12–18, 21–26, 28, 30, 32, 34, 36, 38, 52–55, 60–61, 64–65, 68–76, and 135 to Defendant Inch and RFPs 1–5, and 7 to Defendant FDC are overruled. Defendants shall furnish the requested information to Plaintiffs.

## IV

The remainder of Defendants' responses can be broken down into objections based on (1) the timeframe covered by Plaintiffs' discovery request, (2) relevance, and (3) self-critical analysis privilege. This Court considers these objections in turn.

### A. Timeframe

Defendants generally object to the instruction for a requested timeframe of January 1, 2015, to present.[5] Defendants' principal theory is that documents going back five years are not relevant to this case because Plaintiffs seek injunctive relief and not compensatory damages. *See* ECF No. 83-1, at 2; ECF No. ECF No. 83-2, at 2; ECF No. 83, at 12–14.[6] Defendants' theory misses the point.

---

is invalid. Here, the parties agreed not to bifurcate discovery. ECF No. 93, at 10; ECF No. 85, at 7. This Court will, therefore, not limit class-based or merits discovery until it has ruled on class certification. *See, e.g.*, *Bellenger v. Accounts Receivable Mgmt, Inc.*, No. 19-60205-CIV, 2019 WL 4284070, at *6 (S.D. Fla. Sept. 10, 2019). Additionally, to certify a class, Plaintiffs will need to show numerosity, commonality, and typicality of the proposed class. *See* Fed. R. Civ. P. 23(a). Prohibiting class-based discovery at this juncture would likely preclude Plaintiffs from effectively arguing for class certification.

[5] Plaintiffs initially requested discovery from January 1, 2014, through present. However, after Defendants objected, Plaintiffs offered to modify the request to January 1, 2015. *See* ECF No. 65-1, at 9 n.6.

[6] Defendants also object to the timeframe of Plaintiffs' request because the timeframe is

To succeed on their Eighth Amendment claim, Plaintiffs must prove that Defendants were deliberately indifferent to a substantial risk of serious harm. *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). To prove deliberate indifference, Plaintiffs must show subjective knowledge of the risk on part of Defendants. *Id.* Defendants' subjective knowledge can be proven by presenting evidence showing that the conduct was "longstanding, pervasive, well-documented, or expressly noted by the prison officials in the past" and that Defendants "had been exposed to information concerning the risk, and thus must have known about it." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Plaintiffs' request for discovery dating back five years is calculated to lead to evidence that may show Defendants' deliberate indifference, or lack thereof. As Plaintiffs point out, the timeframe for their discovery request is not arbitrary. Plaintiffs' timeframe stems, in part, from Defendants' participation in a national survey of state prison systems regarding their use of isolation. ECF No. 65-2. Shortly after the survey, Defendants began an "Analysis of Segregation Process." ECF No. 65-3. The analysis looked at "what ha[d] occurred in the past, what [was] taking place [then], changes being implemented . . . as well as recommendations for the

---

overly broad and not proportional to the needs of the case considering the undue burden and expense of discovery. As explained above, such boilerplate objections are disfavored. That Defendants attempt to retroactively explain these objections in their response to Plaintiffs' motion to compel is unavailing. Defendants' boilerplate objections to the timeframe of Plaintiffs' requests are therefore overruled.

9

future." ECF No. 65-3, at 4. Discovery before, during, and after this analysis may provide evidence showing that unconstitutional isolation was "longstanding, pervasive, [and] well-documented" and that prison officials "had been exposed to information concerning the risk, and thus must have known about it." *Brennan*, 511 U.S. at 842. Discovery may also lead to evidence showing that Defendants disregarded the risk of serious harm by engaging in conduct that is more than gross negligence after having subjective knowledge of the risk. *Thomas*, 614 F.3d at 1312. Limiting the scope of discovery to two years, as Defendants request, would shield Defendants' policy reforms, or lack thereof, during the period where Defendants themselves studied their practice of solitary confinement and recommended changes to their isolation policies and practices.

For these reasons, Defendants' objection to Plaintiffs' requested timeframe for relevant documents is overruled.

## B. Relevance

Defendants make several objections based on relevance of the discovery sought by Plaintiffs. This Court tackles each of the relevance-based objections in turn.

### *Institution-Specific and Inmate-Specific Discovery*

Defendants argue that discovery about the creation or implementation of policies, as well as documents, that are institution-specific or inmate-specific are not

10

relevant. *See, e.g.*, Defendants' Response to RFP 27 to Defendant Inch ("The implementation of policy at the institutional level and on an inmate-by-inmate basis does not address whether the 'overarching policy' is constitutional and/or discriminatory."); Defendants' Response to RFP 47 to Defendant Inch ("Staffing assignments and levels at the institution level do not address whether the 'overarching policy' is constitutional and/or discriminatory"); Defendants' Response to ROG 15 Defendant FDC ("Plaintiffs' request for the number of times during each month that various forms of mental health services were provided to individual inmates is not relevant to the claims being asserted.").

It is true, as Defendants point out, that Plaintiffs' case is about a challenge to overarching state-wide policies and practices and not challenges to a series of distinct incidents. However, that does not mean that the creation or implementation of policies and practices that are institution-specific or inmate-specific are irrelevant. As this Court pointed out in its Order denying Defendants' motion to transfer, without the implementation of policies and practices at their respective correctional institutions, Plaintiffs would have no claims to bring suit. *See Harvard v. Inch*, 408 F. Supp. 3d 1255, 1261–62 (N.D. Fla. 2019).

Plaintiffs bring a § 1983 claim, alleging that Defendants, through policies and practices, written or unwritten, violate their Eighth Amendment Rights and rights protected by the American with Disabilities Act ("ADA") and Section 504 of the

Rehabilitation Act ("RA"). *See* ECF No. 13, ¶¶ 120, 176–202. Defendants' definition of policy, and their basis for objecting, is limited to formal policies. *See* ECF No. 83, at 9 (citing Black's Law Dictionary to define policies as "[a] standard course of action that has been <u>officially established</u> by organization, business, political party, etc."). Based on this definition, Defendants agreed to produce the rule or procedure that constitute the standard course of action that has been officially established by the FDC. *See* ECF No. 83, at 9. But, the definition of policies is not so limited under § 1983. "An action does not need to be official in nature to constitute a policy or custom." *Horn v. Jones*, No. 14-20341-CIV, 2015 WL 3607012, at \*8 (S.D. Fla. May 8, 2015). Under § 1983, Plaintiffs "may be able to prove the existence of a widespread practice that, although not authorized by written law or express . . . policy, is 'so permanent and well settled as to constitute custom or usage with the force of law.' " *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1998); *see also Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) ("A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy."); *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) (finding informal policy or custom actionable under section 1983).

Based on the definition of policies and practices set out by the Supreme Court and the Eleventh Circuit, Plaintiffs are entitled to discover more than rules and

12

procedures officially established by the FDC. Plaintiffs are entitled to discover the implementation of policies that are promulgated at institutional levels to determine whether there is a widespread practice that violates their rights. Additionally, Plaintiffs allege that Defendants fail to properly follow their written policies. For example, Plaintiffs allege that despite FDC's written policies of determining the type of restriction imposed on a prisoner, in practice it determines restriction by staffing availability, housing location, whether someone is in more than one type of isolation at the same time, and other arbitrary reasons. ECF No. 13, ¶¶ 77–82. Based on Plaintiffs' allegations, FDC's official policy might be relevant, but what is equally important is how FDC's policy is implemented at individual correctional institutions. By showing that Defendants fail to follow their formal policy, Plaintiffs may establish that a pervasive custom—functionally equivalent to a formal policy—in practice trumps Defendants' formal policy. Similarly, to establish a persistent and widespread practice, relevant evidence may include facts related to other inmates. *See Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1064 n.7 (11th Cir. 2013). Therefore, Plaintiffs may discover the creation or implementation of policies or documents that are not only institution-specific but also inmate-specific.

For these reasons, Defendants' relevance objections to RFPs 19, 27, 29, 31, 33, 35, 37, 39, 46–59, 51, 84–89, 92–93, 95–96, and 107–17 to Defendant Inch and ROG 15 to Defendant FDC are overruled.

13

### *Residential Continuum Care*

Defendants object to Plaintiffs' request for various documents and information related to FDC's Residential Continuum Care. *See* Defendants' Response to RFPs 77–78 to Defendant Inch and ROGs 7–8 to Defendant FDC. Residential Continuum Care refers to specialized residential mental health units that work in conjunction with the inpatient system to provide augmented outpatient mental health treatment and habilitation services for inmates with serious psychological impairment associated with a historical inability to successfully adjust to daily living. *See* ECF No. 83, at 65. Residential Continuum Care units include Cognitive Treatment Units ("CTU"), Diversion Treatment Units ("DTU"), and/or Secure Treatment Units ("STU"). *See* ECF No. 83, at 65. Defendants agreed to produce documents and information related to STU but object to producing documents related to CTU and DTU. Defendants argue that CTU and DTU do not relate to any form of restrictive housing, and are, therefore, irrelevant. This Court disagrees.

Discovery of documents and information related to CTU and DTU are relevant to show whether modifications of Defendants' policies and procedures to accommodate people with disabilities would impose an undue hardship or burden or fundamental alteration to Defendants' services, programs, or activities—a defense claimed by Defendants. ECF No. 62 § VIII, ¶¶ 18–19. The discovery of relevant

14

evidence may help Plaintiffs determine whether Defendants have adequate policies and practices in place to ensure prisoners with disabilities are housed in the most integrated setting appropriate to meet their needs—an argument central to Plaintiffs' claims related to the Eighth Amendment, ADA, and RA . ECF No. 13, ¶ 158. Finally, the documents and information related to CTU and DTU go directly to Plaintiffs' allegation that Defendants isolate people with disabilities because of their disability-related behavior in violation of their rights protected by the ADA and RA. ECF No. 13, ¶ 152.

Defendants' relevance objections to RFPs 77–78 to Defendant Inch and ROGs 7–8 to Defendant FDC are therefore overruled.

### *Programs or Projects No Longer in Effect*

Next, Defendants object to Plaintiffs' request to produce policies and documents related to any pilot projects or programs that attempt to reduce or have the effect of reducing the population of prisoners in isolation. *See* Defendants' Response to RFPs 56–57 to Defendant Inch. Defendants argue that producing documents regarding any program or project that is not in effect is irrelevant because the Plaintiffs seek only injunctive relief. Defendants are mistaken. Discovery may lead to relevant evidence that might show that certain programs or projects Defendants implemented either did or did not result in an undue hardship or burden upon FDC. This discovery is central to Defendants' defense. *See* ECF No. 62 § VIII,

15

¶ 19. Therefore, Defendants' relevance objections to RFPs 56–57 to Defendant Inch are overruled.

### Suspected Suicide, Attempted Suicide, or Suicide by Prisoners

Defendants further object to Plaintiffs' requests for documents related to suspected suicide, attempted suicide, and suicide by prisoners. *See* Defendants' Response to RFPs 94, 97–99, 104–05.[7] Defendants' primary argument is that some of these requests are not limited to prisoners in restrictive housing and are therefore not relevant to this case. To the contrary, these documents are highly relevant to Plaintiffs' claim of heightened risk of suicide for prisoners in isolation and Defendants' deliberate indifference to the heightened risk. Plaintiffs allege that 57% of prisoners who died by suicide in FDC did so while they were in isolation, and that 88% of prisoners who died by suicide had been in isolation at some point during their incarceration. ECF No. 13, ¶ 128. Discovery through this request may lead to evidence that provides a comparison between suicide rates for prisoners who are or were in isolation versus prisoners who were never isolated—a claim that is relevant to Plaintiffs' allegations. Additionally, discovery will likely show, among other things, (1) whether the prisoner was in isolation at the time of suicide or had ever

---

[7] Defendants also object to RFPs 98 and 99 to Defendant Inch on the grounds that the requests are burdensome. *See* Defendants' Response to RFPs 98–99 to Defendant Inch. However, Defendants have already identified 1,990 and 81 relevant documents for the requests, respectively. It is unclear to this Court why producing these documents would be burdensome. To the extent Defendants object to the timeframe for the requested discovery, this Court overrules that objection. *See Supra* Section IV.A.

16

been in isolation, (2) the number of times they had been in isolation, (3) the period of isolation they were subjected to, and (4) the time elapsed between any releases from isolation and suicide attempts. This evidence is relevant to Plaintiffs claim that Defendants had subjective knowledge of the risk of suicide for prisoners in isolation, and that Defendants failed to take reasonable measures to address that risk.

For these reasons, Defendants' relevance objections to RFPs 94, 97–99, and 104–05 are overruled.

### *Third Parties*

Defendants object to Plaintiffs' request to produce documents related to isolation that were either provided to or authored by certain third parties. *See* Defendants' Response to RFPs 42–43, and 45 to Defendant Inch. Defendants argue that these documents are not relevant to any claims in this lawsuit. It is unclear why Defendants believe that the request is not relevant given that this lawsuit is about policies and practices of isolation. Plaintiffs allege that Defendants participated in a 2015 survey performed by the Association of State Correctional Administration regarding isolation and later refused to participate in a similar survey performed in 2017. ECF No. 13, ¶ 127. Plaintiffs further allege that both surveys specifically described the harms of isolation. ECF No. 13, ¶ 127. Further, Plaintiffs allege that the American Correctional Association notified Defendants that the size of their isolation cells and their recreational policies violated the association's standards, and

that Defendants admitted to their inadequacy. ECF No. 13, ¶¶ 108–09, 141. Taken together, the documents provided to or authored by these third parties are relevant to Plaintiffs' deliberate indifference claims. Therefore, Defendants' relevance objections to RFPs 42–43, and 45 to Defendant Inch are overruled.

### *Identification*

Finally, Defendants object to ROG 16 to Defendant FDC. In ROG 16, Plaintiffs request Defendants to "Identify at each FACILITY the location of every ISOLATION cell, including the dorm, wing, cell number AND type of ISOLATION." Defendants argue that the information sought is irrelevant to any issues in this lawsuit. This Court agrees with Plaintiffs that the information is relevant to cross-reference the information requested with documents produced in response to RFPs. Documents produced in response to RFPs may include cell numbers, wings, or dorms without identifying whether the location is an isolation cell. Defendants' objection to ROG 16 to Defendant FDC is, therefore, overruled.

### C. Self-Critical Analysis Privilege

Defendants object to RFPs 62 and 63 to Defendant Inch based on the self-critical analysis privilege. *See* Defendants' Response to RFPs 62–63 to Defendant Inch. Self-critical analysis privilege has been recognized by some courts in this circuit, *see Reichhold Chems., Inc. v. Textron, Inc.*, 157 F.R.D. 522, 527 (N.D. Fla. 1994), but "has never been fully embraced by courts in our district or circuit."

18

*Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1232 (S.D. Fla. 2018). Defendants do not point to, nor has this Court found, any binding precedent recognizing the self-critical analysis privilege. Additionally, the Eleventh Circuit has expressly rejected peer review privilege, a derivative of self-critical analysis privilege, in the context of civil rights cases. *Adkins v. Christie*, 488 F.3d 1324, 1329 (11th Cir. 2007).

"[P]rivileges contravene the fundamental principle that the public . . . has a right to every man's evidence." *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990). "Accordingly, there is a presumption against privileges which may only be overcome when it would achieve a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " *Adkins*, 488 F.3d at 1328. Creation of an evidentiary privilege depends on "(1) the needs of the public good, (2) whether the privilege is rooted in the imperative needs for confidence and trust, (3) the evidentiary benefit of the denial of the privilege, and (4) consensus among the states. *Id.*

Defendants have the burden to establish self-critical analysis privilege. *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 552 (N.D. Fla. 2013) ("The party raising a privilege has the burden of establishing the existence of the privilege."). Defendants have failed to meet this burden. This Court, therefore, finds that self-critical analysis privilege does not apply to the documents requested by

Plaintiffs and overrules Defendants' objections to RFPs 62 and 63 to Defendant Inch.

## V

For the reasons provided, all of Defendants' objections to RFPs to Defendant Inch and FDC, and ROGs to Defendant FDC are overruled. The Defendants shall produce the requested discovery.

## VI

Plaintiffs request this Court to set deadlines for discovery at issue in their motion to compel. Plaintiffs served their First Request for Product of Documents and Interrogatories in August of 2019. Defendants have had ample time to respond to Plaintiffs discovery request. However, given the concern raised by Defendants that their burden to produce the requested documents will exponentially increase, this Court finds it prudent to give Defendants an additional 30 days to respond to Plaintiffs' discovery requests. Defendant shall, therefore, furnish the requested information to Plaintiffs **within 30 days** of this Order.

## VII

Under Federal Rule of Civil Procedure 37(a)(5)(A), when a motion to compel is granted, the Court "*must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's expenses incurred in making the motion,

including attorney's fees. FED. R. CIV. P. 37(a)(5)(A) (emphasis added). However, the Court "must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust. Unless one of these conditions is met, an award of expenses is "mandatory." *Se. Asset Recovery Fund GA-4, LLC v. Windolf*, No. 5:13cv222, 2016 WL 7655801, at *1 (N.D. Fla. Apr. 21, 2016) (citing *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154 (11th Cir. 1993)). Defendants argue that attorneys' fees and costs should be denied because their position was substantially justified. This Court disagrees.

"A position is 'substantially justified' if it results from a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' " *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). As outlined above, most of Defendants' objections are either boilerplate objections, based on the pre-2015 amendment formulation of Federal Rule of Civil Procedure 26, or are raised for the first time in their response to Plaintiffs' motion to compel. *See Supra* Section III. Additionally, Defendants withheld several discovery requests based on a narrow definition of "policies," despite clear guidance from the Supreme Court and the Eleventh Circuit. *See Supra* Section IV.B. This Court, therefore, finds that Defendants' objections were not substantially justified. Plaintiffs' motion for

21

attorneys' fees and expenses is **GRANTED**.

Accordingly, Plaintiffs are entitled to reasonable attorneys' fees and costs for bringing their motion to compel. However, for the purpose of judicial economy, this Court will determine the amount of attorneys' fees and costs at the end of this lawsuit.

For these reasons, it is **ORDERED:**

1.  Plaintiffs' Motion to Compel, ECF No. 65-,1 is **GRANTED**.

2.  Defendants shall furnish the requested information to Plaintiffs **within 30 days** of this Order.

**SO ORDERED on February 7, 2020.**

> **s/Mark E. Walker**
> **Chief United States District Judge**

# Tab F

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **JOSHUA DUNN**, *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.:** |
| ) | **2:14-cv-00601-MHT-TFM** |
| **KIM THOMAS, in his official** ) | |
| **capacity as Commissioner of the** ) | |
| **Alabama Department of Corrections;** ) | |
| **RUTH NAGLICH, in her official** ) | |
| **capacity as Associate Commissioner** ) | |
| **of Health Services for the Alabama** ) | |
| **Department of Corrections; and** ) | |
| **ALABAMA DEPARTMENT OF** ) | |
| **CORRECTIONS,** ) | |
| ) | |
| **Defendants.** ) | |

**PROTECTIVE ORDER**

Now pending before the court is the Joint Motion for Entry of Consent Protective Order filed by the parties on November 24, 2014. (Doc. No. 68). Upon consideration of the Motion, it is

ORDERED that the Motion be and is hereby GRANTED.

To expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, protect adequately material entitled to be kept confidential, and ensure that protection is afforded only to material so entitled, it is further ORDERED as follows:

1.      **Nondisclosure of Stamped Confidential Documents.** Except with the prior written consent of the party or other person originally designating a document to be stamped as a confidential document, or as hereinafter provided under this Order, no "stamped confidential document" may be disclosed to any person. A "stamped confidential document" means any document which bears the legend (or which shall otherwise have had the legend recorded upon it in a way that brings it to the attention of a reasonable examiner) "Confidential" to signify that it contains information believed to be subject to protection under the applicable *Federal Rules of Civil Procedure* and this Order. For purposes of this Order, the term "document" means all written, recorded, or graphic material, whether produced pursuant to a request for production, subpoena duces tecum, subpoena, by agreement, or by any other means. Interrogatory answers, responses to requests for admission, deposition transcripts and exhibits, pleadings, motions, affidavits, and briefs that quote, summarize, or contain material entitled to protection may be accorded status as a stamped confidential document, but, to the extent feasible, shall be prepared in such a manner that the confidential information is bound separately from that not entitled to protection. Any party may designate any document produced in this litigation as confidential notwithstanding whether it is the original producing party, subject to the provisions of paragraph 3 of this order.  Any third party producing documents pursuant to a subpoena shall be

provided with a copy of this Order and shall be permitted to designate any document it produces as confidential pursuant to the terms of this Order.

2.     **Permissible Disclosure**. Notwithstanding paragraph 1, stamped confidential documents may be disclosed to counsel for the parties in this action who are actively engaged in the conduct of this specific action/litigation as cited in the style above; to the partners, associates, secretaries, paralegal assistants, and employees of such counsel to the extent reasonably necessary to render professional services in such litigation; and to court officials involved in this litigation (including court reporters, persons operating video recording equipment at depositions, and any special master or mediator appointed by the court). Such documents may also be disclosed:

(a)     to the parties involved in this litigation for use in this litigation except that neither documents stamped confidential by the Defendants nor information contained in documents stamped confidential by Defendants shall be provided to any Plaintiff or putative class member, except as provided under paragraphs 2(c) or 4(a);

(b)     to any person designated by the Court in the interest of justice, upon such terms as the Court may deem proper; and

(c)     to persons noticed for depositions or designated as trial witnesses to the extent reasonably necessary in preparing to testify; to outside consultants or experts retained for the purpose of assisting counsel in the litigation; to employees of parties involved solely in one or more aspects of organizing, filing, coding, converting, storing, or retrieving data or designing programs for handling data connected with these actions, including the performance of such duties in relation to a computerized litigation support system; and to employees of third-party contractors performing one or more of these functions; provided,

3

however, that in all such cases the individual to whom disclosure is to be made has signed, and counsel for the relevant party has maintained a form containing:

(1)     a recital that the signatory has read and understands this Order; and

(2)     a recital that the signatory understands that unauthorized disclosures of the stamped confidential documents may constitute contempt of Court.

(d)     If a party marks confidential material with the additional designation "CONFIDENTIAL-ATTORNEYS' EYES ONLY," then that material shall not be disclosed to anyone other than counsel of record for the parties and personnel directly employed by counsel of record.  If either party seeks broader disclosure of the material, counsel shall confer in good faith to negotiate appropriate redactions or restrictions that would allow such disclosure before bringing the matter to the attention of the Court.

3.     **Declassification.** If a party to this Order who is to receive any stamped confidential documents produced in accordance with this Order disagrees with respect to its designation as confidential, in full or in part, it shall notify the designating party in writing, and the parties will thereupon confer in good faith as to the status of the subject information proffered within the context of this Order. If the parties are unable to agree upon the status of the subject information, any party to this Order may raise the issue of such designation with the Court, which shall decide the issue. The Court may raise the issue of designation of the protected status without request from a party.  In any disagreement over a designation of confidentiality, the designating party bears the burden of proving that the designated information is protected under the *Federal Rules of Civil Procedure*.

4

4.      Confidential Information in Depositions.

    (a)      A deponent may during any deposition be shown and examined about stamped confidential documents if the provisions of paragraph 2(c) are complied with. Deponents shall not retain or copy portions of the transcript of their depositions that contain confidential information not provided by them or the entities they represent unless they sign the form prescribed in paragraph 2(c). A deponent who is not a party or a representative of a party shall be furnished a copy of this Order before being examined about, or asked to produce, potentially confidential documents.

    (b)      Parties (and deponents) may, within 7 days after receiving a deposition transcript, designate pages of the transcript (and exhibits thereto) as confidential.  Confidential information within the deposition transcript may be designated by underlining the portions of the pages that are confidential and marking such pages with the following legend: "Confidential -- Subject to Protection Pursuant to Court Order." Until expiration of the 7-day period, the entire deposition will be treated as subject to protection against disclosure under this order.  If no party or deponent timely designates confidential information in a deposition, then none of the transcript will be treated as confidential; if a timely designation is made, the confidential portions and exhibits shall be filed under seal separate from the portions and exhibits not so marked.

5.      **Confidential Information at Trial**.  Subject to the *Federal Rules of Evidence,* stamped confidential documents and other confidential information may be offered in evidence at trial or any court hearing, provided that the proponent of the evidence gives ten (10) days advance notice to counsel for any party or other person that designated the information as confidential. Any party may move the Court for an order that the evidence be received *in camera* or under other

conditions to prevent unnecessary disclosure. The Court will then determine whether the proffered evidence should continue to be treated as confidential information and, if so, what protection, if any, may be afforded to such information at the trial.

6. **Subpoena by Other Courts or Agencies**. If another court or an administrative agency subpoenas or orders production of stamped confidential documents that a party has obtained under the terms of this Order, such party shall promptly notify the party or other person who designated the document as confidential of the pendency of such subpoena or order.

7. **Filing.** Stamped confidential documents need not be filed with the clerk except when required in connection with motions for summary judgment or other evidentiary matters pending before the Court. If filed, they shall be filed under seal and shall remain sealed while in the office of the clerk so long as they retain their status as stamped confidential documents.

8. **Restricted Copying**. If a document contains information so sensitive that its reproduction should be limited, it shall bear the additional legend "Copying Restricted." Such documents can be saved within the receiving party's document management system, but must be saved in a manner that alerts users of the document management system that the document is restricted and cannot be reviewed, printed, copied or saved elsewhere without authorization from a

6

designated member of the litigation team.  Such documents shall not be printed except for the purpose of use in depositions or filing under seal with the Court. Application for relief from this restriction against copying may be made to the Court, with notice to counsel so designating the document, or the parties may themselves agree in writing to allow copying of such documents under terms and conditions negotiated by them.

9.      **Use**.  Persons obtaining access to stamped confidential documents under this Order shall use the information only for preparation and trial of this specific action/litigation specified by the style above (including appeals and retrials), and shall not use such information for any other purpose, including business, governmental, commercial, administrative, or other judicial proceedings.

10.     **Modification Permitted**.  Nothing in this Order shall prevent any party or other person from seeking modification of this Order or from objecting to discovery that it believes to be otherwise improper.

11.     **Responsibility of Attorneys**.  The attorneys of record are responsible for employing reasonable measures, consistent with this Order, to control duplication of, access to, and distribution of copies of stamped confidential documents.  Parties shall not duplicate any stamped confidential document except working copies and for filing in Court under seal.

7

12.   **No Waiver.**

(a)   Review of the confidential documents and information by counsel, experts, or consultants for the litigants in the litigation shall not waive the confidentiality of the documents or objections to production.

(b)   The inadvertent, unintentional, or *in camera* disclosure of confidential document and information shall not, under any circumstances, be deemed a waiver, in whole or in part, of any party's claims of confidentiality, provided that the party believing the document or information to be confidential taken prompt, reasonable steps upon learning of the disclosure to inform other parties of the assertion of confidentiality.

(c)   In addition, nothing in this Order shall be deemed a waiver of the Plaintiffs' or Defendants' right (a) to oppose any subsequent motion for a protective order; or (b) to oppose any objection by the other party to the production of materials or documents in response to requests for discovery in this litigation.

13.   **Return of Documents**.   Within 30 days after all matters in this lawsuit or pre-suit discovery petition have been finally resolved, including but not limited to any appeal and proceeding on remand, counsel for a party that produced material marked "Confidential" may request in writing the return or destruction of all such documents (including physical or electronic copies of such documents, if any), from the party to which they were produced. Upon receipt of such a timely request, the responsive documents shall be returned to the counsel for the producing party or destroyed, except that the returning party may retain a log of

8

documents produced which may identify the individual documents being returned in a manner that does not breach their confidentiality.

14.    Any document produced in accordance with this Order shall be deemed authentic, as true and correct copy of the original. Notwithstanding the foregoing, nothing contained in this protective Order and no action taken pursuant to it shall prejudice the right of any party to contest the alleged relevancy, admissibility, or discoverability of the confidential documents and information sought.

Done this 25th day of November, 2014.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

# Tab G

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 28, 2020, I electronically filed the foregoing Appendix by using the Eleventh Circuit Court ECF system.

I FURTHER CERTIFY that I served the foregoing Appendix by e-mail to the following attorneys who are participating in the underlying case but have not yet appeared for this matter: **Christopher Michael Jones at christopher@floridalegal.org; Andrea Costello at andrea@floridalegal.org; Jennifer Morrissey Painter at jennifer.painter@floridalegal.org; Aimee Cristen Lim at aimee.lim@floridalegal.org Marcel Lilavois, Jr., at mlilavois@floridajusticeinstitute.org; Dante Pasquale Trevisani at dtrevisani@floridajusticeinstitute.org; Laura Anne Ferro at lferro@floridajusticeinstitute.org; Sam Thypin-Bermeo at sthypin-bermeo@floridajusticeinstitute.org; Lisa Graybill at lisa.graybill@splcenter.org; Kelly Jean Knapp at Kelly.knapp@splcenter.org; Shalini Goel Agarwal at shalini.agarwal@splcenter.org; and Sumayya Saleh at sumayya.saleh@splcenter.org**.

I FURTHER CERTIFY that I furnished by Federal Express the appropriate copies of the Appendix to the **Clerk, U.S. Court of Appeals for the 11th Circuit**, 56 Forsyth Street, N.W., Atlanta, GA 30303, this 28th day of February, 2020.

/ s / Daniel J. Gerber
DANIEL J. GERBER
Florida Bar No.
RUMBERGER, KIRK & CALDWELL
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407-872-7300
Fax: 407-841-2133
Email: dgerber@rumberger.com

NICOLE SIEB SMITH
Florida Bar No.
RUMBERGER, KIRK & CALDWELL
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel: 850-222-6550
Fax: 850-222-8783
Email: nsmith@rumberger.com

Attorneys for Petitioners