———————————————

**CASE NO. 20-10650**

———————————————

UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

IN RE MARK INCH, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE
FLORIDA DEPARTMENT OF CORRECTIONS, AND THE FLORIDA
DEPARTMENT OF CORRECTIONS, PETITIONERS

———————————————————————————————————

ON PETITION FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO. 4:19-CV-00212-MW-CAS

———————————————————————————————————

**PETITIONERS' EMERGENCY MOTION TO STAY DISCOVERY
REGARDING CONFIDENTIAL PRISON SECURITY INFORMATION
PENDING RESOLUTION OF PETITION FOR WRIT OF MANDAMUS**

———————————————————————————————————

Daniel J. Gerber
Florida Bar No. 764957
dgerber@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407-872-7300
Fax: 407-841-2133

Nicole Sieb Smith
Florida Bar No. 17056
nsmith@rumberger.com
Rumberger, Kirk, & Caldwell, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

# CERTIFICATE OF INTERESTED PERSONS AND
# CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel of record for Mark S. Inch and the Florida Department of Corrections certify that, to the best of their knowledge, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

Agarwal, Shalini Goel

Burgess, Jerome (a/k/a Sham'la God Allah)

Costello, Andrea

Duke, Samantha C.

Espinosa, Juan

Ferro, Laura A.

Florida Department of Corrections

Florida Justice Institute, Inc.

Florida Legal Services

Gerber, Daniel J.

Graybill, Lisa

Harvard, Jac'Quann (Admire)

Hill, Johnny

J.H., a minor

Inch, Mark

Jones, Christopher M.

Kendrick, James W., Jr.

Knapp, Kelly

Lim, Aimee

Meddler, Angel

Painter, Jennifer

Robinson, Valentine, parent and natural guardian of J.H.

Rumberger, Kirk & Caldwell, P.A.

Saleh, Sumayya

Smith, Nicole Sieb

Southern Poverty Law Center

Stampelos, Charles A.

Thypin-Bermeo, Sam

Trevisani, Dante P.

Walker, Mark. E.

s/  *Daniel J. Gerber*

# INTRODUCTION

Petitioners, Mark Inch, in his official capacity as Secretary of the Florida Department of Corrections, and the Florida Department of Corrections ("FDC") (together "Petitioners" or "Defendants"), pursuant to Federal Rules of Appellate Procedure 8 and 27 and 11th Circuit Rules 8-1 and 27-1, file this Emergency Motion to Stay Discovery Regarding Confidential Prison Security Information Pending Resolution of Appeal, following the district court's denial of their motion for a stay. Petitioners respectfully request a stay of all discovery of highly confidential prison security information at issue in the district court's Order Denying Defendants' Motion for Entry of a Protective Order [Doc. 94], including such information included in the district court's Order on Motion to Compel [Doc. 98]—which requires the production of documents containing such information by **March 6, 2020**—to allow Petitioners to obtain review by this Court through their petition for writ of mandamus and, alternatively, collateral order doctrine appeal. The district court orders at issue are attached as **Exhibit 1** and **Exhibit 2** (Doc. 94 and Doc. 98 are referred to together as the "Orders"). Petitioners first moved for a stay in the district court, which motion was denied on March 2, 2020. [Doc 111, attached as **Exhibit 3**]

Petitioners seek relief on an emergency basis pursuant to 11th Circuit Rule 27-1(b). Due to the March 6, 2020, deadline to produce documents pursuant to the

district court's Orders, this motion will be moot unless a ruling is obtained within 7 days, and this motion is filed within 7 days of the district order's order denying Appellant's request for a stay. Counsel for Petitioners has conferred with counsel for Plaintiffs regarding this motion, who object to the requested stay.

## BACKGROUND

On November 5, 2019, the district court entered a Confidentiality Order governing disclosure of confidential information. [Doc. 58, attached as **Exhibit 4**] The district court declined to include in the Confidentiality Order an "Attorneys' Eyes Only" provision requested by Defendants to protect highly sensitive prison security information. *Id.* Defendants then moved the district court for entry of a protective order limiting disclosure of such highly sensitive information only to Plaintiffs' counsel, which Plaintiffs opposed. [Doc. 84, attached as **Exhibit 5**; Doc. 90, attached as **Exhibit 6**] The district court denied that motion for entry of a protective order on January 22, 2020. [Doc. 94, Exhibit 1]

Plaintiffs also moved to compel, in part, disclosure of prison security information sought in particular discovery requests. [Doc. 65-1, attached as **Exhibit 7**] The specific discovery at issue overlapping with the motion for protective order are Plaintiffs' First Requests for Production to Inch (including the definitions used therein), Request Numbers 12-15, 22, 23, 34-37, 46-49, 50, 51, 53, 54, 107-117, 135, 136, and Plaintiff Harvard's First Set of Interrogatories to

Defendant FDC, Interrogatory No. 16, to the extent that they seek highly confidential prison security information. [Doc. 83, attached as **Exhibit 8**; Doc. 93, attached as **Exhibit 9**] On February 7, 2020, the district court granted Plaintiffs' motion to compel, requiring production of the information at issue by March 9, 2020. [Doc. 98; Exhibit 2]

Pursuant to Federal Rule of Appellate Procedure 8(a)(1), a party must ordinarily first request a stay in the district court before requesting a stay from the appellate court. On February 24, 2020, the Defendants moved the district court for a temporary stay of the district court's Orders denying Defendants' motion for protective order and granting Plaintiffs' motion to compel production of sensitive prison security information, as they relate to such information.[1] [Doc. 104, attached as **Exhibit 10**] Plaintiffs opposed the stay. [Doc. 108, attached as **Exhibit 11**] On March 2, 2020, the district court denied the request for a stay. [Doc 111, attached as Exhibit 3]

Petitioners now move this Court for an emergency temporary stay of the district court's Orders subject to this Petition for Writ of Mandamus, as well as the

---

[1] Appellants do not seek a stay of the district court's order granting Plaintiffs' motion to compel in its entirety [Doc. 98], but only that portion of the order that overlaps with Appellants' motion for protective order.

separate appeal pursuant to 28 U.S.C. § 1291 and the collateral order doctrine filed

with the Court as an alternative basis for jurisdiction.[2]

### ARGUMENT

This Court has the inherent power to stay proceedings in the interest of

judicial economy and fairness. *See Landis v. North American Co.*, 299 U.S. 248,

254 (1936). The following factors are considered when determining whether a stay

pending an appeal is appropriate: (1) whether the petitioner is likely to prevail on

the merits of the appeal or writ; (2) whether the petitioner will be irreparably

harmed without the issuance of a stay; (3) whether the issuance of the stay will

substantially harm other parties interested in the proceedings; and (4) whether the

public interest will be disserved in granting the stay. *See, e.g., Garcia-Mir v.

Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *Florida ex rel. Bondi v. U.S. Dept.

of Health and Human Services*, 780 F. Supp. 2d 1307, 1317 (N.D. Fla. 2011)

(citing *Hilton v. Braunskill*, 481 U.S. 770 (1987)); *Nowak v. Lexington Ins. Co.*,

No. 05-21682CIV-MORENO, 2006 WL 3613760, *2 (S.D. Fla. June 22, 2006).

While generally "'[t]he first two factors ... are the most critical,' [] a motion

can still be 'granted upon a lesser showing of a substantial case on the merits when

the balance of the equities identified in factors 2, 3, and 4 weighs heavily in favor

---

[2] *See Jac'Quann Harvard, et al. v. Secretary, Florida Department of Corrections, et al.*, Case No. 20-10690 (Notice of Appeal filed February 21, 2020). Petitioners have filed an emergency motion for stay pending appeal in that proceeding as well.

of granting the stay.'" *LabMD, Inc. v. Fed. Trade Comm'n*, 678 F. App'x 816, 819 (11th Cir. 2016) (citing, in part, *Garcia–Mir*, 781 F.2d at 1453). Here, Petitioners are likely to prevail or, at a minimum, have a substantial case on the merits, there is a serious risk of irreparable harm to Petitioners as well as inmates and the public if a stay is not issued, there will be little harm to Plaintiffs from a temporary stay, and public interest concerns weigh heavily in favor of a stay.

## I. Likelihood of Success on the Merits

Petitioners are likely to prevail on the merits of their mandamus petition or, alternatively, their collateral order doctrine appeal. At a minimum, Petitioners have a substantial case on the merits warranting a stay. As an initial matter, for the reasons set out in their Petition for Writ of Mandamus filed on February 21, 2020, and their February 28, 2020, Response to Jurisdictional Questions posed by the Court in Case No. 20-10690, there is jurisdiction for this Court to consider the petition or, alternatively, the appeal. Petitioners incorporate the arguments and authorities supporting this Court's jurisdiction set out in those filings.

With respect to the merits, the district court clearly abused its discretion in denying Petitioners' request for a protective order that includes an attorneys' eyes only provision for confidential prison security information, and compelling production of the highly sensitive information without adequate protections. This not merely a discovery dispute, but involves significant issues of prison security

and public safety. If the highly sensitive information regarding prison security is improperly disclosed to Plaintiffs or, through them, other inmates, inmate, correctional officer and public safety will be at significant risk. In denying protection for this information, the district court's Orders disregarded the Declaration of Carl Wesley Kirkland, Jr., Deputy Director of Institutional Operations at FDC ("Kirkland Declaration"), setting out the specific nature of the security risks associated with the discovery at issue. *See* Doc. 84-1, pp. 3-5; Doc. 94, pp. 4-5 (finding Petitioners had failed to show "specific facts" to support a the need for a protective order and stating that the motion was "based on a fear of mischief because there is an opportunity for mischief"). As set out in the Kirkland Declaration, both Petitioners' and Plaintiffs' interests, as well as the public interest, are harmed by improper disclosure of the highly sensitive prison security information in a way that poses a risk to inmate and public security.

The district court's Orders also invade separation of powers, contrary to the United States Supreme Court's directive that courts should exercise judicial restraint to avoid invading separation of powers in matters of prison administration, by undermining FDC's management of prisons and inmate safety. *See, e.g., Turner v. Safley,* 482 U.S. 78, 84-85 (1987); ("Prison administration is, moreover, a task that has been committed to the responsibility of [the legislative and executive] branches [of government], and separation of powers concerns

6

counsel a policy of judicial restraint," particularly where a state penal system is involved); *Prison Legal News v. Secretary, Fla. Dept. of Corrections,* 890 F.3d 954, 965 (11th Cir. 2018). The lack of adequate protections for the confidential prison security information threatens the safety and security of both inmates and prison staff, as well as the public.

In denying the motion to stay filed with the district court, Judge Walker stated that the Orders appropriately balanced Defendants' interest in safety and security with Plaintiffs' interest in conducting full and fair discovery, and that Defendants' requested attorneys' eyes only provision would give them "unbridled discretion" in conducting discovery. [Doc. 111, pp. 5-6] However, the Plaintiffs' interest in conducting full and fair discovery would be adequately served by permitting the confidential prison security information to be viewed by Plaintiffs' counsel only for their use in prosecuting the case. With an attorneys' eyes only provision in place, Plaintiffs' counsel would be able to seek relief from the district court if they believed that further disclosure of the information was warranted, allowing appropriate oversight by the district court. On the other hand, the district court's Orders and Confidentiality Order permit Plaintiffs' counsel to disclose highly confidential information to Plaintiffs as they believe is reasonably necessary to prosecute the case, with no oversight or management of that discretion.

[Doc. 58, p. 7; Doc. 94, p. 4] The balance of interests clearly weighs in favor of attorneys' eyes only protection for the confidential prison security information.

## II.  Irreparable Harm

Irreparable harm will result if a stay is not granted. Without a temporary stay, Petitioners would be compelled to produce the highly sensitive confidential information, posing a significant risk to prison inmates, prison personnel, and the public, before this Court would be able to review the appeal or rule on same. As a result, without a stay, the appeal and petition would likely become moot and significant harm will already have occurred. At a minimum, it would be difficult or impossible to reverse the damage of disclosure regardless of a later ruling of this Court.

In an analogous context, this Court has ruled that mandamus is appropriate for review of discovery orders that will "compromise a claim of privilege or invasion of privacy rights … due to the importance of the privilege, the seriousness of the injury if discovery is obtained, and the difficulty of obtaining effective review once the privileged information has been made public." *In re. Fink*, 876 F.2d 84, 84 (11th Cir. 1989). Similarly, in *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892 (D.C. Cir. 2006), the court ruled that collateral order appeal was available for order denying "attorney eyes only" protection for sensitive confidential business information of non-parties, where the harm from disclosure could not be

remedied on final judgment appeal. *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 895–96 (D.C. Cir. 2006).

Courts have also ruled that a stay pending appellate review is appropriate for this type of "cat out of the bag" discovery of privileged or confidential information. *See, e.g., Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-CV-80787-RYSKAMP/VITUNAC, 2010 WL 11505438, *2 (S.D. Fla. June 3, 2010) (granting stay despite finding the Eleventh Circuit was unlikely to grant writ of mandamus, where petitioner would likely suffer irreparable harm absent stay due to "cat out of the bag" nature of discovery of privileged information); *Nowak*, 2006 WL 3613760, *2 (same). For example, the Second Circuit Court of Appeals entered a stay pending its consideration of a mandamus petition concerning discovery of undercover police reports in a civil rights action. *In re The City of New York*, 607 F. 3d 923, 932 (2d Cir. 2010) (noting stay of district court orders had been granted). The court granted the city's petition for writ of mandamus in, ruling that appeal after final judgment was inadequate to prevent irreparable harm from discovery of highly sensitive undercover police reports. *In re The City of New York*, 607 F.3d at 929 & 934-36 (finding that an attorneys' eyes only provision was inadequate to protect the highly sensitive undercover police reports at issue, which if disclosed would undermine police

9

investigatory procedures and endanger the safety of law enforcement personnel and "countless" city residents).

The district court's order denying Defendants' motion to stay concludes that there is no irreparable harm because the risk of improper disclosure is "speculative." [Doc. 111, p. 8] This again disregards the Kirkland Declaration, which out the specific harm from improper disclosure of sensitive prison security information, as well as the nature of the risks involved. Similar to the discovery at issue *In re The City of New York*, the harm from improper disclosure is substantially more serious than that typically posed by improper disclosure of privileged information or confidential business information. If disclosed to Plaintiffs or other inmates, the information could be used to assault FDC employees, affect the escape of a convicted felon, introduce dangerous contraband and/or otherwise disrupt the orderly and secure operations of a correctional facility, all of which would jeopardize the safety of the public, employees, and inmates/offenders. [Doc. 84-1, pp. 3-5] Accordingly, the risk of irreparable harm weighs heavily in favor of granting a stay.

## III.    Likelihood of Harm to Plaintiffs

Issuance of a stay will not substantially harm Plaintiffs or other interested parties. Petitioners anticipate that appellate review will not unduly delay the proceedings and the requested temporary stay will not prejudice Plaintiffs. For

appeals taken in civil cases before pretrial, the median time interval is 5.3 months from filing in the Eleventh Circuit to disposition during the 12-month period ending June 30, 2019.[3] Here, discovery is still ongoing and a stay concerning only this discrete issue will not undermine the progress of the case.

The temporary stay will affect a discrete subset of the discovery in the case, and will not impair Plaintiffs' ability to prepare their motion for class certification, which is due May 6, 2020. Plaintiffs' counsel have recently advised that they intend to seek a six month extension of time to file their motion for class certification. Moreover, even if an extension is not granted, the discovery in dispute will not impair Plaintiffs' ability to bring their class certification motion. The specific discovery at issue are Plaintiffs' First Requests for Production to Inch (including the definitions used therein), Request Numbers 12-15, 22, 23, 34-37, 46-49, 50, 51, 53, 54, 107-117, 135, and 136, and Plaintiff Harvard's First Set of Interrogatories to Defendant FDC, Interrogatory No. 16. [Doc. 83, p. 31] The information withheld concerns security issues (e.g., where guards stand, what time they come on shift, which areas are not monitored with cameras), that is unrelated to the conditions of confinement being challenged in this case, such as size of cells, access to library books and recreation time, and inmate mental health. Plaintiffs

---

[3] *U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending June 30, 2019*, Table C-5, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last visited Feb. 24, 2020).

will be able to file their motion for class certification without access to the sensitive security information. To the extent that documents sought in discovery include security information but primarily relate to other issues, Petitioners have produced those documents with only the sensitive security information redacted, so that Plaintiffs have the information they may need from such documents regarding cell size, recreation time, or other issues relating to conditions of confinement, for purposes of prosecuting their claims.

Further, any harm to Plaintiffs is substantially outweighed by the risk of irreparable harm to Petitioners if a stay is denied. *See Am. Ass'n of People with Disabilities v. Hood*, No. 3:01CV1275-J, 2004 WL 1041536, *2 (M.D. Fla. Apr. 16, 2004) (granting stay pending appeal, potential irreparable harm to defendant county in being forced to incur expense of purchase voting machines at issue in dispute, and having its appeal become moot, outweighed harm to plaintiffs in having to vote using existing machines, as their substantive right to vote would not be abrogated). This factor therefore also weighs heavily in favor of a stay.

## IV.    Public Interest Considerations

Finally, the public interest will be served by granting the stay. There is a significant public interest in maintaining prison safety and security. In denying a stay, the district court concluded that issuance of a stay will delay the progress of the case and undermine Plaintiffs' ability to vindicate their constitutional rights.

[Doc. 111, p. 9] However, for the reasons discussed above, a stay of the discrete discovery involved in this appeal will not impair Plaintiffs' constitutional rights or ability to prosecute their claims. Further, Plaintiffs now intend to seek a six month extension of the class certification deadline in the case.

As also noted above, the appeal presents issues of significant public importance concerning separation of powers and the effects of the district court's order on Defendants' ability to effectively manage the prison administration and security. *See, e.g., Turner*, 482 U.S. at 84-85; *Am. Ass'n of People with Disabilities*, 2004 WL 1041536, *2 (public interest weighed in favor of granting stay where, if stay were not granted, county would be forced to purchase voting machines that might be rendered useless depending on outcome of appeal); *Butler v. Bessinger*, No. CV 4:16-3662-RMG-TER, 2018 WL 387999, at *2 (D.S.C. Jan. 11, 2018) ("[T]he public interest weighs in favor of policies which encourage security in prisons"); *In re The City of New York*, 607 F. 3d at 934-36 (recognizing significant public interests at stake in granting mandamus petition concerning disclosure of undercover police reports). This factor thus also clearly weighs in favor of a stay.

WHEREFORE, Petitioners respectfully request that this Court grant their Emergency Motion to Stay Discovery Regarding Confidential Prison Security

13

Information Pending Resolution of Appeal, and award such other relief as this Court deems appropriate.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I certify that this motion complies with the length requirements of Fed. R. App. P. 27(d)(2) because it contains 3,091 words, and that it complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14 point font.

/ s/ *Daniel J. Gerber*
Daniel J. Gerber
dgerber@rumberger.com
Lena Mirilovic
lmirilovic@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407-872-7300
Fax: 407-841-2133

Nicole Sieb Smith
nsmith@rumberger.com
Rumberger, Kirk, & Caldwell, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 5, 2020, I electronically filed the foregoing Response by using the Eleventh Circuit Court ECF system. I FURTHER CERTIFY that I served the foregoing Response by e-mail to the following: **Christopher Michael Jones at christopher@floridalegal.org; Andrea Costello at andrea@floridalegal.org; Dante Pasquale Trevisani at dtrevisani@floridajusticeinstitute.org; Shalini Goel Agarwal at shalini.agarwal@splcenter.org; Kelly Jean Knapp at Kelly.knapp@splcenter.org; Sumayya Saleh at sumayya.saleh@splcenter.org; Jennifer Morrissey Painter at jennifer.painter@floridalegal.org; Laura Anne Ferro at lferro@floridajusticeinstitute.org; lisa.graybill@splcenter.org; Sam Thypin-Bermeo at sthypin-bermeo@floridajusticeinstitute.org; Aimee Cristen Lim at aimee.lim@floridalegal.org and mlilavois@floridajusticeinstitute.org.**

/ s / *Daniel J. Gerber*
Daniel J. Gerber
Florida Bar No.: 764957
dgerber@rumberger.com
Lena Mirilovic
Florida Bar No.: 92492
lmirilovic@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407-872-7300
Fax: 407-841-2133

Nicole Sieb Smith
Florida Bar No. 17056
nsmith@rumberger.com
Rumberger, Kirk, & Caldwell, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

16

13253374.v1

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

JAC'QUANN (ADMIRE)
HARVARD, et al.,

      *Plaintiffs*,

v.                            **CASE NO.:  4:19cv212-MW/CAS**

MARK INCH, Secretary of Florida
Department of Corrections, et al.,

      *Defendants*.

_____/

## ORDER ON MOTION TO COMPEL

This Court has considered, without hearing, Plaintiffs' Motion to Compel. ECF No. 65-1. Defendants filed a response opposing the motion. ECF No. 83. Plaintiffs, under Federal Rule of Civil Procedure 37 and Local Rule 26.1, move for an order (1) compelling Defendant Mark Inch and Defendant Florida Department of Correction ("FDC") to produce documents responsive to Plaintiffs' First Request for Production; (2) compelling Defendant FDC to respond to Plaintiff Harvard's First Set of Interrogatories; (3) overruling Defendants' objections; (4) setting deadlines for production; and (5) awarding reasonable fees and costs because Defendants' objections are not substantially justified. ECF No. 65-1, at 1–2. For the reasons provided below, Plaintiffs' motion is **GRANTED**.

# I

This is a civil rights case about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee. Plaintiffs allege that Defendants promulgated a statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells. ECF No. 13, ¶¶ 2, 59, 75. Plaintiffs further allege that this statewide policy and practice exposes all persons in isolation to a substantial risk of serious harm to their mental and physical health in violation of the Eighth Amendment and that policymakers in Tallahassee have exhibited deliberate indifference towards these risks. ECF No. 13, ¶¶ 5, 7, 54, 59, 75, 83. Finally, Plaintiffs allege that Defendants discriminate against people with disabilities through this same policy and practice. ECF No. 13, ¶¶ 8, 151–60.

Plaintiffs served their First Request for Production of Documents ("RFP") to Defendants on August 13, 2019. ECF No. 65-1, at 2–3; ECF No. 83, at 5. In October, Defendants responded with objections and produced limited documents. ECF No. 65-1, at 3. On August 28, 2019, Plaintiff Harvard served her First Set of Interrogatories ("ROG") to Defendant FDC. ECF No. 65-1, at 3. Defendant responded to the interrogatories in October, objecting in part. ECF No. 65-1, at 3. The parties met and conferred on November 12, 2019, to discuss the discovery objections. ECF No. 65-1, at 3. The parties are now at an impasse, and Plaintiffs have, therefore, moved to compel discovery.

## II

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). District Courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

## III

First, although Defendants state that they have agreed to produce documents responsive to RFPs 52, 56, 57, 60, and 61 to Defendant Inch, they have lodged objections to these requests. *See* Defendants' Response to RFPs 52, 56–57, 60–61.[1] Therefore, Plaintiffs' motion to compel, as it relates to RFPs 52, 56, 57, 60, and 61 to Defendant Inch, is not moot.

Second, Defendants repeatedly rely on the pre-2015 amendment formulation of Federal Rule of Civil Procedure 26 in objecting on the basis that Plaintiffs' requests are not "reasonably calculated to lead to discovery of admissible evidence." *See* Defendants' Response to RFPs 27, 29, 31, 33, 35, 37, 39, 46–49, 51, 84–89, 92–93, 95–97 to Defendant Inch and ROG 15 to Defendant FDC. Such objections are

---

[1] Plaintiffs' requests and Defendants' response can be found in ECF No. 65-1, ECF No. 83, ECF No. 83-1, and ECF No. 83-2.

3

meaningless and without merit.[2] This Court overrules any such objections.

Third, Defendants' objections are not well taken. "The law in the Eleventh Circuit makes clear that boilerplate discovery objections are tantamount to no objections being raised at all and may constitute a waiver of the discovery being sought." *Rivera v. 2K Clevelander, LLC*, No. 16-21437-Civ, 2017 WL 5496158, at *4 (S.D. Fla. Feb. 22, 2017). Here, most of Defendants' objections are boilerplate objections. *See, e.g.*, Defendants' Response to RFP 12 to Defendant Inch ("Defendants further object that 'ALL POLICIES RELATED TO' and 'retention' and 'management' are vague, ambiguous, overly broad and burdensome"); Defendants' Response to RFP 27 to Defendant Inch ("Defendants object to this request as overly broad, not proportional to the needs of this case . . . ."). This Court may overrule such objections on this basis alone. *See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); N.D. Fla. Loc. R. 26.1(C) ("Boilerplate objections are strongly disfavored."); *see also FDIC v. Brudnicki*, 291 F.R.D. 669, 674 n.4 (N.D. Fla. 2013) ("[T]he form boilerplate objections shall not be considered by the Court and are nullity."); *Walton Constr. Co., LLC v. Corus Bank*, No. 4:10cv137, 2012 WL 13029592, at *1 (N.D. Fla. Apr. 18, 2012) (rejecting boilerplate objections as

---

[2] "At least one court has imposed sanctions upon an attorney, in part due to the attorney's reliance on 'caselaw that analyzed the version of Rule 26 that existed before the highly publicized amendments took effect on December 1, 2015.' " *Sharbaugh v. Beaudry*, No. 3:16cv126, 2017 WL 5988221, at *2 n.3 (N.D. Fla. May 5, 2017) (quoting *Fulton v. Livingston Fin. LLC*, No. C15-0574JLR, 2016 WL 3976558 (W.D. Wash. July 25, 2016)).

"meaningless").

Boilerplate objections such as "vague," "ambiguous," "overly broad," "not proportional to the needs of this case," or "burdensome," without an explanation, do not inform this Court or Plaintiffs of the justification underlying Defendants' objections. That is to say, boilerplate objections beg the question—why, for example, is the request vague or ambiguous? Further, they do not provide Plaintiffs a reasonable roadmap to correct any defect in their requests before asserting their remedies through a motion to compel. That Defendants subsequently attempt to provide specific objections in its response to Plaintiffs' motion to compel is unavailing. *See Lorenzano v. Sys., Inc.*, No. 6:17-cv-422, 2018 WL 3827635, at *3 (M.D. Fla. Jan. 24, 2018) ("[T]he Court will not rely on Systems' post hoc justifications for its boilerplate objections. To the extent that Systems tried to raise specific objections in its Response, the Court finds that Systems waived these objections."). For these reasons, this Court finds that Defendants have waived their objections and overrules any boilerplate objections contained in Defendants' Response to RFPs 12–19, 21–39, 42–43, 45–49, 51–57, 60–65, 68–76, 84–89, 92–99, 104–05, 107–17, and 136[3] to Defendant Inch and ROG 15 to Defendant FDC.

---

[3] Defendants also object to RFP 136 to Defendant Inch on the grounds that the request might contain privileged attorney-client and work product information. To the extent Defendants believe that responsive documents may contain privileged information, they need not disclose it. However, Defendants must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable [Plaintiffs] to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

5

Fourth, Defendants object to certain requests because the response may lead to information that would raise safety and security concerns. *See, e.g.*, Defendants' Response to RFP 12 to Defendant Inch ("Defendants also object based upon the confidentiality, safety, and security issues raised in the general objections to 'policies.' "). This Court entered a Confidentiality Order, ECF No. 58, based on parties' agreement that certain documents may contain information that FDC believes threatens prison safety or security if disclosed without the protections of a confidentiality order. ECF No. 94. Subsequently, this Court denied Defendants' motion for a protective order which sought additional protection for documents that might raise safety or security concerns. ECF No. 94. This Court's Order denying Defendants' request for a protective order demonstrates that there is no good cause to object to Plaintiffs' requests for production or interrogatories based on safety or security. This is because, when entering the Confidentiality Order, "[t]his Court took into consideration Defendants' safety and security concerns and Plaintiffs' interest in conducting full and fair discovery . . . ." ECF No. 94. For these reasons, this Court overrules any safety and security objections contained in Defendants' Response to RFPs 12–15, 22–23, 34–39, 46–49, 53–55, 107–17, and 135–36 to Defendant Inch.

Fifth, Defendants object to RFPs 64–65, 68–76, and 107–17 to Defendant Inch and RFPs 1–5, and 7 to Defendant FDC because the documents are "exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and

119.071(3)a, Fla. Stat." and that Defendants will not produce them "without an agreement and/or order governing confidentiality." Plaintiffs' requests relate to mental or medical care for prisoners. *See, e.g.* Plaintiffs' RFP 64 to Defendant Inch ("ALL POLICIES RELATED TO mental health care for PRISONERS in effect from January 1, 2019, through present."). This Court entered a HIPPA Qualified Protective Order to facilitate the discovery of protected health information. ECF No. 46. Defendants have not moved for a confidentiality order seeking additional protection for information sought by Plaintiffs. Therefore, these objections to RFPs 64–65, 68–76, 107–17 to Defendant Inch and RFPs 1–5, 7 to Defendant FDC are overruled.

Finally, Defendants raise some objections for the first time in their response to Plaintiffs' motion to compel. For example, Defendants object to producing information related to class members before the proposed class has been certified. ECF No. 83, at 6, 32. But, by raising objections for the first time in their response, Defendants have waived them. *See Socas v. Nw. Mut. Life Ins. Co.*, No. 07-20336-CIV, 2008 WL 619322, *6 (S.D. Fla. Mar. 4, 2008) (finding that Plaintiff "waived the argument by mentioning it for the first time in her response to the instant motion to compel and failing to timely raise it as an objection to Northwestern's original request for production.").[4]

---

[4] Even assuming that Defendants have not waived their class-based discovery objection, it

Based on the foregoing analysis, all of Defendants' objections to RFPs 12–18, 21–26, 28, 30, 32, 34, 36, 38, 52–55, 60–61, 64–65, 68–76, and 135 to Defendant Inch and RFPs 1–5, and 7 to Defendant FDC are overruled. Defendants shall furnish the requested information to Plaintiffs.

**IV**

The remainder of Defendants' responses can be broken down into objections based on (1) the timeframe covered by Plaintiffs' discovery request, (2) relevance, and (3) self-critical analysis privilege. This Court considers these objections in turn.

A. <u>Timeframe</u>

Defendants generally object to the instruction for a requested timeframe of January 1, 2015, to present.[5] Defendants' principal theory is that documents going back five years are not relevant to this case because Plaintiffs seek injunctive relief and not compensatory damages. *See* ECF No. 83-1, at 2; ECF No. ECF No. 83-2, at 2; ECF No. 83, at 12–14.[6] Defendants' theory misses the point.

---

is invalid. Here, the parties agreed not to bifurcate discovery. ECF No. 93, at 10; ECF No. 85, at 7.  This Court will, therefore, not limit class-based or merits discovery until it has ruled on class certification. *See, e.g.*, *Bellenger v. Accounts Receivable Mgmt, Inc.*, No. 19-60205-CIV, 2019 WL 4284070, at *6 (S.D. Fla. Sept. 10, 2019). Additionally, to certify a class, Plaintiffs will need to show numerosity, commonality, and typicality of the proposed class. *See* Fed. R. Civ. P. 23(a). Prohibiting class-based discovery at this juncture would likely preclude Plaintiffs from effectively arguing for class certification.

[5] Plaintiffs initially requested discovery from January 1, 2014, through present. However, after Defendants objected, Plaintiffs offered to modify the request to January 1, 2015. *See* ECF No. 65-1, at 9 n.6.

[6] Defendants also object to the timeframe of Plaintiffs' request because the timeframe is

To succeed on their Eighth Amendment claim, Plaintiffs must prove that Defendants were deliberately indifferent to a substantial risk of serious harm. *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). To prove deliberate indifference, Plaintiffs must show subjective knowledge of the risk on part of Defendants. *Id.* Defendants' subjective knowledge can be proven by presenting evidence showing that the conduct was "longstanding, pervasive, well-documented, or expressly noted by the prison officials in the past" and that Defendants "had been exposed to information concerning the risk, and thus must have known about it." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Plaintiffs' request for discovery dating back five years is calculated to lead to evidence that may show Defendants' deliberate indifference, or lack thereof. As Plaintiffs point out, the timeframe for their discovery request is not arbitrary. Plaintiffs' timeframe stems, in part, from Defendants' participation in a national survey of state prison systems regarding their use of isolation. ECF No. 65-2. Shortly after the survey, Defendants began an "Analysis of Segregation Process." ECF No. 65-3. The analysis looked at "what ha[d] occurred in the past, what [was] taking place [then], changes being implemented . . . as well as recommendations for the

---

overly broad and not proportional to the needs of the case considering the undue burden and expense of discovery. As explained above, such boilerplate objections are disfavored. That Defendants attempt to retroactively explain these objections in their response to Plaintiffs' motion to compel is unavailing. Defendants' boilerplate objections to the timeframe of Plaintiffs' requests are therefore overruled.

future." ECF No. 65-3, at 4. Discovery before, during, and after this analysis may provide evidence showing that unconstitutional isolation was "longstanding, pervasive, [and] well-documented" and that prison officials "had been exposed to information concerning the risk, and thus must have known about it." *Brennan*, 511 U.S. at 842. Discovery may also lead to evidence showing that Defendants disregarded the risk of serious harm by engaging in conduct that is more than gross negligence after having subjective knowledge of the risk. *Thomas*, 614 F.3d at 1312. Limiting the scope of discovery to two years, as Defendants request, would shield Defendants' policy reforms, or lack thereof, during the period where Defendants themselves studied their practice of solitary confinement and recommended changes to their isolation policies and practices.

For these reasons, Defendants' objection to Plaintiffs' requested timeframe for relevant documents is overruled.

## B. Relevance

Defendants make several objections based on relevance of the discovery sought by Plaintiffs. This Court tackles each of the relevance-based objections in turn.

### *Institution-Specific and Inmate-Specific Discovery*

Defendants argue that discovery about the creation or implementation of policies, as well as documents, that are institution-specific or inmate-specific are not

relevant. *See, e.g.*, Defendants' Response to RFP 27 to Defendant Inch ("The implementation of policy at the institutional level and on an inmate-by-inmate basis does not address whether the 'overarching policy' is constitutional and/or discriminatory."); Defendants' Response to RFP 47 to Defendant Inch ("Staffing assignments and levels at the institution level do not address whether the 'overarching policy' is constitutional and/or discriminatory"); Defendants' Response to ROG 15 Defendant FDC ("Plaintiffs' request for the number of times during each month that various forms of mental health services were provided to individual inmates is not relevant to the claims being asserted.").

It is true, as Defendants point out, that Plaintiffs' case is about a challenge to overarching state-wide policies and practices and not challenges to a series of distinct incidents. However, that does not mean that the creation or implementation of policies and practices that are institution-specific or inmate-specific are irrelevant. As this Court pointed out in its Order denying Defendants' motion to transfer, without the implementation of policies and practices at their respective correctional institutions, Plaintiffs would have no claims to bring suit. *See Harvard v. Inch*, 408 F. Supp. 3d 1255, 1261–62 (N.D. Fla. 2019).

Plaintiffs bring a § 1983 claim, alleging that Defendants, through policies and practices, written or unwritten, violate their Eighth Amendment Rights and rights protected by the American with Disabilities Act ("ADA") and Section 504 of the

11

Rehabilitation Act ("RA"). *See* ECF No. 13, ¶¶ 120, 176–202. Defendants' definition of policy, and their basis for objecting, is limited to formal policies. *See* ECF No. 83, at 9 (citing Black's Law Dictionary to define policies as "[a] standard course of action that has been <u>officially established</u> by organization, business, political party, etc."). Based on this definition, Defendants agreed to produce the rule or procedure that constitute the standard course of action that has been officially established by the FDC. *See* ECF No. 83, at 9. But, the definition of policies is not so limited under § 1983. "An action does not need to be official in nature to constitute a policy or custom." *Horn v. Jones*, No. 14-20341-CIV, 2015 WL 3607012, at *8 (S.D. Fla. May 8, 2015). Under § 1983, Plaintiffs "may be able to prove the existence of a widespread practice that, although not authorized by written law or express . . . policy, is 'so permanent and well settled as to constitute custom or usage with the force of law.' " *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1998); *see also Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) ("A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy."); *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986) (finding informal policy or custom actionable under section 1983).

Based on the definition of policies and practices set out by the Supreme Court and the Eleventh Circuit, Plaintiffs are entitled to discover more than rules and

procedures officially established by the FDC. Plaintiffs are entitled to discover the implementation of policies that are promulgated at institutional levels to determine whether there is a widespread practice that violates their rights. Additionally, Plaintiffs allege that Defendants fail to properly follow their written policies. For example, Plaintiffs allege that despite FDC's written policies of determining the type of restriction imposed on a prisoner, in practice it determines restriction by staffing availability, housing location, whether someone is in more than one type of isolation at the same time, and other arbitrary reasons. ECF No. 13, ¶¶ 77–82. Based on Plaintiffs' allegations, FDC's official policy might be relevant, but what is equally important is how FDC's policy is implemented at individual correctional institutions. By showing that Defendants fail to follow their formal policy, Plaintiffs may establish that a pervasive custom—functionally equivalent to a formal policy—in practice trumps Defendants' formal policy. Similarly, to establish a persistent and widespread practice, relevant evidence may include facts related to other inmates. *See Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1064 n.7 (11th Cir. 2013). Therefore, Plaintiffs may discover the creation or implementation of policies or documents that are not only institution-specific but also inmate-specific.

For these reasons, Defendants' relevance objections to RFPs 19, 27, 29, 31, 33, 35, 37, 39, 46–59, 51, 84–89, 92–93, 95–96, and 107–17 to Defendant Inch and ROG 15 to Defendant FDC are overruled.

### *Residential Continuum Care*

Defendants object to Plaintiffs' request for various documents and information related to FDC's Residential Continuum Care. *See* Defendants' Response to RFPs 77–78 to Defendant Inch and ROGs 7–8 to Defendant FDC. Residential Continuum Care refers to specialized residential mental health units that work in conjunction with the inpatient system to provide augmented outpatient mental health treatment and habilitation services for inmates with serious psychological impairment associated with a historical inability to successfully adjust to daily living. *See* ECF No. 83, at 65. Residential Continuum Care units include Cognitive Treatment Units ("CTU"), Diversion Treatment Units ("DTU"), and/or Secure Treatment Units ("STU"). *See* ECF No. 83, at 65. Defendants agreed to produce documents and information related to STU but object to producing documents related to CTU and DTU. Defendants argue that CTU and DTU do not relate to any form of restrictive housing, and are, therefore, irrelevant. This Court disagrees.

Discovery of documents and information related to CTU and DTU are relevant to show whether modifications of Defendants' policies and procedures to accommodate people with disabilities would impose an undue hardship or burden or fundamental alteration to Defendants' services, programs, or activities—a defense claimed by Defendants. ECF No. 62 § VIII, ¶¶ 18–19. The discovery of relevant

14

evidence may help Plaintiffs determine whether Defendants have adequate policies and practices in place to ensure prisoners with disabilities are housed in the most integrated setting appropriate to meet their needs—an argument central to Plaintiffs' claims related to the Eighth Amendment, ADA, and RA . ECF No. 13, ¶ 158. Finally, the documents and information related to CTU and DTU go directly to Plaintiffs' allegation that Defendants isolate people with disabilities because of their disability-related behavior in violation of their rights protected by the ADA and RA. ECF No. 13, ¶ 152.

Defendants' relevance objections to RFPs 77–78 to Defendant Inch and ROGs 7–8 to Defendant FDC are therefore overruled.

### *Programs or Projects No Longer in Effect*

Next, Defendants object to Plaintiffs' request to produce policies and documents related to any pilot projects or programs that attempt to reduce or have the effect of reducing the population of prisoners in isolation. *See* Defendants' Response to RFPs 56–57 to Defendant Inch. Defendants argue that producing documents regarding any program or project that is not in effect is irrelevant because the Plaintiffs seek only injunctive relief. Defendants are mistaken. Discovery may lead to relevant evidence that might show that certain programs or projects Defendants implemented either did or did not result in an undue hardship or burden upon FDC. This discovery is central to Defendants' defense. *See* ECF No. 62 § VIII,

15

¶ 19. Therefore, Defendants' relevance objections to RFPs 56–57 to Defendant Inch are overruled.

### *Suspected Suicide, Attempted Suicide, or Suicide by Prisoners*

Defendants further object to Plaintiffs' requests for documents related to suspected suicide, attempted suicide, and suicide by prisoners. *See* Defendants' Response to RFPs 94, 97–99, 104–05.[7] Defendants' primary argument is that some of these requests are not limited to prisoners in restrictive housing and are therefore not relevant to this case. To the contrary, these documents are highly relevant to Plaintiffs' claim of heightened risk of suicide for prisoners in isolation and Defendants' deliberate indifference to the heightened risk. Plaintiffs allege that 57% of prisoners who died by suicide in FDC did so while they were in isolation, and that 88% of prisoners who died by suicide had been in isolation at some point during their incarceration. ECF No. 13, ¶ 128. Discovery through this request may lead to evidence that provides a comparison between suicide rates for prisoners who are or were in isolation versus prisoners who were never isolated—a claim that is relevant to Plaintiffs' allegations. Additionally, discovery will likely show, among other things, (1) whether the prisoner was in isolation at the time of suicide or had ever

---

[7] Defendants also object to RFPs 98 and 99 to Defendant Inch on the grounds that the requests are burdensome. *See* Defendants' Response to RFPs 98–99 to Defendant Inch. However, Defendants have already identified 1,990 and 81 relevant documents for the requests, respectively. It is unclear to this Court why producing these documents would be burdensome. To the extent Defendants object to the timeframe for the requested discovery, this Court overrules that objection. *See Supra* Section IV.A.

16

been in isolation, (2) the number of times they had been in isolation, (3) the period of isolation they were subjected to, and (4) the time elapsed between any releases from isolation and suicide attempts. This evidence is relevant to Plaintiffs claim that Defendants had subjective knowledge of the risk of suicide for prisoners in isolation, and that Defendants failed to take reasonable measures to address that risk.

For these reasons, Defendants' relevance objections to RFPs 94, 97–99, and 104–05 are overruled.

### Third Parties

Defendants object to Plaintiffs' request to produce documents related to isolation that were either provided to or authored by certain third parties. *See* Defendants' Response to RFPs 42–43, and 45 to Defendant Inch. Defendants argue that these documents are not relevant to any claims in this lawsuit. It is unclear why Defendants believe that the request is not relevant given that this lawsuit is about policies and practices of isolation. Plaintiffs allege that Defendants participated in a 2015 survey performed by the Association of State Correctional Administration regarding isolation and later refused to participate in a similar survey performed in 2017. ECF No. 13, ¶ 127. Plaintiffs further allege that both surveys specifically described the harms of isolation. ECF No. 13, ¶ 127. Further, Plaintiffs allege that the American Correctional Association notified Defendants that the size of their isolation cells and their recreational policies violated the association's standards, and

17

that Defendants admitted to their inadequacy. ECF No. 13, ¶¶ 108–09, 141. Taken together, the documents provided to or authored by these third parties are relevant to Plaintiffs' deliberate indifference claims. Therefore, Defendants' relevance objections to RFPs 42–43, and 45 to Defendant Inch are overruled.

### *Identification*

Finally, Defendants object to ROG 16 to Defendant FDC. In ROG 16, Plaintiffs request Defendants to "Identify at each FACILITY the location of every ISOLATION cell, including the dorm, wing, cell number AND type of ISOLATION." Defendants argue that the information sought is irrelevant to any issues in this lawsuit. This Court agrees with Plaintiffs that the information is relevant to cross-reference the information requested with documents produced in response to RFPs. Documents produced in response to RFPs may include cell numbers, wings, or dorms without identifying whether the location is an isolation cell. Defendants' objection to ROG 16 to Defendant FDC is, therefore, overruled.

### C. Self-Critical Analysis Privilege

Defendants object to RFPs 62 and 63 to Defendant Inch based on the self-critical analysis privilege. *See* Defendants' Response to RFPs 62–63 to Defendant Inch. Self-critical analysis privilege has been recognized by some courts in this circuit, *see Reichhold Chems., Inc. v. Textron, Inc.*, 157 F.R.D. 522, 527 (N.D. Fla. 1994), but "has never been fully embraced by courts in our district or circuit."

18

*Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1232 (S.D. Fla. 2018). Defendants do not point to, nor has this Court found, any binding precedent recognizing the self-critical analysis privilege. Additionally, the Eleventh Circuit has expressly rejected peer review privilege, a derivative of self-critical analysis privilege, in the context of civil rights cases. *Adkins v. Christie*, 488 F.3d 1324, 1329 (11th Cir. 2007).

"[P]rivileges contravene the fundamental principle that the public . . . has a right to every man's evidence." *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990). "Accordingly, there is a presumption against privileges which may only be overcome when it would achieve a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " *Adkins*, 488 F.3d at 1328. Creation of an evidentiary privilege depends on "(1) the needs of the public good, (2) whether the privilege is rooted in the imperative needs for confidence and trust, (3) the evidentiary benefit of the denial of the privilege, and (4) consensus among the states. *Id.*

Defendants have the burden to establish self-critical analysis privilege. *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 552 (N.D. Fla. 2013) ("The party raising a privilege has the burden of establishing the existence of the privilege."). Defendants have failed to meet this burden. This Court, therefore, finds that self-critical analysis privilege does not apply to the documents requested by

Plaintiffs and overrules Defendants' objections to RFPs 62 and 63 to Defendant Inch.

## V

For the reasons provided, all of Defendants' objections to RFPs to Defendant Inch and FDC, and ROGs to Defendant FDC are overruled. The Defendants shall produce the requested discovery.

## VI

Plaintiffs request this Court to set deadlines for discovery at issue in their motion to compel. Plaintiffs served their First Request for Product of Documents and Interrogatories in August of 2019. Defendants have had ample time to respond to Plaintiffs discovery request. However, given the concern raised by Defendants that their burden to produce the requested documents will exponentially increase, this Court finds it prudent to give Defendants an additional 30 days to respond to Plaintiffs' discovery requests. Defendant shall, therefore, furnish the requested information to Plaintiffs **within 30 days** of this Order.

## VII

Under Federal Rule of Civil Procedure 37(a)(5)(A), when a motion to compel is granted, the Court "*must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's expenses incurred in making the motion,

including attorney's fees. FED. R. CIV. P. 37(a)(5)(A) (emphasis added). However, the Court "must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust. Unless one of these conditions is met, an award of expenses is "mandatory." *Se. Asset Recovery Fund GA-4, LLC v. Windolf*, No. 5:13cv222, 2016 WL 7655801, at *1 (N.D. Fla. Apr. 21, 2016) (citing *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154 (11th Cir. 1993)). Defendants argue that attorneys' fees and costs should be denied because their position was substantially justified. This Court disagrees.

"A position is 'substantially justified' if it results from a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' " *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). As outlined above, most of Defendants' objections are either boilerplate objections, based on the pre-2015 amendment formulation of Federal Rule of Civil Procedure 26, or are raised for the first time in their response to Plaintiffs' motion to compel. *See Supra* Section III. Additionally, Defendants withheld several discovery requests based on a narrow definition of "policies," despite clear guidance from the Supreme Court and the Eleventh Circuit. *See Supra* Section IV.B. This Court, therefore, finds that Defendants' objections were not substantially justified. Plaintiffs' motion for

21

attorneys' fees and expenses is **GRANTED**.

Accordingly, Plaintiffs are entitled to reasonable attorneys' fees and costs for bringing their motion to compel. However, for the purpose of judicial economy, this Court will determine the amount of attorneys' fees and costs at the end of this lawsuit.

For these reasons, it is **ORDERED:**

1.  Plaintiffs' Motion to Compel, ECF No. 65-,1 is **GRANTED**.

2.  Defendants shall furnish the requested information to Plaintiffs **within 30 days** of this Order.

**SO ORDERED on February 7, 2020.**

<u>**s/Mark E. Walker**</u> ____
**Chief United States District Judge**

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAC'QUANN (ADMIRE)
HARVARD, et al.,**

      *Plaintiffs*,

**v.**                       **CASE NO.:  4:19cv212-MW/CAS**

**MARK INCH, Secretary of Florida
Department of Corrections, et al.,**

      *Defendants*.

_____/

**ORDER DENYING DEFENDANTS' MOTION FOR ENTRY OF A
<u>PROTECTIVE ORDER</u>**

This Court has considered, without hearing, Defendants' Motion for Entry of

a Protective Order. ECF No. 84. Specifically, Defendants' request entry of a

protective order limiting the disclosure to only Plaintiff's counsel of (1) post orders,

(2) technical manuals, (3) video surveillance of correctional facilities, and (4)

information related to correctional institution's physical security, including, but not

limited to, cell locations, prison layouts, and positioning of officers and cameras.

ECF No. 84, at 1–2. Plaintiffs oppose this motion. ECF No. 90. For the reasons

provided below, Defendants' motion, ECF No. 84, is **DENIED**.

**I**

This Court entered a Confidentiality Order, ECF No. 58, based on parties'

agreement that certain documents may contain information that FDC believes threatens prison safety or security if disclosed without the protections of a confidentiality order. The main disagreement was whether certain documents should be marked with the "Attorneys' Eyes Only" provision. ECF No. 58. This provision would allow certain documents to be reviewed only by attorneys working as counsel in this case. ECF No. 58. This Court rejected Defendants' arguments and, therefore, did not include the "Attorneys' Eyes Only" provision to the Confidentiality Order. ECF No. 58. Defendants now argue that the Confidentiality Order entered by this Court is insufficient to protect their interest in safety and security of the prison system. ECF No. 84. In doing so, Defendants raise the same arguments they did in opposing Plaintiffs' proposed confidentiality order, *Compare* ECF No. 51, at 6–8 *with* ECF No. 84, at 7–9, which this Court adopted in toto. ECF No. 58.

## II

Defendants' motion appears to be a motion for reconsideration of this Court's Confidentiality Order. A motion for reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Wendy's Int'l, Inc. v. Nu-Cape Const., Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996). A court will reconsider a previous order "only if there has been an intervening change in law, if new evidence has become available, or if there is a need to correct clear error or manifest injustice." *Buffkin v. Reliance Standard Life*

*Ins. Co.*, No. 3:16-cv-21-MCR/CJK, 2017 WL 3000031, at *1 (N.D. Fla. May 30, 2017). Defendants have neither alleged nor established any of these grounds in their motion. Controlling law remains unchanged—every case Defendants cite in their motion for protective order pre-dates Defendants' motion related to this Court's Confidentiality Order. Defendants do not allege that new evidence has become available that requires this Court to reconsider its previous order. Indeed, Defendants specifically raised the documents at issue in their motion for protective order when litigating the Confidentiality Order. *See* ECF No. 51, at 3. And finally, Defendants have not alleged that reconsideration is needed to correct clear error or manifest injustice.

For these reasons, this Court refuses to reconsider its Confidentiality Order. Defendants' motion for protective order, which this Court construes as a motion for reconsideration, is denied.

### III

Assuming that Defendants' motion is properly brought under Federal Rule of Civil Procedure 26(c), the motion is still denied. This Court may, for good cause, issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). Under Rule 26(c), a "party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from

stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 427, 429–30 (M.D. Fla. 2005). In determining whether good cause exists, a court should balance the interests of the parties. *See Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1313 (11th Cir. 2001).

This Court took into consideration Defendants' safety and security concerns and Plaintiffs' interest in conducting full and fair discovery when it entered the Confidentiality Order. The Confidentiality Order ensures that the documents marked confidential will not be disclosed to people currently or formerly incarcerated in the FDC without written permission from the producing party. ECF No. 58, ¶ 9(c). An exception to this rule is the named Plaintiffs in this case. For the named Plaintiffs, Plaintiffs' counsels will not give copies of the confidential documents to the named Plaintiffs but may discuss the contents of the confidential documents with the named Plaintiffs if reasonably necessary to prosecute this case. ECF No. 58, ¶ 9(c). As far as Defendants' concern regarding the broad definition of qualified persons who may view the confidential documents, this Court defined qualified persons based on, in large part, the cases Defendants cited in its opposition to Plaintiffs' proposed confidentiality order. ECF No. 58, at 1–2.

Defendants' motion for a protective order is based on a fear of mischief because there is an opportunity for mischief. This Court expects the parties to

4

conduct discovery of highly sensitive information in a reasonable manner, and will not assume bad faith on the part of Plaintiffs' counsel without specific demonstration of fact. In moving for a protective order, Defendants merely recite the concerns they had in opposing Plaintiffs' proposed confidentiality order without demonstrating any specific facts that would show that additional protection is needed.

For these reasons, Defendants' motion, ECF No. 84, is **DENIED**.

**SO ORDERED on January 22, 2020.**

                              **s/Mark E. Walker**
                              **Chief United States District Judge**

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAC'QUANN (ADMIRE)
HARVARD, et al.,**

      *Plaintiffs,*

**v.**                          **CASE NO.:  4:19cv212-MW/CAS**

**MARK INCH, Secretary of Florida
Department of Corrections, et al.,**

      *Defendants.*

_____/

## <u>ORDER DENYING STAY OF DISCOVERY</u>

This Court has considered, without hearing, Defendants' Motion to Stay Discovery Pending Resolution of Interlocutory Appeal. ECF No. 104. For the reasons provided below, Defendants' motion is **DENIED**.

**I**

On November 5, 2019, this Court entered a Confidentiality Order, ECF No. 58, based on the parties' agreement that certain documents may contain information that the Florida Department of Correction believes threatens prison safety or security if disclosed without the protection of a confidentiality order. In its Confidentiality Order, this Court rejected Defendants' argument that the nature of the documents required an "Attorneys' Eyes Only" provision. ECF No. 58. Subsequently, this Court rejected Defendants' argument that this Court's Confidentiality Order was

insufficient to protect their interest in the safety and security of the prison system and denied Defendants' motion to enter a protective order. ECF No. 94. In doing so, this Court found that Defendants' improperly raised a motion to reconsider and, alternatively, found that there was no good cause to enter a protective order. ECF No. 94. Based on the Confidentiality Order and the lack of good cause to enter a protective order, this Court granted Plaintiffs' motion to compel discovery that may lead to information that would raise safety or security concerns. ECF No. 98.

Defendants now seek a temporary stay of discovery of information that may lead to information implicating safety and security concerns. ECF No. 104. Defendants have filed a Notice of Appeal to the Eleventh Circuit pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. ECF No. 100. Defendants also filed a separate Petition for Writ of Mandamus with the Eleventh Circuit as an alternative basis for jurisdiction. ECF No. 100.

## II

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (quotation omitted). "A party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 434 (citation omitted). When considering whether to issue a stay,

courts consider

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  The same standard applies to motions to stay pending the resolution of a petition for writ of mandamus. *See Nowak v. Lexington Ins., Co.*, No. 05-21682CIV-MORENO, 2006 WL 3613760, at *2 (S.D. Fla. June 22, 2006). Defendants have failed to meet their burden.

### 1.  Likelihood of Success on the Merits

Defendants have not shown they are substantially likely to succeed on the merits. Initially, it bears noting that there likely is no jurisdiction for Defendants to appeal, either based on collateral order doctrine or under a writ of mandamus. *See, e.g.*, *Drummond Co., Inc. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1325 (11th Cir. 2016) (finding that discovery orders generally do not present important questions warranting collateral order review because most discovery issues can be reviewed effectively on appeal from final judgment); *Carpenter v. Mohawk Indus., Inc,*, 541 F.3d 1048, 1053 (11th Cir. 2008) ("[The Eleventh Circuit] has never exercised jurisdiction under the collateral order doctrine to review any discovery order involving any privilege."); *Rouse Constr. Int'l, Inc. v. Rouse Constr. Corp.*, 680 F.2d 743, 745 (11th Cir. 1982) ("As a general proposition

most orders granting or denying discovery are not final orders within the meaning of § 1291 and therefore are not immediately appealable."). And while mandamus is often an appropriate vehicle for review of orders compelling discovery, it is an extraordinary remedy and "available in exceptional cases, where there is a clear abuse of discretion or usurpation of judicial power." *In re Fink*, 876 F.2d 84, 84 (11th Cir. 1989). A clear error of judgment or application of an incorrect legal standard is an abuse of discretion. *Carpenter*, 541 F.3d at 1055. In their motion, Defendants do not assert that this Court applied the incorrect legal standard—nor could they. In entering the Confidentiality Order, this Court relied on cases cited by Defendants to reject Defendants' argument that an "Attorneys' Eyes Only" provision was required. ECF No. 58, at 1–2. Even assuming that this Court improperly construed Defendants' motion for a protective order as a motion for reconsideration, this Court, once again relying on the case cited by Defendants, nonetheless found Defendants failed to show good cause to enter a protective order. *Compare* ECF No. 94, at 3–4 *with* ECF No. 84, at 2. Regardless, it is not for this Court to determine whether appellate jurisdiction is proper.

Defendants' claims are unlikely to succeed on the merits. Relying on *Turner v. Safley*, 482 U.S. 78 (1987), Defendants' argue that this Court improperly invaded the separation of powers by undermining Defendants' ability to effectively manage prison administration and security. ECF No. 104. This is not the first time

4

Defendants have raised the separation of powers argument, and it likely will not be the last. *See, e.g.*, ECF No. 72, at 3; ECF No. 84, at 3. Contrary to Defendants' assertion, *Turner* does not stand for the blanket proposition that this Court must always defer to the prison officials. Instead, *Turner* requires this Court to balance the interests of prison officials and prisoners in reaching a fair decision. *Turner*, 482 U.S. at 85 ("Our task . . . is to formulate a standard of review for prisoners' constitutional claims that is responsive both to the policy of judicial restraint regarding prisoner complaints and [to] the need to protect constitutional rights.").

This Court has, time and time again, acknowledged the deference accorded to prison officials in managing the safety and security within a prison. *See, e.g.*, ECF No. 82, at 2 (recognizing the deference accorded to prison administration in matters of internal security and safety). In entering the Confidentiality Order and rejecting Defendants' motion for a protective order, this Court balanced Defendants' interest in safety and security with Plaintiffs' interest in conducting full and fair discovery. As this Court explained in its Order denying Defendants' motion for a protective order, the Confidentiality Order ensured that Defendants' safety and security concerns were protected because the Order made certain that the documents marked confidential would not be disclosed to people currently or formerly incarcerated in FDC without Defendants' permission. ECF No. 94, at 4. The Confidentiality Order also prohibited Plaintiffs' counsel from providing copies of the confidential

documents to the named Plaintiffs and even prohibited them from so much as discussing the contents unless it was reasonably necessary to prosecute this case. ECF No. 94, at 4. Further, the "Attorneys' Eyes Only" provision, as defined by Defendants, was too narrow to protect Plaintiffs' interest. Indeed, even the cases cited by Defendants where courts have imposed an "Attorneys' Eyes Only" provision, the courts that issued those decisions have allowed the documents to be disclosed or made available to the qualified persons as defined by this Court. ECF No. 58.[1] Simply put, to allow Defendants unbridled discretion in conducting discovery would effectively foreclose this Court's power in managing proper discovery. In managing discovery, this Court can neither turn a blind eye to the prisoners' constitutional rights nor Defendants' interests; instead, it must balance these competing interests. This Court did so when it entered the Confidentiality Order, rejected Defendants' motion for a protective order, and granted Plaintiffs' motion to compel.

---

[1] Some of the cases relied on by Defendants for their argument that the "Attorneys' Eyes Only" provision is necessary allowed such documents to be disclosed to experts, court personnel, and persons assisting in the litigation. *See e.g.*, *Parrish v. Solis*, No. 11-CV-01438 LKH (NC), ECF No. 90, at 6–7 (N.D. Cal. May 28, 2013) (stating that a receiving party may disclose any information or item designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" to, among other persons, experts and court and its personnel); *Ellis v. Navarro*, No. C 07-05126 SBA LB, ECF No. 58, at 3 (N.D. Cal. Nov. 16, 2011) (stating that "Attorney's Eye Only" material will be disclosed or made available only to counsel for a party, and to the "qualified persons" such as experts, court reports, or any other person about whom the parties in writing agree). Additionally, the Confidentiality Order entered by this Court was consistent with the order that FDC had stipulated in a nearly identical class action suit before U.S. District Judge Robert Hinkle. ECF No. 49-3 (stating that qualified individuals included, among others, experts or consultants).

For these reasons, this factor weighs against granting a stay.

## 2. *Irreparable Harm*

Defendants' rely on the "cat out of the bag" theory, claiming that if the stay is not granted, they will suffer irreparable harm because it would be impossible to reverse the damage resulting from disclosure of the information. ECF No. 104, at 5. The cases relied on by Defendants involve the disclosure of privileged information, such as attorney-client communications. *See Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-CV-80787-RYSKAMP/VITUNAC, 2010 WL 11505438, *2 (S.D. Fla. June 3, 2010); *Nowak*, 2006 WL 3613760, at *2. Here, there is no claim of privilege. This Court acknowledges that, without a stay, Plaintiffs would be able to proceed with discovery before the Eleventh Circuit would be able to review the appeal, rendering the appeal and petition moot. However, a majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm, and Defendants have not shown that the Eleventh Circuit embraces the minority view. *In re Furstenberg Finance SAS*, No. 16-mc-60266-BLOOM, 2016 WL 10880228, at *1 (S.D. Fla. Sept. 30, 2016). Additionally, as Plaintiffs point out, the issue is not whether Defendants are willing to let the cat out of the bag, but how far they are willing to let the cat roam. Defendants agreed to produce the relevant information but wanted to limit the individuals who can access this information. As this Court previously noted, Defendants' request for the

7

"Attorneys' Eyes Provision" is "based on fear of mischief because there is an opportunity for mischief." ECF No. 94, at 4. Such a speculative fear of injury does not constitute irreparable harm. *Nken*, 556 U.S. at 434–35 ("[S]imply showing some possibility of irreparable injury fails to satisfy the second factor."); *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (holding, in a preliminary injunction context, that irreparable injury must be neither remote nor speculative, but actual and imminent).

Defendants have failed to show they will be irreparably harmed without a stay. This factor, therefore, weighs against stay.

### 3. Harm to Plaintiff

Defendants argue that the stay concerns only discrete issues of safety and security and will not undermine the progress of this case. ECF No. 104. Although this may be the case, the discrete issues of safety and security cover a plethora of information sought by Plaintiffs. Defendants' safety and security objections implicate, at the very minimum, 80 discovery requests, 32 of which were the subject of this Court's Order on motion to compel. ECF No. 108-1, ¶ 6; ECF No. 98. Further, some of the discovery requests may implicate information that Plaintiffs will require for class certification. Assuming that the Eleventh Circuit will take 5.3 months to render a decision from filing of appeal or petition, as Defendants argue, the delay will render it virtually impossible for Plaintiffs to comply with this Court's

8

Scheduling Order, which sets Plaintiffs' deadline to file their motion for class certification on May 6, 2020. ECF No. 44, at 1–2.

For these reasons, this factor weighs against stay.

### 4.  *Public Interest*

It is true, as Defendants argue, that there is a significant interest in maintaining prison safety and security. However, the "public interest is [also] served when constitutional rights are protected." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019). The issuance of a stay will delay the progress of this case and undermine Plaintiffs' ability to vindicate their constitutional rights. The public's interest in prison safety and security is adequately served by this Court's Confidentiality Order. This factor, therefore, is, at best, neutral.

### III

While entering the Confidentiality Order, rejecting Defendants' motion for a protective order, and granting Plaintiffs' motion to compel, this Court balanced Plaintiffs' and Defendants' interests. Defendants have not convinced this Court that they are likely to succeed on the merits, or that the balance of stay-factors merits a stay pending appeal. Defendants' motion, ECF No. 104, is **DENIED.**

**SO ORDERED on March 2, 2020.**

**s/Mark E. Walker**
**Chief United States District Judge**

9

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD, ET AL.,

     *Plaintiffs*,

v.                                                  CASE NO.:  4:19cv212-MW/CAS

MARK INCH, SECRETARY OF
FLORIDA DEPARTMENT OF
CORRECTIONS, ET AL.,

     *Defendants*.

_____/

## CONFIDENTIALITY ORDER

This Court has considered, without hearing, Plaintiffs' Motion for Entry of Confidentiality Order, ECF No. 49, and Defendants' response in opposition, ECF No. 51. Having considered the parties proposed confidentiality orders, ECF No. 49-1 and ECF No. 51-1, this Court adopts Plaintiff's proposed confidentiality order in toto.

Defendants seek to add "Attorneys' Eyes Only" provision to the proposed order. *See* ECF No. 51, at 2. This provision would allow certain documents to be reviewed only by an attorney working as counsel in this case. The provision would also require Plaintiffs to get express written permission of the producing party before disclosing the documents marked for "Attorneys' Eyes Only."  In support for adding the "Attorneys' Eyes Only" provision, Defendants cite to multiple cases that have allowed such provisions in cases involving a correctional institution's records.

However, in some of these cases the court allowed such documents to be disclosed to experts, court personnel, and persons assisting in the litigation. *See e.g.*, *Montanez v. Wolters*, No. 3:15-CV-1147-NJR-DGW, 2018 WL 5437442, at *3 (S.D. Ill. Oct. 29, 2018) (imposing "Attorneys' Eyes Only" provision but allowing "such confidential material [to] . . . be disclosed or made available only to the following persons: (a) counsel of record or other licensed attorneys participating in the litigation; and (b) personnel who are specifically assisting in this litigation, provided that such individuals are not current or former inmates in the Department of Corrections."); *Parrish v. Solis*, No. 11-CV-01438 LKH (NC), ECF No. 90, at 6–7 (N.D. Cal. May 28, 2013) (stating that a receiving party may disclose any information or item designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY" to, among other persons, experts and court and its personnel); *Ellis v. Navarro*, No. C 07-05126 SBA LB, ECF No. 58, at 3(N.D. Cal. Nov. 16, 2011) (stating that "Attorney's Eye Only" material will be disclosed or made available only to counsel for a party, and to the "qualified persons" such as experts, court reports, or any other person about whom the parties in writing agree). Additionally, Plaintiffs' proposed order is consistent with an order that FDC stipulated in a nearly-identical class action suit before U.S. District Judge Robert Hinkle. *See* ECF No. 49-3.

For the reasons provided, this Court concludes that "Attorneys' Eyes Only" provision is not required.

Accordingly,

**IT IS HEREBY ORDERED**:

1.      This Order governs the handling, exchange, disclosure, maintenance, storage, use, and discussion of documents that a party may wish to keep confidential. For purposes of this Order, the word "document" means any written, recorded, or graphic material, and includes information provided in discovery responses such as interrogatories or requests for admission.  The protections conferred by this Order do not cover the following documents: (a) any document that is in the public domain at the time of disclosure to a receiving party or becomes part of the public domain after its disclosure to a receiving party as a result of a publication not involving a violation of this Order, including, but not limited to becoming part of the public record through trial or otherwise; and (b) any document obtained by the receiving party prior to the disclosure or obtained by the receiving party after the disclosure from a source who obtained the document lawfully (such as through a public records request) and who is under no obligation of confidentiality to the producing party.

2.      Each party that designates a document or a portion thereof for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate legal standards. The producing party must designate as Confidential only those parts of documents that qualify so that other portions of the documents for which Confidentiality is not warranted are not swept unjustifiably within the ambit of this Order.

3.    If it is appropriate to designate an entire document as Confidential, the producing party shall prominently mark the document "CONFIDENTIAL" at the bottom of the document and produce it, and all parties shall treat it as Confidential as defined herein, unless and until the Court orders otherwise.

4.    If it is appropriate to designate only a portion of a document as Confidential, the producing party shall clearly identify the specific portions by putting the word "CONFIDENTIAL" in the left or right margin, and making other markings that indicate which portions are being designated without obscuring the content, and produce the document. For these documents (containing only partial designations), the producing party shall not put the word CONFIDENTIAL at the bottom of the document.  If a document has the word CONFIDENTIAL in the left or right margin but does not have the word CONFIDENTIAL at the bottom, the receiving party may assume the remainder of the document is not Confidential and may treat it as such.

5.    For every document or portion thereof that is marked Confidential, the producing party shall include a written statement explaining why it believes there is good cause to deem the document or portion thereof Confidential. If it comes to a producing party's attention that information or items that it marked Confidential do not qualify for protection, that producing party must promptly notify all other parties that it is withdrawing the mistaken designation.

6.    Confidentiality shall not be automatic. If the receiving party disputes the

4

Confidential nature of a document, the receiving party shall notify the producing party in writing of the dispute as to Confidentiality and identify the particular document(s) or portions thereof as to which Confidentiality is in dispute.  The parties shall confer and make a good faith attempt to reach an agreement. If agreement cannot be reached, the producing party seeking Confidentiality shall, within fourteen (14) days from the date of written notification of the dispute as to Confidentiality, file a Motion to Designate Document(s) as Confidential. The time to file such a Motion may be extended by agreement of the parties.  The opposing party shall file a response within seven (7) days. The Court may require an *in camera* inspection of the document that is the subject of the dispute.  If the Court grants the Motion, the parties shall continue to treat the document(s) or portions thereof as Confidential. If the Motion is denied, the document or portion thereof shall no longer be deemed Confidential.

7.　　This Order does not alter the legal standard for determining whether a document will be deemed Confidential. The Court will apply Federal Rule of Civil Procedure 26(c) and any other applicable rules or case law, and the party seeking confidentiality shall bear the burden of persuasion and production.

8.　　This Order does not extend the time for any party to respond to a discovery request or file a document. All discovery responses (including responsive documents) must be served, and all documents must be filed, within the time prescribed by the applicable rules and orders of this Court.  However, the parties shall

cooperate to allow each other the time necessary to evaluate and designate documents accurately to avoid both the disclosure of confidential information or unnecessary designation of non-confidential information.

9.     If a document or portion thereof is designated as Confidential, either by agreement or by Order of this Court, the following rules shall apply:

a.  The parties and their counsel shall keep Confidential documents in strict confidence, shall use Confidential documents only for purposes reasonably connected to this litigation, and shall not share Confidential documents with any third party, except that Confidential documents may be shared with any Qualified Individual under the circumstances described in this Order. For documents with only portions designated as Confidential, these rules only apply to the portions designated as Confidential. Such documents may be shown to any third party, and may be treated as not Confidential, as long as the Confidential portions are redacted.

b.  Qualified Individuals include:

i.  the parties, their attorneys, and employees of their attorneys to whom it is reasonably necessary to disclose the information for this litigation;

ii.  the Court and Court personnel;

iii.  court reporters or videographers who transcribe or record depositions or other testimony in this case;

6

iv.   experts or consultants retained by either party for assistance in the above-captioned case;

v.   mediators;

vi.   translators or interpreters used for depositions or other proceedings;

vii.   deponents in the action to whom disclosure is reasonably necessary;

viii.   a witness or declarant to whom disclosure is reasonably necessary;

ix.   any person who authored or received the document before it was designated as Confidential; and

x.   any other person upon written permission from the party producing the Confidential document.

c.   Notwithstanding anything else in this paragraph or elsewhere in this Order, Confidential documents shall not be disclosed to people currently or formerly incarcerated in the FDC without written permission from the producing party, with the exception of the named Plaintiffs in this case. For the named Plaintiffs in this case, the Plaintiffs' attorneys may discuss the contents of Confidential documents with the named Plaintiffs if reasonably necessary to prosecute this case, but will not give copies of Confidential documents to the named Plaintiffs. No personal or contact information for

employees, agents, or representatives of Defendants will be shared with any person currently or formerly incarcerated in the FDC.

d. All Qualified Individuals who receive Confidential documents shall keep them in strict confidence, shall not disclose them to any other person, and shall use them only for purposes reasonably connected to this litigation. Before Confidential documents are shared with experts, consultants, mediators, deponents, possible witnesses or declarants, translators, or interpreters, such persons shall be given a copy of this Order and shall agree in writing to be bound by its terms by signing the attached Acknowledgment of Confidentiality Order.

e. In a deposition, a party may use, refer to, discuss the contents of, or attach as an exhibit a Confidential document only if the following procedures are followed: The party taking the deposition shall ensure that there is no one present at the deposition who is not authorized to receive Confidential documents. Before the deposition begins, the party taking the deposition shall provide a copy of this Order to the witness, court reporter, and videographer, and shall ensure that each of them signs the Acknowledgement of Confidentiality Order. Before discussing the contents of a Confidential document during the deposition, the party shall state on the record that the document is Confidential. If any party wishes to designate a portion of a deposition transcript as Confidential, that party shall notify all other parties

within seven (7) days of completion of the deposition that the party wishes to review the transcript for the purpose of conducting a Confidentiality review. Within fourteen (14) days after receiving the deposition transcript, the party seeking Confidentiality shall notify all other parties of the desire to designate portions of the transcript (and exhibits thereto) as Confidential, and include the specific pages, lines, and exhibits, along with a written statement explaining why it believes there is good cause to deem the portion of the deposition Confidential. If a party wishes to use a deposition transcript for which the other party has sought a confidentiality review but has not provided notification of the desire to designate portions as Confidential, the party seeking to use the deposition shall so notify the other party, and the party seeking confidentiality shall within fourteen (14) days notify the other party either that no confidentiality is sought or identify the specific pages, lines, and exhibits for which confidentiality is sought along with the written statement described above. The parties may extend these deadlines by agreement. If there is a dispute, the parties shall then follow the dispute procedures set forth in paragraph 6, above. Before the expiration of this time period, the entire deposition will be treated as Confidential.

    f.   If a party wishes to file a Confidential document (including portions of a deposition) with the Court, it must be filed under seal, following the appropriate procedures to do so in the U.S. District Court for the Northern

District of Florida. Documents with only portions designated as Confidential may be publicly filed with the Court as long as the Confidential portions are redacted. If a party wishes to file a motion, pleading, deposition, document, or other filing with the Court that summarizes, quotes, or contains protected material from a Confidential document, the party shall publicly file the motion, pleading, deposition, document, or other filing with the Confidential information redacted, and also file under seal an unredacted version and provide a copy of the unredacted version to the other party. Confidential documents, and unredacted versions of redacted documents filed under this paragraph are hereby designated as documents that may be sealed without an order pursuant to Local Rule 5.5(B).

g. Any party may use Confidential documents at trial or a hearing, including but not limited to introducing them into evidence and asking a witness about their contents. Before a party uses a Confidential document at trial or a hearing, the party must first alert the Court and the opposing party of the intent to use a Confidential document. If a party moves a Confidential document into evidence and wants it to be a part of the record, the Court shall appropriately instruct the Clerk on how to handle such documents.

10.   Any party may request that the Court reconsider a ruling on Confidentiality should new factual or legal developments occur. Further, any party may request modification of this Order to permit further disclosure of Confidential

10

documents, or to otherwise modify this Order, upon a showing of good cause.

11.     This Order does not entitle any party to documents or information to which they would not otherwise be entitled under the Federal Rules of Civil Procedure, applicable discovery rules, and court orders. Nothing in this Order prevents any party from raising any objection to the discoverability, admissibility, relevance, or privileged nature of any document.

12.     Within sixty (60) days of the conclusion of these proceedings, any party who has received Confidential documents shall either return the documents to the producing party or destroy the documents (including all copies). If destroyed, counsel for the destroying party shall send written confirmation to the producing party that the Confidential documents have been destroyed in accordance with this Order. For purposes of this Order, the conclusion of these proceedings shall mean the point at which this litigation is fully concluded, including by settlement or final order by the trial court ending the case; the conclusion of any appeals and proceedings on remand; the expiration of time for any party to seek further appellate review; and/or whenever a period of enforcement, monitoring, or court retention of jurisdiction (whether determined by a settlement agreement or court order) terminates. The conclusion of these proceedings shall be the latest of any of the foregoing dates.

13.     This Order shall continue in effect after the conclusion of these proceedings, and the Court retains jurisdiction to enforce it.

14.     The disclosure of protected health information under the Health Insurance Portability and Accountability Act (HIPAA) and its regulations is addressed by this Court's separate HIPAA Qualified Protective Order. The parties may not designate documents as Confidential because they contain protected health information of current or former Florida Department of Corrections prisoners.

15.     If either party learns that, by inadvertence or otherwise, a Confidential document has been disclosed to any person or in any circumstance not authorized under this Order, the party must, not later than fourteen (14) days after learning of the disclosure: (a) notify in writing the other party of the unauthorized disclosure; (b) if the party is the one who made the unauthorized disclosure, use its best efforts to retrieve all Confidential documents that were improperly disclosed; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (d) request that such person or persons execute the Acknowledgment that is attached hereto.

16.     In the event that additional persons or entities become parties to this litigation, the current parties shall immediately provide a copy of this Order to such persons or entities. The new person or entity shall have ten (10) days from the date they receive this Order to file either: a) a notice indicating they do not object to being bound by this Order, or b) an appropriate motion requesting modification of this Order.  Confidential documents shall not be provided to new persons or entities until

such a notice is filed or the Court rules on such a motion.

**ORDERED on November 5, 2019.**

**s/Mark E. Walker**
**Chief United States District Judge**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

JAC'QUANN (ADMIRE)           )
HARVARD, et al.,             )
                             )
            Plaintiffs,      )
                             )
v.                           )          Case No.: 4:19-cv-00212-MW-CAS
                             )
                             )
MARK S. INCH, et al.,        )
                             )
            Defendants.      )
_____

## ACKNOWLEDGMENT of CONFIDENTIALITY ORDER

I,_____, hereby acknowledge that I have reviewed the Confidentiality Order entered into in the above-captioned case and that I agree to be bound by the Order. I further agree to the following limitations upon the use and disclosure of the Confidential documents which I am being provided:

1.      I will use the Confidential documents solely in connection with the proceedings in the above-entitled case and for no other purpose.

2.      I will not disclose any of the Confidential documents to any other person or entity except as authorized by the Confidentiality Order; and

3.      Upon request, I will immediately return or destroy any Confidential documents (including all copies). If destroyed, I will send a written confirmation to the party producing the document(s) that such documents(s) have been destroyed in accordance with the Order.

I understand and recognize that violation of any of the provisions of this Acknowledgment and the Order may subject me to liability or sanctions including, but not limited to, personal liability for any damages resulting from such violation.

Dated this_____day of_____,_____.


_____          _____
(Print Name)                     (Signature)

# Exhibit 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

        Plaintiffs,

vs.                                                            CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

        Defendants.

_____/

## DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 26(c), Defendants, Mark Inch, in his official capacity as

Secretary of the Florida Department of Corrections, and the Florida Department of

Corrections ("FDC"), hereby request entry of a protective order limiting the

disclosure to only Plaintiffs' counsel of (1) post orders; (2) technical manuals; (3)

video surveillance of correctional facilities; and (4) information related to the correctional institution's physical security, including, but not limited to, cell locations, prison layout, and positioning of officers and cameras.  In support of this Motion, Defendants state:

Rule 26(c) permits that upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005).

**A. Defendants' security and safety concerns establish good cause.**

Defendants seek a protective order limiting the following highly sensitive materials to only be viewed by Plaintiffs' counsel: (1) post orders; (2) technical manuals; (3) video surveillance of correctional facilities; and (4) information regarding cell locations, prison layout, and positioning of officers and cameras. Defendants have legitimate security and safety concerns regarding these highly sensitive materials. The United States Supreme Court has repeatedly recognized the importance of these interests and allowed prison officials great deference in the

administration of prison affairs. In the leading case of *Turner v. Safley*, 482 U.S. 78, 84-85(1987), the Supreme Court stated:

> [C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the Legislative and Executive branches of Government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

*See, e.g.*, *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989) ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world.") (citations omitted). *Turner's* recognition of separation of powers in "'prison officials' management decisions" was reiterated by the Eleventh Circuit in *Prison Legal News v. Secretary, Florida Dept. of Corrections,* 890 F.3d 954, 965 (11th Cir. 2018), in which the circuit court recognized that it does not sit "as a super-warden to second-guess the decisions of the real wardens."   Likewise in *Hoffer v. Inch*, 382 F. Supp. 3d 1288 (N.D. Fla. 2019) *appeal filed*, No.19-11921 (11th Cir. May 16, 2019), this Court recognized that its role was "not to supervise

3

prisons but to enforce the constitutional rights of . . . prisoners." *Id.* at 1299 (quoting *Cruz v. Beto*, 405 U.S. 319, 321(1972)).

Given the great deference allowed to prison officials in prison management, "[f]ederal courts have repeatedly found good cause to limit discovery or disclosure of information implicating the safety and security of prisons and jails." *Shadburne v. Bullitt Cty., Kentucky*, No. 3:17CV-00130-DJH, 2017 WL 6391483, at *3 (W.D. Ky. Dec. 14, 2017) (citations omitted).

The improper disclosure of the materials at issue pose a great threat to safety and security of the correctional institutions involved in this case. *See* Affidavit of Carl Wesley Kirkland Jr., attached as **Exhibit A**. Post orders provide delicate information such as where correctional officers stand and their tasks. Technical manuals describe how to input and change information in correctional facilities' computer systems. Video surveillance shows the layout of a prison, where correctional officers stand, and potential escape routes. Providing inmates access to recordings of surveillance videos would allow them to determine the surveillance and recording capabilities and weaknesses of cameras at locations depicted in the video at issue. Inmates could also determine from the video staff response times, locations from which staff are responding, the length of time it takes to open doors into an area, staffing patterns, and other important security information. Information regarding cell locations gives the location of protected

4

inmates and places their lives at jeopardy. Improper disclosure of these materials will leave a correctional facility vulnerable to security breaches. Given the sensitive nature of these materials, Defendants require additional protection to ensure that the materials and the information contained in them are not disseminated to current and former inmates, relatives of those incarcerated, and the public. These circumstances establish good cause.

Courts have recognized the risks involved in the types of materials at issue falling into the wrong hands and found good cause to enter a protective order in some cases.  In *Perasso v. Washington State Dep't of Corr.*, No. 3:18-CV-05934-BHS-DWC, 2019 WL 2172857, *2 (W.D. Wash. May 20, 2019), the court granted the department of corrections' motion for protective order precluding the inmate from viewing the departments' video surveillance at the time but allowed his counsel to view the surveillance based on security concerns. The court echoed the Defendants' concerns in this case by stating:

> [I]t is "critical that offenders, their cohorts, and visitors not know the capabilities and the limitations of the DOC's surveillance systems" to maintain the secure and orderly operation of a prison. "Providing access to recordings of DOC surveillance videos would allow others to accurately determine which areas are weak or devoid in DOC's ability to capture identities in the aftermath of an incident or crime" and could enable others to study staff movements to identify weaknesses in security. Further, the surveillance videos can be used by: sexual predators to prey on weaker offenders, inmates to assault other offenders, and visitors to uncover new methods to pass contraband. "Surveillance video could also reveal the internal layout and design of a facility ... or of specific security features."

*Id.* (citations omitted). *See, e.g.*, *McCoy v. Heimgartner*, No. 17-3139-JWB, 2018 WL 4334298, at *3 (D. Kan. Sept. 11, 2018) (recognizing security concerns in providing plaintiff with a correctional facility's cell house post orders and security staff post orders); *Butler v. Bessinger*, No. CV 4:16-3662-RMG-TER, 2018 WL 387999, at *2 (D.S.C. Jan. 11, 2018) (granting motion for protective order to preclude plaintiff from obtaining the South Carolina Department of Corrections (SCDC) Use of Force Policy and stating "the public interest weighs in favor of policies which encourage security in prisons"); *Sarnowski v. Peters*, No. 2:16-CV-00176-SU, 2017 WL 4467542, at *6 (D. Or. Oct. 6, 2017) ("[T]he Court has serious confidentiality and safety concerns about requiring defendants to disclose confidential or sensitive information—specifically, the TRCI floor plans and CCTV information. . . ."); *Williams v. Williams*, No. C 07-04464 CW (LB), 2011 WL 863500 (N.D. Cal. Mar. 10, 2011) (granting defendant correctional officer's motion for protective order regarding production of sensitive prison documents, including use of force policy, to plaintiff inmate because of security concerns); *Ulibarri v. City & Cty. of Denver*, No. CIV.A. 07-CV-01814WD, 2009 WL 260945, at *4 (D. Colo. Feb. 4, 2009) (holding that the redacted pages of a jail's policies implicated safety and security concerns and that these pages not be released to the plaintiffs); *Morales v. Woodford*, No. C 06 219 JF RS, 2006 WL 8434981, at *3 (N.D. Cal. May 2, 2006) (entering protective order that allowed the

disclosure of the identities of members of the execution team to inmate's attorneys but not to inmate).

**B. The Confidentiality Order is insufficient.**

The current Confidentiality Order does not adequately protect these materials. *See Sarnowski*, 2017 WL 4467542, at *5 (rejecting argument that all security concerns had been cured because the court had previously entered a protective order). Under paragraph 9.c. of the Confidentiality Order, Plaintiffs' counsel "may discuss the contents of Confidential documents with the named Plaintiffs if reasonably necessary to prosecute this case . . . ." (Doc. 58). There is no reason for counsel to discuss the contents of security measures with current inmates under any circumstances. Counsel cannot have free rein to disclose security information with inmates if counsel believes it is necessary.

Under paragraph 9.b.iv. of the Confidentiality Order, Plaintiffs include "consultants" as qualified persons who could receive access to the most highly restricted documents FDC possesses. There is no restriction on who may act as a consultant. Similarly, "witnesses" and "declarants", again without restriction, are included in the definition of "qualified persons." These overly broad categories of qualified persons place all stakeholders in Florida's penal system at risk for security breaches.

Moreover, merely because Plaintiffs tag someone with the label of "expert" should not automatically allow that person access to the highly sensitive materials at issue.  Currently, Defendants are unaware of the identities of Plaintiffs' expert witnesses and whether they can have access to these most sensitive materials. Defendants cannot "unring the bell" once the information falls into the wrong hands or is disseminated. Courts have imposed restrictions on the disclosure of documents to experts. *See Sony Computer Entm't Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378, 384 (S.D. Fla. 2008) ("[T]o provide a measure of extra protection, prior to disclosure of 'attorneys' eyes only' information to an expert, Plaintiff will be required to identify that expert to Defendant, and Defendant will have the opportunity to lodge an objection to the disclosure to a particular expert if there is a specific reason to do so. The primary purpose of this provision is to ensure that such information is disclosed only to experts who need the information in connection with their expert evaluation."); *see also Montanez v. Wolters*, No. 3:16-CV-1147-NJR-DGW, 2018 WL 5437442, at *3 (S.D. Ill. Oct. 29, 2018) (not including experts or court personnel in list of individuals who were allowed to view "Attorneys' Eyes Only" documents).

Furthermore, "[t]he Florida Constitution and the Public Records Act grant to the people the right to inspect and copy public records . . . ." *Exec. Office of the Governor v. AHF MCO of Fla., Inc.*, 257 So. 3d 612, 615 (Fla.  1st DCA  2018).

8

However, certain information is exempt from public disclosure. Many of the materials at issue fall within this group, indicating their high level of sensitivity. For example, the information contained in post orders, which includes surveillance techniques and personnel, is a security system plan as defined in Florida Statute Section 119.071(3) and thus is confidential and exempt from public records requests. *See* Fla. Stat. § 281.301.

If the highly sensitive materials at issue fell into the wrong hands, people could use this information to assault Department employees, increase the risk of escape of a convicted felon, introduce dangerous contraband and/or otherwise disrupt the orderly and secure operations of a correctional facility, all of which would jeopardize the safety of the public, employees, and inmates/offenders.

**C. The Documents and Materials At Issue**

So far, Plaintiffs have served 385 requests for production, 199 requests for admission, and 43 interrogatories on Defendants. Defendants have been working with Plaintiffs to narrow the scope of discovery sought and to resolve various objections. Defendants have also been working diligently to produce responsive documents to Plaintiffs on a rolling basis, as the documents requested are expansive and require extensive time and resources to review before production.

To date, Defendants have identified the following responsive documents which contain highly sensitive security materials:

1. Portions of audits prepared by the American Correctional Association, which discuss the location/ staffing of correctional officers, prison layout, and other security measures;

2. Video surveillance of certain restrictive housing wings preserved by agreement and communications discussing the same;

3. Technical Manual for Alternative Housing; and

4. Policies regarding the Automated Discipline and Integrated Offender System.

In addition, on December 12, 2019, Plaintiffs filed a Motion to Compel regarding several discovery requests. (Doc. 165-1). There are several requests, which if this Court agrees with Plaintiffs, will call for the production of documents that contain highly sensitive security information. For example, Plaintiffs seek discovery of Defendants' "policies," with "policies" being defined in an overly broad and vague manner. Also, Plaintiffs' definition of "policies" includes post-orders and technical manuals. Defendants have agreed to provide the policies of the FDC, but have objected to Plaintiffs' overly broad and vague definition of policy. *See* Defendants' Response to Plaintiffs' Motion to Compel. (Doc. 83). In addition, Plaintiffs request several documents such as the work schedules for correctional officers that also have a pending objection. *Id.* However, should this Court agree with Plaintiffs and require the production of post-orders, technical

manuals, the work schedules of correctional officers, or other documents containing information regarding cell locations, prison layout, and positioning of officers and cameras, then Defendants request that this Protective Order apply to those documents as well.

Finally, as stated above, Defendants continue to review the hundreds of thousands if not millions of documents requested in this case. Defendants anticipate that they will find additional responsive documents, including e-mail communications, which contain highly sensitive security information. Defendants request that this Protective Order apply to additional documents found during the review process that contain highly sensitive security information, namely information regarding cell locations, prison layout, and positioning of officers and cameras.

WHEREFORE, Defendants respectfully request that this Court grant Defendant's Motion for Entry of a Protective Order to limit the materials at issue to only be viewed by Plaintiffs' counsel and award such other relief as this Court deems appropriate.

## CERTIFICATE OF WORD COUNT

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 2,373 words, excluding the parts exempted by said Local Rule.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

I CERTIFY that I personally communicated with opposing counsel regarding the relief sought herein. Plaintiffs' counsel opposed the motion.

Dated: January 13, 2020                    Respectfully submitted,

                                       / s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
           sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and Florida Department of Corrections**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 13, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will

12

send a notice of electronic filing to the following:  Jennifer Morrissey Painter at

jennifer.painter@floridalegal.org;        Shalini        Goel        Agarwal        at

shalini.agarwal@splcenter.org; Sumayya Saleh at sumayya.saleh@splcenter.org;

Kelly   Jean   Knapp   at   Kelly.knapp@splcenter.org;   Lisa   S.   Graybill   at

lisa.graybill@splcenter.org;        Dante        Pasquale        Trevisani        at

dtrevisani@floridajusticeinstitute.org;        Laura        Anne        Ferro        at

lferro@floridajusticeinstitute.org;    Sam    Thypin-Bermeo    at    sthypin-

bermeo@floridajusticeinstitute.org; Andrea Costello at andrea@floridalegal.org;

Christopher  M.  Jones  at  Christopher@floridalegal.org;  and  Aimee  Lim  at

aimee.lim@floridalegal.org.

<div style="margin-left:45%">

/ s / Nicole Smith

DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
        sduke@rumberger.com
and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550

</div>

13

Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and
Florida Department of Corrections**

14

13018303.1

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

        Plaintiffs,

vs.                                                           CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

        Defendants.
_____/

**DECLARATION OF CARL WESLEY KIRKLAND JR.**

**STATE OF FLORIDA**
**COUNTY OF LEON**

    I, Carl Wesley Kirkland Jr., pursuant to 28 U.S.C. s. 1746, declare under penalty of perjury that the statements made below are true and correct:

1. I am over the age of twenty-one years, and I am competent to testify as to the facts stated in this declaration.

2. I am employed as an Deputy Director of Institutional Operations at the Florida Department of Corrections (hereafter "the Department") located in Tallahassee, Florida.

3. I give this declaration in connection with Defendants' Motion for Protective Order concerning documents containing sensitive safety and security information. I understand that Plaintiffs seek certain documents in this case, which if produced to or conveyed to current inmates or other unknown persons raise security concerns for the Department.

4. The Department is charged with, to the extent possible, maintaining public safety, protection of the law-abiding citizens of the State of Florida, carrying out the laws and protecting the rights of the victims of convicted criminals. To that end, the Department has promulgated rules within Florida Administrative Code, Chapter 33, as well as developed internal procedures, policies, post orders, and training curriculum. These procedures and policies govern the operations of the Department to ensure public safety, the safety of Department personnel, and proper care and supervision of inmates and offenders. Some of the operations outlined in the procedures and policies are sensitive, as they detail information that, if released to the public, would jeopardize the safety of the public, employees of the Department, and inmates/offenders.

5. The Department has always sought protection for its confidential and restricted documents such as the Department's security procedures, training materials and confidential personal information, which are exempt from public record requests and/or confidential under 945.10(1)(e) and (h), Fla. Stat. and 119.071(3)(1)a, Fla. Stat. This type of information includes, but is not limited to: information related to the correctional institution's physical security, including security systems; schematic diagrams; threat assessments; response plans; emergency evacuation plans; sheltering arrangements; information regarding mobilization, deployment, or tactical operations; surveillance techniques; procedures and personnel manuals for security personnel; emergency

equipment; security training; defensive techniques; and the assignments of security personnel, the names of security personnel, the numbers of employees per shift and the types of assignments.

6. The Department has always sought protection for its confidential and restricted security procedures, training materials and confidential personal information, which are exempt from public record requests and/or confidential under 945.10(1)(e) and (h), Fla. Stat. and 119.071(3)(1)a, Fla. Stat. The Department recognizes that there may be a legitimate need for the release of such information due to litigation. The Department has serious concerns regarding inmates and other unauthorized persons having access to such information, even if they are a party to the litigation. Persons could use this information to assault Department employees, affect the escape of a convicted felon, introduce dangerous contraband and/or otherwise disrupt the orderly and secure operations of a correctional facility, all of which would jeopardize the safety of the public, employees, and inmates/offenders.

7. I understand that Plaintiffs have requested a broad scope of documents/information and communications from the Department. I also understand that some of these requests may seek: (1) post orders, (2) technical manuals, (3) video surveillance of correctional institutions, and (4) information regarding cell locations, prison layout, and positioning of correctional officers and cameras. These documents contain the highly sensitive safety and security information mentioned above.

8. For example, post orders outline specific procedures that a correctional officer is required to follow when performing his or her duties and responsibilities. Post orders provide sensitive security information such as where correctional officers are to stand and patrol,

the number of officers in each area, the areas that should be patrolled, and other sensitive security information.

9. Technical manuals include sensitive security information regarding the Department's computer system and how to input and/or change information regarding each inmate. This information, if placed in the wrong hands, would allow a hostile party to affect the management of the institutions and each individual inmate.

10. Video surveillance shows the layout of the intuitions, where correctional officers are stationed and not stationed, blind spots where there are no cameras and no correctional officers, as well as the routes and schedules of the patrol.

11. Further, information regarding cell locations may give the location of inmates in protective management which could put those inmates' lives in jeopardy if this information was disclosed to the wrong party.

12. The foregoing facts are known by me to be true from my personal knowledge. I am competent to testify to such facts and would so testify if I appeared in court at trial of this matter.

I have read the foregoing and declare under penalty of perjury that the foregoing is true and correct.

01/13/2020
Date
        CARL WESLEY KIRKLAND JR.

13028344.1

Exhibit 6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

| | | |
|---|---|---|
| HARVARD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00212-MW-CAS |
| | ) | |
| | ) | |
| MARK S. INCH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR ENTRY OF**
**A PROTECTIVE ORDER (ECF 84)**

Defendants' Motion for Entry of a Protective Order, ECF 84, is a thinly veiled attempt to seek reconsideration of the Court's Confidentiality Order, ECF 58. Rather than present new facts or law, Defendants recycle arguments the Court has already considered and rejected. The Court should not fall for this trap. Even under the "good cause" standard applicable to motions for protective order under Rule 26(c) of the Federal Rules of Civil Procedure, Defendants have not presented a viable basis for relief.

The existing Confidentiality Order strikes the right balance between Plaintiffs' need for discovery and the Florida Department of Corrections' (FDC) need to preserve safety and security. The additional layers of "protection"

Defendants seek through a protective order are unnecessary and will hinder the progress of this case.  The Court already recognized this when it denied Defendants' first request that the Confidentiality Order should include an "Attorneys' Eyes Only" provision.  ECF 51, 58.  The Court should reject Defendants' second attempt to shield from Plaintiffs' use, for any legitimate, practical purpose in litigating this case, a non-exhaustive list of discoverable items; reinforce its prior ruling that the Confidentiality Order governs the exchange of Confidential discovery in this matter; and deny the instant motion.

## **Background**

Plaintiffs bring this case on behalf of a class of approximately 10,000 people incarcerated in the Florida Department of Corrections and challenge FDC's use of isolation.  Recognizing that prison administrators have a legitimate interest in limiting the dissemination of information implicating safety and security, Plaintiffs attempted to negotiate a Confidentiality Order with Defendants Mark Inch and FDC in the early stages of discovery.  ECF 49 at ¶¶ 2, 4.

The Parties did not agree on the contours of such an order.  Defendants wanted to be able to designate an amorphous subcategory of Confidential documents as "Attorneys' Eyes Only," a classification Plaintiffs viewed as overly restrictive, unnecessary, and impractical.  ECF 49 at ¶¶ 5-6.  Plaintiffs therefore moved the Court for entry of a Confidentiality Order and argued against the

"Attorneys' Eyes Only" designation.   ECF 49.  Defendants attempted to convince the Court that an "Attorneys' Eyes Only" subcategory was actually necessary. ECF 51.  The Court was not persuaded.  ECF 58 at 2.  It "adopt[ed] Plaintiff's proposed confidentiality order in toto."  ECF 58 at 1.

Still, Defendants have refused to produce certain categories of discovery under the terms of the Confidentiality Order. [1]  ECF 84 at 9-11.  They now move the Court for a Protective Order, requesting the identical relief they sought with respect to the Confidentiality Order.  ECF 84.

## I.   Defendants' Request is a Meritless Motion for Reconsideration and Should be Denied.

The instant motion is a transparent attempt to relitigate the Court's Confidentiality Order.   The Court should construe it as a motion for reconsideration.  Defendants have not provided any legal basis or new evidence to justify reconsideration or the relief they seek.

A court may reconsider a prior ruling under Rule 59(e) of the Federal Rules of Civil Procedure.[2]  *Estate of Miller ex rel. Miller v. Toyota Motor Corp.*, No. 6:07CV1358ORL-19DAB, 2008 WL 1848357, at *1 (M.D. Fla. Apr. 22, 2008).

---

[1] Defendants identify four categories of documents to which they contend the Court should apply the "Attorneys' Eyes Only" designation, but "anticipate that they will find additional responsive documents, including e-mail communications, which contain highly sensitive security information."  ECF 84 at 2, 10.

[2] Rule 60 offers an alternate avenue for reconsideration, *see Estate of Miller ex. Rel. Miller*, 2008 WL 1848357, at *1, but Defendants do not invoke any of the bases for relief under this rule.  *See* Fed. R. Civ. P. 60(b).

Defendants' motion is untimely under this provision's 28-day time limit and should be denied for that reason alone.  *See* Fed. R. Civ. P. 59(e).

Defendants' motion fails on its merits, too. A motion for reconsideration is not a vehicle to simply reargue an issue the Court has already determined. *American Ass'n of People with Disabilities v. Hood,* 278 F. Supp. 2d 1337, 1340 (M.D. Fla. 2003).  "Court opinions 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'"  *Id.* (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D. Ill. 1988)).  Reconsideration is an extraordinary remedy and, thus, is a power that should be used sparingly.  *Id.* at 1339.

Courts have distilled three major grounds that could justify this extraordinary remedy: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Cover v. Wal–Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citations omitted); *see also Sowell v. GEICO Cas. Ins. Co.*, No. 3:12CV226/MCR/EMT, 2013 WL 11521847, at \*4 (N.D. Fla. Nov. 26, 2013) (applying standard for reconsideration set forth in *Cover* to the plaintiff's motion for reconsideration of protective order).  Defendants have neither alleged nor established any of these grounds.

There has been no change in controlling law.  Defendants' reliance on cases they did not raise when the Court first considered this issue does not satisfy this requirement.[3]  *Id.*

There is no new evidence to justify the extraordinary relief Defendants seek, either.  Defendants attach the declaration of Carl Wesley Kirkland, Jr., FDC's Deputy Director of Institutional Operations, ECF 84-1, but this is not "new evidence" of the nature that would warrant reconsideration.  *See Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994) (rejecting defendants' request for reconsideration on summary judgment because there was no indication that the "new evidence" was not available before defendants filed their initial motion).

The declaration does not shed light on any new developments.  Mr. Kirkland discusses general FDC safety and security concerns regarding the dissemination of Confidential information and emphasizes that FDC "has always" sought protection of such materials.  ECF 84 at ¶¶ 4-6.  He references some of Plaintiffs' specific discovery requests, *id.* at ¶¶ 7-10, but Defendants were on notice of these requests when litigating the Confidentiality Order: Plaintiffs served Defendants with their First Requests for Production on August 13, 2019, and did not file a Motion for Entry of Confidentiality Order until October 2, 2019.  Indeed, the Parties

---

[3] None of these cases post-date Defendants' briefing or the Court's Confidentiality Order.  And as detailed below, the cases Defendants cite do not support their position, anyway.

specifically discussed post orders and technical manuals when litigating the Confidentiality Order.  *See* ECF 49, ¶ 7; ECF 51 at 3.

Finally, Defendants have not alleged that reconsideration is needed to correct a clear error or manifest injustice.  Nor could they.  *See Reeves Constr. Co. v. Hayward Industries, Inc.*, No. 5:16-CV-329 (LJA), 2017 WL 9516560, at *1 (M.D. Ga. May 30, 2017) (finding that no manifest injustice occurs when a motion for reconsideration is based on previously rejected arguments).  In addition, as Plaintiffs demonstrated, and the Court considered, FDC has agreed to similar Confidentiality Orders without an "Attorneys' Eyes Only" designation in the past. ECF 49 at 6-7; ECF 58 at 2.  There is no evidence that the agreements in these cases led to assault, escape, contraband, or disruption to "the orderly and secure operations of a correctional facility."  ECF 84 at 9.

Defendants' motion is merely an alarmist request that the Court rewrite its Confidentiality Order.  This request should be denied.

## II.   Defendants Have Not Demonstrated Good Cause to Justify a Protective Order.

Even if the Court were to construe Defendants' motion as properly filed under Rule 26(c) of the Federal Rules of Civil Procedure, the motion should be denied.  On a showing of "good cause," a court may enter a protective order to protect a party from "from annoyance, embarrassment, oppression, or undue

burden or expense."  Fed. R. Civ. P. 26(c).  This requires the court to balance between one party's interest in gaining access and the other's in keeping information confidential.  *Chicago Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001).  Defendants have not demonstrated good cause for the relief they seek.

Defendants assert that they have "legitimate safety and security concerns." ECF 84 at 2.  They cite *Turner v. Safley*, 482 U.S. 78 (1987), and related cases for the proposition that the Court should afford FDC great deference in the administration of prison affairs.  *Id.* at 2-3.  But as this Court has recognized, "this deference is not absolute."  ECF 82 at 2.  When weighing interests in federal litigation, a court is not required to rubber stamp every request prison officials make under the guise of safety and security.  Instead, a court enjoys "broad discretion" in doing so.  *Id.*  This is the type of discretion the Court exercised when entering the Confidentiality Order after considering, and rejecting, the same arguments Defendants make again here.  ECF 58.

Defendants have set forth neither facts nor law establishing good cause for the Court to allow them to use an unworkable "Attorneys' Eyes Only" designation to manage discovery in this case.  Plaintiffs do not dispute that FDC has legitimate safety and security concerns regarding the dissemination of highly sensitive information.   But Mr. Kirkland's declaration does not demonstrate that

extraordinary interests are at play here, requiring a burdensome, unnecessary, and convoluted process that restricts Plaintiffs' ability to meaningfully use an amorphous but potentially large body of discovery.  Instead, he describes concerns that militate against granting the general public access to sensitive information. ECF 84-1.  That is not the issue here.

What's more, Defendants' position regarding the highly sensitive nature of the materials they identify in their motion is incongruous with their past actions. For example, Defendants have previously disclosed to Plaintiffs in response to public records requests technical manuals related to the use of isolation.  *See* Ex. A;[4]  *see also Ellis v. City of Anniston, Ala.*, 289 F.R.D. 352, 357 (N.D. Ala. 2013) (denying a motion for a protective order for videos and diagrams of a jail because anyone who is detained in the jail sees it).

The authority Defendants rely on does not support their overreaching request.[5]  Several of the cases involve protective orders to prevent incarcerated plaintiffs from receiving discovery that implicated safety and security concerns— something the current Confidentiality Order already ensures.  *See, e.g., Perasso v.*

---

[4] Defendants have produced both redacted and unredacted technical manuals.  In recognition of FDC's legitimate safety and security concerns, Plaintiffs have not included an unredacted one as an exhibit.

[5] When litigating the parameters of the Confidentiality Order, Defendants presented the Court with a different litany of cases to support their request for an "Attorneys' Eyes Only" designation. ECF 51 at 4-7.  As the Court recognized, they were inapposite. ECF 58 at 1-2.  The cases Defendants cite at present are not materially distinguishable from the first batch of unpersuasive cases that they relied on.

8

*Wa. State Dep't of Corr.*, No. 3:18-CV-05934-BHS-DWC, 2019 WL 2172857, at *2 (W.D. Wash. May 20, 2019) (entering protective order that allowed plaintiff's counsel and staff to review prison video surveillance but prohibited incarcerated plaintiff from viewing the video); *Butler v. Bessinger*, No. CV 4:16-3662-RMG-TER, 2018 WL 387999, at *1-2 (D.S.C. Jan. 11, 2018) (finding good cause that *pro se* incarcerated plaintiff should not have access to a use-of-force policy that was minimally relevant to his claims); *McCoy v. Heimgartner*, No. 17-3139-JWB, 2018 WL 4334298, at *3 (D. Kan. Sep. 11, 2018) (denying defendant's motion for protective order for failing to establish good cause but recognizing there were security concerns in providing a *pro se* plaintiff certain confidential documents).

Defendants' citations to other cases are, at best, misleading. In *Williams v. Williams*, No. C 07-04464 CW (LB), 2011 WL 863500, at *4 (N.D. Cal. Mar. 10, 2011), the court agreed to allow a *pro se* incarcerated plaintiff to receive the prison's use-of-force policy once the plaintiff signed a confidentiality agreement, finding the agreement was enough to protect against the dissemination of confidential information to other incarcerated people. In *Sarnowski v. Peters*, No. 2:16-CV-00176-SU, 2017 WL 4467542, at *6 (D. Or. Oct. 6, 2017), the court's ruling was based on safety and security concerns specific to plaintiff's counsel who had, in an unrelated case, lost a thumb drive with surveillance video footage from the prison. The court found that a protective order, under unique circumstances

involving prior misconduct by counsel, did not allay confidentiality and security concerns.  *Id.*; *see also Ulibarri v. City & Cty. of Denver*, No. CIV.A. 07-CV-01814-WDM-MJW, 2009 WL 260945, at *4 (D. Colo. Feb. 4, 2009) (excluding certain documents from disclosure where defendants had established that the Official Information Privilege applied).

**III.     The Confidentiality Order strikes the right balance between Plaintiffs' right to discovery and FDC's safety and security concerns.**

On balance, the competing interests tip in Plaintiffs' favor.  *See Chicago Tribune Co.*, 263 F.3d at 1313.  Despite Defendants' concern, the Confidentiality Order is sufficient to address safety and security concerns as to the discovery necessary to prosecute this case.  The Court has already determined that its terms protect against the dissemination of highly sensitive information to incarcerated people, their relatives, and the public, which appears to be the crux of Defendants' concerns.  ECF 58 at ¶ 9; ECF 84 at 5.  Defendants have not demonstrated, nor is there any reason to believe, that the categories of information identified in their Motion for Protective Order are somehow more likely to "fall[] into the wrong hands," ECF 84 at 8, or "place all stakeholders in Florida's penal system at risk for security breaches," ECF 84 at 7, necessitating extra protection.[6]  *See Baxter v. Fla.*

---

[6] Defendants argue that information contained in post orders is confidential and exempt under Section 119.071(3) of the Florida's Public Records Act.  ECF 84 at 8-9.  Significantly, this subsection has a carveout for the disclosure of confidential information on a showing of good cause—the exemption is not absolute.  § 119.071(3)(a)3.d.  In addition, the potential applicability of a statutory exemption is not reason enough to restrict disclosure when there is a

*Dep't of Corr.*, No. 5:09cv213/RS/EMT, 2010 WL 11520202, at *2 (holding that the burden for a protective order "requires a particular and specific demonstration of fact; conclusory statements are not sufficient.")

Conversely, an "Attorneys' Eyes Only" designation will effectively shield from Plaintiffs, for any practical purpose, an indeterminate amount of discovery. Plaintiffs anticipate that the discovery Defendants are concerned about—post orders, technical manuals, and video surveillance footage—will prove highly relevant to their claims. But the utility of this information quickly diminishes if Plaintiffs cannot rely on it for any purpose at any stage of the case without jumping through unnecessary, arbitrary hoops dictated by Defendants, if at all.

Expert testimony in this case is essential, but Plaintiffs' experts cannot reach informed opinions without access to discovery. Similarly, Plaintiffs are entitled to use relevant evidence at a deposition, hearing, or trial. And contrary to what Defendants assert, there are in fact circumstances that may require Plaintiffs' counsel to discuss some of the contents of, for example, post orders, with Plaintiffs. Plaintiffs are the experts in their own experiences and best positioned to corroborate whether correctional officers follow proper protocol regarding isolation.

---

Confidentiality Order in place. *See Dukes v. Miami-Dade County*, No. 05-22665-CIV, 2007 WL 3342793, at *1 (S.D. Fla. Nov. 9, 2007).

11

Defendants assume bad faith on the part of Plaintiffs' counsel, when there is no basis for them to do so.  ECF 84 at 7-8.  Plaintiffs' attorneys have substantial experience litigating cases involving correctional institutions and recognize the importance of safeguarding sensitive security information.  Counsel will disclose only as much Confidential information to Plaintiffs as necessary.  They will not arbitrarily "tag" someone a witness or a declarant or an expert.

The Court has already ruled on the issue raised in Defendants' Motion for Protective Order.  It entered a narrowly tailored Confidentiality Order that balances between the Parties' competing interests.  For reasons Defendants do not satisfactorily explain in their motion, they refuse to follow its terms.  At its core, their motion is not based on articulable facts or law, but on speculative fears.  This is not good cause.  *See Baxter*, 2010 WL 11520202 at *2.  The Court should reject Defendants' invitation to alter its prior ruling and deny the instant motion.

                                        Respectfully Submitted,

Dated: January 19, 2020          */s Sumayya Saleh*
                                 Sumayya Saleh
                                 Fla. Bar No. 119372
                                 Shalini Goel Agarwal
                                 Fla. Bar No. 90843
                                 Southern Poverty Law Center
                                 106 East College Ave., #1010
                                 Tallahassee, FL 32302
                                 Telephone: (850) 521-3024
                                 sumayya.saleh@splcenter.org

12

shalini.agarwal@splcenter.org

Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org

Lisa Graybill*
Texas Bar No. 24054454
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro

13

Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**

**Local Rule 7.1(F) Certificate**

Under Rule 7.1(F) of the Local Rules of the Northern District of Florida,

undersigned counsel certifies that this motion contains 2,691 words.

*/s Sumayya Saleh*
Sumayya Saleh

14

**EXHIBIT A TO PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR ENTRY OF
<u>A PROTECTIVE ORDER (ECF 84)</u>**

Technical Manual Produced by FDC
in Response to Plaintiffs' Public Records Request (PRR 18-820)

# TECHNICAL MANUAL

## Florida Department of Corrections

Bureau of Classification Management

## Alternative Housing



**Date of Issue:** May 2016

**Last Revision Date:** February 2017

# RESTRICTED DOCUMENT

This document is restricted and must not be distributed to any non-departmental employee without authorization from the Bureau of Classification Management. Refer requests for copies of this document to Classification Services.

For further information or assistance regarding the contents of this technical manual, please contact:

**Classification Services**

**850-717-3563**

# Revision History

**First Edition- May 2016**

**Updated- February 2017**

## Table of Contents

Introduction...............................................................................................Page 3

Concept....................................................................................................Page 4

Goals.......................................................................................................Page 5

Eligibility...................................................................................................Page 5

Guidelines for the OBIS Application...........................................................Page 6

Disciplinary Hearing.................................................................................Page 6

███████████ Screens.............................................................Page 9

Monitoring................................................................................................Page 10

Weekly Reviews.......................................................................................Page 10

Housing....................................................................................................Page 10

Staffing....................................................................................................Page 10

Restrictions..............................................................................................Page 10

Tracking...................................................................................................Page 11

Daily Schedule and Rules........................................................................Page 11

Alternative Housing Technical Manual

## Introduction

*For several decades, prisons in the United States have increasingly relied on the use of segregation to manage difficult populations in their overcrowded systems and the FDC is no exception. According to the U.S. Department of Justice's Bureau of Justice Statistics, the number of people in restricted housing units nationwide increased from 57,591 in 1995 to 81,622 in 2005. Evidence-based research shows that holding people in isolation with minimal human contact for extended periods of time is exceptionally expensive and in many cases counterproductive as long-term segregation can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people, have negative outcomes for institutional safety, and increase the risk of recidivism after release. Therefore the FDC is establishing ways to transition its current practices concerning long-term segregation into viable alternatives that can maintain the same or similar amount of control and effectiveness while simultaneously reducing the overall number of inmates who fall into the category of "long-term" segregation status. When a determination is made that an inmate must be segregated from the general population, that inmate should be housed in safe, humane conditions that, ideally, prepare the inmate for reintegration into both the general prison population and society at large. For this purpose, "Long-Term" is considered more than **60** consecutive days in a segregated/isolated status.*

Alternative Housing Technical Manual

# The Alternative Housing Concept

The FDC currently supervises the third largest prison population in the United States with an average daily count of approximately 100,000 inmates. The challenges inherent in effectively managing this type of population with the limited resources that are available along with the constantly evolving nature of corrections as a whole present numerous obstacles that must be overcome. One element that has always been an issue of high priority is the management of populations through the use of segregation units that are designed to provide an additional level of control for inmates who have shown an inability or unwillingness to function within the parameters of a general population setting; thereby creating an environment that has a negative impact on a Facility's daily operations.

Historically, when an inmate's behavior rose to a level that resulted in formal disciplinary action being taken, they would either be placed in administrative confinement (A/C) or receive a walking disciplinary report pending the disposition of the disciplinary investigative and hearing process.  If the decision was to find the inmate guilty, the punitive process resulted in either placement in disciplinary confinement (D/C) or in the general population with one or more other restrictions being imposed. Statistically, a large majority of the inmates who receive a finding of guilt are placed in D/C as part of the Disciplinary Hearing Team's disposition.

The alternative housing concept is being introduced in an effort to provide an intermediate level of impunity for certain prohibited actions that need to be addressed but should not necessarily result in automatic placement in D/C status when found guilty by the Hearing Team. Inmates in this status will be housed together in a designated area within an existing general population secure-cell environment but will be subjected to a more restrictive level of supervision, which will be explained in detail further in this manual. *As with many other facets of the correctional landscape, it should be stressed that this information is intended to be used as a guide, and should not completely supplant sound judgment and professional experience as elements of this or any other decision making process.*

# Goals of Alternative Housing

- Develop additional punitive actions that are more proportionate to the inmate's prohibited action.
- Reduce the amount of time spent in-cell while in this status.
- Incentivize good behavior.
- Reduce the amount of "critical incidents" in segregation units.
- Develop and maintain metrics that accurately capture the results of this initiative as it relates to the overall impact of the amount of inmates who are in a full-time disciplinary status as well as other disciplinary-related measures at specific intervals throughout this process.
- Create a substantial overall decrease in the amount of inmates whose disciplinary status is considered long-term in nature.

# Eligibility

As is currently the practice with other disciplinary-based statuses, consideration for alternate housing will be at the sole discretion of the Disciplinary Hearing Team. In addition, this option will also be available for the Disciplinary Hearing Officer to utilize in cases where the particular disciplinary report meets the definition of a designated minor DR as outlined in F.A.C. 33-601.306.

*The Disciplinary Hearing Team or the Hearing Officer should make their decision based upon the totality of the circumstances that precluded the infraction receiving a formal disciplinary report, and should also continue to exercise sound correctional judgment when determining the punitive portion of this process.*

Alternative Housing Technical Manual

# Guidelines for the OBIS Application

A new code has been created for use in all applicable facets of the CDC that will be affected by the Alternative Housing initiative. "███" will be used to identify inmates who are in an alternative housing status and will also be used to designate the ██████ of the ████ that have been allocated for this purpose by Population Management.

## ADIOS (Automated Discipline and Integrated Offender System)

When a determination is made by the Disciplinary Hearing Team/Hearing Officer that alternative housing is the appropriate punitive action for an inmate's finding of guilt, the current ████ subsystem will continue to be used when entering the findings. "███" will be entered in the ████████ column when an inmate is sentenced to alternate housing, and logic has been developed that programmatically creates an ████ at the ██████ of the screen if the decision is made ███ to █████ "██" (Cashless Canteen restrictions) and/or "██" (Used to designate Phone Privilege restrictions) as well. The ██████ key shall be used to ███████ this alert, and justification be provided in the ██████████ section if this is the decision that is made. As is the case when ██ is entered, an inmate's visitation will programmatically be suspended for the duration of an inmate's AH status as well.

Alternative Housing Technical Manual



(███ *when* █ *and* █ *are not entered)*

Alternative Housing Technical Manual



Alternative Housing Technical Manual

███████████████ **Screens**

As stated earlier, Population Management has designated "██" as the ████████ for inmates who are assigned to an alternative housing status and has also created a new ████████ with the ████ code. As with existing programmatic controls that are in place in the ████████ system, if an attempt is made to house an inmate with an ████ status in a bed that ████████ have an ████████ or an attempt is made to house an inmate who has an ████████ with an inmate who has any ████████, a ████████ will be generated. In addition, the ████ ████████ option will not work for the following ████████ – █ ████████ & ████████ *and* ████████.

*(Example of* ████ *and* ████████ *)*

███████████████████████████████████████████

## Monitoring

A new ███████ has been created to assist with monitoring inmates who are in an AH status. It is █████████████, and it mirrors the look of the existing ███████ This should be provided to the security staff who supervise the AH inmates daily, as well as any other key Staff who would need it to assist with maintaining supervision, i.e., Internal Gate Staff, Job Supervisors, etc.

## Weekly Reviews

In addition to daily monitoring, a weekly review will be conducted by the Classification Supervisor or designee along with the Alternative Housing Supervisor to determine each inmate's behavioral progress while in this status. This review should be conducted in the presence of the inmate. The goal shall be toward returning an inmate to the open population as soon as the facts of the case indicate that this can be done safely. These reviews can also result in a recommendation that telephone, canteen, or visitation privileges be reinstated, if applicable.

# Implementation

## Housing

A portion of a secure cell housing unit will be utilized for this purpose, and based upon the ████ ███████ and other █████████████ specific to each institution, alternative housing may be established in an entire quad/wing or it may be split with an existing general population setting.

## Staffing

A minimum of ██████████████████ will be assigned to the dorms at all times if a GP Secure Cell Dorm is utilized and ████████████████ will be assigned to the dorms at all times if a dedicated Confinement or Hybrid Secure Cell Dorm is utilized.

## Restrictions

Inmates who are assigned to this status will have their canteen and telephone privileges suspended throughout this duration, unless the Hearing Team/Officer does not impose these sanctions or a recommendation is made as a result of the weekly review to re-instate one or both privileges. Inmates in Alternative Housing are considered to be in a special status. As such their visitation privileges will be consistent with Chapter 33-601.713 F.A.C. and 33-601.733 F.A.C. while in

this status, and they will also not be eligible for any additional out-of-cell activities that are not explicitly authorized in the daily schedule. Visitation can be approved by the Warden in the form of a Special Visit based on recommendations made from the weekly review.

# Tracking

The DC6-209, Housing Unit Log will be used to capture any movement or activity that affects the entire group, i.e. **Work or Program movement, Feeding, Showers**, etc.

# Daily Schedule and Rules

*Because each institution is unique in one or more ways, it is understood that the schedules and rules will be subject to many varying factors. Therefore the following information is provided for use as a framework for further development specific to your institutional needs –*

## Schedule

*Monday thru Friday (Approximately 11 hours in-cell per day)*

- Lights on/wake up time(this would be the same time as general population inmates)

- Morning meal

- Morning count

- Morning work call, program assignment, or scheduled appointments

- Noon meal

- Afternoon/Evening work call, program assignment, or scheduled appointments.

- Evening meal

- Report to the dorm as a group and take showers

- Evening lock down (approximately 5:30pm)

***Weekends and Holidays*** *(Approximately **20** hours in-cell per day)*

*This schedule will require the presence of the housing supervisor during the movements in order to ensure that they are conducted in a controlled manner.*

- Morning meal

- Morning lock down

- Noon meal

- Noon lock down

- Evening meal

- Showers

- Evening lock down

## Rules



Alternative
Confinement Rules.dc



Exhibit 7

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


HARVARD, *et al.*,                )
                                  )
            Plaintiffs,           )
                                  )
v.                                )        Case No.: 4:19-cv-00212-MW-CAS
                                  )
                                  )
MARK S. INCH, *et al.*,           )
                                  )
            Defendants.           )
_____

**PLAINTIFFS' MOTION TO COMPEL
FIRST REQUESTS FOR PRODUCTION FROM DEFENDANTS MARK
INCH AND FLORIDA DEPARTMENT OF CORRECTIONS AND
RESPONSES FROM DEFENDANT FLORIDA DEPARTMENT OF
CORRECTIONS TO INTERROGATORIES BY PLAINTIFF HARVARD
<u>WITH INCORPORATED MEMORANDUM OF LAW</u>**


Plaintiffs, by and through undersigned counsel, and under Federal Rule of

Civil Procedure 37 and Local Rule 26.1 of the Northern District of Florida, hereby

move for an order: compelling Defendant Inch and Defendant FDC (collectively,

Defendants) to produce requested documents to Plaintiff's First Requests for

Production; compelling Defendant Florida Department of Corrections (FDC) to

respond to Plaintiff Harvard's First set of Interrogatories; overruling Defendants'

objections; setting deadlines for production; and awarding reasonable fees and

1

costs because Defendants' objections are not substantially justified.  In support of

this Motion,[1] Plaintiffs state as follows:

## Factual Background

1.      Plaintiffs challenge Defendants' statewide policy and practice of

isolating people, alone or with a cellmate, for an average of 22 hours or more per

day in cells smaller than the average parking space.  ECF 13 ¶¶ 57-59.  They allege

that through the use of isolation, Defendants deprive Plaintiffs and the class

members of basic human needs—normal human contact, environmental

stimulation, and exercise—and subject them to oppressive security measures.  ECF

13 ¶¶ 59, 83, 84.  Plaintiffs contend that the cumulative effect of these conditions

exposes them and class members to a substantial risk of harm in violation of the

Eighth and Fourteenth Amendments.  ECF 13 ¶¶ 59, 177.  Plaintiffs also allege

that Defendants discriminate against people with disabilities in their use of

isolation.  ECF 13 ¶¶ 151-159.

2.      Plaintiffs served their First Request for Production of Documents

(RFPs) on Defendants Inch and FDC on August 13, 2019.  After Plaintiffs granted

---

[1] This motion is divided into two sections.  In the first, Plaintiffs address the overarching legal issues that form the bases of Defendants' objections.  In the second, Plaintiffs delineate each of the disputed requests and set out the reasons discovery should be compelled, in accordance with Rule 26.1 of the Local Rules.

them an extension, Defendants responded with objections on October 11, 2019.

Defendants requested, and Plaintiffs agreed to, an extension until October 23,

2019, to produce documents not objected to.  Defendants produced a very limited

number of the requested documents to Plaintiffs on October 24 and 25, 2019.

3.     On August 28, 2019, Plaintiff Harvard served her First Set of

Interrogatories on Defendant FDC.  Defendant FDC responded to the

interrogatories on October 14, 2019, objecting in part.

4.     On October 31, 2019, Plaintiffs sent Defendants a meet-and-confer

letter, in which they addressed each of Defendants' objections to producing

discovery and provided legal support for their positions regarding the requested

discovery.  On November 12, 2019, Plaintiffs and Defendants met and conferred

regarding Defendants' discovery responses.

5.     Based on the meet and confer and several subsequent

communications, it is clear that Defendants continue to misunderstand this case.

ECF 54 at 15 (Order Denying Motion to Dismiss) ("Defendants' argument is

premised on a fundamental misunderstanding of Plaintiffs' claims.").  They believe

the case is solely a facial challenge to written policies that originate from

Defendants' headquarters in Tallahassee.  That is not the case that Plaintiffs have

pleaded.

6.      Defendants' refusal to provide relevant documents is primarily based on three objections: 1) Information from specific facilities, including about isolation policies and practices at those facilities, and about individual people is not relevant; 2) Plaintiffs are entitled to only two years or less of information, not the five years they have requested for certain information, because they are solely seeking injunctive relief; and 3) Defendants cannot produce "sensitive safety and security information" because the Confidentiality Order entered by this Court (ECF 58) is insufficient.  An order by this Court regarding these three objections will facilitate discovery for nearly all the contested discovery requests.

7.      In addition, in response to two requests (RFPs 62 and 63), Defendants assert the "self-critical analysis privilege" to shield documents that may prove their knowledge of a substantial risk of serious harm—an essential element of Plaintiffs' deliberate indifference claim.  Also, although it is unclear to what extent Defendants are withholding documents based on these objections, Defendants assert that nearly all of Plaintiffs' requests are "vague, ambiguous, overly broad and burdensome."

## I.    MEMORANDUM

Under Rule 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Plaintiffs' "broad right of discovery is based on the general

4

principle that "litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (citation omitted).  As detailed below, Defendants' overarching objections lack merit and impermissibly impede Plaintiffs' access to information that is highly relevant to their quest for the truth in this case.

## A. Discovery about specific institutions and individuals is relevant to the claims and defenses at issue in this case.

Essentially, Defendants' position is that Plaintiffs are not entitled to any information or documents concerning any person, or anything that has happened, at Defendants' various prisons.  Specifically, they refuse to provide any discovery about the creation or "implementation of policy at the institution level and on an inmate-by-inmate basis" because they regard that information as irrelevant.[2]  This includes refusing to produce discovery regarding written policies that apply only at specific prisons.[3]  These objections appear to be based, at least in part, on Defendants' belief that this case is only a facial challenge to official written

---

[2] Defendants make this objection or a closely related objection in response to the following contested RFPs to Inch: 27, 29, 31, 33, 35, 37, 46, 48, 49, 51, 84-89, 92, 93, 95, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117.  Defendants make a closely related objection to the following contested Interrogatories to FDC: 15 and 16.

[3] Although Defendants do not make a relevance objection to each request seeking "policies," they make a general relevance objection to "policies" that are only in effect at certain institutions in their "Objections to Instructions and Definitions."  For that reason, Plaintiffs explain the relevance of each request for "policies" in Section II.

policies promulgated by FDC's top leadership.  It is not.  Contrary to Defendants' assertions, this discovery goes to the heart of this case.

Plaintiffs bring a claim under 42 U.S.C. § 1983, alleging that Defendants, through various written and unwritten policies that are pervasive in prisons throughout the state, implement an overarching policy and practice of isolating people in such a way that deprives them of their rights.  *See, e.g.*, ECF 13 ¶¶ 57, 59, 82, 116, 120, 176-181.  Section 1983 applies to deprivations of rights caused by "statute, ordinance, regulation, *custom*, or usage, of any State."  § 1983 (emphasis added).  Section 1983 claims may challenge practices, and not just formal policies, because "[a] custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy."  *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003). For that reason, Plaintiffs are entitled to discover more than just formal written policies from Tallahassee to support their Section 1983 claim.  *See, e.g.*, *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1158 (M.D. Ala. 2016) (finding that § 1983 liability could properly rest on policies and practices of the Alabama Department of Corrections, *and* the policies and practices of individual prisons).

Plaintiffs allege that Defendants subject people in isolation to a substantial risk of serious harm and disability discrimination through their isolation policies and practices.  They do not make these allegations in a vacuum.  Defendants

implement their isolation policies and practices through individual staff at specific

prisons in such a way that affects individual people.  Plaintiffs are entitled to

evidence of *how* staff implement the policy and practice at specific prisons and

*how* such implementation subjects individual people to a risk of harm or

discrimination.  As recognized by the Eleventh Circuit, "[r]elevant discovery in

this case would necessarily include facts related to other [incarcerated people]

because [t]o establish a policy or custom, it is generally necessary to show a

persistent and wide-spread practice."  *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059,

1064 n. 7 (11th Cir. 2013); *see also Parsons v. Ryan*, 289 F.R.D. 513, 521 (D.

Ariz. 2013) ("A policy, practice, or custom may be inferred from widespread

practices or evidence of repeated constitutional violations for which the errant

officials are not reprimanded.")

For example, Plaintiffs allege that Defendants implement a statewide policy

of depriving people of exercise by allowing them only a few hours a week, at most,

of exercise in a cage.  ECF 13 ¶¶ 108-112.  But they also allege that Defendants do

not have enough exercise cages for everyone in isolation and fail to rotate people

to ensure everyone receives the meager exercise time allotted under the Florida

Administrative Code.  ECF 13 ¶ 111.  To support their claims, Plaintiffs need

discovery regarding any policy at, for example, Florida State Prison, that directs

staff how to manage exercise time given the shortage of cages, and correctional

7

records that show whether individual people at Florida State Prison did in fact receive exercise time.  Plaintiffs sought this information in RFPs 34 and 35 to Inch, but Defendants refuse to provide it under their narrow definition of what is relevant in this case.[4]

As a defense to Plaintiffs' claims, Defendants assert, "Liability cannot be predicated upon an isolated act or incident."  ECF 62 § VIII, ¶ 8.  Indeed, the Court has already made clear that Plaintiffs' claims are not about "separate and distinct incidences."  ECF 54 at 34.  In short, Plaintiffs should have access to discovery at the institutional and individual level, including policies from specific prisons, to demonstrate a pattern of conduct that is pervasive and widespread.

**B. The timeframe Plaintiffs requested for discovery responses is reasonable given the claims and defenses in this case.**

Though Plaintiffs asked for discovery dating back to January 1, 2015, for some requests and interrogatories,[5] Defendants unilaterally limited many of their responses to one year and, in some cases, two years, before the filing of the

---

[4] Defendants also refuse to provide highly relevant information, based on this narrow definition, regarding treatment units that could serve as an alternative to isolation for people with psychiatric and intellectual disabilities in response to RFP 77 to Inch and Harvard's Interrogatories 7 and 8 to FDC.

[5] Plaintiffs request documents from January 1, 2015, until the present for the following contested requests: RFPs to Inch 12-26, 28, 30, 32, 34, 36, 38, 42, 43, 45, 47-49, 52-63, 68-76, 78, 84-89, 94-97, 99, 104, 107-117; RFPs to FDC 1-5, 7; Harvard's Interrogatories to FDC 7, 8, 16.

Complaint.[6]  They attempt to shield past information from discovery on the theory that because Plaintiffs seek injunctive relief, only current information is relevant. The opposite is true.

In their Eighth Amendment claim, Plaintiffs allege that Defendants were deliberately indifferent to a substantial risk of serious harm.  ECF 13 ¶¶ 124-143, 180.  To prove deliberate indifference, Plaintiffs must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010).  The subjective knowledge prong may turn on circumstances that suggest a defendant-official's knowledge of a "longstanding" substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 842-43 (1994).  In cases seeking injunctive relief "to prevent a substantial risk of serious injury from ripening into actual harm, . . . the irreparable-injury requirement may be satisfied by demonstrating a history of past misconduct, which gives rise to an inference that future injury is imminent." *Thomas*, 614 F.3d at 1318 (citing *Farmer*, 511 U.S. at 842–43).

---

[6] Unless otherwise specified in the requests, Plaintiffs initially requested discovery from January 1, 2014, through the present.  Defendants responded that they would only provide discovery dating back to one year before the Complaint.  Plaintiffs then offered to modify the request to January 1, 2015. Defendants offered to provide certain policies for this time period.  But for other requests, Defendants offered to go back two years instead of one, which, for reasons described below, is still patently insufficient.  Despite Plaintiffs' attempt to negotiate this issue in good faith, the parties have reached an impasse.

Consistent with these principles, this Court has allowed Eighth Amendment plaintiffs to discover facts developed years before they filed their complaints.  For example, in *Hoffer v. Jones*, a case filed in 2017, the Court granted the plaintiffs' motion to compel materials from 2013 to 2016 that they alleged were relevant to their deliberate indifference claims.  *See* Plaintiffs' Motion to Compel at 7-8, *Hoffer v. Jones*, No. 4:17-cv-00214-MW-CAS, ECF 150 (N.D. Fla. Nov. 13, 2017); *Hoffer v. Jones*, No. 4:17-cv-00214-MW-CAS, ECF 174, slip op. at 2 (N.D. Fla. Dec. 6, 2017).  *See also McPherson v. Fla. Dep't of Corr.*, No. 4:19-cv-156-MW-CA, ECF 73, slip op. at 2-3 (N.D. Fla. Oct. 9, 2019) (granting a motion to produce discovery for documents created between 2013 and 2016 for an Eighth Amendment, ADA, and Section 504 case filed in 2019).

Plaintiffs' decision to request information dating back to January 1, 2015, is not arbitrary.  Rather, it is crafted to lead to the discovery of admissible evidence based on information Plaintiffs gathered through public records requests.  For example, in 2015, Defendants participated in a national survey of state prison systems regarding their use of isolation, including the number of people in isolation, the number of people in isolation with a serious mental health issue, and the number of people who had been in isolation for at least three months.  Ex. A.[7]

---

[7] Defendants have not produced this document although it is responsive to, for example, RFPs 107, 111, 112, 113, 114, 115 to Inch.

The survey results, which Defendants reviewed, described the risk of harm from isolation and indicated that Defendants isolate people at twice the national average. ECF 13 ¶ 127.

Shortly afterward, Defendants began an "Analysis of Segregation Processes" to "look at the Department's close management, administrative and disciplinary segregation statuses and the processes used to place, monitor and release inmates from these statuses."  Ex. B[8] at 3.  As part of this analysis, Defendants extensively reviewed the necessity of isolating people for lengthy periods of time and the stark conditions under which they are held, and made recommendations for changes to their isolation practices—in other words, the *exact* issues at the core of this case. Documents related to this process contain admissions that are highly relevant to Plaintiffs' claims of deliberate indifference, including Defendants' admission that "long-term segregation can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people, have negative outcomes for institutional safety, and increase the risk of recidivism after release."  Ex. C. at 1. Discovery before, during, and after this analysis will demonstrate not only whether Defendants knew of a substantial risk of serious harm, but also whether they implemented adequate measures to address the risk.

---

[8] Defendants have refused to produce this document although it is responsive to, for example, RFPs 62, 107, and 111 to Inch.

Evidence of Defendants' past conduct is especially important given the defenses raised in their Answer, ECF 62.  They claim that the violations Plaintiffs allege, if they exist, are moot because they "have been or will have been remedied before the time that this action is finally adjudicated."  ECF 62 § VIII, ¶¶ 17, 27.  But under the doctrine of voluntary cessation, "longstanding practice" cuts against a finding of mootness.  *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1185 (11th Cir. 2007).  If the illegal practices cease, evidence from years before Plaintiffs filed suit will be necessary to challenge Defendants' mootness defense.

### C. Defendants are improperly withholding discovery based on unspecified "confidentiality, safety, and security" concerns.

Defendants improperly refuse to produce discovery due to "confidentiality, safety, and security issues."[9]  Specifically, in response to a number of requests, they object to Plaintiffs' definition of "policies" because "the definition includes safety and security-sensitive materials, including but not limited to technical manuals, post orders, and other security security-related materials that are highly-confidential [sic] in nature."  In response to other requests, Defendants object to producing certain documents that they allege are exempt from disclosure under

---

[9] Defendants object to RFPs 12-15, 22-24, 35-37, 46-49, 53-55, and 136 to Inch based upon the confidentiality, safety and security issues raised in the general objections to "policies."  In response to RFPs 107-17 and 124-34 to Inch, and RFPs 1-7 to FDC, Defendants object to producing documents they allege are exempt from disclosure under Florida's public records laws.

Sections 945.10 and 119.071 of the Florida Statutes "without an order/agreement governing confidentiality."

There is no apparent justification for Defendants' refusal to produce such discovery on this basis.  As an initial matter, the Court entered a Confidentiality Order, ECF 58, after Defendants raised these objections.  Defendants have refused to withdraw this objection, or specifically identify all the requests for which they continue to withhold documents based on this objection, after the Court entered this Order.  They maintain this position even though the Order is designed to guard against the improper dissemination of sensitive safety and security information.  Defendants' refusal to abide by the terms of this Order appears to be an attempt to relitigate their request for an extraordinarily limited "Attorneys' Eyes Only" designation, which the Court expressly declined to enter.  *See* ECF 58 at 1-2.

Additionally, Defendants have not asserted any legal privilege that may exempt such documents from disclosure.  Indeed, there is no such thing as a blanket "safety and security privilege" in the federal common law, the United States Constitution, a federal statute, or the federal rules.  *See* Fed. R. Evid. 501.  Plaintiffs also note that public records exemptions have no bearing on Plaintiffs' discovery requests, as the existence of a statutory exemption is not "a basis for failing to provide documents requested through discovery in a federal lawsuit."  *Yili Tseng v. Fla. A&M Univ.*, No. 4:08CV91-SPM/WCS, 2008 WL 11337646, at

*3 (N.D. Fla. Dec. 3, 2008).  *See also Delaurentos v. Peguero*, 47 So. 3d 879, 881

(Fla. 3d. DCA 2010) (public record act "provision does not create a privilege

which would insulate such records from discovery in litigation.")

**D. Defendants improperly assert the self-critical analysis privilege.**

Defendants improperly object to RFPs 62 and 63 to Inch based on the "self-

critical analysis privilege."  Defendants have not provided a privilege log

describing the nature of these documents as required by Rule 26(b)(5), so it is

unclear to what extent that they are withholding documents on this basis.  Even so,

the Eleventh Circuit has yet to recognize this privilege, also known as the "peer

review privilege," and expressly rejected it in federal civil rights cases.  *Adkins v.*

*Christie*, 488 F.3d 1324, 1329 (11th Cir. 2007).  In fact, the "overwhelming

majority of decisions" both in and outside of the Eleventh Circuit have rejected the

self-critical analysis privilege in any context.  *Burrow v. Forhas Taurus S.A.*, 334

F. Supp. 3d 1222, 1232-33 (S.D. Fla. 2018); *Jenkins v. DeKalb County*, 242 F.R.D.

652, 659 (N.D. Ga. 2007) ("It appears that every United States Court of Appeals

that addressed the issue of whether there is a federal medical peer review privilege

has rejected the claim.").

Defendants' documents related to the harms, effects, or impact of isolation

are critical to Plaintiffs' claims that Defendants knew of a substantial risk of

serious harm and failed to take reasonable measures to address it.  Defendants

14

cannot use this privilege as a shield to prevent Plaintiffs from obtaining this crucial evidence. *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 193 (1990) (denying a peer review privilege because "if there is a 'smoking gun' to be found that demonstrates discrimination … it is likely to be tucked away in peer review files"); *Adkins*, 488 F. 3d at 1329 (finding that the peer review privilege did not apply because the documents were "critical" to the plaintiff's discrimination claims); *see also Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005) (rejecting peer review privilege in the prison context because "it is peculiarly important that the public have access to the assessment by peers of the care provided").

Plaintiffs acknowledge that some courts within the Eleventh Circuit, including the Northern District of Florida, have applied the self-critical analysis privilege. *See, e.g.*, *Reichhold Chemicals, Inc. v. Textron*, Inc., 157 F.R.D. 522, 527 (N.D. Fla. 1994); *Reid v. Lockheed Martin Aeronautics Co.*, 199 F.R.D. 379, 385 (N.D. Ga. 2001). But *Reichhold*, for example, is not a federal civil rights case and did not involve an Eighth Amendment claim that required the plaintiff to prove deliberate indifference. And both *Reichhold* and *Reid* were decided before the Eleventh Circuit, in *Adkins*, rejected the self-critical analysis privilege in civil rights cases. As such, the rule in *Adkins* must take precedence. Moreover, the *Reichhold* court required "that no document should be privileged unless it was prepared with the expectation that it would be keep [sic] confidential, and it has in

fact been kept confidential." *Id.* at 527.  Plaintiffs have received countless documents through public records requests from Defendants that they believe would be responsive to these requests.  *See, e.g.*, Ex B.  In other words, Defendants have not kept such documents confidential and cannot assert the self-critical analysis privilege to shield them from production.

**E. Defendants' boilerplate objections are meritless and should be rejected.**

Defendants object to nearly every request as "vague, ambiguous, overly broad and burdensome."  These boilerplate objections are "strongly disfavored." N.D. Fla. Loc. R. 26.1(c); *see also Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-CV-69-ORL-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011) (finding that boilerplate objections "are, by themselves, meaningless, and are deemed without merit") (citing *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007)).

Defendants' objections about vagueness and ambiguity are baseless because Plaintiffs have clearly defined the terms in each request, including, for example, "policies."[10]  Also, Defendants have previously produced documents in response to

---

[10] "POLICY" or "POLICIES" refers to written or formal policies, interim policy documents, procedures, rules, regulations, protocols, technical manuals, post orders, guidelines, directives, orders, instructions, bulletins, training materials, memoranda, practices, customs, and usages, including those that may not have been officially approved, reduced to writing, or otherwise formalized.  It includes policies that are in effect throughout FDC or at one or more FACILITIES.

public records requests that used the same or similar terms.  Defendants identified, for example, a list of "Procedures Related to Close Management," Ex. D., in response to a public records request seeking policies and procedures regarding "placement, retention, management, and/or release of prisoners in close management," which is nearly identical to RFP 15.  And yet, Defendants have not produced many of these procedures.

Defendants have also not explained, with the required specificity, why Plaintiffs' requests are overly broad or burdensome.  At most, they have identified a certain number of responsive documents to a limited number of requests.  *See, e.g.*, RFPs 98 and 99.  Even for these requests, however, they have not alleged that compliance will cause great labor and expense.  And even if it did, this fact would not of itself excuse compliance with a discovery request.  *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005); § 2214 Motion for Order Compelling Inspection, 8B Fed. Prac. & Proc. Civ. § 2214 (3d ed.).  It is Defendants' burden to specifically explain how each request is burdensome or overbroad, which they have failed to do.  *Lane*, 242 F.R.D. at 670 ("[T]he objecting party must do more than simply intone the familiar litany that the interrogatories are burdensome, oppressive or overly broad.") (internal punctuation and citations omitted).

In toto, Defendants' objections are not substantially justified.  And so, under Fed. R. Civ. P. 37(a), Plaintiffs request reasonable attorneys' fees and costs incurred in relation to this Motion to Compel.  *Devaney v. Continental American Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. 1993) (finding that Rule 37 was "toughened … to mandate that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified").

In the section below, Plaintiffs explain why the Court should compel discovery as to each request.

## II.   <u>CONTESTED REQUESTS</u>

<u>**Plaintiffs' First Request for Production to Inch:**</u>

> **<u>RFP 12</u>**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Disciplinary Confinement.
>
> **<u>DEFENDANT'S RESPONSE</u>**: See F.A.C. 33-601.800. …[11] Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that the conditions in Disciplinary Confinement subject people to a substantial risk of serious harm (*see, e.g.*, ECF 13 ¶¶ 75, 78, 79, 102-103, 106), and that Defendants

---

[11] Plaintiffs have replaced Defendants' withdrawn objections with ellipses (…).

fail to modify their policies and procedures to ensure that people with disabilities are not placed in Disciplinary Confinement because of their disabilities (ECF 13 ¶¶ 152). Defendants' policies and practices related to Disciplinary Confinement are specifically at issue in this case. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 13**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Administrative Confinement
>
> **DEFENDANT'S RESPONSE**: … Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "Policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that the conditions in Administrative Confinement subject people to a substantial risk of serious harm (ECF 13 ¶¶ 75, 77, 102-103, 108), and that Defendants fail to modify their policies and procedures to ensure that people with disabilities are not placed in Administrative Confinement because of their disabilities (ECF 13 ¶¶ 152). Defendants' policies and practices related to Administrative Confinement are specifically at issue in this case. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 14**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Maximum Management.

**DEFENDANT'S RESPONSE**: … Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "Policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that the conditions in Maximum Management subject people to a substantial risk of serious harm (*see, e.g.*, ECF 13 ¶¶ 75, 81, 102-103, 106) and that Defendants fail to modify their policies and procedures to ensure that people with disabilities are not placed in Maximum Management because of their disabilities (ECF 13 ¶¶ 152). Defendants' policies and practices related to Maximum Management are specifically at issue in this case.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 15**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Close Management.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800.  FDC will produce blanks of the following forms referenced in the Rule:   DC6-233C, DC6-265, DC6-128, DC6-229, DC6-229B, DC6-221, DC4-643A, DC4-729, DC6-220, DC6-228, DC6-209, NI1-046.   FDC will also produce Procedures 601.211, 601.219, 601.220, 601.223, 602.013,602.018, 602.028, 602.036, 602.043, 602.047, 602.051 and 602.053.  Otherwise, Defendants object based upon the confidentiality, safety and security issues raised in the general objections to "Policies" and Defendants' Response to Plaintiffs' Motion for Entry of Confidentiality Order. Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that the conditions in Close Management subject people to a substantial risk of serious

harm (*see, e.g.*, ECF 13 ¶¶ 75, 80, 102-103), and that Defendants fail to modify their policies and procedures to ensure that people with disabilities are not placed in Close Management because of their disabilities (ECF 13 ¶¶ 152).  Defendants' policies and practices related to Close Management are specifically at issue in this case.  Although Defendants have agreed to produce certain procedures promulgated in Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 16**: ALL POLICIES RELATED TO HYGIENE ITEMS for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of hygiene items in isolation.  ECF 13 ¶¶ 82, 120, 148.  Plaintiffs further allege that this policy and practice, combined with other deprivations, subjects people to a substantial risk of serious harm.  ECF 13 ¶ 75, 82.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 17**: ALL POLICIES RELATED TO tablet computers for PRISONERS in ISOLATION.

**DEFENDAN'T RESPONSE**: See F.A.C. 33-601.800. FDC will produce documents regarding the Interim Tablet and Kiosk Procedure and JPay Inc. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including tablets, forcing them into idleness.  ECF 13 ¶¶ 100, 102.  Plaintiffs further allege that this policy and practice, combined with other deprivations, subjects people to a substantial risk of serious harm in isolation.  ECF 13 ¶¶ 75, 82.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 18:** ALL POLICIES RELATED TO radios AND batteries for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. FDC will produce Procedure 602.047. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including access to radios and batteries for the radios, forcing them into idleness.  ECF 13 ¶¶ 100, 102. Plaintiffs further allege that this policy and practice, combined with other deprivations, subjects people to a substantial risk of serious harm in isolation.  ECF 13 ¶¶ 75, 82.  Although Defendants have agreed to produce one procedure promulgated in Tallahassee, they are refusing to produce "policies," as defined by

Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 19:** ALL POLICIES RELATED TO PROPERTY RESTRICTION in all FACILITIES.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 602.018 and 602.047. … Defendants also object on the basis of proportionality and relevance because not "all FACILITIES" are at issue in this case. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants have a policy and practice known as "property restriction," where they remove all property in people's cells, including their clothes and bedding, for a period of 72 hours or longer. ECF 13 ¶ ¶ 82, 120-121. Plaintiffs further allege that this policy and practice, combined with other deprivations, subjects people to a substantial risk of serious harm. ECF 13 ¶¶ 75, 82, 122. Although Defendants have agreed to produce certain procedures promulgated in Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 21**: ALL POLICIES RELATED TO the operation and functioning of plumbing in ISOLATION, including but not limited to the flushing of toilets.

23

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of the ability to control plumbing, such as flushing their toilets in their cells, in isolation.  ECF 13 ¶ 89.  Plaintiffs further allege that this policy and practice, combined with other conditions in isolation, subjects people to a substantial risk of serious harm.  ECF ¶¶ 75, 82.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 22**: ALL POLICIES RELATED TO the operation of lighting in ISOLATION, including schedules for turning lights off AND on inside cells.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of the ability to control lighting in their cells in isolation.  ECF 13 ¶ 88.  Plaintiffs further allege that this policy and practice, combined with other conditions in isolation, subjects people to a substantial risk of serious harm.  ECF ¶¶ 75, 82.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

24

**RFP 23**: ALL POLICIES RELATED TO canteen services for PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 204.005, 602.018 and 602.047. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security- sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of canteen items in isolation.  ECF 13 ¶ 82.  Plaintiffs further allege that this policy and practice, combined with other deprivations, subjects people to a substantial risk of serious harm.  ECF 13 ¶¶ 75, 82.  Although Defendants have agreed to produce certain procedures promulgated in Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 24**: ALL POLICIES RELATED TO meal delivery for PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 204.002, 401.009 and 503.006.  … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants fail to modify their meal delivery services to accommodate people with diabetes in isolation who require Defendants to appropriately time their meal

25

deliveries with their insulin injections.  ECF 13 ¶¶ 44, 156.  Plaintiffs further allege

that people in isolation must eat their meals on their beds or the floors of their

cells, which, combined with other conditions in isolation, subject people to a

substantial risk of serious harm.  ECF 13 ¶ 89.  Although Defendants have agreed

to produce certain procedures promulgated in Tallahassee, they are refusing to

produce "policies," as defined by Plaintiffs, responsive to this request from specific

prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this

request is overly broad and burdensome.

> **RFP 25:** ALL POLICIES RELATED TO programming for PRISONERS in
> ISOLATION, including but not limited to "Anger Management" and
> "Thinking for a Change."
>
> **DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. FDC will produce
> Procedure 504.001 and documents for programs regarding anger
> management and "Thinking for a Change." … Defendants further object that
> "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and
> burdensome.

This request seeks relevant information because Plaintiffs allege that

Defendants deprive people of environmental stimulation, including meaningful

rehabilitative programs, in isolation.  ECF 13 ¶¶ 100, 147.  Plaintiffs further allege

that this policy and practice, combined with other deprivations, subjects people to a

substantial risk of serious harm.  ECF 13 ¶ 75.  Although Defendants have agreed

to produce one procedure promulgated in Tallahassee, they are refusing to produce

"policies," as defined by Plaintiffs, responsive to this request from specific prisons.

Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 26:** ALL POLICIES RELATED TO any academic education and adult education for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800.   FDC will produce Procedures 501.106, 501.201, 502.001 and 504.001 and other documents regarding academic and adult education.  … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including education services, in isolation (ECF 13 ¶ 105, 106), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). Plaintiffs further allege that there is no legitimate penological purpose for depriving people of education services while in isolation.  ECF 13 ¶ 148.  In response to Plaintiff Harvard's Interrogatory 5 to FDC, Defendants allege that they do in fact provide education services to people in isolation. This request will gather specific facts to support or refute the parties' allegations.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

27

**RFP 27:** ALL DOCUMENTS that report or describe the dates, days of the week, OR times that academic education AND adult education were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." D.E. 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that adult education was scheduled or provided to individual inmates is not relevant to the claims being asserted.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including education services, in isolation (ECF 13 ¶ 105, 106), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). In response to Plaintiff Harvard's Interrogatory 5 to FDC, Defendants allege that they do in fact provide education services to people in isolation. This request will gather specific facts to support or refute the parties' allegations.

**RFP 28**: ALL POLICIES RELATED TO vocational education for PRISONERS in ISOLATION.

**DEFENDANTS' RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 501.106. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including vocational programming, in isolation (ECF 13 ¶ 106), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 29**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that vocational education was scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that vocational education was scheduled or provided to individual inmates is not relevant to the claims being asserted.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including vocational programming, in isolation (ECF 13 ¶ 106), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).

> **RFP 30**: ALL POLICIES RELATED TO chaplain services for PRISONERS in ISOLATION.
>
> **DEFENDANTS' RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 503.002. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including religious services, in isolation (ECF 13 ¶ 104), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 31**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that chaplain services were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that chaplain services were scheduled or provided to individual inmates is not relevant to the claims being asserted.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including religious services, in isolation (ECF 13 ¶ 104), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  This request is also reasonably calculated to lead to admissible evidence regarding whether Defendants follow their written policies that require, for example, a chaplain to make weekly visits to people in Close Management.  F.A.C. Rule 33-601.800(15)(f).

**RFP 32**:  ALL POLICIES RELATED TO library services for PRISONERS in ISOLATION.

**DEFENDANTS' RESPONSE:** See F.A.C. 33-601.800. FDC will produce Procedures 501.301, 501.303, 501.304, 501.305 and 501.310. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including reading

materials, in isolation (ECF 13 ¶ 103), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce policies responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 33**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that library services were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANTS' RESPONSE**: Defendants objects to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that library services were scheduled or provided to individual inmates is not relevant to the claims being asserted.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including reading materials, in isolation (ECF 13 ¶ 103), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  This request is also reasonably calculated to lead to admissible evidence regarding whether

Defendants follow their written policies that, for example, allow people in Administrative Confinement to check out no more than one book each week. F.A.C. Rule 33-602.220(5)(o).

> **RFP 34**: ALL POLICIES RELATED TO recreation for PRISONERS in ISOLATION.
>
> **DEFENDANTS' RESPONSE:** See F.A.C. 33-601.800. FDC will produce Procedure 602.051. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of exercise in isolation (ECF 13 ¶¶ 108–112), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 35:** ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that recreation was scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

33

**DEFENDANTS' RESPONSE:** Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that recreation was scheduled or provided to individual inmates is not relevant to the claims being asserted. … Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of exercise in isolation (ECF 13 ¶¶ 108–112), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).   This request is also reasonably calculated to lead to admissible evidence regarding whether Defendants follow their written policies that require them to, for example, provide outdoor recreation for two hours once every 30 days for the first 60 days someone is in Maximum Management.  F.A.C. 33-601.820(5)(c).

**RFP 36**:  ALL POLICIES RELATED TO job assignments for PRISONERS in ISOLATION.

**DEFENDANTS' RESPONSE**:  See F.A.C. 33-601.800. FDC will produce Procedure 601.805. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including prison jobs, in isolation (ECF 13 ¶ 102), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75).  Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 37:** ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that PRISONERS in ISOLATION were scheduled for job assignments from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that work assignments were scheduled or provided to individual inmates is not relevant to the claims being asserted. … Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

This request seeks relevant information because Plaintiffs allege that Defendants deprive people of environmental stimulation, including prison jobs, in isolation (ECF 13 ¶ 102), which, combined with other deprivations, subjects people to a substantial risk of serious harm (ECF 13 ¶ 75). This request is also reasonably calculated to lead to admissible evidence regarding whether and to what extent Defendants follow their written policies that, for example, allow certain people assigned to Close Management to have work assignments. F.A.C. 33-601.800(13).

> **RFP 38 TO INCH**: ALL POLICIES RELATED TO orderly services for PRISONERS in ISOLATION.
>
> **DEFENDANTS' RESPONSE**: Defendants cannot determine if "orderly services" is intended to cover something other than "job assignments;" however, there is no separate policy regarding orderly services. Therefore, *see* Response to Request for Production No. 36.
>
> **REVISED[12] RFP 38 TO INCH**: All POLICIES RELATED TO "inmate assistants," as referenced in Defendants' response to Interrogatory 6 to FDC.

This request seeks relevant information because Plaintiffs allege that Defendants fail to accommodate people with disabilities in isolation by failing to provide assistance to complete their daily activities. ECF 13 ¶ 157. Defendants indicated in their response to Plaintiff Harvard's Interrogatory 6 to FDC that part of their training to staff about providing services to people with disabilities in

---

[12] During the parties' negotiations regarding Plaintiffs' discovery requests, Plaintiffs modified a number of RFPs in an effort to address some of Defendants' objections. For all such requests, Plaintiffs have included the original request and the revised request.

isolation includes the "process for training, utilizing, and evaluating inmate assistants."  Plaintiffs need the requested policies to determine whether Defendants attempt to provide assistance with daily activities for people in isolation through the use of "inmate assistants."

> **RFP 39 TO INCH**: ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that orderly services were scheduled or provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **RESPONSE**: Defendants cannot determine if "orderly services" is intended to cover something other than "job assignments;" however, there is no separate policy regarding orderly services.  Therefore, *see* Response to Request for Production No. 37.

> **REVISED RFP 39 TO INCH**: ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that inmate assistants were scheduled to provide or provided to services to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

This request, in tandem with RFP 38, is reasonably calculated to lead to admissible evidence regarding whether "inmate assistants" have in fact provided services to people with disabilities in isolation such as assistance with their daily activities.

> **RFP 42**: ALL DOCUMENTS provided to the Association of State Correctional Administrators RELATED TO ISOLATION.

**DEFENDANTS' RESPONSE**: FDC will produce reports prepared by the Association of State Correctional Administrators, which reference documents relied upon by ASCA. Otherwise, Defendants object that each and every document provided by FDC to ASCA is not relevant to the claims in this lawsuit, and it is disproportionate to the needs of this case to require FDC to search for and provide such documents. … Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

The requested documents are relevant because Plaintiffs allege that Defendants chose to participate in a 2015 survey, and then refused to participate in a 2017 survey, performed by the Association of State Correctional Administrators regarding isolation. ECF 13 ¶ 127. The 2015 survey report revealed that FDC uses isolation at twice the national rate and both the 2015 and 2017 survey reports "specifically describe the harms of isolation." ECF 13 ¶ 127. This request is reasonably calculated to lead to admissible evidence regarding Defendants' isolation policies and practices and their knowledge of the substantial risk of serious harm from isolation. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 43:** ALL DOCUMENTS provided to the American Correctional Association RELATED TO ISOLATION.

**DEFENDANTS' RESPONSE:** FDC will produce audit reports prepared by the American Correctional Association, which reference documents relied upon by ACA. Otherwise, Defendants object that each and every document provided by FDC to ACA is not relevant to the claims in this lawsuit, and it is disproportionate to the needs of this case to require FDC to search for and provide such documents. … Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

38

The requested documents are relevant because Plaintiffs allege that the American Correctional Association (ACA) has notified Defendants that the size of their isolation cells and their recreation policies violate ACA standards.  ECF 13 ¶ 108-109.  Plaintiffs further allege that Defendants have made admissions to ACA regarding the inadequacies of their recreation policies but have failed to take actions they repeatedly told the ACA they would take to address these inadequacies.  ECF 13 ¶ 141.  These documents are directly relevant to Plaintiffs' deliberate indifference claim.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 45 TO INCH**: All audits, reports, evaluations, OR studies authored by the American Correctional Association RELATED TO FDC.
>
> **DEFENDANTS' RESPONSE**: FDC will produce audit reports prepared by the American Correctional Association. Otherwise, Defendants object that each and every audit, report, evaluation and study prepared by ACA is not relevant to the claims in this lawsuit, and the request is therefore disproportionate to the needs of this case. … Defendants further objects that "All audits, reports, evaluations, OR studies" "RELATED TO FDC" is vague, ambiguous, overly broad and burdensome.
>
> **REVISED RFP 45 TO INCH**: All audits, reports, evaluations, OR studies authored by the American Correctional Association RELATED TO FDC and that comment on, describe, or refer to ISOLATION, "restrictive housing," OR "segregation."

This request seeks relevant information for the same reasons described for RFP 43.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 46 TO INCH**: All Incident Reports RELATED TO PRISONERS in ISOLATION from February 2, 2019, through the present.

**DEFENDANTS' RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "[a]ll Incident Reports RELATED TO PRISONERS in ISOLATION" is not relevant to the claims being asserted. … Defendant also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object on the basis that this request will require a manual review of each facility's incident reports to determine the nature and relevance of the particular incident, which is unduly burdensome and not proportional to the needs of this case.

**REVISED RFP 46 TO INCH**: All Incident Reports about incidents that occurred in ISOLATION from February 1, 2019, through the present.

FDC Procedure 602.008 requires staff to complete incident reports for "unusual occurrences" that could include "an accident involving possible injury to a person …, a suspicious action or occurrence, or other circumstance which could impact agency operations."  This request is therefore reasonably calculated to lead to admissible evidence regarding the substantial risk of serious harm for people in isolation, including self-injurious behaviors and medical emergencies.

**RFP 47:** ALL POLICIES RELATED TO correctional STAFFING levels, assignments, and schedules in ISOLATION.

**DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "correctional STAFFING levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own post charts, daily rosters and other documents that are institution-specific. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Plaintiffs allege that "correctional staffing is insufficient to safely provide critical safety and security operations," and as a result FDC does not consistently provide essential services such as "showers, security checks, out-of-cell exercise, dayroom time, and healthcare to people in isolation."  ECF 13 ¶ 140.  This request is reasonably calculated to lead to the discovery of admissible evidence of, for example, whether correctional staff are sufficiently available to provide critical safety and security operations that may prevent harm from isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 48:** ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF.

> **DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800. FDC will produce Procedures 208.017, 208.018, 208.019, 208.020, 208.022, 208.063, 208.064

41

and 209.001.  … Defendants further object that "ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance evaluation, and discipline of correctional staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

The requested policies are relevant because Plaintiffs allege that Defendants do not hire enough correctional staff "to safely provide critical safety and security operations" in isolation.  ECF 13 ¶ 140.  Plaintiffs further allege that Defendants fail to follow their own written policies, in part because of staff misconduct, which intensifies the deprivations people experience in isolation.  ECF 13 ¶¶ 82, 103, 113, 123.  This request is reasonably calculated to lead to the discovery of admissible evidence of whether Defendants appropriately try to prevent and respond to such misconduct.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 49:** ALL POLICIES RELATED TO training for correctional STAFF in ISOLATION.

**DEFENDANT'S RESPONSE:** See F.A.C. 33-601.800.  FDC will produce Procedures 208.064, 209.001, 209.002, 209.003, 209.004 and 209.101. … Defendants further object that "ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The training of correctional staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to training for correctional staff in isolation are relevant to show, for example, whether correctional staff are appropriately trained to accommodate people with disabilities in isolation, recognize and appropriately respond to the risk or suicide, and prevent the psychological and physical health consequences of isolation.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 51:** All work schedules for correctional STAFF who provided services in ISOLATION from January 1, 2018, through the present.

**DEFENDANT'S RESPONSE:** Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably

calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for work schedules is not relevant to the claims being asserted. …

**REVISED RFP 51:** All Daily Security Rosters from each day and each shift at FACILTIES whether there is ISOLATION during the time period of November 1, 2018, through the present.

Daily Security Rosters list the correctional staff, including their job titles, available during each shift to provide security operations.  Daily Security Rosters are relevant, in tandem with other staffing-related documents requested in RFPs 47-50, to determine which staff are available, trained, and expected to provide critical safety and security operations that may prevent a risk of harm to persons subject to isolation.

**RFP 52 TO INCH**: ALL POLICIES RELATED TO any FDC Alternative Housing Program OR Alternative Housing Pilot Program.

**DEFENDANTS' RESPONSE**: … Further, Defendants object that "ALL POLICIES RELATED TO any" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. …

Plaintiffs have reviewed public records indicating that Defendants implemented an alternative housing program to reduce the number of people, and the duration of time that people spend, in Disciplinary Confinement.  The requested policies are therefore reasonably calculated to lead to admissible

44

evidence regarding Defendants' knowledge of a substantial risk of serious harm

from isolation.  These policies may also demonstrate that it is not unduly

burdensome for them to modify their isolation policies and practices.  Plaintiffs'

request is clear and Defendants have failed to explain why this request is overly

broad and burdensome.

> **RFP 53**: ALL POLICIES RELATED to the "Automated Discipline and Integrated Offender System".
>
> **DEFENDANTS' RESPONSE**: Defendants object on the basis that the request seeks safety and security-sensitive materials that are highly-confidential in nature and not relevant to the claims in this case. Defendants further object that "ALL POLICIES" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. …

Based on public records, Plaintiffs believe the Automated Disciplinary and

Integrated Offender System (ADIOS) is a computer program or system that

contains information regarding the reasons people are placed in isolation and the

duration of time people spend in isolation.  Defendants produced, through a public

records request, a redacted version of the Technical Manual referenced in RFP 54

that recommends that FDC implement an automated system to reduce the number

of people in isolation, which may be the ADIOS system.  This request is

reasonably calculated to lead to the discovery of admissible evidence regarding

whether FDC followed this recommendation, i.e., took reasonable measures to

address a known risk of harm.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 54**: ALL DOCUMENTS entitled, "Technical Manual, Florida Department of Corrections, Bureau of Classification Management, Alternative Housing", including all drafts, version, and editions.
>
> **RESPONSE**:  Defendants object on the basis that the request seeks safety and security-sensitive materials that are highly-confidential in nature and not relevant to the claims in this case.  Defendants further object that "ALL DOCUMENTS" "including all drafts, versions, and editions" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. …

Defendants have already produced various redacted drafts and versions of this Technical Manual in response to a public records request.  The unredacted portions include admissions such as, "Evidence-based research shows that holding people in isolation with minimal contact for extended periods of time is exceptionally expensive and in many cases counterproductive as long-term segregation can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people, have negative outcomes for institutional safety, and increase the risk of recidivism after release."  This document is therefore highly relevant, at a minimum, to show Defendants' knowledge of a substantial risk of harm and whether there is an undue burden to implementing alternatives to isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

46

**RFP 55**: ALL DOCUMENTS attached to OR referenced in the DOCUMENTS requested in No. 54, including a Microsoft Word DOCUMENT with the file name "Alternative Confinement Rules".

**RESPONSE**: See Response to Request for Production No. 54.

This request seeks relevant information for the same reasons described for RFP 54. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 56**: ALL POLICIES RELATED TO any pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in isolation.

**DEFENDANTS' RESPONSE**: FDC will produce those documents previously produced by FDC in response to Plaintiffs' public record request asking for these same documents. Otherwise, Defendants object that "ALL POLICIES RELATED TO any" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants further object to producing documents regarding any program that is not in effect as this is an action for injunctive relief, and FDC's programs that are no longer in effect are not relevant to any issue asserted in this case.

Plaintiffs have reviewed public records indicating that Defendants may have implemented one or more programs to reduce the number of people, and the duration of time that people spend, in isolation. These documents are relevant to show any reasonable measures Defendants have taken to address a known risk of harm. In their Answer, Defendants assert that "they are not obligated to make any changes sought by Plaintiffs that would result in a fundamental alteration in the nature of Defendants' services, programs, or activities" and that "Defendant is not obligated to make any changes sought by Plaintiffs that would result in undue

burden or hardship upon FDC." ECF 62 § VIII, ¶ 19. The requested policies may lead to admissible evidence regarding any such fundamental alteration or undue burden related to changes to Defendants' isolation policies and practices. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 57**: ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANTS' RESPONSE**: See Response to No. 56. Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on pilot projects or programs" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.

The requested documents are relevant for the same reasons described for RFP 56. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 60**: ALL POLICIES RELATED TO any programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANTS' RESPONSE**: FDC will produce documents regarding such program(s). … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

48

Defendants assert in response to Plaintiff Harvard's Interrogatory 5 to FDC that they have implemented "step-down measures … to assist inmates with transitioning back into the general population."  This request is reasonably calculated to lead to admissible evidence regarding Defendants' knowledge of a known risk of harm, any actions they have taken to address that risk, and whether changes to Defendants' isolation policies and practices impose an undue burden or would be fundamental alterations.

> **RFP 61:** ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANT'S RESPONSE:** See Response to No. 60. … Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on programs" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.

The requested documents are relevant for the same reasons described for RFP 60.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 62:** ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on the harms, effects, OR impact of ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper  records.

**DEFENDANT'S RESPONSE:** FDC has produced documents in response to more specific requests. … Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on" and "harms, effects, OR impact" are vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants also object on the grounds that certain discovery may be protected by the self-critical analysis privilege.

Defendants' documents related to the harms, effects, or impact of isolation are critical to Plaintiffs' claims that Defendants' knew of a substantial risk of serious harm and failed to take reasonable measures to address it. ECF 13 ¶¶ 124-43. As discussed in Section I.D., *supra*, Defendants' assertion of the self-critical analysis privilege is invalid. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 63:** ALL DOCUMENTS RELATED TO any investigations conducted by FDC or any FDC contractors REGARDING the harms, effects, or impact of ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANT'S RESPONSE:** FDC has produced documents in response to more specific requests. … Additionally, Defendants object on the grounds that "ALL DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants also object on the ground that certain discovery may be protected by the self-critical analysis privilege.

The requested documents are relevant for the same reasons described for RFP 62. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

50

**RFP 64**: ALL POLICIES RELATED TO mental health care for PRISONERS in effect from January 1, 2019, through the present.

**DEFENDANTS RESPONSE**: See F.A.C.  33-601.800.  FDC will produce Health Services Bulletins 15.05.03, 15.05.08, 15.05.10, 15.05.11, 15.05.13, 15.05.14, 15.05.17, 15.05.18, 15.05.19, 15.05.20, 15.05.21, and Procedures 403.003, 404.001, 404.002, 404.003, 404.004 and 404.005. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested documents are relevant for the same reasons described below for RFP 69.   All policies related to mental health care are relevant because Plaintiffs' allegations implicate, for example, in-patient hospitalizations and suicide observation.  ECF 13 ¶ 134.  This request is also reasonably calculated to lead to admissible evidence regarding whether people in isolation are denied equal access to mental health care available to those in the general population.  ECF 13 ¶ 157.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 65**: ALL POLICIES RELATED TO medical care for PRISONERS in effect from January 1, 2019, through the present.

**DEFENDANTS RESPONSE**: See F.A.C. 33-601.800.   FDC will produce Procedures 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007,

51

403.008, 403.011 and 406.001. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant for the same reasons described below for RFP 68.  All policies related to medical care, in addition to those specific to isolation, are relevant to determine whether people in isolation are denied equal access to medical services, including dialysis treatment, diabetes care, and physical therapy, that are available to those in the general population.  ECF 13 ¶¶ 156, 157. Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 68**: ALL POLICIES RELATED TO medical care for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 401.011, 401.014, 401.016, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001.  … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

52

The requested policies are relevant because Plaintiffs allege that Defendants: fail to adequately monitor people for health risks prior to and during their time in isolation; fail to consistently complete healthcare rounds and evaluations of people in isolation; and fail to provide people in isolation their medical supplies.  ECF 13 ¶¶ 138, 157.  Plaintiffs further allege that the conditions in isolation are inadequate to address the needs of people with chronic health care issues or physical disabilities, leading Defendants to deny them equal access to medical care and mobility devices.  ECF 13 ¶¶ 34, 37, 40, 44, 52, 157.  Plaintiffs also allege that Defendants lack policies to exclude people from isolation who are at substantial risk of harm because of medical conditions.  ECF 13 ¶ 136.  This request is reasonably calculated to lead to discovery of admissible evidence regarding Plaintiffs' disability discrimination claims and whether Defendants have a medical care system that prevents harm from isolation.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 69**: ALL POLICIES RELATED TO mental health care for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800.  FDC will produce Procedures 404.001, 404.002, 404.003 and 404.005 (unpublished) and Health Services Bulletins 15.05.03, 15.05.10, 15.05.11, 15.05.08, 15.05.14,

15.05.17, 15.05.18, 15.05.19 and 15.05.21. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

These policies are relevant because Plaintiffs make a number of allegations related to Defendants' mental health care policies in isolation such as: Defendants cycle people between suicide observation cells, in-patient psychiatric units, and isolation (ECF 13 ¶ 134); they do not exclude people with mental illness from isolation (ECF 13 ¶ 136); they fail to adequately monitor people for health risks prior to and during their time in isolation for signs of worsening mental illness, self-harm, and suicidality in isolation (ECF 13 ¶ 138); they fail to consistently complete healthcare rounds and evaluations of people in isolation (ECF 13 ¶ 138); and they fail to provide "individualized mental health treatment" in response to people who have difficulty following prison rules because of their disabilities (ECF 13 ¶ 152). This request is reasonably calculated to lead to discovery of admissible evidence regarding Plaintiffs' disability discrimination claims and whether Defendants have a mental health care system that prevents harm from isolation. Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and

Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 70**: ALL POLICIES RELATED TO medical care for pregnant women in ISOLATION.
>
> **DEFENDANT'S RESPONSE:** Defendants will produce Procedures 401.011, 401.014, 401.016, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

These policies are relevant because Plaintiffs allege that Defendants: fail to adequately monitor people for health risks prior to and during their time; fail to consistently complete healthcare rounds and evaluations of people in isolation; and fail to implement policies to exclude known vulnerable people, such as pregnant women, from isolation.  ECF 13 ¶¶ 136, 138, 157.  This request is also reasonably calculated to lead to discovery of admissible evidence of whether the care available in isolation is sufficiently available to meet the heightened healthcare needs for pregnant women in isolation.  ECF 13 ¶ 69.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 71**: ALL POLICIES RELATED TO transgender PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: FDC will produce Procedure 403.012. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

These policies are relevant because Plaintiffs allege that Defendants fail to accommodate people diagnosed with gender dysphoria by providing safe housing and by forcing some to "check into" isolation to escape victimization in general population.  ECF 13 ¶ 152.  Plaintiffs further allege that Defendants deny people diagnosed with gender dysphoria in isolation access to transition-related healthcare, psychotherapy, and women's canteen items they need to accommodate their disability.  ECF 13 ¶ 157.  These policies are directly relevant to Plaintiffs' disability discrimination claims.  Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 72**: ALL POLICIES RELATED TO treatment for gender dysphoria for PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: See Response to No. 71.

56

The requested documents are relevant for the same reasons described for

RFP 71.  Plaintiffs' request is clear and Defendants have failed to explain why this

request is overly broad and burdensome.

> **RFP 73**: ALL POLICIES RELATED TO the Residential Continuum of
> Care.
>
> **DEFENDANT'S RESPONSE**: FDC will produce draft Procedure 404.005,
> which has not yet been put into effect. … Defendants further object that
> "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and
> burdensome. Defendants object to producing documents that are exempt
> from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat.,
> and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing
> confidentiality.

According to FDC Procedure 404.005, the Residential Continuum of Care

"refers to specialized mental health units that work together, in conjunction with

the inpatient system, to provide augmented outpatient mental health treatment and

rehabilitation services in a protective environment for inmates with serious

psychological impairment associated with a history of inability to successfully

adjust to daily living."  Plaintiffs allege that Defendants isolate people with

psychiatric and intellectual disabilities because of their disability-related behaviors

and because they have difficulty conforming their behaviors to prison rules.  ECF

13 ¶ 152.  This request is reasonably calculated to lead to admissible evidence

regarding whether modification of Defendants' policies and procedures would

impose an undue burden or fundamental alteration to accommodate people with

disabilities.  The documents may also show whether Defendants have policies to

ensure people with disabilities are housed in the most integrated setting appropriate to meet their needs.   ECF 13 ¶ 158.  Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 74**: ALL POLICIES RELATED TO group therapy for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: FDC will produce Procedures 403.003, 404.005 (not yet in effect) and 403.012 and Health Services Bulletins 15.05.14, 15.05.18 and 15.05.08. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant because Plaintiffs allege that group therapy provided by Defendants does not prevent harm from isolation.  ECF 13 ¶¶ 95, 96, 139.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 75**: ALL POLICIES RELATED TO outpatient mental health care for PRISONERS in ISOLATION.

**DEFENDANT"S RESPONSE**: FDC will produce Procedure 403.003 and Health Services Bulletin 15.05.08. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant for the same reasons described for RFP 69. Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 76**: ALL POLICIES RELATED TO transfers of PRISONERS to OR from ISOLATION to isolation management rooms, hospitals, mental health treatment facilities, infirmaries, crisis stabilization units, transitional care units, secure treatment units, diversion treatment units, cognitive treatment units, OR other higher levels of care.

**DEFENDANT'S RESPONSE**: FDC will produce Procedure 404.003. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

The requested policies are relevant because Plaintiffs allege that Defendants refuse to change their isolation policies and practices despite the obvious risk of harm demonstrated by the constant cycling of people between suicide observation cells, in-patient psychiatric units, and isolation. ECF 13 ¶ 134. Plaintiffs further

allege that people in isolation are more likely to require in-patient psychiatric treatment than those in the general prison population.  ECF 13 ¶ 129.  Although Defendants have agreed to produce one procedure promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 77**: All minutes, recordings, summaries, OR reports of meetings, whether informal or informal, REGARDING any meeting where the development, inception, creation, AND need for a Secure Treatment Unit, Diversion Treatment Unit, OR Cognitive Treatment Unit were discussed from January 1, 2016 through the present.

> **DEFENDANT'S RESPONSE**: FDC will produce meeting minutes from any meeting discussing the development of the STU. Otherwise, Defendants objects to this request to the extent it asks for information about the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU). These two units are not relevant to the issues set forth in the Complaint, namely the "isolation" of inmates for 22 hours a day on average. Further, these two units do not house inmates who are classified as Close Management inmates. Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavioral function that substantially interferes with the ability to meet the ordinary demands of daily living in general population. Thus the production of documents regarding these two units would not be proportional to the needs of this case, as well as overly broad and burdensome.

Documents regarding the DTU and CTU are relevant because Plaintiffs allege that Defendants lack policies and procedures to ensure that individuals with disabilities are housed in the most integrated setting appropriate to meet their

needs.  ECF 13 ¶¶ 152, 158.  Plaintiffs further allege that Defendants isolate people with psychiatric and intellectual disabilities because of their disability-related behaviors and because they have difficulty conforming their behaviors to prison rules.  ECF 13 ¶ 152.  Defendants' assertion that the DTU and CTU are for people who cannot live in the general population because of their mental illness or neurocognitive disorder, respectively, demonstrates the relevance of the requested documents.  Specifically, these documents may determine whether Defendants do in fact have adequate policies and procedures to ensure that people with disabilities are housed in the most integrated setting appropriate to meet their needs.   These documents may also demonstrate Defendants' knowledge of a substantial risk of harm to people with certain disabilities who are placed in isolation because they cannot live in the general population.  In addition, this request may lead to admissible evidence regarding whether modification of Defendants' policies and procedures to accommodate people with disabilities would impose an undue burden or fundamental alteration—a defense claimed by Defendants.  ECF 62 § VIII, ¶ 19.

> **RFP 78**: ALL DOCUMENTS RELATED TO the development, inception, creation AND need for a Secure Treatment Unit, Diversion Treatment Unit, OR Cognitive Treatment Unit.
>
> **DEFENDANT'S RESPONSE**: See Responses to Requests No. 77 and 132.

These documents are relevant for the same reasons described for RFP 77.

**RFP 84**: ALL POLICIES RELATED TO mental health STAFFING levels, assignments and schedules in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "mental health STAFFING levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

The request is relevant because Plaintiffs allege that Defendants fail to adequately monitor people for health risks prior to and during their time in isolation by looking for signs of worsening mental illness, self-harm, and suicidality in isolation, and that they fail to consistently complete health care rounds and evaluations of people in isolation.  ECF 13 ¶ 138.  This request is reasonably calculated to lead to admissible evidence regarding whether mental health staff are sufficiently available at the institutions to prevent harm from the psychological consequences of isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 85**: ALL POLICIES RELATED TO medical STAFFING levels, assignments, and schedules in ISOLATION.

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800.  … Defendants further object that "ALL POLICIES RELATED TO" "medical STAFFING

levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

The request is relevant because Plaintiffs allege that Defendants fail to adequately monitor people for health risks prior to and during their time in isolation by looking for signs of worsening mental illness, self-harm, and suicidality in isolation, and that they fail to consistently complete healthcare rounds and evaluations of people in isolation.  ECF 13 ¶ 138. Plaintiffs' requests for policies related to mental health staffing levels, assignments, and schedules is reasonably calculated to lead to the discovery of admissible evidence of whether medical staff are sufficiently available at the institutions to prevent harm from the psychological and physical consequences of isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 86**: ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of mental health STAFF.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. Defendants further object that "ALL POLICIES RELATED TO" "hiring, supervision, job performance evaluation, and discipline" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own

documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance, and discipline of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to Defendants' hiring practices are relevant because Plaintiffs allege that Defendants do not have enough mental health staff to consistently complete healthcare rounds and evaluations of people in isolation. ECF 13 ¶ 138.  Plaintiffs' request for policies related to supervision, job performance, evaluation and discipline is reasonably calculated to lead to the discovery of admissible evidence of whether Defendants make adequate efforts to ensure that the mental health staff working in the institutions are equipped to appropriately respond to people's disability-related behaviors and provide appropriate care to address mental health symptoms in isolation.  These policies will also demonstrate whether Defendants appropriately hold mental health staff accountable when they fail to adequately respond to, for example, self-injurious behaviors and psychological emergencies in isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 87**: ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of medical STAFF.

64

**DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. Defendants further object that "ALL POLICIES RELATED TO" "hiring, supervision, job performance evaluation, and discipline" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance, and discipline of staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to Defendants' hiring practices are relevant because Plaintiffs allege that Defendants do not have enough medical staff to consistently complete health care rounds and evaluations of people in isolation.  ECF 13 ¶ 138. Plaintiffs' request for policies related to hiring, supervision, job performance, evaluation and discipline is reasonably calculated to lead to the discovery of admissible evidence of whether Defendants make any effort to ensure that the medical staff working in the institutions are equipped to deal with people's disability-related behaviors and limitations, and provide them the care necessary to address their disabilities.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 88**: ALL POLICIES RELATED TO training for mental health STAFF in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "training" is vague, ambiguous, overly broad and burdensome. Defendants further object as each

65

facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to training for mental health staff in isolation are relevant to show, for example, whether mental health staff are appropriately trained to accommodate people with disabilities regarding isolation, recognize and appropriately respond to the risk of suicide, and monitor and appropriately respond to the psychological consequences of isolation. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 89**: ALL POLICIES RELATED TO training for medical STAFF in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "training" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

Policies related to training for medical staff in isolation are relevant to show, for example, whether medical staff are appropriately trained to accommodate people with disabilities regarding isolation and monitor and appropriately respond to the psychical health consequences of isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 92**: All work schedules for mental health STAFF who provided services in ISOLATION from January 1, 2018, through the present.
>
> **DEFENDANT'S RESPONSE**: … Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Work schedules for staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.
>
> **Revised RFP 92**: To the extent there exists a document, roster, or form with the equivalent information [included in a Daily Security Roster] for … mental health staff, please provide a sample so that Plaintiffs can determine whether [this RFP] can be modified in the same manner [as RFP 51].

These documents are relevant because Plaintiffs allege that Defendants fail to adequately monitor people for health risks prior to and during their time in isolation by looking for signs of worsening mental illness, self-harm, and suicidality in isolation.  EFC 13 ¶ 138.  Plaintiffs also allege that Defendants fail to consistently complete mental health rounds and evaluations of people in isolation.  ECF 13 ¶ 138.  This request is reasonably calculated to lead to admissible evidence about whether these services are not provided because mental health staff are not

available, which may demonstrate Defendants' deliberate indifference.  Defendants

have not provided Plaintiffs with the sample documents requested in their revised

request.

> **RFP 93**: All work schedules for medical STAFF who provided services in ISOLATION from January 1, 2018, through the present.
>
> **DEFENDANT'S RESPONSE**: … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Work schedules for staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.
>
> **Revised RFP 93**: To the extent there exists a document, roster, or form with the equivalent information [included in a Daily Security Roster] for … medical … staff, please provide a sample so that Plaintiffs can determine whether [this RFP] can be modified in the same manner [as RFP 51].

These documents are relevant because Plaintiffs allege that Defendants fail

to consistently complete daily nursing rounds and "pre-confinement physicals" of

people in isolation. ECF 13 ¶ 138.  This request is reasonably calculated to lead to

admissible evidence regarding whether these services are not provided because

medical staff are not available, which may demonstrate Defendants' deliberate

indifference.  Defendants have not provided Plaintiffs with the sample documents

requested in their revised request.

> **RFP 94:** ALL DOCUMENTS RELATED TO mortality reviews, including psychological autopsies, in cases involving suspected suicide.

68

**DEFENDANT'S RESPONSE:** Defendants object to this request as irrelevant and an invasion of privacy. Defendants further object that this request is not limited to restrictive housing or close management. Autopsies and mortality reviews of inmates that are suspected to have committed suicide bear no relevance to the issues in this case and would amount to a gross invasion of privacy rights. Defendants further object that "ALL DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and burdensome.

These documents are relevant because Plaintiffs make several allegations regarding the risk of suicide for people in isolation, including that 88% of the people who died by suicide had been in isolation at some point (ECF 13 ¶ 128) and that Defendants send people directly back to isolation after serious suicide attempts (ECF 13 ¶ 134).  The autopsies and mortality reviews of suspected suicide may lead to the discovery of admissible evidence of whether the person was or had been in isolation, whether Defendants knew of a risk of suicide or the risk was obviously related to isolation, and whether Defendants took reasonable measures to address that risk.  To the extent Defendants are worried about privacy rights, the Court's HIPAA Qualified Protective Order addresses this issue.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.   After the meet and confer, Defendants offered to provide MINS reports from September 2018 to September 2019 in response to this request. MINS is FDC's automated system for the reporting of incidents and events, including deaths by suicide and suicide attempts.  This offer is inadequate because

69

MINS reports typically consist of only a few paragraphs prepared by correctional staff within 24 hours of the incident and do not include, for example, any review of the patient's mental health care, symptoms, or isolation history.

> **RFP 95:** ALL POLICIES RELATED TO training about suicide prevention.
>
> **DEFENDANT'S RESPONSE:** FDC will produce Procedures 404.001 and 404.002. Defendants object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

These policies are relevant because Plaintiffs allege, "Defendants are aware that the rate of suicide is much higher for people who are in or have been in isolation," and policies related to training about suicide prevention are relevant to show, for example, whether Defendants have appropriately trained staff to recognize and appropriately respond to the risk of suicide in isolation.  ECF 13 ¶ 128.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plainitffs, responsive to this request from specific prisons.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 96:** ALL POLICIES RELATED TO suicide, suicide attempts, AND suicide prevention, including POLICIES RELATED TO self-harm observation status AND "isolation management rooms".

**DEFENDANT'S RESPONSE:** See Response to Request No. 95.

These policies are relevant because Plaintiffs allege that Defendants perpetually cycle people who are suicidal from suicide observation cells ("self-harm observation status"), to inpatient psychiatric units, and back to isolation. ECF 13 ¶ 134.  Plaintiffs' request for policies related to suicide, suicide attempts, and suicide prevention is reasonably calculated to lead to admissible evidence of whether Defendants take reasonable measures to prevent or respond to the risk of suicide in isolation.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 97:** All DOCUMENTS that report, describe, summarize, discuss, OR comment on suicide OR suicide attempts. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** See Responses to Request Nos. 98 and 99. Otherwise, Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. All documents that "comment" on suicide, with no limit to restrictive housing or close management, is vastly over broad and burdensome.

These documents are relevant because Plaintiffs make several allegations regarding the heightened risk of suicide for people in isolation, and that people may suffer from the consequences of isolation after they are released.  ECF 13 ¶¶ 61, 63, 128.  They also allege that although 57% of the people who died by suicide

71

were in isolation at the time of the suicide, 88% of the people who died by suicide

"had been in isolation *at some point* during their incarceration in FDC."  ECF 13 ¶

128 (emphasis added).  The documents sought in this request may lead to the

discovery of admissible evidence of whether the rate of suicides and suicide

attempts are higher for people who are or were in isolation compared to people

who have never been in isolation.  As such, this request "with no limit to restrictive

housing or close management" is not overbroad.  Defendants have not explained

why the request is burdensome.

> **RFP 98:** All MINS Reports RELATED TO suicide attempts by
> PRISONERS in ISOLATION from January 1, 2016, through the present.
>
> **DEFENDANT'S RESPONSE:** FDC will produce MINS reports
> concerning inmates in CM subject to the protections of the HIPAA Qualified
> Protective Order and any other confidentiality order entered by the Court
> upon the parties' agreement to narrow the scope and/or time frame of the
> request and to cost-sharing. … Defendants also object on the grounds that
> the request is not proportional to the needs of the case and on the basis of
> overbreadth and undue burdensomeness, as Defendants have identified
> approximately 1990 MINS reports for inmates in Administrative
> Confinement, Close Management, Disciplinary Confinement and Maximum
> Management during the requested time period. Defendants further object
> that "RELATED TO suicide attempts" is vague ambiguous, unduly
> burdensome and overbroad.

MINS reports documenting suicide attempts by people in isolation may lead

to the discovery of admissible evidence of whether such attempts were related to

conditions in isolation and whether Defendants took reasonable measures to

address the risk of suicide in isolation.  After the meet and confer, Defendants

offered to provide MINS reports from September 2018 to September 2019.  But

Defendants have already identified 1,990 responsive documents for the requested

time period, indicating only a negligible burden, and there is no justification to

withhold these highly relevant documents.

> **RFP 99:** All MINS Reports RELATED TO any deaths by suicides.
>
> **DEFENDANT'S RESPONSE:** FDC will produce MINS reports concerning inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. … Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendants have identified approximately 81 MINS reports for inmates during the requested time period. Defendants further objects that "RELATED TO any deaths by suicide" is vague ambiguous, unduly burdensome and overbroad.

MINS reports documenting deaths by suicide may lead to the discovery of

admissible evidence of whether there is a higher risk of suicide for people who

have been in isolation than for people who have not, whether the deaths were

related to conditions in isolation, and whether Defendants took reasonable

measures to address the risk of suicide in isolation.  After the meet and confer,

Defendants offered to provide MINS reports from September 2018 to September

2019.  But Defendants have already identified just 81 responsive documents for the

requested time period, indicating only a negligible burden, the request is clear, and

there is no justification to withhold these highly relevant documents.

**RFP 104**: The Overall Inmate Summary (DC 14) for each PRISONER who died by suicide.

**DEFENDANT'S RESPONSE**: Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate who died by suicide, regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

These documents are relevant because the Overall Inmate Summaries of people who died by suicide in FDC custody will show, for example, if they were in isolation at the time of the suicide; whether they had ever been in isolation; how many times they had been in isolation; how long they had been in isolation; and how much time had passed between any releases from isolation and suicides or suicide attempts outside of isolation. These summaries are directly relevant to Plaintiffs' allegations regarding the risk of suicide for people in isolation. After the meet and confer, Defendants offered to provide the summaries from September 2018 through 2019. But there is no reason to narrow the timeframe for these documents. Defendants' response to RFP 103 indicates that there were at least 81 people who died by suicide in the requested time period. The burden to produce the Overall Inmate Summaries, which are electronically stored documents, for approximately 81 people is negligible.

**RFP 105:** The Overall Inmate Summary (DC 14) for each PRISONER who attempted suicide from January 1, 2016, through the present.

74

**DEFENDANT'S RESPONSE:** Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate who attempted suicide, regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

These documents are relevant because the Overall Inmate Summaries of people who attempted suicide will show, for example, if they were in isolation at the time of the suicide attempt; whether they had ever been in isolation, how many times they had been in isolation; how long they had been in isolation; and how much time had passed between any releases from isolation and suicide attempts outside of isolation. These summaries are directly relevant to Plaintiffs' allegations regarding the risk of suicide for people in isolation. After the meet and confer, Defendants offered to provide the summaries from September 2018 through 2019. But there is no reason to narrow the timeframe for these documents. Defendants' response to RFP 98 indicates they can identify through MINS reports individuals who attempted to die by suicide during the requested time period. It further indicates that this number of individuals could be 1,990, but it could also be less in the likely event that there are people who have attempted to die by suicide more than once. The burden to produce the Overall Inmate Summaries, which are electronically stored documents, for this number of people is negligible.

**RFP 107**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the average duration of stay OR the length of time for PRISONERS in

75

ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMETNS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE**:  … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4.  The implementation of policy at the institutional level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(3) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that "[d]espite their knowledge of the substantial risk of serious harm, Defendants impose no limit on the duration of isolation.  As a result, there are people in FDC who have been suffering in isolation for nearly 20 years with no end in sight."  ECF 13 ¶ 142. They further allege, "Defendants also know that people with mental illness, and with intellectual disabilities, are more likely to spend prolonged periods in isolation …"  ECF 13 ¶ 131.  Thus, in addition to relevant information about Defendants' deliberate indifference to a substantial risk of harm, this request is reasonably calculated to lead to admissible evidence regarding whether and how Defendants discriminate against people with disabilities.  Plaintiffs' request is clear

76

and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 108:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the reasons that PRISONERS are placed OR retained in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that Defendants place and retain people in isolation for reasons including "minor disciplinary infractions."  ECF 13 ¶ 149, 154.  This request is directly relevant to Plaintiffs' claim that there is no legitimate penological purpose that supports subjecting people to the substantial risk of harm from Defendants' isolation policies and

practices "as they are currently implemented and enforced."  ECF 13 ¶ 144.

Plaintiffs further allege that Defendants isolate people for disability-related

behaviors, including acts of self-harm.  ECF 13 ¶ 73.  This request is therefore

directly relevant to Plaintiffs' disability discrimination claims.  Plaintiffs' request

is clear and Defendants have failed to explain why this request is overly broad and

burdensome.

> **RFP 109:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who harmed themselves OR the frequency of self- harm behaviors by PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "who harmed themselves" and "self-harm behaviors" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant to support Plaintiffs' specific allegations regarding the number of people who had been in isolation at some point and died by suicide, and that people in isolation are more likely to engage in self-harm than those in the general prison population.  ECF 13 ¶¶ 63, 128.  This request is also reasonably calculated to lead to the discovery of admissible evidence regarding Defendants' knowledge of the risk of suicide or self-harm caused by their isolation policies and practices.   Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 110**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of violent incidents, cell extractions, disciplinary infractions, use of force incidents, OR PROPERTY RESTRICTIONS involving PRISONERS in ISOLATION as compared to PRISONERS not in ISOLATION.

> **DEFENDANT'S RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "violent incidents, cell extractions, disciplinary infractions, use of force incidents OR PROPERTY RESTRICTIONS" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."   DE 42, p. 4.   The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security- sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

79

These documents are relevant because Plaintiffs allege that Defendants respond to violations of their strict but unnecessary rules in isolation for minor behavioral problems with property restriction, the use of force, or violent cell extractions.  ECF 13 ¶¶ 119-121.  Plaintiffs also allege that Defendants frequently extend time in isolation for minor disciplinary infractions, many of which are caused by disability-related behaviors.  ECF 13 ¶¶ 133, 149, 152.  This request is directly relevant to Plaintiffs' allegations regarding Defendants' use of dehumanizing and degrading security measures in isolation, as well as their disability discrimination claims.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 111**:  All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the total number of PRISONERS in ISOLATION on a daily, weekly, monthly, OR yearly basis.

> **RESPONSE**:  … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institutional level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(3) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-

confidential information regarding inmates, housing, post orders and other security issues.

Plaintiffs allege that "Defendants know that their isolation rate (nearly 10% of the FDC population) is double the national rate."  ECF 13 ¶ 127.  This request is therefore reasonably calculated to lead to admissible evidence regarding whether Defendants' isolation policies and practices violate contemporary standards of decency, Defendants' knowledge of a substantial risk of serious harm, and whether any remedial measures by Defendants to reduce the numbers of people in isolation have been effective.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 112:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the age of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-

confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that Defendants place young people in isolation, despite the fact that juveniles are at a heightened risk of harm from isolation.  ECF 13 ¶¶ 18, 23, 70-71, 136.  These documents may lead to the discovery of admissible evidence regarding Defendants' knowledge of the risk of harm to young people, the measures they have implemented to address this risk, and the frequency with which they place young people in isolation despite their knowledge of this risk.  They may also reveal that Defendants regularly isolate elderly people, who may also be at a heightened risk of harm from isolation, and for whom there may not be a legitimate security interest to isolate them in the way that Defendants do.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 113:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS with mental illness in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is

constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that Defendants place people with mental illness in isolation, despite their knowledge that people with mental illness are at heightened risk of harm from isolation. ECF 13 ¶¶ 5, 70, 130-32. They also allege that Defendants are more likely to place people with mental illness in isolation than people without mental illness. ECF 13 ¶ 130. This request may lead to the discovery of admissible evidence regarding Defendants' knowledge of the risk of harm to people with mental illness, the measures they have implemented to address this risk, and the frequency with which they place people with mental illness in isolation despite this risk. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 114**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the gender of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.
>
> **DEFENDANT'S RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague,

ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

Plaintiffs allege that Defendants unnecessarily use "degrading and dehumanizing security measures … that are not based on individualized assessments of safety and security threats." ECF 13 ¶ 113. They further allege that Defendants use a "one-size-fits-all approach" for isolation security measures, including by applying "the same security measures to the most diminutive people … as it does the most physically imposing people …." ECF 13 ¶ 113. This request is reasonably calculated to lead to admissible evidence about the demographics of the putative class and whether there is a legitimate penological purpose for systematically applying the same isolation policies and practices to all incarcerated people even though women may have different carceral needs than men. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 115:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on

84

pregnant PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

Plaintiffs allege that despite Defendants' knowledge of the risk of harm to pregnant women, Defendants have no policies excluding them from isolation.  ECF 13 ¶¶ 70-71, 136.  This request may lead to the discovery of admissible evidence regarding Defendants' knowledge of the risk of harm to pregnant women, the measures they have taken to address this risk, and whether they have placed pregnant women in isolation despite their knowledge of the risk.  Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**RFP 116:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who leave their cells, OR the

85

frequency that PRISONERS in ISOLATION leave their cells, for access to the dayroom, visits, phone calls, showers, programs, medical care, recreation, mental health care, academic education, OR adult education. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**DEFENDANT'S RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "who leave their cells, OR the frequency that PRISONERS in ISOLATION leave their cells, for access to the dayroom, visits, phone calls, showers, programs, medical care, recreation, mental health care, academic education, OR adult education" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.   Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

This request is relevant because Plaintiffs allege that Defendants rarely afford people in isolation the opportunity to leave their cells, including when they cancel recreation due to staffing shortages, provide educational services cell-front, restrict access to personal visits, and deter people from leaving their cells by destroying property during cell searches, which, combined with other deprivations, results in a substantial risk of serious harm.  ECF 13 ¶¶ 94-95, 97-98, 105-07, 111.

86

Plaintiffs' request is clear and Defendants have failed to explain why this request is

overly broad and burdensome.

> **RFP 117**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who receive, OR the frequency that PRISONERS in ISOLATION receive, academic education, adult education, mental health care, medical care, OR any programs inside their cells. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

> **DEFENDANT'S RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "receive, academic education, adult education, mental health care, medical care, OR any programs inside their cells" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security- sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

These documents are relevant because Plaintiffs allege that Defendants

deprive people in isolation of normal human contact, including by providing

medical care, mental health care, and education to them through their cells doors

instead of allowing them to come out of their cells.   ECF 13 ¶¶ 93-94, 105.

Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

> **RFP 135**: All video and audio preserved by agreement between the parties in this Litigation.
>
> **DEFENDANT'S RESPONSE**: Defendants object to this request on the basis that requested video and audio contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

The parties agreed that Defendants would preserve video and audio for one 24-hour period in 11 different isolation units throughout the state. This video and audio may lead to discovery of admissible evidence regarding, for example, the interactions people in isolation have with staff members through their cell doors, whether Defendants follow their written policies regarding out-of-cell activities, the frequency with which people leave their isolation cells, and the general conditions in isolation wings and dorms. ECF 13 ¶¶ 84-85, 87-88, 93-94, 104-06, 108, 111.

> **RFP 136**: All logs, maintenance work requests, memoranda, and COMMUNICATIONS related to the video and audio referenced in Request No. 135.
>
> **DEFENDANT'S RESPONSE**: Defendants object on the basis that Plaintiffs' requests for the "logs, maintenance work requests, memoranda and COMMUNICATIONS" related thereto are not proportional to the needs of the case and are not relevant to the claims and defenses in the case. Defendants further object on the basis that the request is vague and ambiguous and therefore Defendants do not understand what is sought by Plaintiffs. Defendants also object to the extent this request seeks attorney-client and work product privileged information. Defendants object to this

request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

This information related to the video and audio requested in RFP 135 is relevant to verify that the equipment was functioning properly and that the video and audio fairly and accurately depict the requested locations within isolation. Plaintiffs' request is clear and Defendants have failed to explain why this request is overly broad and burdensome.

**Plaintiffs' First Request for Production to FDC:**

> **RFP 1**: ALL POLICIES RELATED TO reasonable modifications of POLICIES or reasonable accommodations for PRISONERS with DISABILITIES in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013.  …

This request is directly relevant to Plaintiffs' allegations that Defendants' fail to provide reasonable modifications or accommodations to people with disabilities in isolation.  ECF 13 ¶¶ 131, 151-158.  Although Defendants have agreed to produce certain procedures promulgated from Tallahassee, they are refusing to produce "policies," as defined by Plaintiffs, responsive to this request from specific prisons.

> **RFP 2**: ALL POLICIES RELATED TO PRISONERS with DISABILITIES in ISOLATION.

**DEFENDANT'S RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013.  …

Plaintiffs allege that Defendants discriminate against people with disabilities in isolation by failing to reasonably modify their isolation policies and procedures when the modifications are necessary to avoid discrimination on the basis of disability; failing to ensure that people with disabilities in isolation have access to, are permitted to participate in, and are not denied the benefits of, programs, services, and activities because of their disabilities; and failing to ensure that people with disabilities in isolation are housed in the most integrated setting appropriate to meet their needs.  ECF 13 ¶ 151.  Policies related to people with disabilities in isolation are directly relevant to these claims.

**RFP 3**: ALL POLICIES RELATED TO AUXILIARY AIDS AND SERVICES for PRISONERS in ISOLATION.

**DEFENDANT'S RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.008, 403.011 and 403.013; Health Services Bulletins (HSB) 15.03.25, 15.03.25.01, 15.03.25.02 and 15.03.25.03. …

Plaintiffs allege that Defendants fail to modify policies for people with vision, speech, or hearing disabilities in isolation.  ECF 13 ¶ 156.  Policies related to auxiliary aids and services for people in isolation may lead to the discovery of admissible evidence supporting or refuting Plaintiffs' disability discrimination claims.  Although Defendants have agreed to produce certain procedures

90

promulgated from Tallahassee, they are refusing to produce "policies," as defined

by Plaintiffs, responsive to this request from specific prisons.

> **RFP 4**: ALL POLICIES RELATED TO DURABLE MEDICAL
> EQUIPMENT for PRISONERS in ISOLATION.
>
> **DEFENDANT'S RESPONSE**: FDC will produce Procedures 604.101,
> 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.008, 403.011
> and 403.013; Health Services Bulletins (HSB) 15.03.25, 15.03.25.01,
> 15.03.25.02 and 15.03.25.03. …

Plaintiffs allege that Defendants deny people with physical disabilities

access to assistive devices including, for example, canes in isolation.  ECF 13 ¶

157.  Policies related to durable medical equipment for people in isolation may

lead to the discovery of admissible supporting or refuting Plaintiffs' disability

discrimination claims.  Although Defendants have agreed to produce certain

procedures promulgated from Tallahassee, they are refusing to produce "policies,"

as defined by Plaintiffs, responsive to this request from specific prisons.

> **RFP 5:** ALL POLICIES RELATED TO disposable medical supplies for
> PRISONERS in ISOLATION, including but not limited to catheters AND
> related supplies, gauze, tape, AND incontinence pads.
>
> **DEFENDANT'S RESPONSE:** FDC will produce Procedures 401.011,
> 401.014, 401.016, 401.017, 403.003, 403.006 and 403.008.  …

Plaintiffs allege that Defendants deny people with physical disabilities

access to medical supplies including, for example, catheters in isolation.  ECF 13

¶¶ 40, 157.  Policies related to disposable medical supplies for people in isolation

may lead to the discovery of admissible evidence supporting or refuting Plaintiffs'

disability discrimination claims.  Although Defendants have agreed to produce

certain procedures promulgated from Tallahassee, they are refusing to produce

"policies," as defined by Plaintiffs, responsive to this request from specific prisons.

> **RFP 7**:  ALL POLICIES REATED TO the any staff review of AND response to the "Reasonable Modification or Accommodation Request for Inmates" (Form DC2-530A).
>
> **RESPONSE:**  FDC will produce Procedures 604.101, 401.011, 401.014, 401.116, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013.  …

This request is directly relevant to Plaintiffs' allegations that Defendants'

fail to provide reasonable modifications or accommodations to people with

disabilities in isolation.  ECF 13 ¶¶ 131, 151-158.  Although Defendants have

agreed to produce certain procedures promulgated from Tallahassee, they are

refusing to produce "policies," as defined by Plaintiffs, responsive to this request

from specific prisons.

**PLAINTIFF HARVARD'S FIRST SET OF INTERROGATORIES TO DEFENDANT FDC:**

> **INTERROGATORY 7:** Describe in detail all criteria for any PRISONER to be admitted to a Secure Treatment Unit, the Diversion Treatment Unit, AND the Cognitive Treatment Unit at any FACILITY. The timeframe for these Interrogatories is from January 1, 2014, through the present, so if the criteria changed during that time period, provide all versions of the criteria.
>
> **DEFENDANT'S RESPONSE:** The FDC objects to this interrogatory to the extent it asks for information about the Diversion Treatment Unit (DTU) and

Cognitive Treatment Unit (CTU). These two units are not relevant to the issues set forth in the Complaint, namely the "isolation" of inmates for 22 hours a day on average. Further, these two units do not house inmates who are classified as Close Management inmates. Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavioral function that substantially interferes with the ability to meet the ordinary demands of daily living in general population.

Information regarding the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU) is relevant for the same reasons described for RFP 77.

**INTERROGATORY 8:** For the FDC's Secure Treatment Unit, the Diversion Treatment Unit, AND the Cognitive Treatment Unit, state how many beds are available in each unit at each FACILITY that has each unit, how many PRISONERS are currently on a waiting list for each unit, AND the names AND DC numbers of each PRISONER currently waiting for each program.

**DEFENDANT'S RESPONSE:** The FDC objects to this interrogatory to the extent it asks for information about the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU). These two units are not relevant to the issues set forth in the Amended Complaint, namely the "isolation" of inmates for 22 hours a day on average. Further, these two units do not house inmates who are classified as Close Management inmates. Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavior al function that substantially interferes with the ability to meet the ordinary demands of daily living in general population.

For the STU, as of September 10, 2019, there are 92 single-man beds at Wakulla. The waiting list for the STU as of September 10, 2019 is 45. FDC objects to providing the names of those inmates on the waiting list as an invasion of those inmates' privacy rights and not relevant to any issue in this case.

Information regarding the Diversion Treatment Unit (DTU) and Cognitive

Treatment Unit (CTU) is relevant for the reasons described for RFP 77.

Defendants' refusal to provide the names of people in the STU, DTU, or CSU is

without merit.  Plaintiffs propounded this interrogatory to identify individuals who

have participated in FDC's programs that have diverted people from, or served as

alternatives to, the general population or isolation.  Plaintiffs are entitled to obtain

such information before class certification for the purpose of demonstrating the

commonality and typicality of their claims.  With respect to the merits of the case,

this information will help Plaintiffs locate witnesses to the measures Defendants

have taken to ensure that some people with disabilities are housed in the most

integrated setting appropriate to meet their needs.  The Court has entered a HIPAA

Qualified Protective Order that is sufficient to protect the privacy interests of

people who participated in these programs.

> **INTERROGATORY 15:** Identify at each FACILITY in each type of
> ISOLATION (CM I, II, II; MM; DC; AND AC) the number of times during
> each month from June 1, 2019, through the present, that mental health staff
> provided each of the following services: 1) psychiatrist visits; 2) mental
> health counselor visits; 3); mental health rounds; AND 4) group therapy.
>
> **DEFENDANT'S RESPONSE:** FDC objects that this interrogatory is
> overly broad, unduly burdensome, not proportional to the needs of the case
> and not reasonably calculated to lead to the discovery of admissible
> evidence. As Plaintiffs assert: "[t]he claims in Plaintiffs' First Amended
> Complaint (Complaint) stem from one overarching policy and practice:
> Defendants lock people in their cells for 22 hours or more a day and deprive
> them of normal human contact, environmental simulations, and exercise, a

practice that experts refer to as 'isolation' and that is increasingly recognized worldwide as torture. Defendants' emphasis on Plaintiffs' individual experiences as a result of this policy and practice is a futile attempt to reframe this case as a challenge to a series of distinct incidents. That is not the case Plaintiffs' have pleaded" D.E. 42, p. 1. Thus, Plaintiffs' request for the number of times during each month that various forms of mental health services were provided to individual inmates is not relevant to the claims being asserted.  As Plaintiffs' put it, they are challenging the "overarching policy and practice," which can be found in the Florida Administrative Code. *See* F.A.C. 33-601.800. … Apart from that overarching policy, the mental health treatment, services, and therapy that each individual inmate receives will be determined on a case-by-case basis based on that inmates' mental health evaluation and treatment plan.

Plaintiffs allege that despite Defendants' knowledge of the risk of harm, they fail to adequately monitor people for health risks prior to and during their time in isolation for signs of worsening mental illness, self-harm, and suicidality in isolation.  ECF 13 ¶ 138.  Plaintiffs also allege that Defendants fail to consistently complete health care rounds and evaluations of people in isolation.  ECF 13 ¶ 138. Plaintiffs' requests for information regarding the frequency with which mental health staff provide services in isolation is directly relevant to Plaintiffs' deliberate indifference and disability discrimination claims.

> **INTERROGATORY 16**: Identify at each FACILITY the location of every ISOLATION cell, including the dorm, wing, cell number AND type of ISOLATION (Close Management II, II and III; Maximum Management; Disciplinary Confinement; AND Administrative Confinement).
>
> **DEFENDANT'S RESPONSE**: The FDC objects to this interrogatory as not relevant to any issue asserted in this case. This case concerns the constitutionality of the "conditions of confinement" based on the overarching policy of the FDC. The location of every cell, including the dorm, wing and cell number is not relevant to any issue in this case. A list of

all cell locations, such as Y1 and G3, bears no relationship to the issues asserted in this case.  …

Plaintiffs make a series of allegations regarding the conditions of isolation cells, including the physical description of each individual cell and the overall environment in isolation dorms.  ECF 13 ¶¶ 85-89.  Plaintiffs will conduct inspections of the locations where there is isolation, as allowed under Fed. R. Civ. P. 34 and will examine cell conditions.  Plaintiffs need specific information about isolation wings, dorms, and cells to plan for where they will conduct their inspections.  This information is also relevant because documents produced in response to RFPs may list cell numbers, wings, or dorms without identifying whether the location is in isolation.  For example, MINS reports and incident reports regarding suicides and suicide attempts refer only to cell numbers and dorms, and Plaintiffs may need this information to determine whether the specific cells or dorms where the suicides or suicide attempts occurred were in isolation.

## CONCLUSION

As this Court has recognized, discovery is an appropriate device to unveil "[t]he specific policies, practices, or customs underlying the isolation and the conditions imposed during isolation." *G.H., et al., v. Marstiller*, No. 4:19-cv-431-MW-CAS, —— F.Supp.3d ——, ——, 2019 WL 6694738, at *3 (N.D. Fla. Dec. 6, 2019) (citing *Harvard v. Inch*, Case No. 4:19-cv-212-MW-CAS, —— F.Supp.3d —

96

—, ——, 2019 WL 5587314, at *3 (N.D. Fla. Oct. 24, 2019)).  Based on the

reasons outlined in this motion, the Court should reject Defendants' attempt to

obstruct Plaintiffs' access to such information, and instead overrule Defendants'

objections, compel Defendants to produce the requested documents and respond to

interrogatories, set deadlines for production and responses, and award reasonable

attorneys' fees and costs.


Dated:  December 12, 2019

Respectfully Submitted,

_____

Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
Fla. Bar No. 119372

Shalini Goel Agarwal
Fla. Bar No. 90843
Sumayya Saleh
Fla. Bar No. 119372
Southern Poverty Law Center
106 East College Ave., #1010
Tallahassee, FL 32302
Telephone: (850) 521-3024
sumayya.saleh@splcenter.org
shalini.agarwal@splcenter.org

Lisa Graybill*
Texas Bar No. 24054454

Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar. No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**

**<u>Local Rule 7.1(B) Certificate</u>**

Under Rules 7.1(B) and (C) of the Local Rules of the Northern District of Florida, undersigned counsel certifies that Plaintiffs' counsel has conferred with counsel for the Defendants about the relief sought in this motion.   Defendants object to the relief requested.

_Kelly Knapp_____
Kelly Knapp

**<u>Local Rule 7.1(F) Certificate</u>**

Under Rule 7.1(F) of the Local Rules of the Northern District of Florida, undersigned counsel certifies that this motion contains 24,635 words.

_Kelly Knapp_____
Kelly Knapp

**EXHIBIT A**
**TO PLAINTIFFS' MOTION TO COMPEL FIRST REQUESTS FOR**
**PRODUCTION FROM DEFENDANTS MARK INCH AND FLORIDA**
**DEPARTMENT OF CORRECTIONS AND RESPONSES FROM**
**DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS TO**
**INTERROGATORIES BY PLAINTIFF HARVARD WITH**
**INCORPORATED MEMORANDUM OF LAW**

**Liman-ASCA Survey of Extended Restricted Housing – Fall 2015**

## I.

## <u>Liman-ASCA Survey of Extended Restricted Housing - Fall  2015</u>

As you know, ASCA and Yale's Liman Program are seeking to understand the use of restricted housing in departments of corrections. We have already made a substantial contribution; the data we provided on 2014 has garnered national attention. We think it critical to have more current information.  The goal of this brief questionnaire—another joint venture of ASCA and the Liman Program—is, by way of a brief survey, to gather basic information about the numbers of individuals in all forms of restricted housing. In short, we hope to have responses from all  members.

The process, similar to that of the 2014 survey, entails providing information, as well as analyzing and compiling a report and returning it to you for comment and corrections. Thereafter, we will summarize the findings at an ASCA meeting before finalizing a report for publication. We hope that this short form questionnaire will be useful in the future so that, given the interest in tracking changes, it can be sent again in future   years.

This questionnaire need not be filled out in one sitting. The Qualtrics platform automatically saves your answers in your browser, so that you can return to the survey again at a later time on that computer. Some questions prompt you to select a response from a fixed list; others ask for more open-ended  responses.

For the purposes of this questionnaire, the term "restricted housing" refers to separating prisoners from the general population and holding them in their cells for 22 hours per day or more, for 15 or more continuous days. The definition includes prisoners held in both single- or double- cells, if held for 22 hours per day or more in a cell, for 15 or more continuous days.

Please include information on all forms of restricted housing populations, whether    called

administrative segregation, disciplinary segregation, protective custody, intensive management, or otherwise categorized. Note that in the questions we have provided a place for you to indicate that you have questions and that you want follow up for clarification. If, while you are answering the questions, an immediate response would be helpful, please contact Corey Guilmette at   corey.guilmette@yale.edu.

PLEASE COMPLETE AND RETURN THIS QUESTIONNAIRE NO LATER THAN OCTOBER 19, 2015.  THANK  YOU.

**II.**

## Liman-ASCA Survey of Extended Restricted Housing – Fall 2015

This survey aims to provide a national picture of the number of people in all forms of extended restricted housing, the length of their stay, and information on jurisdictions' policies in terms of changes underway or recently completed.

**For purposes of this survey, "Extended Restricted Housing" is defined as separating prisoners from the general population and holding them in their cells for 22 hours per day or more, for 15 or more continuous days.  The definition includes prisoners held in both single- or double-cells, if held for 22 hours per day or more in a cell, for 15 or more continuous days.**

This survey requests information regarding all prisoners in your jurisdiction's correctional facilities, including both sentenced prisoners and pre-trial detainees. The goal is to have information on all of the facilities for which you have data on extended restricted housing, including facilities operated by private entities on behalf of the State, if that information is available. Therefore, in the first questions, we ask you to identify all the facilities in your jurisdiction—and then to identify all the facilities for which you have accessible data on the use of extended restricted housing.

Please answer all the questions with information about your jurisdiction that is current as of on or about **October 1, 2015.**

Please complete and return this survey by **October 19, 2015.**

1) **Please indicate the jurisdiction for which you are filling out the survey.**

Florida Department of Corrections

2) **Does your correctional system include the following facilities (check all that apply)?**

<mark>Prisons</mark>

Jails

Juvenile facilities

Mental health facilities

<mark>Privately-contracted  facilities</mark>

Special facilities for death-sentenced  prisoners

Other (please specify)

3) **Please provide the total custodial population for all facilities in your system as identified in Question 2 (for example, if you indicated in Question 2 that your system includes prisons, jails, juvenile facilities, and mental health facilities, you would provide the total custodial population for those four types of    facilities).**

99,588 (as of 9/30/2015)

4) **Please indicate the facilities for which you have data on the use of Extended Restricted Housing (check all that apply).**

<mark>Prisons</mark>

Jails

Juvenile  facilities

Mental health facilities

<mark>Privately-contracted facilities</mark>

Special facilities for death-sentenced prisoners

[                    ] Other (please specify)

Below are a series of questions about Extended Restricted Housing for the facilities that you identified in Question 4. We understand that you may not be able to answer all questions for all types that you identified in Question 4. (For example, you may have data on demographics or mental health for people in extended restricted housing in prisons but not in jails.) Please provide the information that you do have. After each question, you will be asked to indicate which types of facilities are included in your response to that question.

**5) Please provide the total custodial population (including men and women) in each type of facility identified in Question 4. (For example, if you indicated in Question 4 that you have data on the use of Extended Restricted Housing in prisons, jails, and juvenile facilities, you would provide the custodial population in these three types of facilities.)**

Prisons                                      `87,111`

Jails

Juvenile facilities

Mental health facilities

Privately-contracted facilities          `12,477`

Separate facilities for death-sentenced prisoners

Other

**6) Please provide the total custodial population (including men and women) in Extended Restricted Housing for all facilities identified in Question 4 (For example, if you indicated in Question 4 that you have data on the use of Extended Restricted Housing in prisons, jails, and juvenile facilities, you would provide the total custodial population in Extended Restricted Housing for each of these three types of facilities.)**

Prisons     `12,002`

Jails

Juvenile facilities

Mental health facilities

Privately-contracted facilities     `434`

Separate facilities for death-sentenced prisoners

Other

## 7) Demographic Information

Part I of the table requests information on the total custodial population for all facilities that you identified in Question 4.

Part II of the table requests information regarding the number of prisoners in Extended Restricted Housing in those facilities.

### Part I. Total Prisoners

|  | White | Black | Hispanic | Asian | Other | Total |
|---|---|---|---|---|---|---|
| Male (under 18 years old) | 34 | 102 | 2 | 0 | 0 | 138 |
| Male (18-49 years old) | 31,513 | 36,774 | 3,201 | 14 | 312 | 71,814 |
| Male (50 years or older) | 11,142 | 8,837 | 660 | 0 | 88 | 20,727 |
| Female (under 18 years old) | 5 | 0 | 0 | 0 | 0 | 5 |
| Female (18-49 years old) | 3,788 | 1,727 | 151 | 1 | 16 | 5,683 |
| Female (50 or older) | 818 | 367 | 29 | 1 | 6 | 1,221 |
| Total | 47,300 | 47,807 | 4043 | 16 | 422 | 99,588 |

### Part II. Prisoners in Extended Restricted Housing

|  | White | Black | Hispanic | Asian | Other | Total |
|---|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Male (under 18 years old) | 18 | 28 | 0 | 0 | 0 | 46 |
| Male (18-49 years old) | 3612 | 6400 | 496 | 2 | 37 | 10,547 |
| Male (50 years or older) | 773 | 684 | 54 | 0 | 3 | 1,464 |
| Female (under 18 years old) | 0 | 0 | 0 | 0 | 0 | 0 |
| Female (18-49 years old) | 161 | 178 | 9 | 0 | 1 | 349 |
| Female (50 or older) | 16 | 12 | 2 | 0 | 0 | 30 |
| Total | 4,580 | 7,252 | 561 | 2 | 41 | 12,436 |

If the data includes prisoners in the "Other" category, please    explain.

Other Category may include some Hispanics, some Asians,  as well as any other race not listed above.  If the inmate is not identifiable as Hispanic or Asian, they may be included in the other category.

Please indicate which of the following facilities are included in the data in the above tables for Question 7.

» Prisons

» Jails

» Juvenile facilities

» Mental health facilities

» Privately-contracted facilities

» Special facilities for death-sentenced prisoners

» Other (please specify)

**8) How many prisoners, if any, (including both male and female, of every age) in Extended Restricted Housing are housed in double cells?**

Not Available

## 9) Mental Health Status

**Part I. Total Prisoners Identified as Having a Serious Mental Health Issue**

|  | White | Black | Hispanic | Asian | Other | Total |
|---|---|---|---|---|---|---|
| Male | 4,565 | 4,566 | 321 | 2 | 33 | 9,487 |
| Female | 1,541 | 616 | 62 | 0 | 3 | 2,222 |

**Part II. Prisoners in Extended Restricted Housing Identified as Having a Serious Mental Health Issue**

|  | White | Black | Hispanic | Asian | Other | Total |
|---|---|---|---|---|---|---|
| Male | 944 | 1,451 | 95 | 1 | 12 | 2,503 |
| Female | 88 | 79 | 4 | 0 | 0 | 171 |

Please indicate which of the following facilities are included in the data in the above tables for Question 9.

» Prisons

» Jails

» Juvenile facilities

» Mental health facilities

» Privately-contracted facilities

» Special facilities for death-sentenced prisoners

» Other (please specify)

## 10) How many transgender prisoners or pregnant prisoners are in Extended Restricted Housing?

|  | Pregnant | Identified as Transgender |
|---|---|---|
| Total Prisoners | 54 | 14 |

Prisoners in Extended
Restricted Housing

| 3 |

| 3 |

Please indicate which of the following facilities are included in the data in the above table for Question 10.

» Prisons

» Jails

» Juvenile facilities

» Mental health facilities

» Privately-contracted facilities

» Special facilities for death-sentenced prisoners

» Other (please specify)

**11) Please provide the total number of prisoners, if any, who as of October 1, 2015 are not in Extended Restricted Housing as defined in this survey, but who have been segregated from the general population and held in cell (either in single- or double-cells) for the following periods:**

Number of Male Female Prisoners

16-19 hours per day

20-21 hours per day

| Both N/A |

Please indicate which of the following facilities are included in the data in the above table for Question 11.

» Prisons

» Jails

» Juvenile facilities

» Mental health facilities

» Privately-contracted facilities

» Special facilities for death-sentenced prisoners

>> Other (please specify)

**12) Do you regularly gather, collect, or report information on each prisoner's length of stay in Extended Restricted Housing?**

Yes

No

Other (please explain)

**13) Types of Extended Restricted Housing— Please provide the number of prisoners held in each type of Extended Restricted Housing for the specified period (continuous/consecutive days). Include both male and female prisoners.**

|  | Protective Custody | Disciplinary Custody | Administrative Segregation | Other Form of Extended Restricted Housing | Total |
|---|---|---|---|---|---|
| 15 days up to 1 month | 16 | 1,286 | 655 | 160 | 2,117 |
| 1 month up to 3 months | 114 | 1,606 | 1,242 | 656 | 3,618 |
| 3 months up to 6 months | 64 | 291 | 489 | 888 | 1,732 |
| 6 months up to 1 year | 49 | 69 | 166 | 1099 | 1383 |
| 1 year up to 3 years | 56 | 15 | 64 | 9901 | 1,036 |
| 3 years up to 6 years | 6 | 0 | 2 | 93 | 101 |
| 6 years or more | 15 | 0 | 5 | 405 | 425 |

If the data includes prisoners in the "Other" form of Extended Restricted Housing category, please specify the type of Extended Restricted  Housing.

Other includes – Close Management, Maximum Management, Death Row, and the Mental Health In Patient.

Please indicate which of the following facilities are included in the data in the above table for Question 13.

» <mark>Prisons</mark>

» Jails

» Juvenile facilities

» Mental health facilities

» <mark>Privately-contracted facilities</mark>

» Special facilities for death-sentenced prisoners

» Other (please specify)

## 14) Changes to Restricted Housing

From January 1, 2013 through October 1, 2015, has your jurisdiction changed any of its policies regarding Restricted  Housing?

If so, please select the appropriate category. Please explain the change in policy and, if possible, email a copy of the relevant policies to Corey Guilmette at corey.guilmette@yale.edu.

Criteria for entry to Restricted Housing

| 33-601.800 | Close Management | 12/24/2013 | Revised Forms DC6-128 and DC6-209; added a definition of security threat group; revised what actions constitute a basis for placement in CMI; updated responsible bureaus/sections to correspond to the current organizational structure of the department; and clarified when written authorization is to be provided for release from close management. |
|---|---|---|---|

Criteria for release to Restricted Housing

Oversight in Restricted Housing

Mandated time out of cell for Restricted Housing prisoners

| 33-601.820 | Maximum Management | 7/14/2014 | Allows an inmate in maximum management to have recreation privileges up to two two-hour sessions per week if the Institutional Classification Team approves of the privilege after the inmate has spent nine consecutive months on maximum management. |
|---|---|---|---|

Programming in Restricted Housing

Opportunities for social contact in Restricted Housing

Physical Environment of Restricted Housing

Programming for mentally ill prisoners who have been in Restricted Housing

Case 4:19-cv-00212-MW-CAS    Document 65-2    Filed 12/12/19    Page 13 of 17



Policies or training related to staffing of Restricted Housing

Other

None

## 15) Proposed Changes to Restricted Housing

Is your jurisdiction planning any changes to its policies regarding restricted housing? Not at

this time.

Please select the appropriate category and explain the contemplated change in    policy.

Criteria for entry to Restricted Housing

Criteria for release to Restricted Housing

Oversight in Restricted Housing

Case 4:19-cv-00212-MW-CAS   Document 65-2   Filed 12/12/19   Page 15 of 17

Mandated time out of cell for Restricted Housing prisoners

Programming in Restricted Housing

Opportunities for social contact in Restricted Housing

Physical Environment of Restricted Housing

Programming for mentally ill prisoners who have been in Restricted Housing

Policies or training related to staffing of Restricted Housing

Other

None

**16) We may have follow-up questions to clarify the information reported in this survey. Please provide the name, contact information, and title for the person to whom such questions should be directed.**

Powered by Qualtrics

**EXHIBIT B**
**TO PLAINTIFFS' MOTION TO COMPEL FIRST REQUESTS FOR**
**PRODUCTION FROM DEFENDANTS MARK INCH AND FLORIDA**
**DEPARTMENT OF CORRECTIONS AND RESPONSES FROM**
**DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS TO**
**INTERROGATORIES BY PLAINTIFF HARVARD WITH**
**INCORPORATED MEMORANDUM OF LAW**

**Analysis of Segregation Processes**



**Florida Department of Corrections**
**501 South Calhoun Street**
**Tallahassee, Florida 32399**

# Analysis of Segregation Processes

**Julie L. Jones**
**Secretary**

**January 13, 2016**

# Contents

**Introduction:** ...................................................................................................................3

**Historical** ........................................................................................................................3

    Administrative Confinement (AC): ..........................................................................3

    Disciplinary Confinement (DC): ..............................................................................4

    Close Management (CM): .........................................................................................5

**Current Status and Actions** .............................................................................................6

    Administrative Confinement (AC): ..........................................................................6

    Disciplinary Confinement (DC): ..............................................................................8

    Close Management (CM): .........................................................................................8

**Future Recommendations** ..............................................................................................10

    Administrative Confinement (AC): ........................................................................10

        *Recommendation #1:* ........................................................................................10

    Disciplinary Confinement (DC): ............................................................................10

        *Recommendation #1:* ........................................................................................10

        *Recommendation #2:* ........................................................................................11

        *Recommendation #3:* ........................................................................................11

    Close Management (CM): .......................................................................................11

        *Recommendation #1:* ........................................................................................11

        *Recommendation #2:* ........................................................................................12

        *Recommendation #3:* ........................................................................................12

        *Recommendation #4:* ........................................................................................12

        *Recommendation #5:* ........................................................................................13

## Introduction:

*The purpose of this paper is to look at the Department's close management, administrative and disciplinary segregation statuses and the processes used to place, monitor and release inmates from these statuses. We will look at what has occurred in the past, what is taking place now, changes being implemented at this time as well as recommendations for the future.*

## Historical

Administrative Confinement (AC):

*AC is a temporary removal of an inmate from the general inmate population in order to provide for security and safety until such time as more permanent inmate management processes can be concluded. The rules and procedures governing the placement of inmates into AC have remained mostly unchanged since 2001. Chapter 33-602.220 F.A.C. outlines the specific reasons an inmate may be placed in AC and the time limits based on each placement reason which include pending disciplinary or outside charges, investigation of inmate requests for protection from other inmates, investigation of allegations of fear of staff, any investigation/evaluation for change of status or transfer is pending and the presence of the inmate in the general population might interfere with that investigation or present a danger to the inmate, other inmates, or to the security and order of the institution, or when an inmate is received from another institution when classification staff is not available to review the inmate file and classify the inmate into general population.*

*The following chart shows the percentage of inmates that were housed in AC on the days specified over the last ten years.*



*While the number of inmates in AC has almost doubled from 1,696 in 2005 to 3,025 in 2015, the percentage of the inmate population housed in AC has only increased from 2% to 3% during this ten year period due to the increase in the inmate population from 84,895 to 100,050.*

3

Disciplinary Confinement (DC):

*The rules and procedures governing the placement of inmates into DC have remained mostly unchanged since 2001. Chapter 33-602.222 F.A.C. outlines the conditions of DC while Chapters 33-601301-314 outline the disciplinary report process and the rules of prohibited conduct and allowed penalties for each infraction.  Automation was developed to record the disciplinary investigation and hearing processes in the early 2000's.*

*Historical records show that the median DC stay during that same time period was 27 days.*

| Time Period | # | Median |
|---|---|---|
| FY 2010/2011 | 51,134 | 27 |
| FY 2011/2012 | 54,272 | 27 |
| FY 2012/2013 | 52,324 | 27 |
| FY 2013/2014 | 53,887 | 27 |
| FY 2014/2015 | 49,670 | 28 |
| FYs 2010/2015 | 261,287 | 27 |

*The following chart shows the number of inmates housed in DC on the days specified over the last ten years.  The percentage of the inmate population housed in DC has remained consistently at 5% during this ten year period.*



4

Close Management (CM):

*Osterback v. Moore was filed on October 28, 1997 alleging that prisoners housed in close management status suffered cruel and unusual punishment in violation of the Eighth Amendment rights. The case was not closed until March 25, 2008. The agreement reached in this case resulted in the establishment of our current close management rules (33-601.800 F.A.C.). Important elements of this agreement were operational issues such as training of correctional staff regarding response to inmates with mental health issues, operational issues such as out-of-cell time, and the formal assessments and reviews by the Institutional Classification Team and the final review and decision by the State Classification Office ensuring that a consistent and impartial statewide view was taken on the utilization of these close management segregation beds. The basic principles and procedures outlined in the close management rule have not changed since Osterback was settled.*

*Based on records kept since 12/31/2002, the following pertains to the **Male** CM population only:*

| Date | Inmate Count | Includes Male CM inmates Receiving In-Patient Treatment | | Does Not Include Male CM inmates Receiving In-Patient Treatment | |
|---|---|---|---|---|---|
| | | Total Inmates with CM Team Decisions | % of Inmate Population in CM | Total Inmates with CM Team Decisions | % of Inmate Population in CM |
| 12/31/2002 | 75,190 | 2,649 | 3.52% | 2,550 | 3.39% |
| 1/31/2003 | 75088 | 2,722 | 3.63% | 2,620 | 3.49% |
| 1/6/2004 | 79,210 | 3,213 | 4.06% | 3,117 | 3.94% |
| 1/7/2005 | 82,813 | 3,051 | 3.68% | 2,807 | 3.39% |
| 1/2/2006 | 86,231 | 3,561 | 4.13% | 3,174 | 3.68% |
| 1/1/2007 | 90,423 | 3,393 | 3.75% | 3,008 | 3.33% |
| 1/7/2008 | 94,860 | 3,654 | 3.85% | 3,208 | 3.38% |
| 1/5/2009 | 99,341 | 3,914 | 3.94% | 3,436 | 3.46% |
| 1/4/2010 | 100,921 | 3,495 | 3.46% | 3,015 | 2.99% |
| 1/3/2011 | 101,712 | 3,310 | 3.25% | 2,808 | 2.76% |
| 1/2/2012 | 100,576 | 3,436 | 3.42% | 2,945 | 2.93% |
| 1/7/2013 | 99,565 | 3,549 | 3.56% | 3,070 | 3.08% |
| 1/6/2014 | 100,474 | 3,141 | 3.13% | 2,687 | 2.67% |
| 1/5/2015 | 100,288 | 3,534 | 3.52% | 3,094 | 3.09% |
| 12/28/2015 | 99,386 | 3,324 | 3.34% | 2,883 | 2.90% |

*On January 5, 2016 we had a total of twenty-seven (27) **Female** inmates in CM status and seven (7) of them or 26% are also currently receiving in-patient mental health treatment.*

*Subsequently we looked at the group of inmates who had been in CM and released from that status during the last five years to compare the length of stay in CM and to evaluate numerous other characteristics of the group. We also looked at the differences between the CM population that had spent time in in-patient mental health treatment programs while in CM status and those*

5

*that did not.  The median days spent in CM more than doubled for inmates with in-patient mental health treatment history.  This is due at least in part to the current policy that prohibits an inmate's CM level from being reduced or release approved while they are receiving in-patient mental health treatment.  However, if their negative behavior rises to the level of a major rule violation, their CM level can be modified upward while in treatment.  This results in CM inmates continuing to receive formal assessments of their CM status at least every six months while they are in treatment; however, unless extreme negative behavior occurs the only option the Institutional Classification Team and State Classification Office has is to recommend and/or approve continuation at the same level of CM. The intent of this policy is to prevent the manipulation of the in-patient treatment process to obtain release from CM.*

| | Approved for CM1 Initially | Approved for CM2 Initially | Approved for CM3 Initially | Total Median |
|---|---|---|---|---|
| Median Stay in CM w/o MH (# of days) | 652 | 375 | 189 | 368 |
| Median Stay in CM with MH (# of days) | 1,093 | 838 | 497 | 883 |
| Total Median Stay in CM (# of days) | 721 | 378 | 190 | 375 |

*We then looked at this five year group's adjustment during their time in CM.  It is clear that the vast majority of inmates receive no new DRS while in CM and that the new DRs they receive are classified as non-serious DRs.  Only 17% of the inmates in CM during our five year time frame received DRs classified as serious or major rule violations.*

| | Approved for CM1 Initially | | Approved for CM2 Initially | | Approved for CM3 Initially | | Total CM Releases in Last 5 Years | |
|---|---|---|---|---|---|---|---|---|
| | # | % | # | % | # | % | # | % |
| ≥ 1 Major Rule Violations | 293 | 14% | 480 | 19% | 350 | 11% | 1,123 | 15% |
| ≥ 1 Serious DRs | 80 | 4% | 38 | 1% | 31 | 1% | 149 | 2% |
| ≥ 1 Non-Serious DRs | 947 | 46% | 806 | 32% | 784 | 25% | 2,537 | 33% |
| No DRs | 737 | 36% | 1,230 | 48% | 1,932 | 62% | 3,899 | 51% |
| Total | 2,057 | | 2,554 | | 3,097 | | 7,708 | |

## Current Status and Actions

Administrative Confinement (AC):

*Due to the introduction of automation to assist staff in tracking the placement, review and release from AC in 2001, it became a priority for staff to correctly identify and document the reason an inmate is being placed in AC.  Inclusion of automated appointments to assist staff in remaining compliant with required reviews and time frames increased accountability and ensured that inmates remain in AC only as long as is necessary to resolve the placement issue.*

*The current rules require the review of the Institutional Classification Team to  approve, modify or disapprove the inmate's placement in AC status, the granting or request of time frame extensions*

6

and recommending release from AC as soon as that action is appropriate. The rule also requires the State Classification Office to review and make final decisions regarding time frame extensions and release from AC.

The implementation of the Prison Rape Elimination Act (PREA) has changed the AC process somewhat, and new elements to the automated system have been added to facilitate the tracking of that process for both "perpetrators" and "victims". Since the PREA Inspector General's Office investigation process is confidential and separate from the typical institutional type investigations those placements are more difficult for institutional staff to monitor and ensure timely resolution. Effective communication between the assigned investigator and institutional staff regarding the need or lack thereof to keep the inmates in AC is essential.

On July 7, 2015 directions were sent out to all institutions by the Director of Institutions advising staff of the procedure to be utilized regarding AC placements for PREA victims. The ICT is required to make a decision approving, modifying or disapproving the placement within seventy-two (72) hours and they are to interview the inmate, determine the inmate's perception of his/her safety and presents the inmate with the option to either remain in AC pending the outcome of the Office of the Inspector General's investigation or to be released. The Office of Institutions will continue to provide direction and reminders to institutional staff regarding this process in the future.

Additionally, the Bureau of Classification Management has begun providing a list of those inmates under PREA investigation (both perpetrators and victims) who have been in AC for more than 90 days to the Office of the Inspector General to facilitate their assistance in acquiring the inmate's release from AC as soon as possible. Inmates cannot just be transferred in these situations to resolve the AC placement due to the potential of increasing the possibility of inmates manipulating the PREA process just to obtain a transfer.

The chart below displays the number of inmates in AC on 12/11/2015 by placement reason and time in this status. The average and median stay by placement reason are provided in the last two columns.

| REASON FOR AC | DAYS IN STATUS ON 12/11/2015 | | | | | | Total I/M in Status | Avg. days in Status | Median Days in Status |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 1-15 | 16-30 | 31-60 | 61-90 | 91-120 | 121+ | | | |
| – PREA Subject | 35 | 49 | 40 | 44 | 16 | 19 | 203 | 54 | 29.0 |
| – PREA Victim | 47 | 36 | 46 | 27 | 17 | 10 | 183 | 46 | 29.0 |
| – AC Pending CM | 22 | 22 | 24 | 8 | 3 | 0 | 79 | 32 | 21.5 |
| – DC Pending CM | 12 | 9 | 6 | 0 | 1 | 0 | 28 | 22 | 16.5 |
| – Pending PM | 312 | 155 | 144 | 16 | 6 | 4 | 637 | 21 | 14.0 |
| – Pending Inv. | 420 | 167 | 100 | 28 | 19 | 10 | 744 | 21 | 10.0 |
| - Observ. Status | 8 | 1 | 1 | 0 | 0 | 0 | 10 | 11 | 5.5 |
| – Security | 18 | 6 | 2 | 0 | 1 | 0 | 27 | 10 | 4.0 |
| – Pending DR | 1,115 | 29 | 4 | 2 | 0 | 0 | 1,150 | 4 | 3.0 |
| – Rec'd on Transf. | 3 | 0 | 0 | 0 | 0 | 0 | 3 | 6 | 1.0 |
| TOTAL | 1,992 | 474 | 367 | 125 | 63 | 43 | 3,064 | 18 | 7 |

(See FUTURE RECOMMENDATIONS - AC for additional suggested changes.)

7

Disciplinary Confinement (DC):

*While the procedures and rules governing DC have not appreciably changed over the last decade, the inmate population has grown and we frequently receive requests from the institutional level to increase the number of DC beds.  To increase the number of DC beds without careful thought could contradict the purpose of setting time limits based on specific disciplinary infractions.  Staff must carefully guard against writing multiple disciplinary reports, to be run consecutively, resulting in ever increasing stays in DC.  Inmates found guilty of committing violations of the rules are confined for specified periods of time to individual cells based upon authorized penalties for prohibited conduct.  DC is intended to punitive in nature with the goal to correct the inmate's negative behavior in as short a period of time as possible.  If the inmate continues violating the rules, CM is to be utilized, not for punishment but to ensure the security, order and effective management of the institution despite the inmate's behavior which has demonstrated an inability to live in general population without abusing the rights and privileges of others.*

*A member of the Institutional Classification Team is required to review the cases of inmates in DC every week.  A psychological screening assessment by a mental health professional to determine the inmate's mental condition is required for any inmate assigned to DC for more than thirty (30) days and if DC is continued at least every ninety (90) days thereafter.  If the inmate remains in DC for more than sixty (60) days, the Institutional Classification Team interviews the inmate and prepares a formal assessment and evaluation report after each consecutive sixty (60) day period in DC.  These reports include what has transpired since the last report, the decision concerning continued disciplinary confinement, and the basis for their decision.  During their on-site visit, the State Classification Office reviews these reports, the psychological assessments and interviews the inmate before determining the final disposition of the inmate's disciplinary confinement.*

*A visit to each inmate in DC status by a member of the Institutional Classification Team is required at least once every thirty (30) days and the State Classification Office*
*at least once every sixty (60) days to ensure that the inmate's welfare is provided for and to determine if the inmate should be released.*

*(See FUTURE RECOMMENDATIONS - DC for additional suggested changes.)*

Close Management (CM):

*In the last several months, it has become apparent that there needed to be a thorough review and discussion regarding our Close Management process as it pertains to the initial placement of and the continued management (level modifications/reductions to include release from this status) of this particular inmate population.  This need has become evident due to the number of inmates housed at non-close management institutions pending transfer to a close management institution and the number of inmates presently housed at designated close management institutions.  In an effort to ensure that this specific inmate population and the bed space designated to this population is utilized and managed in the most efficient and effective manner, a review team was appointed.*

*The team members met on November 4, 2015 in Central Office to review and discuss the current process/s and offer recommendations for maintaining  best practices regarding the management of the close management population.  There was significant discussion as to the below topics/ideas and the following actions are currently being taken:*

8

- *Close Management 3 will no longer be utilized as an entry point. Instead, CM3 will be used as a "step-down" intended to be short-term with focus placed on programming to prepare the inmate for return to general population.*
- *Subsequent SCO reviews in conjunction with the Institutional Classification Team's interaction with the inmate will shorten the time between reviews of the inmate's close management status when appropriate. During a routine formal close management review conducted by the Classification Officer, Institutional Classification Team and State Classification Office, the inmate will be informed that if he completes a specified period of time (i.e. 60 days, 90 days, etc.) with no serious incidents that he/she will be reduced in CM level or released by the State Classification Office completing a subsequent decision entry. The State Classification Office already has the ability to complete subsequent reviews to modify the CM level downward or to release the inmate from CM, but this will bring the inmate into the process by letting him/her know up front what will happen in the specified time period if they perform appropriately. This process, while moving the inmate through the levels of close management faster without increasing the Classification Officer and Institutional Classification Team's current work load <u>will</u> increase the State Classification Officer's work load. It is believed that the current State Classification Office staff can handle this increase, but this will need to be closely monitored. (See FUTURE RECOMMENDATIONS – CM – RECOMMENDATION #1 for additional suggested changes)*
- *The Institutional Classification Teams at CM facilities will review their current CM populations with a focus on reducing CM levels and/or releasing inmates from CM if appropriate. The Institutional Classification Team's recommendations were reviewed by the State Classification Office and their subsequent decisions were entered in OBIS to reflect these modifications and releases. This review resulted in the following changes:*

| CHANGES APPROVED | ACTION TOTALS |
|---|---|
| C1 TO C2 | 143 |
| C1 TO C3 | 1 |
| C2 TO C3 | 101 |
| C2 TO GP | 78 |
| C3 TO GP | 299 |
| TOTAL CHANGES | 622 |

*The CM releases that resulted from this mass review in December 2015 were spread out over the last few weeks. The last group will be going out the week of January 11, 2016. Once these inmates have been transferred, we will review the Close Management beds and compare with overflow numbers to determine what changes will need to be made to CM bed designations. These will be submitted to Mr. Dixon/Mr. Comerford for review and approval.*

- *The State Classification Office will review all inmates approved for CM that are being housed at Non-CM institutions pending transfer to a CM facility to determine if positive behavior (i.e. no disciplinary action, etc.) warrants a reduction of CM level prior to transfer to a CM institution or a disapproval of CM and approval of a negative transfer to another Non-CM institution instead. This review resulted in seventy-three (73) inmates being released from CM status and approved for negative transfers and forty-one (41) inmates were reduced from CM1 to CM2. Beginning the week of January 19, 2015, we will begin moving the overflow inmates and adjusting the CM populations at each facility. This should be completed by February 8, 2015, at which time we will begin moving the waiting list into appropriate locations. Expected elimination of the waiting list would be the middle of March.*

9

- *Effectively utilize the OBIS disposition codes for scheduling three month reviews instead of six months, when appropriate.*
- *State Classification Officers working in the field will continue to be diligent in initially approving the appropriate CM level as well as those in Central Office providing secondary review of all CM placement decisions.  The result of this focus is evidenced by the fact that the average number of initial CM placement approvals going from seventy-one (71) in October 2015 to thirty-six (36) in November 2015.*

*Overall, the Institutional Classification Team and State Classification Office's focus regarding initial CM placements has moved toward those inmates who have <u>shown</u> by their actions that they are willing and able to threaten the safety of others.  The Administrative Rules continue to allow for the placement of inmates into close management for lesser offenses such as disobeying orders, multiple disciplinary infractions, obscene actions, etc.  However, we must prioritize the inmates who have caused harm to our staff and/or other inmates or seriously threatened the security of our institutions for placement in close management and we must ensure that once placed in CM, the inmate is not maintained in that status longer than necessary to manage the inmate's behavior.*

## Future Recommendations

Administrative Confinement (AC):

*Recommendation #1:*

*The current automation available to track the placement, review and release of inmates in AC is contained within the "Classification Contact Log" which is used to record many different processes and other important information.  The AC process and the requirements of rule and law have become so diverse and technical that a separate automated system is needed to accurately record and track the various reasons for AC placement, the individual time frames based on those reasons and the subsequent actions taken to return the inmate to general population or other longer term housing status in a timely manner.*

*Completion Time Frame:*

*This will require an extensive work order involving changes to OBIS in addition to the creation of new OBIS and web based screens.  The time frame for completion will be dependent on Department and OIT priorities.*

Disciplinary Confinement (DC):

*Recommendation #1:*

*Review current infraction penalties with the focus on reducing the permitted time frames.*

*Completion Time Frame:*

*The review can be completed within the first quarter of 2016.  If Administrative Rule changes are proposed the completion date will depend on that review and acceptance process.*

*Recommendation #2:*

*Update the automated disciplinary process to:*
- *systematically send a weekly report to the Bureau Chief of Classification Management listing all inmates (including those in CM) that have been in DC status for greater than 120 consecutive days;*
- *disciplinary confinement time will run concurrently when multiple DRs occur unless otherwise authorized by the Warden;*
- *provide staff the ability to enter the actual DC release date for each DR resulting in DC time;*
- *display an accurate overall DC release date that will take into consideration all current DRs on the inmate's record with DC time taking into consideration whether the time was run consecutive or concurrent to other DRs; and*
- *the overall DC release date will change automatically based on the individual release dates entered by staff when an inmate is released from DC early.*

*Completion Time Frame:*

*This will require an extensive work order involving changes to the Offender Based Information System (OBIS).  The time frame for completion will be dependent on Department and Office of Information Technology priorities.*

*Recommendation #3:*

*Review the issue of DC time while in CM.  As mentioned in DC Recommendation #2, the automated disciplinary system should be programmed to send a weekly report to the Bureau Chief of Classification Management listing all CM inmates who have been in DC status for greater than 120 days to allow for Central Office review of inmates with extended DC stays to ensure appropriateness.*

*Completion Time Frame:*

*The review can be completed within the first quarter of 2016.  If Administrative Rule changes are proposed the completion date will depend on the review and acceptance process.*

Close Management (CM):

*Recommendation #1:*

*Update the automated close management referral and review system to provide additional disposition codes to be used by the Institutional Classification Team and State Classification Office to allow for scheduling the inmate's next CM review to be scheduled at various shorter time frames such to allow inmates to be reduced and released from CM as soon as that action is appropriate.  Currently, the only options for staff to use are a ninety (90) day review or six months.  The rule requires each CM inmate to be reviewed at least every six months, but reviews are permitted as frequently as appropriate.*

11

*Completion Time Frame:*

*This will require a work order involving changes to the Offender Based Information System which can be prepared within the first quarter of 2016; however, the time frame for completion of the work order will be dependent on Department and Office of Information Technology priorities.*

*Recommendation #2:*

*Implement programming for CM inmates in all levels, such as:*

- *Provide programming such as "Thinking for a Change" for all CM inmates.*
- *Explore and implement other programming based on best practices for issues such as, anger/aggression management, post traumatic stress disorder, behavioral modification.*
- *Consistently allow educational materials to be possessed by CM inmates.*
  *Use completion of programs as an incentive for increased privileges through reduction in CM level and eventual release to general population.*

*Completion Time Frame:*

*Achieving this goal will involve the coordinated efforts of the Office of Development: Readiness and Improvement, Classification Management and Administrative staff to identify the programming based on best practices, identifying/hiring staff to present the programming, establishing the processes of providing the programming and the incentive rewards for successful participation, etc.*

*Recommendation #3:*

*A review should be conducted regarding how we currently view CM inmates who are receiving in-patient mental health treatment.  They are not held to CM conditions, restrictions or privileges so they should not be counted as CM inmates for extensive periods of time. Consideration should be given to releasing these inmates from CM status when it is determined that the inmate's behavioral issues are better suited to be resolved by placement in a Residential Treatment Unit.*

*Completion Time Frame:*

*A team can be identified to review and discuss this issue in January 2016, The team selected should include representatives from Legal, Mental Health, Classification and Security. Subsequent time frames can then be established to accomplish any recommendations.*

*Recommendation #4:*

*Over the last five years, an average of 573 inmates have been released from prison directly from CM.  Based on this fact, a team should be established to review providing increased release programming starting at one hundred eighty (180) days from release and removing appropriate inmates from CM who are within sixty (60) days of release from prison to a non-CM unit to provide for more interaction with other inmates and staff in conjunction with programming to better prepare the inmates for release.*

12

*Completion Time Frame:*

*A team can be identified to review and discuss this issue in January 2016.  Subsequent time frames can then be established to accomplish any recommendations.*

<u>Recommendation #5:</u>

*Current procedure requires that an inmate approved for release from CM must be transferred to a Level 5 or higher facility.  This has created a large concentration of former CM inmates at these locations.  This policy should be revised to allow for these inmates to be transferred to a Level 4 facility if appropriate based on the inmates overall adjustment while in CM status. These decisions will be made after review by the Institutional Classification Team and State Classification Office.  Reports are already available in the Offender Based Information System to allow for the tracking of former CM inmates to facilitate each facility's ability to monitor these inmates.*

*Completion Time Frame:*

*If this recommendation is approved by the administration, this policy change can be implemented as soon as changes can be made to the "Inmate Screening Factors" for each Level 4 facility to allow for the housing of inmates who have been in CM during the last 60 days.  Various Classification technical manuals and procedures will also need to be revised.*

13

**EXHIBIT C**
**TO PLAINTIFFS' MOTION TO COMPEL FIRST REQUESTS FOR**
**PRODUCTION FROM DEFENDANTS MARK INCH AND FLORIDA**
**DEPARTMENT OF CORRECTIONS AND RESPONSES FROM**
**DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS TO**
**INTERROGATORIES BY PLAINTIFF HARVARD WITH**
**INCORPORATED MEMORANDUM OF LAW**

**Long Term Segregation – Team Report**



**FLORIDA DEPARTMENT OF CORRECTIONS**

**LONG TERM SEGREGATION – TEAM REPORT**

## SUBJECT

**Viable Alternatives for the Long-Term Segregation of Inmates —**

**Background:** For several decades, prisons in the United States have increasingly relied on the use of segregation to manage difficult populations in their overcrowded systems and the FDC is no exception. According to the U.S. Department of Justice's Bureau of Justice Statistics, the number of people in restricted housing units nationwide increased from 57,591 in 1995 to 81,622 in 2005. Evidence-based research shows that holding people in isolation with minimal human contact for extended periods of time is exceptionally expensive and in many cases counterproductive as long-term segregation can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people, have negative outcomes for institutional safety, and increase the risk of recidivism after release. Therefore the FDC is piloting an alternative to long-term segregation in an effort to transition its current practices concerning long-term segregation into viable alternatives that can maintain the same or similar amount of control and effectiveness while simultaneously reducing the overall number of inmates who fall into the category of "long-term" segregation status. When a determination is made that an inmate must be segregated from the general population, that inmate should be housed in safe, humane conditions that, ideally, prepare the inmate for reintegration into both the general prison population and society at large. For this purpose, "Long-Term" is considered to be more than *60* consecutive days in a segregated status. Gulf Correctional Institution and Liberty Correctional Institution will be the first facilities to implement/pilot an alternative housing project.

## TEAM MEMBERS

1. Chairman — Warden Richard Johnson — Liberty Correctional Institution (LCI)
2. Co-Chairman — Warden James Blackwood — Gulf Correctional Institution (GCI)
3. LCI Members — AW Jeremy Edwards, Col. Trampus Gray, Capt. James Sikes, Sgt. William Davis, Sgt. Robert Everett
4. GCI Members—AW Steve Roddenberry, Col. Mitchell Brown, Capt. William Schwarz, Sgt. Jonathan Mullins

## GOALS

- Develop punitive actions that are more proportionate to the inmate's disciplinary action.
- Reduce the amount of time spent in-cell
- Incentivize good behavior
- Reduce the amount of "critical incidents" in segregation units
- Develop and maintain metrics that accurately capture the results of this initiative as it relates to the overall impact of the number of inmates who are in a full-time disciplinary status as well as other disciplinary-related measures at specific intervals throughout this process.
- Create a substantial overall decrease in the amount of inmates whose disciplinary status is considered long-term in nature.

## MEETING DATES

1. March 4, 2016
2. March 10, 2016
3. March 23, 2016
4. March 29, 2016 (Mr. Johnson, Mr. Edwards and Col. Gray)
5. April 5, 2016 (Mr. McLaughlin and Mr. Edwards telephonically)

6.  April 6, 2016 (Mrs. Vargas and Mr. Edwards telephonically)
7.  April 12, 2016 (Mr. Johnson, Mr. Edwards and Col. Gray)
8.  April 14, 2016 (Mr. Edwards and Mrs. Ponder telephonically)
9.  April 19, 2016 (Mr. Johnson, Mr. Blackwood and Mr. Edwards telephonically)
10. April 26, 2016 (Mr. Edwards and Mr. Johnson)
11. April 27, 2016 (Mrs. Vargas and Mr. Edwards telephonically)
12. May 3, 2016 (Mrs. Vargas and Mr. Edwards telephonically)

## RECOMMENDATIONS

1.  Create an Alternative Housing Status in a GP section/quad of a Secure Cell Housing Unit.
2.  Create a program to incentivize good behavior while in a segregated status for punitive purposes by correlating it to a reduction in time served.
3.  Develop a curriculum/program that focuses on identifying the triggers that preclude negative behavior and providing ways to teach the inmates how to ameliorate same.

## AFFECTED RULES

1.  F.A.C. 33-602.220
2.  33-602.222
3.  33-601.301-314

## AFFECTED PROCEDURES

Click here to enter text.

## AFFECTED TECHNICAL MANUALS

1.  Inmate Discipline Technical Manual
2.  Alternative Housing Technical Manual
3.  External Movement/iBAS Technical Manual

## STAFF IMPACT

A minimum of 2, Level I positions assigned to the dorms at all times if a GP Secure Cell Dorm is utilized and 3, Level I positions assigned to the dorms at all times if a Confinement or Hybrid Secure Cell Dorm is utilized.

## AUTOMATION NEEDS

A new **status** will be created specifically for this purpose — ▉▉ — **Alternative Housing"**

These inmates will continue to receive program/work evaluations in addition to the security evaluations and will be eligible to receive up to **10** days gain time applied if they are not in any type of voided application status.
As with existing programmatic controls that are in place in the iBAS/SRI system, if an attempt is made to house an inmate with an ▉▉ status in a bed that does not have an ▉▉ mission or an attempt is made to house an inmate who has an ▉▉ status with an inmate

who has any other status, a warning flag will be generated. In addition, the ███ override option will not work for the following specific flags - ████████████████████ & ██████████ and ██████████ .

IMPLEMENTATION
**Beds -**
Gulf CI will utilize the section 2 of Q-Dorm which is a T-Building Design (88 beds)
Liberty CI will utilize the top-tier in section 3 of I-Dorm which is a T-Building Design (44 Beds)

**DR Eligibility -**
The following rules of prohibited conduct have been identified as being eligible for consideration for alternate housing status -
**1-3, 1-4, 2-4, 3-1, 3-5 thru 3-12, 3-15, 3-16, 4-2, 4-3, 5-1, 5-2, 6-1, 6-2, 7-1 thru 7-5, 8-1, 8-2, 9-1 thru 9-6, 9-9 thru 9-17, 924 thru 9-26, and 9-28 thru 9-32, 10-2 thru 10-9 and 11-1.**

**Tracking -**
A form will be developed to track inmates while in this status. In addition, the ██████ , Housing Unit Log will be used to capture any movement or activity that affects the entire group, i.e. **Work-Call, Feeding, Canteen, Showers, etc.**

**Restrictions -**
Inmates who are assigned to this status will have their canteen and telephone privileges suspended throughout this duration, unless the Hearing Team/Officer does not impose these sanctions or a recommendation is made as a result of the weekly review to re-instate one or both privileges. Their visitation privileges will be suspended while in this status, and they will also not be eligible for any additional out-of-cell activities that are not explicitly authorized in the daily schedule.

**Rules - (See Attachment)**

As is currently the practice with confinement status inmates, a set of rules specific to this level of housing will be developed that outlines what the inmate is allowed/not allowed to do, and it will also provide the penalties for failing to do same. This will be acknowledged by the inmate via a document with the inmate's printed name and signature.

**Schedule -**
**Monday thru Friday (Approximately 11 hours in-cell per day)**

- Wake up with the rest of the dorm (Approx. 4:30am)
- Report to breakfast as a group and eat with the RDP/CFO (They will be seated separately, and this will allow for inmates in this status who are already in the RDP to continue same)
- Report back to the dorm for the Morning Count
- Report to their assigned duties for AM work-call (The inmates in this status will continue to report to the job or program that they were assigned while they were in GP status. The exception will be inmates assigned to Food Service, Canteen or Orderly positions as well as those who were Unassigned. They will all be placed on a specific Inside Grounds squad and will work daily.)
- Report to the center gate for accountability, then report to the dining hall for lunch. This will occur at the same time the
- RDP inmates eat.
- Report to their assigned duties for the PM work-call
- Report to the center gate for accountability, then report to the dining hall for supper. This will occur at the same time the RDP inmates eat.
- Report to the dorm as a group and take showers
- Be locked in their cells once showers are complete (Approx. 5:30pm)

**Weekends and Holidays (Approximately 20 hours in-cell per day)**

This schedule will require the presence of the housing supervisor during the movements in order to ensure that they are conducted in a controlled manner.

Report to the dining hall for breakfast with RDP.
Locked in cells immediately upon return.
Report to the dining hall for lunch with RDP.
Locked in cells immediately upon return.

Report to the dining hall for supper with RDP.
Report to the dorm as a group and take showers.
Locked in cells once showers are complete. **(Approx. 5:00pm)**

**EXHIBIT D**
**TO PLAINTIFFS' MOTION TO COMPEL FIRST REQUESTS FOR PRODUCTION FROM DEFENDANTS MARK INCH AND FLORIDA DEPARTMENT OF CORRECTIONS AND RESPONSES FROM DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS TO INTERROGATORIES BY PLAINTIFF HARVARD WITH INCORPORATED MEMORANDUM OF LAW**

**Procedures Related to Close Management**

**Procedures Related to Close Management**

| Procedure | Title |
|---|---|
| 204.005 | Canteen Operations |
| 403.003 | Health Services for Inmates in Special Housing |
| 403.006 | Sick-Call process and Emergencies |
| 403.009 | Management of Hunger Strikes |
| 404.004 | Mental Health Inpatient Multidisciplinary Treatment and Services |
| 501.102 | TABE Testing |
| 501.106 | Academic Education Programs |
| 501.108 | Correspondence Study Courses |
| 501.201 | Special Education Services |
| 501.301 | Law Library Programs |
| 501.303 | Law Library Interlibrary Loan Services |
| 501.305 | Word Processing Services in Law Libraries |
| 501.310 | General Library Programs |
| 501.401 | Admissible Reading Material For Institutions |
| 503.003 | Spiritual Advisor Visits |
| 506.032 | Faith and Character Based Residential Programs |
| 508.002 | Spectrum |
| 601.209 | Reception Process-Initial Classification |
| 601.215 | Special Reviews |
| 601.218 | Inmate File Audits |
| 601.219 | Inmate Transfer Approval Process |
| 601.220 | Institutional Inmate Records |
| 601.223 | Institutional Classification Unit, Institutional Classification Team and State Classification Office |
| 602.003 | Use of Force Devices, Agents and Munitions |
| 602.004 | Forced Cell Extraction |
| 602.013 | Automated Inmate Telephone Use |
| 602.014 | Armed Supervision Squads |
| 602.015 | Inmate Visitation Photo Project |
| 602.018 | Contraband and Searches of Inmates |
| 602.024 | External Inmate Transportation and Security |
| 602.028 | Special Management Spit Shield |
| 602.030 | Security Staff Utilization |
| 602.032 | Electronic Restraint Belt/Band |
| 602.033 | Video Cameras/Housing Unit Fixed Camera Digital Video Maintenance and Retention |
| 602.036 | Gender Specific Security Positions, Shifts, Posts and Assignments |
| 602.037 | Tools and Sensitive Item Control |
| 602.039 | Key Control and Locking Systems |
| 602.041 | Radio Operations |
| 602.044 | Internal Inmate Movement and Supervision Requirements |
| 602.046 | Inmate Clothing Issue and Laundry Program |

**Procedures Related to Close Management**

| 602.047 | Inmate Property |
|---------|-----------------|
| 602.048 | Contact Cards |
| 602.049 | Forced Hygiene Compliance |
| 602.051 | Wellness Education Program for Inmates |
| 602.053 | Prison Rape: Prevention, Detection, and Response |
| 602.211 | Designation of Youthful Offenders, Young Adult Offenders |

# Exhibit 8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

       Plaintiffs,

vs.                        CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

       Defendants.

_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO COMPEL (DOC. 65-1)**

      Defendants, Mark Inch, in his official capacity as Secretary of the Florida

Department of Corrections, and the Florida Department of Corrections ("FDC")

(hereinafter collectively "Defendants"), respond to Plaintiffs' Motion to Compel

(Doc. 65-1) as follows:

1

## I.    Background

In this purported class action lawsuit, seven different Plaintiffs, who are inmates at various prisons, and who have various different alleged mental and physical infirmities, complain about all aspects of prison life for inmates housed in Administrative Confinement, Disciplinary Confinement, Close Management, and Maximum Management (hereinafter collectively "restrictive housing").  Plaintiffs bring a claim against Defendant Inch for violation of 42 U.S.C. Section 1983 related to the "conditions of confinement" in restrictive housing and claims against Defendant FDC for violations of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794.

On August 6, 2019, Defendants moved to dismiss the Amended Complaint. (Doc. 28). Defendants argued, among other things, that the non-specific allegations in the Amended Complaint failed to provide sufficient notice under Rule 8 of the claims being asserted, that the Plaintiffs lacked standing to challenge policies and practices at prisons where they were not housed, and the Plaintiffs lacked standing to challenge categories of housing under which they were not housed. *Id.*

Ultimately, this Court denied the Motion to Dismiss and found that Defendants "fundamentally misunderstood" Plaintiffs' claims which were not based on specific prisons, types of restrictive housing, or discrete sets of incidents; but were instead based on "a statewide policy and practice of isolation that applies

2

to all prisons and all types of confinement." (Doc. 54 at p. 8). The Court found this was "a civil rights case about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee." *Id.* at p. 2; *see also* p. 9 (finding Plaintiffs satisfy Rule 8 because they "make general allegations about conditions, restrictions, and security measures in all types of isolation due to the statewide policies and practices."); p. 15 ("This case is not about the type of restrictive housing or the specific prison where the Plaintiffs' were housed. Instead, Plaintiffs allege a systematic, statewide policy of isolation."); p. 17 ("Plaintiffs' claims arise out of the policies and practices related to isolation promulgated in Tallahassee."); p. 17 ("underlying facts giving rise to each of Plaintiff's claims is the same – policies and practices promulgated by high-level officials in Tallahassee.").

At the same time they filed their Motion to Dismiss, Defendants also filed a Motion to Transfer Venue to the Middle District of Florida arguing the Middle District is where the nexus of the case was centered based on the location of the relevant institutions where the challenged conduct occurred to the Plaintiffs as well as the vast majority of the witnesses. (Doc. 26).

Plaintiffs opposed this Motion to Transfer, arguing that their action challenged "statewide polic[ies] and practice[s]" that were "promulgated and enforced in Tallahassee". (Doc. 36 at p. 2). Plaintiffs argued that "FDC's Central

3

Office in Tallahassee, located in the Northern District, is where high-level officials created, implement, and maintain this statewide isolation policy. . . " *Id.* at p. 7. And the "crux of this case is that Defendants' policymakers – in Tallahassee – have deprived the proposed class of their constitutional and statutory rights." *Id.* at pp. 7-8.

This Court denied Defendants' Motion to Transfer Venue.  (Doc. 52). In its Order, this Court stated: "This case is about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee." *Id.* at p. 1. The Court noted that the "fact that Plaintiffs allege specific facts showing implementation of the policy and practice of isolation does not convert Plaintiffs' theory of the case from a statewide policy and practice of isolation to individual acts of isolation." *Id.*  at p. 2.

Yet, here we are. Defendants have produced the statewide policies promulgated and enforced in Tallahassee for the various topics identified by Plaintiffs in their discovery requests. But now Plaintiffs want more.  They now want individual policies that apply only at specific institutions. (Doc. 65-1 at p. 5). They want "all documents" that report or describe when various events happened to individual inmates at individual institutions. Simply put, Plaintiffs' position in discovery is counter to their position in response to Defendants' Motion to Dismiss and Defendants' Motion to Transfer Venue.

On August 13, 2019, Plaintiffs served 151 requests for production on Defendant Inch and 25 requests for production on Defendant FDC.  The requests touched on virtually every aspect of prison life, seeking "all documents" that "report, describe, discuss, calculate, or comment on" such ubiquitous facts as the gender and age of inmates in restrictive housing and the reasons individual inmates are placed in restrictive housing. Plaintiffs sought "all communications" containing various terms related to this case, including the terms: "AC", "DC", "CM", "MM". Plaintiffs sought virtually any and every document from the FDC which could tangentially relate to any issue in this case.

Despite this first set of expansive discovery, Plaintiffs continued to propound discovery:

- On August 28, 2019, Plaintiffs served 18 interrogatories on Defendant FDC.

- On October 21, 2019, Plaintiffs served 199 requests for admission on Defendant Inch.

- On November 6, 2019, Plaintiffs served an additional 61 requests for production on Defendant Inch.

- On November 4, 2019, Plaintiffs served 25 interrogatories on Defendant Inch.

5

- On December 16, 2019, Plaintiffs served an additional 130 requests for production on Defendant Inch.

- On December 24, 2019, Plaintiffs served an additional 19 requests for production on Defendant FDC.

A district court has discretion to limit discovery of relevant material upon a determination that the sought discovery is unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit. *Panola Land Buyers, Ass'n v. Shuman,* 762 F.2d 1550, 1558-59 (11th Cir. 1985).

Further, where such expansive discovery is served early in a case, a district court has the discretion to limit discovery to issues related to class certification before the court's order on class certification to protect defendants from class wide discovery on the merits of the case where no class may exist. *See Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570-71 (11th Cir. 1992) ("to make early class determination practicable and to best serve the ends of fairness and efficiency, courts may allow class wide discovery on the certification issue and postpone class wide discovery on the merits"). For example, in *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982), prison inmates sought class certification to challenge confinement conditions in county jails. The court denied a discovery

request for documents about all facets of life in 82 county jails in Mississippi, noting that, although the information might have been relevant to the merits of the case, little of it was "necessary or helpful" to the class-certification issue. *Id.* at 332.

Defendants did not demand bifurcated discovery in this case, recognizing that many issues concerning class certification and the merits would overlap. However, Defendants also have not waived their right to object, on an individual request basis, to merit discovery during the class certification phase. (Doc. 43 at p. 5). As is laid out in more detail below, many of the individual requests made by Plaintiffs assume that a class certification order has been entered and seek discovery purely into the merits of their claims. But, for example, the propriety of class certification is not a foregone conclusion. *See Hoffer v. Inch,* 382 F. Supp. 3d 1288 (N.D. Fla. 2019), *appeal filed*, No. 19-11921 (11th Cir. May 17, 2019) (decertifying ADA and Rehab Act claims because those claims require an individualized inquiry). Many of Plaintiffs' requests are not proportional to the needs of this case, pre-class certification.

Defendants have been working with Plaintiffs to narrow the scope of discovery sought and to resolve various objections. For example, Defendants originally objected to producing information on Disciplinary Confinement, Administrative Confinement, and Maximum Management based on the fact that no

named Plaintiff was subject to those types of restrictive housing at the time the Complaint was filed and thus did not have standing to assert those claims. However, Defendants have agreed to withdraw those objections and produce documents regarding those three categories of restrictive housing.

Defendants have also been working diligently to produce responsive documents to Plaintiffs on a rolling basis, as the documents requested are expansive and require extensive time and resources to review before production. However, the Parties have reached a standstill on a few discrete issues. A copy of Defendants' response and objections to Plaintiffs' First Request for Production to Inch and First Request for Production to FDC are attached as **Exhibits A and B**. Defendants have organized the pending disputes by categories where appropriate in order to streamline the issues before the Court.

## II.   Requests Seeking FDC "Policies"

At issue in the Motion to Compel are 52 requests for production seeking the Defendants' "policies" regarding particular issues.  *See* RFP to Inch Nos. 12-19, 21-26, 28, 30, 32, 34, 36, 38, 47-49, 52-53, 56, 60, 64, 65, 68-76, 84-89, 95-96 and RFP to FDC Nos. 1-5, 7.

In response to these requests, Defendants provided the FDC's policies regarding the particular issue. But, Plaintiffs are not satisfied with the actual policy of the FDC.  Through their overly broad definition of "policy" they seek all:

> written or formal policies, interim policy documents, procedures, rules, regulations, protocols, technical manuals, post orders, guidelines, directives, orders, instructions, bulletins, training materials, memoranda, practices, customs, and usages, **including those that may not have been officially approved, reduced to writing, or otherwise formalized. It includes policies that are in effect throughout FDC or at one or more FACILITIES.**

(emphasis added).

Black's Law Dictionary defines "policy" as "[a] standard course of action that has been <u>officially established</u> by an organization, business, political party, etc." *Black's Law Dictionary* (11th ed. 2019) (emphasis added).  In response to Plaintiffs' requests for various "policies," Defendants agreed to produce the rule or procedure that constituted the standard course of action that has been officially established by the Florida Department of Corrections regarding the requested issue. Nevertheless, Plaintiffs want more. Plaintiffs seek virtually any document that could potentially be characterized as a "policy," even those that have not been officially approved by Defendants or those that may have only been in effect for one week at a single institution. Such a request is vastly over broad and not relevant to the issue at hand – namely whether "Defendants' statewide policy and practice of isolating over 10,000 people for at least 22 hours per day in cells smaller than an average parking space and depriving them of basic human needs" violates inmates' constitutional rights. (Doc. 36 at p. 2.)

Plaintiffs' position in discovery is incongruous with their position in opposing Defendants' Motion to Transfer and Defendants' Motion to Dismiss. Plaintiffs cannot have it both ways.  They cannot argue on the one hand that this case is a simple and straightforward challenge to a statewide policy of confining inmates to their cells for 22 hours a day, while on the other hand arguing that they need virtually any document or e-mail containing the term "DC" or discussing mental health care as such a document may be considered a "policy" of the FDC or a specific institution.  Either this case is about decisions or actions that occurred in Tallahassee (as argued by Plaintiffs) or this case is about decisions and actions made on the institution level.  If this case is the latter, then Defendants' Motion to Transfer should be re-evaluated as it is clear that Plaintiffs' discovery efforts demonstrate the necessity of transferring this case to the Middle District of Florida.

In addition to the fact that Plaintiffs' definition of "policy" includes policies that may have only been in effect at a single institution for a single week, and not the official statewide policy of the FDC, Plaintiffs' request for "policy" documents regarding various issues is overly broad in that Plaintiffs seek any and every document which could be considered a "policy" regarding any and every aspect of that topic area.  For example, Request for Production Number 24 to Defendant Inch asks for "ALL POLICIES RELATED TO meal delivery for PRISONERS in ISOLATION."  Defendants provided in response the applicable restrictive housing

10

rules, as well as procedures 204.002 (Food Service Standards), 401.009 (Prescribed Therapeutic Diets), and 503.006 (Religious Diet Program).

In their Motion to Compel, Plaintiffs argue that they also seek information regarding their allegations that Defendants fail to modify their meal delivery service to accommodate people with diabetes and their allegations that inmates in restrictive housing must eat their meals on their beds or the floors of their cells. (Doc. 65-1 at pp. 25-26).   The problem is, because their request for "policies related to meal delivery" was so broad, Defendants could not have understood that Plaintiffs were in search of documents regarding meal delivery to diabetics or the fact that inmates in restrictive housing eat their meals in their cells.   The same can be said for the other 52 requests for production which seek the "policies" regarding broad topic areas such as "mental health," "medical care," "disciplinary confinement," and the like.

During meet and confer discussions with Plaintiffs' counsel, Defendants' counsel asked for more guidance on what Plaintiffs' meant by the term "policies." Plaintiffs' counsel offered no guidance other than extremely specific examples.   If Plaintiffs are in search of specific documents, such as how meals are timed for diabetics in close management, then Plaintiffs should ask for such documents. Defendants cannot be expected to divine from Plaintiffs' overly broad requests all documents Plaintiffs seek.   Based on the vagueness and ambiguity, Defendants

11

have no means to search for and produce documents showing the unofficial custom at any particular institution simply based on the broad categories posed by Plaintiffs.

Defendants have agreed to provide the policies of the FDC regarding the topics requested.  To the extent Plaintiffs seek more, Defendants objections to the overly broad and vague definition of "policy" and the individual requests for production should be sustained.

Should the Court overrule Defendants' objections to the overly broad definition of "policy," Defendants' objections as to the time period requested should be sustained. If Defendants are forced to uncover from each individual institution any document which could purportedly be characterized as a policy, Defendants should only be required to search for and produce documents going back for a one-year period of time.  Plaintiffs' request for all documents going back to January 1, 2015 is overly broad and not proportional to the needs of this case, which only seeks injunctive relief.

In their Motion to Compel, Plaintiffs have mischaracterized Defendants' position on the proper scope of time.  (Doc. 65-1 at p. 9, n.6). During the meet and confer process, in an attempt to resolve this dispute, Defendants offered to provide documents to certain requests for production going back in time two years. Plaintiffs' rejected that offer.  Instead, Plaintiffs' countered that they would limit

their request to January 1, 2015 to the present, an almost five year period of time. Defendants rejected that offer as a five-year period of time offers no relief.

Plaintiffs argue that they need documents going back five years to prove their deliberate indifference claim and knowledge on the part of Defendants. Plaintiffs point to the case of *Hoffer v. Jones* as an example of this Court allowing discovery covering a four-year time period.  (Doc. 65-1 at p. 10).  However, *Hoffer* is distinguishable because *Hoffer* concerned a discrete issue and therefore discovery covering a four-year period of time was not unduly burdensome and disproportional to the needs of the case.

However, here, Plaintiffs are challenging and seek discovery concerning a wide variety of issues, including mental health and medical care, recreation, grievances, suicide, library books, programming, education, plumbing, tablets, windows, and the like.  An order allowing discovery covering a five year period of time for all categories requested would invariably result in the FDC having to turn over its records to Plaintiffs so that they could sift through the materials in order to stock their library for future claims.

Additionally, the statute of limitations for the causes of action pled is four years.  Accordingly, Plaintiffs' requested five-year period for discovery is blatantly unreasonable.  Here, pertinent state-wide policies, most of which are codified in the administrative code, have not been materially amended in the past five years.

Therefore, evidence tending to show Defendants' deliberate indifference either presently exists or it does not.  This is not a case where the value of the plaintiff's case increases if they can prove that the defendant was deliberately indifferent for a longer period of time and thus owes plaintiff greater compensatory damages.  To the contrary, this is an action for equitable and injunctive relief only and therefore limited to prospective relief.  Forcing Defendants to scour through five-years-worth of records so that Plaintiffs can locate each scintilla of evidence that might show Defendants were deliberately indifferent or had knowledge that the policies were harmful is disproportionate and cumulative.  In a good faith compromise, Defendants have agreed to provide the FDC policy for the requested topic areas going back to January 1, 2015.  To the extent this Court finds that Plaintiffs' definition of "policy" includes something more, Defendants request its objections to the time period be sustained and that they only be required to produce these documents going back to September 1, 2018.

Defendants' objections to the below Requests for Production should be sustained:

*Plaintiffs' First Request for Production to Inch*:

**RFP 12**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Disciplinary Confinement.

**RESPONSE**: See F.A.C. 33-601.800. …Defendants also object based upon the confidentiality, safety and security issues raised in the

14

general objections to "policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

**RFP 13**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Administrative Confinement

**RESPONSE**: … Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "Policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

**RFP 14**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Maximum Management.

**RESPONSE**: … Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "Policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

**RFP 15**: ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Close Management.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce blanks of the following forms referenced in the Rule: DC6-233C, DC6-265, DC6-128, DC6-229, DC6-229B, DC6-221, DC4-643A, DC4-729, DC6-220, DC6-228, DC6-209, NI1-046. FDC will also produce Procedures 601.211, 601.219, 601.220, 601.223, 602.013,602.018, 602.028, 602.036, 602.043, 602.047, 602.051 and 602.053. Otherwise, Defendants object based upon the confidentiality, safety and security issues raised in the general objections to "Policies" and Defendants' Response to Plaintiffs' Motion for Entry of

15

Confidentiality Order. Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

**RFP 16**: ALL POLICIES RELATED TO HYGIENE ITEMS for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome

**RFP 17:** ALL POLICIES RELATED TO tablet computers for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce documents regarding the Interim Tablet and Kiosk Procedure and JPay Inc. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 18**:ALL POLICIES RELATED TO radios AND batteries for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 602.047. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 19:** ALL POLICIES RELATED TO PROPERTY RESTRICTION in all FACILITIES.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 602.018 and 602.047. … Defendants also object on the basis of proportionality and relevance because not "all FACILITIES" are at issue in this case. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

16

**RFP 21**: ALL POLICIES RELATED TO the operation and functioning of plumbing in ISOLATION, including but not limited to the flushing of toilets.

**RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 22**: ALL POLICIES RELATED TO the operation of lighting in ISOLATION, including schedules for turning lights off AND on inside cells.

**RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

**RFP 23**: ALL POLICIES RELATED TO canteen services for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 204.005, 602.018 and 602.047. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security- sensitive materials, including but not limited to, post orders.

**RFP 24**: ALL POLICIES RELATED TO meal delivery for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 204.002, 401.009 and 503.006. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

17

**RFP 25:** ALL POLICIES RELATED TO programming for PRISONERS in ISOLATION, including but not limited to "Anger Management" and "Thinking for a Change."

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 504.001 and documents for programs regarding anger management and "Thinking for a Change." … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 26:** ALL POLICIES RELATED TO any academic education and adult education for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800.  FDC will produce Procedures 501.106, 501.201, 502.001 and 504.001 and other documents regarding academic and adult education.  … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 28**: ALL POLICIES RELATED TO vocational education for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 501.106. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 30**: ALL POLICIES RELATED TO chaplain services for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 503.002. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 32:**  ALL POLICIES RELATED TO library services for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 501.301, 501.303, 501.304, 501.305 and 501.310. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 34**: ALL POLICIES RELATED TO recreation for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedure 602.051. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

**RFP 36:**   ALL POLICIES RELATED TO job assignments for PRISONERS in ISOLATION.

**RESPONSE**:  See F.A.C. 33-601.800. FDC will produce Procedure 601.805. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

**RFP 38**: ALL POLICIES RELATED TO orderly services for PRISONERS in ISOLATION.

**RESPONSE**: Defendants cannot determine if "orderly services" is intended to cover something other than "job assignments;" however, there is no separate policy regarding orderly services. Therefore, see Response to Request for Production No. 36.

**REVISED RFP 38**: All POLICIES RELATED TO "inmate assistants," as referenced in Defendants' response to Interrogatory 6 to FDC.

**RFP 47**:ALL POLICIES RELATED TO correctional STAFFING levels, assignments, and schedules in ISOLATION.

19

**RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "correctional STAFFING levels, assignments, and schedules" is vague, ambiguous overly broad and burdensome. Defendants further object as each facility has its own post charts, daily rosters and other documents that are institution-specific. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**RFP 48**: ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 208.017, 208.018, 208.019, 208.020, 208.022, 208.063, 208.064 and 209.001.   … Defendants further object that "ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance evaluation, and discipline of correctional staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**RFP 49**:ALL POLICIES RELATED TO training for correctional STAFF in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800.  FDC will produce Procedures 208.064, 209.001, 209.002, 209.003, 209.004 and 209.101. … Defendants further object that "ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The training of correctional staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted

**RFP 52**: ALL POLICIES RELATED TO any FDC Alternative Housing Program OR Alternative Housing Pilot Program.

**RESPONSE**: … Further, Defendants object that "ALL POLICIES RELATED TO any" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. …

**RFP 53**: ALL POLICIES RELATED to the "Automated Discipline and Integrated Offender System".

**RESPONSE**: Defendants object on the basis that the request seeks safety and security-sensitive materials that are highly-confidential in nature and not relevant to the claims in this case. Defendants further object that "ALL POLICIES" is vague, ambiguous, overlybroad and burdensome, and not proportionate to the needs of this case. …

**RFP 56:** ALL POLICIES RELATED TO any pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in isolation.

21

**RESPONSE**: FDC will produce those documents previously produced by FDC in response to Plaintiffs' public record request asking for these same documents. Otherwise, Defendants object that "ALL POLICIES RELATED TO any" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants further object to producing documents regarding any program that is not in effect as this is an action for injunctive relief, and FDC's programs that are no longer in effect are not relevant to any issue asserted in this case.

**RFP 60**: ALL POLICIES RELATED TO any programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: FDC will produce documents regarding such program(s). … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**RFP 64**: ALL POLICIES RELATED TO mental health care for PRISONERS in effect from January 1, 2019, through the present.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Health Services Bulletins 15.05.03, 15.05.08, 15.05.10, 15.05.11, 15.05.13, 15.05.14, 15.05.17, 15.05.18, 15.05.19, 15.05.20, 15.05.21, and Procedures 403.003, 404.001, 404.002, 404.003, 404.004 and 404.005. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**RFP 65**: ALL POLICIES RELATED TO medical care for PRISONERS in effect from January 1, 2019, through the present.

**RESPONSE**: See F.A.C. 33-601.800.   FDC will produce Procedures 401.011,    401.014,    401.016,    401.017,    403.003,    403.006, 403.007,403.008, 403.011 and 406.001. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**RFP 68**: ALL POLICIES RELATED TO medical care for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. FDC will produce Procedures 401.011, 401.014, 401.016, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001.   … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**RFP 69**: ALL POLICIES RELATED TO mental health care for PRISONERS in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800.   FDC will produce Procedures 404.001, 404.002, 404.003 and 404.005 (unpublished) and Health Services Bulletins 15.05.03, 15.05.10, 15.05.11, 15.05.08, 15.05.14,15.05.17, 15.05.18, 15.05.19 and 15.05.21. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

23

**RFP 70**: ALL POLICIES RELATED TO medical care for pregnant women in ISOLATION.

**RESPONSE**: Defendants will produce Procedures 401.011, 401.014, 401.016, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality

**RFP 71**: ALL POLICIES RELATED TO transgender PRISONERS in ISOLATION.

**RESPONSE:** FDC will produce Procedure 403.012. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality

**RFP 72**: ALL POLICIES RELATED TO treatment for gender dysphoria for PRISONERS in ISOLATION.

**RESPONSE**: See Response to No. 71.

**RFP 73:** ALL POLICIES RELATED TO the Residential Continuum of Care.

**RESPONSE**: FDC will produce draft Procedure 404.005, which has not yet been put into effect. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and

(h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality

**RFP 74**: ALL POLICIES RELATED TO group therapy for PRISONERS   in ISOLATION.

**RESPONSE**: FDC will produce Procedures 403.003,  404.005 (not yet in effect) and 403.012 and Health Services Bulletins 15.05.14, 15.05.18 and 15.05.08. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**RFP 75**: ALL POLICIES RELATED TO outpatient mental health care for PRISONERS in ISOLATION.

**RESPONSE**: FDC will produce Procedure 403.003 and Health Services Bulletin 15.05.08. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**RFP 76**: ALL POLICIES RELATED TO transfers of PRISONERS to OR from ISOLATION to isolation management rooms, hospitals, mental health treatment facilities, infirmaries, crisis stabilization units, transitional care units, secure treatment units, diversion treatment units, cognitive treatment units, OR other higher levels of care.

**RESPONSE**: FDC will produce Procedure 404.003. … Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a,

Fla. Stat., without an agreement and/or order governing confidentiality.

**RFP 84:** ALL POLICIES RELATED TO mental health STAFFING levels, assignments and schedules in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "mental health STAFFING levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**RFP 85:** ALL POLICIES RELATED TO medical STAFFING levels, assignments, and schedules in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "medical STAFFING levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted

26

**RFP 86**: ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of mental health STAFF.

**RESPONSE**: See F.A.C. 33-601.800. Defendants further object that "ALL POLICIES RELATED TO" "hiring, supervision, job performance evaluation, and discipline" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance, and discipline of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**RFP 87**: ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of medical STAFF.

**RESPONSE**: See F.A.C. 33-601.800. Defendants further object that "ALL POLICIES RELATED TO" "hiring, supervision, job performance evaluation, and discipline" is vague, ambiguous overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance, and discipline of staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**RFP 88:** ALL POLICIES RELATED TO training for mental health STAFF in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "training" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific . . . . Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**RFP 89:** ALL POLICIES RELATED TO training for medical STAFF in ISOLATION.

**RESPONSE**: See F.A.C. 33-601.800. … Defendants further object that "ALL POLICIES RELATED TO" "training" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific . . . . Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**RFP 95**:ALL POLICIES RELATED TO training about suicide prevention.

**RESPONSE**: FDC will produce Procedures 404.001 and 404.002. Defendants object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of

admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**RFP 96**: ALL POLICIES RELATED TO suicide, suicide attempts, AND suicide prevention, including POLICIES RELATED TO self-harm observation status AND "isolation management rooms".

**RESPONSE**: See Response to Request No. 95.

*Plaintiff's First Request for Production to FDC*

**RFP 1**: ALL POLICIES RELATED TO reasonable modifications of POLICIES or reasonable accommodations for PRISONERS with DISABILITIES in ISOLATION.

**RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013. …

**RFP 2**: ALL POLICIES RELATED TO PRISONERS with DISABILITIES in ISOLATION.

**RESPONSE:** FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013. …

**RFP 3:** ALL POLICIES RELATED TO AUXILIARY AIDS AND SERVICES for PRISONERS in ISOLATION.

**RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.008, 403.011 and 403.013; Health Services Bulletins (HSB) 15.03.25, 15.03.25.01, 15.03.25.02 and 15.03.25.03. …

**RFP 4**: ALL POLICIES RELATED TO DURABLE MEDICAL EQUIPMENT for PRISONERS in ISOLATION.

**RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.008, 403.011 and 403.013; Health Services Bulletins (HSB) 15.03.25, 15.03.25.01, 15.03.25.02 and 15.03.25.03. …

**RFP 5:**ALL POLICIES RELATED TO disposable medical supplies for PRISONERS in ISOLATION, including but not limited to catheters AND related supplies, gauze, tape, AND incontinence pads.

**RESPONSE**: FDC will produce Procedures 401.011, 401.014, 401.016, 401.017, 403.003, 403.006 and 403.008. …

**RFP 7**: ALL POLICIES REATED TO the any staff review of AND response to the "Reasonable Modification or Accommodation Request for Inmates" (Form DC2-530A).

**RESPONSE**: FDC will produce Procedures 604.101, 401.011, 401.014, 401.116, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013. …

## III.   Requests Seeking Sensitive Safety and Security Information

The second discrete dispute concerns requests for documents and items that include sensitive safety and security information of the FDC that are not adequately protected under the current confidentiality order.

As this Court may remember, a dispute over the terms of the confidentiality order was brought before the Court with Defendants requesting an "Attorneys' Eyes Only" provision in order to protect certain documents and information that

30

the FDC deemed to contain sensitive safety and security information.  *See* (Doc. 49 and Doc. 51).  The Court ultimately entered Plaintiffs' proposed confidentiality order, without the "Attorneys' Eyes Only" provision.  (Doc. 58).

The Court's entry of the foregoing confidentiality order however does not foreclose Defendants from raising the issue, particularly where the current confidentiality order does not offer sufficient protection to a discrete set of documents arguably requested in Plaintiffs' Requests for Production. The current order allows Plaintiffs' counsel to disseminate this sensitive safety and security information (just not the document) to the named Plaintiffs who are current inmates and other unknown persons who could be classified as consultants by Plaintiffs. As a result, Defendants are filing, contemporaneous with this Response, a Motion for Protective Order seeking protection for those documents.

Defendants incorporate that Motion for Protective Order into this Response which impacts Plaintiffs' Motion to Compel addressing Request Numbers 12-15, 22, 23, 34-37, 46-49, 51, 53, 54, 107-117, 135, 136 to Defendant Inch and Interrogatory No. 16.

## IV.   **Requests Seeking "ALL DOCUMENTS" Regarding When Events Occurred**

In addition to seeking the various policies of individual institutions, Plaintiffs also seek "all documents" that "report or describe the dates, days of the week, OR time that" various services or privileges were provided to individual

31

inmates at individual institutions (RFP Nos. 27, 29, 31, 33, 35, 37, 39 to Inch) and a response to an interrogatory requesting Defendants identify for each institution and for each type of isolation, the number of times each month that mental health staff provided a (1) psychiatrist visit, (2) mental health counselor visit, (3) mental health rounds, and (4) group therapy. (Int. No. 15).

These requests are overly broad, unduly burdensome, and not proportional to the needs of this case, which according to the Plaintiffs and as understood by the Court, concern a statewide policy promulgated and implemented in Tallahassee.

The FDC has 143 facilities statewide, including 50 major institutions.  In addition to seeking the unofficial policy of each of those institutions, Plaintiffs also seek to require Defendants to comb through the records of those facilities to find "all documents" that report or describe the dates and times that various acts were performed or given at each individual prison facility for each individual inmate for an almost two year period of time. Plaintiffs argue that they need documentation of the dates and times various events occurred in order to discover how the statewide policy was implemented <u>at the institution level</u> and how this implementation <u>affects individual inmates.</u>   (Doc. 65-1 at p. 13). But, such implementation discovery is not proportional to the needs of the case at this stage of the litigation, pre-class certification.

There are seven Plaintiffs in this case.  Defendants have produced for each of those Plaintiffs their classification file, their medical and mental health file, and their education and substance abuse file to the extent that Plaintiff has one.  These records demonstrate the dates when each individual Plaintiff had recreation, received education services, went to group therapy, saw their psychiatrist, took a shower, etc.  If Plaintiffs want to refute a defense of FDC that that any privilege, service, treatment, etc. was actually provided to inmates, then Plaintiffs have the files of seven inmates in which to do so.  To allow Plaintiffs to delve into the individual circumstances of each and every other putative class member solely for the purpose of finding a better case or a better named plaintiff is not proportional to the needs of this case.  If the named Plaintiffs and their files are not sufficient to demonstrate how the statewide policies were implemented, then the class should not be certified.  Defendants should not be forced to comply with overly broad and burdensome discovery when the class has not yet been certified.

For example, Plaintiffs argue that in addition to challenging the statewide policies regarding recreation, they also allege that Defendants do not have enough exercise cages for everyone in restrictive housing and fail to rotate everyone so that everyone receives the exercise time allotted under the Florida Administrative Code.  (Doc. 65-1 at p. 7).  To support this allegation, Plaintiffs seek records showing whether individual inmates at Florida State Prison did in fact receive

recreation time.   But, three of the seven Plaintiffs are or were incarcerated at Florida State Prison.   Defendants have produced the Daily Record of Special Housing for each of those Plaintiffs which demonstrate the days and amount of time each of those three Plaintiffs received or were offered recreation while incarcerated at Florida State Prison.   If Plaintiffs cannot prove their case with the representative Plaintiffs, then it is not clear how this class will ever be certified with records of inmates other than the plaintiffs.

Initially, Defendants attempted to limit discovery to those institutions where inmates are housed in Close Management in an effort to narrow discovery into a more manageable scope.   Plaintiffs refused. Plaintiffs want all documents from all intuitions concerning all inmates. By Plaintiffs' own account there are 10,000 putative class members in some form of restrictive housing.   To require Defendants to provide "all documents" that describe when those 10,000 inmates were scheduled for or received a book, for example, is not proportional to the needs of this case.   For example, if one correctional officer e-mails another correctional officer on January 15, 2018 and asks what time the library cart is coming around, such an email is arguably responsive to this request.   But it is unclear how Defendants are supposed to find "all documents" responsive to this request without reviewing every piece of paper that has ever been written.

34

Further, a response to Plaintiffs' interrogatory number 15, requesting the number of times mental health staff has provided various services at each institution for each type of "isolation" is likewise not proportional to the needs of this case and unduly burdensome.

As stated above, Plaintiffs have the mental health care files for the seven named Plaintiffs.  In those files is documentation of each and every time the Plaintiff saw a mental health care counselor, psychiatrist, or attended group therapy.  The Daily Record of Special Housing demonstrates when mental health staff members made their rounds.  Again, if Plaintiffs cannot prove why the class should be certified with the files of seven inmates, then they should not be allowed to require Defendants to comb through the individual files of thousands of other inmates in the hopes of finding a better case.

Defendants' objections to the below Requests should be sustained.

*First Request for Production to Defendant Inch*

**RFP 27**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that academic education AND adult education were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a

35

"challenge to a series of distinct incidents." D.E. 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that adult education was scheduled or provided to individual inmates is not relevant to the claims being asserted.

**RFP 29**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that vocational education was scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that vocational education was scheduled or provided to individual inmates is not relevant to the claims being asserted.

**RFP 31**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that chaplain services were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a

"challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that chaplain services were scheduled or provided to individual inmates is not relevant to the claims being asserted.

**RFP 33**: ALL DOCUMENTS that report or describe the dates, days of the week, OR times that library services were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: Defendants objects to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that library services were scheduled or provided to individual inmates is not relevant to the claims being asserted.

**RFP 35**:ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that recreation was scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of  distinct  incidents." DE 42, p. 4. The

implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that recreation was scheduled or provided to individual inmates is not relevant to the claims being asserted. … Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders

**RFP 37**:ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that PRISONERS in ISOLATION were scheduled for job assignments from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that work assignments were scheduled or provided to individual inmates is not relevant to the claims being asserted. … Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

**RFP 39**: ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that orderly services were scheduled or provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

38

**RESPONSE**: Defendants cannot determine if "orderly services" is intended to cover something other than "job assignments;" however, there is no separate policy regarding orderly services.  Therefore, see Response to Request for Production No. 37.

**REVISED RFP 39 TO INCH**: ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that inmate assistants were scheduled to provide or provided to services to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

*First Interrogatory to Defendant Inch*

**INTERROGATORY 15**: Identify at each FACILITY in each type of ISOLATION (CM I, II, II; MM; DC; AND AC) the number of times during each month from June 1, 2019, through the present, that mental health staff provided each of the following services: 1) psychiatrist visits; 2) mental health counselor visits; 3); mental health rounds; AND 4) group therapy.

**RESPONSE**: FDC objects that this interrogatory is overly broad, unduly burdensome, not proportional to the needs of the case and not reasonably calculated to lead to the discovery of admissible evidence. As Plaintiffs assert: "[t]he claims in Plaintiffs' First Amended Complaint (Complaint) stem from one overarching policy and practice: Defendants lock people in their cells for 22 hours or more a day and deprive them of normal human contact, environmental simulations, and exercise, a practice that experts refer to as 'isolation' and that is increasingly recognized worldwide as torture. Defendants' emphasis on Plaintiffs' individual experiences as a result of this policy and practice is a futile attempt to reframe this case as a challenge to a series of distinct incidents. That is not the case Plaintiffs' have pleaded" D.E. 42, p. 1. Thus, Plaintiffs' request for the number of times during each month that various forms of mental health services were provided to individual inmates is not relevant to the claims being asserted.  As Plaintiffs' put it, they are challenging the "overarching policy and practice," which can be found in the Florida

Administrative Code. See F.A.C. 33-601.800. …Apart from that overarching policy, the mental health treatment, services, and therapy that each individual inmate receives will be determined on a case-by-case basis based on that inmates' mental health evaluation and treatment plan.

## V. <u>Documents that Report, Describe, Summarize, Analyze, Discuss, Calculate or Comment on a Broad Issue</u>

Plaintiffs move to compel on 13 requests for production that seek "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on" a specific issue. *See* RFP Nos. 62, 97, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117 to Defendant Inch.

For the reasons stated above, such requests are overly broad, unduly burdensome, and not proportional to the needs of this case. Going a step further than seeking documents that merely report on when events occurred, Plaintiffs also seek all documents that describe fairly ubiquitous facts such as the gender or age of an inmate in restrictive housing, the reason an inmate was placed in restrictive housing, the number of cell extractions, or the number of inmates with mental illness. But, "all documents" that describe these topics could include almost any document related to restrictive housing. Thus, Plaintiffs' requests which seek "all documents" going back in time five years related to restrictive housing is vastly over broad and not proportional to the needs of this case.

In addition, many of the Requests are vague and non-specific, leaving Defendants to guess as to what is actually being requested. For example, Request Number 62 asks for documents regarding the "harms, effects, or impact of isolation." The problem with this Request, as with many of Plaintiffs' requests, is that the topics sought are so broad and undefined that it is impossible for Defendants to search for documents in order to comply with the requests.  What exactly is an "impact of isolation" and how are Defendants supposed to search for "all documents" that describe or comment on this impact?

Further, Request for Production Number 107 asks for documents concerning the length of time inmates are housed in restrictive housing and Request Number 108 asks for information concerning the reasons inmates are placed in restrictive housing.  However, this Court has found that Plaintiffs are neither challenging the disciplinary decisions that led to their restrictive housing or challenging their length of confinement imposed.  (Doc. 54 at p. 18).  Therefore, it is not clear how such requests are relevant to the issues being asserted in this case, namely the conditions of confinement.

And, Request for Production Number 115 asks for documents concerning pregnant inmates in restrictive housing; yet, no named Plaintiff was or is pregnant while in restrictive housing. Plaintiffs do not have standing to raise challenges to

the conditions of confinement for pregnant women when they themselves have not been subject to those conditions.

Finally, these Requests, which cover a five-year time period, are overly broad for the reasons stated in Defendants argument in response to the "policy" requests for production (Section II).  This lawsuit concerns claims for injunctive relief.  While each request taken in a vacuum may seem reasonable, Plaintiffs' requests as a whole, seeking "all documents" going back five years in time describing a wide variety of facts, is not proportional to the needs of a case seeking injunctive relief.

 Defendants' objections to the below Requests for Production should be sustained:

*First Request for Production to Inch*

**RFP 62**: ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on the harms, effects, OR impact of ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: FDC has produced documents in response to more specific requests. … Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on" and "harms, effects, OR impact" are vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants also object on the grounds that certain discovery may be protected by the self-critical analysis privilege.

**RFP 97**:All DOCUMENTS that report, describe, summarize, discuss, OR comment on suicide OR suicide attempts. This request seeks

DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:** See Responses to Request Nos. 98 and 99. Otherwise, Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. All documents that "comment" on suicide, with no limit to restrictive housing or close management, is vastly over broad and burdensome.

**RFP 107**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the average duration of stay OR the length of time for PRISONERS in ISOLATION.   This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMETNS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**:  … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institutional level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(3) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 108**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the reasons that PRISONERS are placed

43

OR retained in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 109**:All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who harmed themselves OR the frequency of self- harm behaviors by PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "who harmed themselves" and "self-harm behaviors" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and

on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 110**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of violent incidents, cell extractions, disciplinary infractions, use of force incidents, OR PROPERTY RESTRICTIONS involving PRISONERS in ISOLATION as compared to PRISONERS not in ISOLATION.

**RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "violent incidents, cell extractions, disciplinary infractions, use of force incidents OR PROPERTY RESTRICTIONS" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 111**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss,

calculate, OR comment on the total number of PRISONERS in ISOLATION on a daily, weekly, monthly, OR yearly basis.

**RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institutional level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(3) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 112:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the age of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e)

and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 113**:All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS with mental illness in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 114**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the gender of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

47

**RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 115**: All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on pregnant PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain

safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues

**RFP 116:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who leave their cells, OR the frequency that PRISONERS in ISOLATION leave their cells, for access to the dayroom, visits, phone calls, showers, programs, medical care, recreation, mental health care, academic education, OR adult education. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:** … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "who leave their cells, OR the frequency that PRISONERS in ISOLATION leave their cells, for access to the dayroom, visits, phone calls, showers, programs, medical care, recreation, mental health care, academic education, OR adult education" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.   Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 117:** All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss,

calculate, OR comment on the number of PRISONERS in ISOLATION who receive, OR the frequency that PRISONERS in ISOLATION receive, academic education, adult education, mental health care, medical care, OR any programs inside their cells. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: … Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "receive, academic education, adult education, mental health care, medical care, OR any programs inside their cells" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

## VI.    **Documents Provided to Third-Parties**

Plaintiffs have requested "all documents" provided to the Association of State Correctional Administrators (ASCA) and the American Correctional Association (ACA) "related to isolation" for a five-year period of time.  *See* RFP Nos. 42 and 43 to Inch.

In response to other requests for production, Defendants have agreed to provide the reports and audits prepared by these two groups.  Defendants have also agreed to work with Plaintiffs' counsel to narrow two requests for production which seek "all communications" that include the search terms: (1) "ASCA" or "Association of State Correctional Administrators" and "restrictive housing" or "special housing"  or "confinement" or "close management" or "maximum management" or "alternative housing" or "CM" or "AC" or "DC" or "MM" (RFP No. 128 to Inch) and (2)  "ACA" or "American Correctional Association" and "restrictive housing" or "special housing" or "confinement" or "close management" or "maximum management" or "alternative housing" or "CM" or "AC" or "DC" or "MM".  (RFP No. 129 to Inch).

Now, in addition to the above, Plaintiffs want all documents that were sent to these two groups for a five-year period of time "related to isolation." Defendants have offered to provide specific documents discussed in the reports and audits to Plaintiffs related to particular areas of the audits or reports related to the issues in this case; however, Plaintiffs have refused this offer and continue to seek "all documents."  Such a request is overly broad and not proportional to the needs of this case as it is not clear the utility of many of the documents requested which address other aspects of the audit unrelated to the issues in this case.

51

Defendants object to the indiscriminate production of all documents provided to these two groups "related to isolation" as such documents are not narrowly tailored to the issues of this case. In fact, Plaintiffs already have the ACA audit reports requested, which were provided in response to a public records request. *See* (Doc. 65-1 at pp. 38-39). With those reports in hand, Plaintiffs have only been able to identify two areas of interest regarding the ACA audits: (1) the size of "isolation cells" and (2) recreation policies. (Doc. 65-1 at p. 39). Yet, their request is not limited to documents submitted to the ACA regarding cell size or recreation policies. Instead, Plaintiffs ask for everything related to "isolation", even those issues that are not covered by Plaintiffs' Amended Complaint.

Additionally, Plaintiffs' request for "all documents" going back five years is over broad and not proportional to the needs of this case. Again, as stated above, there is not a single discrete issue in controversy in this lawsuit. While a five year time period may be manageable when the search is for documents regarding Hepatitis C treatment; such a request is no longer reasonable when the search is for all documents concerning almost every aspect of prison life for persons in restrictive housing.

Finally, a request for "all documents" provided to the ACA is unduly burdensome. There are approximately 30,000 documents potentially responsive to this request. Defendants anticipate filing an affidavit separately with the Court.

Regarding documents provided to the ASCA, it is unclear what Plaintiffs are actually seeking. Plaintiffs' Motion to Compel indicates that they are interested in a 2015 survey that was conducted by the ASCA and Yale Law School.  (Doc. 165-1 at p. 38). Yet, their request is not so limited. Defendants have provided the FDC's response to that 2015 survey.  To the extent Plaintiffs seek more, including documents provided to the ASCA other than regarding the 2015 ASCA/ Yale Law School survey, then Defendants' objections should be sustained because documents provided to the ASCA regarding other reports prepared by ASCA do not relate to the issues in this case and are therefore not proportional.

Defendants' objections to the below request should be sustained:

*Request for Production to Inch*

**RFP 42**: ALL DOCUMENTS provided to the Association of State Correctional Administrators RELATED TO ISOLATION.

**RESPONSE**: FDC will produce reports prepared by the Association of State Correctional Administrators, which reference documents relied upon by ASCA. Otherwise, Defendants object that each and every document provided by FDC to ASCA is not relevant to the claims in this lawsuit, and it is disproportionate to the needs of this case to require FDC to search for and provide such documents.  … Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

**RFP 43**:ALL DOCUMENTS provided to the American Correctional Association RELATED TO ISOLATION.

**RESPONSE**: FDC will produce audit reports prepared by the American Correctional Association, which reference documents relied

upon by ACA.  Otherwise, Defendants object that each and every document provided by FDC to ACA is not relevant to the claims in this lawsuit, and it is disproportionate to the needs of this case to require FDC to search for and provide such documents. … Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

**RFP 45:** All audits, reports, evaluations, OR studies authored by the American Correctional Association RELATED TO FDC.

**RESPONSE**: FDC will produce audit reports prepared by the American Correctional Association. Otherwise, Defendants object that each and every audit, report, evaluation and study prepared by ACA is not relevant to the claims in this lawsuit, and the request is therefore disproportionate to the needs of this case. … Defendants further objects that "All audits, reports, evaluations, OR studies" "RELATED TO FDC" is vague, ambiguous, overly broad and burdensome.

**REVISED RFP 45**: All audits, reports, evaluations, OR studies authored by the American Correctional Association RELATED TO FDC and that comment on, describe, or refer to ISOLATION, "restrictive housing," OR "segregation."

## VII.  Incident Reports

In Request for Production Number 46 to Inch, Plaintiffs request all incident reports related to prisoners in isolation from February 2, 2019 to the present.  Such a request is overly broad and not proportional as it is not limited to any issue in this case.

As indicated in the Motion to Compel, FDC procedure finds that an "incident" "refers to any unusual occurrence or information received about which formal documentation and notification is indicated. This may include an accident

involving possible injury to a person or damage to equipment, a suspicious action or occurrence, or other circumstance which could impact agency operations. The incident may be related to an inmate, an employee, or a member of the general public." FDC Procedure 602.008, cited at Doc. 65-1 at p. 40. Thus, a request for all incident reports is a request for documents concerning various incidents and occurrences outside the scope of this case.

The request does not attempt to limit the incidents to any issue involved in this case and it is not clear what Plaintiffs are hoping to find in various incident reports prepared. If an inmate in close management was injured when he slipped and fell in his cell, how is that relevant to whether the conditions of confinement are constitutional? What about an inmate in administrative confinement who is found with drugs on his person? Simply put, a request for all incident reports with no limit on the type of incident described is overly broad and not proportional to the needs of this case.

Further, as stated above, it is not clear how discovery into specific incidents for specific inmates at specific institutions will lead to admissible evidence regarding whether Defendants' statewide policy of confining inmates for 22 hours a day is constitutional. Plaintiffs argued the focus of this case was on Tallahassee, yet they seem completely preoccupied with individual occurrences in discovery. Plaintiffs cannot have it both ways.

Defendants' objections to the below request should be sustained:

*Request for Production to Inch*

**RFP 46**: All Incident Reports RELATED TO PRISONERS in ISOLATION from February 2, 2019, through the present.

**RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "[a]ll Incident Reports RELATED TO PRISONERS in ISOLATION" is not relevant to the claims being asserted. … Defendant also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object on the basis that this request will require a manual review of each facility's incident reports to determine the nature and relevance of the particular incident, which is unduly burdensome and not proportional to the needs of this case.

**REVISED RFP 46**: All Incident Reports about incidents that occurred in ISOLATION from February 1, 2019, through the present.

## VIII.  **MINS Reports and Related Inmate Summaries**

Plaintiffs have requested: "All MINS Reports RELATED TO suicide attempts by PRISONERS in ISOLATION from January 1, 2016, through the present" and "All MINS RELATED TO any deaths by suicides." (RFP Nos. 98 and 99 to Defendant Inch). In addition, Plaintiffs have requested the Overall Inmate Summary for each prisoner who died by suicide and each prisoner who

attempted suicide from January 1, 2016 to the present. (RFP Nos. 104 and 105 to Defendant Inch).

Such requests are overly broad and not proportional to the needs of this case as they go too far back in time. Defendants have agreed to produce these documents going back one year in time. But again, Plaintiffs want more. Plaintiffs argue that they need these documents to determine whether the suicides and suicide attempts were related to "isolation" and whether Defendants took reasonable measure to address the risk of suicide in isolation. (Doc. 65-1 at p. 72). But, it is not clear how a report documenting a suicide or suicide attempt will shed any light on the cause of that suicide. Further, if Plaintiffs want information on the measures taken to address the risk of suicide, those documents have been requested in other requests for production. If Plaintiffs want total numbers in order to prepare statistical comparisons, those numbers are publicly available on the FDC website. It is not clear what purpose the actual reports will serve in this case, much less reports going back a four year period of time. Idle curiosity or a search for other plaintiffs or a better case does not justify the burden and expense that will be placed on Defendants if forced to produce incident reports for all institutions.

Defendants' objections to the below Requests for Production should be sustained:

*Request for Production to Inch*

**RFP 98**: All MINS Reports RELATED TO suicide attempts by PRISONERS in ISOLATION from January 1, 2016, through the present.

**RESPONSE**: FDC will produce MINS reports concerning inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. … Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendants have identified approximately 1990 MINS reports for inmates in Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management during the requested time period. Defendants further object that "RELATED TO suicide attempts" is vague ambiguous, unduly burdensome and overbroad.

**RFP 99**:All MINS Reports RELATED TO any deaths by suicides.

**RESPONSE**: FDC will produce MINS reports concerning inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. … Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendants have identified approximately 81 MINS reports for inmates during the requested time period. Defendants further objects that "RELATED TO any deaths by suicide" is vague ambiguous, unduly burdensome and overbroad.

**RFP 104**: The Overall Inmate Summary (DC 14) for each PRISONER who died by suicide.

**RESPONSE**: Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate who died by suicide,

regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

**RFP 105**: The Overall Inmate Summary (DC 14) for each PRISONER who attempted suicide from January 1, 2016, through the present.

**RESPONSE**: Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate who attempted suicide, regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

## IX.   Mortality Reviews

In Request Number 94, Plaintiffs seek "ALL DOCUMENTS RELATED TO mortality reviews, including psychological autopsies, in cases involving suspected suicide."  Defendants responded with the following objection:

**RESPONSE**: Defendants object to this request as irrelevant and an invasion of privacy. Defendants further object that this request is not limited to restrictive housing or close management. Autopsies and mortality reviews of inmates that are suspected to have committed suicide bear no relevance to the issues in this case and would amount to a gross invasion of privacy rights. Defendants further object that "ALL DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and burdensome.

As stated above, Defendants have agreed to provide the MINS reports for suicides and attempted suicides going back one year in time as well as the overall inmate summaries for those inmates, which will show whether that person was in restrictive housing or had been in restrictive housing. Now, Plaintiffs want

59

mortality reviews and psychological autopsies of every inmate who had a suspected suicide going back a four year period of time, with no limit to restrictive housing or the issues of this case. It is true that Plaintiffs allege the risk of suicide is greater for those in isolation. But, this fact can be proven through statistics. It is also true that Plaintiffs allege that Defendants knew of this risk and failed to take measures to alleviate this risk. As should be clear, Plaintiffs have asked for documents concerning this various issue in multiple different ways in other requests for production. There is no need to produce such highly sensitive and private information going five years back in time simply so Plaintiffs can prove a point that could be made with other, more relevant documents. Simply because something "may lead to the discovery of admissible evidence" does not automatically mean that it *should* be produced, especially when it concerns such private and personal information.

Defendants' objections to Request for Production Number 94 should be sustained.

## X.     Requests Concerning the "Harms, Effects, or Impacts" of Isolation

Plaintiffs served two requests for production seeking "all documents" concerning the "harms, effects, or impact" of isolation. (RFP Nos. 62 and 63 to Defendant Inch).

In addition to the arguments raised above concerning the ambiguity of the request and the over breadth of the request, Defendants also objected to the extent this request sought documents protected by the self-critical analysis privilege. Defendants recognize that district courts in the Eleventh Circuit are split as to recognizing the self-critical analysis privilege. However, Defendants assert that the self-critical analysis should apply here, to the extent Plaintiffs' requests can be narrowed to a definable set of documents and those documents contain such privileged material.

The self-critical analysis privilege protects an organization from the Hobson's choice of aggressively investigating matters, ascertaining causes and results, and correcting various matters; but thereby creating a self-incriminating record that may be evidence of liability. *Reichhold Chemicals, Inc. v. Textron*, *Inc.*, 157 F.R.D. 522, 524. (N.D. Fla. 1994). Here, Defendants are not attempting to protect any underlying facts from discovery, but instead subjective impressions and opinions that may fall under this privilege.

Defendants object to Requests for Production Numbers 62 and 63 on the basis that such requests are vague, ambiguous, and overly broad. However, to the extent such a request is properly narrowed so that Defendants can properly understand which documents are sought, Defendants maintain that they should be

able to assert the self-critical analysis prevailed to the extent such a privilege is

applicable to certain discrete documents.  The requests in dispute are listed below:

*Request for Production to Inch*

**RFP 62**: ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on the harms, effects, OR impact of ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: FDC has produced documents in response to more specific requests. … Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on" and "harms, effects, OR impact" are vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants also object on the grounds that certain discovery may be protected by the self-critical analysis privilege.

**RFP 63**: ALL DOCUMENTS RELATED TO any investigations conducted by FDC or any FDC contractors REGARDING the harms, effects, or impact of ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE**: FDC has produced documents in response to more specific requests. … Additionally, Defendants object on the grounds that "ALL DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants also object on the ground that certain discovery may be protected by the self-critical analysis privilege.

## XI.   Staffing

Plaintiffs request the work schedules for correctional staff, mental health staff, and medical staff from January 1, 2018 to the present. (RFP Nos. 51, 92, 93 to Defendant Inch).   Again, Plaintiffs' discovery reflects a different approach to this case than previously argued.   These discovery requests do not focus on decision makers in Tallahassee, but rather those individuals on the ground at each individual institution, the very witnesses that Plaintiffs thought were so unimportant in opposing the Motion to Transfer.   But, if this case is about statewide policies, then whether or not two nurses called in sick the second week of March 2018 at Lowell Correctional Institution is not going to answer whether this class should be certified.

Defendants' objections to these requests for production should be sustained as the requests are overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.

*Request for Production to Inch*

**RFP 51:**All work schedules for correctional STAFF who provided services in ISOLATION from January 1, 2018, through the present.

**RESPONSE**: Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for work schedules is not relevant to the claims being asserted. …

**REVISED RFP 51**:All Daily Security Rosters from each day and each shift at FACILITIES whether there is ISOLATION during the time period of November 1, 2018, through the present.

**RFP 92**: All work schedules for mental health STAFF who provided services in ISOLATION from January 1, 2018, through the present.

**RESPONSE**: … Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Work schedules for staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**Revised RFP 92**: To the extent there exists a document, roster, or form with the equivalent information [included in a Daily Security Roster] for … mental health staff, please provide a sample so that Plaintiffs can determine whether [this RFP] can be modified in the same manner [as RFP 51].

**RFP 93**: All work schedules for medical STAFF who provided services in ISOLATION from January 1, 2018, through the present.

**RESPONSE:** … Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state- wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Work schedules for staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**Revised RFP 93**: To the extent there exists a document, roster, or form with the equivalent information [included in a Daily Security Roster] for … medical … staff, please provide a sample so that Plaintiffs can determine whether [this RFP] can be modified in the same manner [as RFP 51].

## XII.  <u>Documents Regarding the CTU and DTU</u>

Plaintiffs request various documents and information regarding the FDC's Residential Continuum of Care (RCC).  *See* (RFP Nos. 77 and 78 to Inch and Interrogatory Numbers 7 and 8). The Residential Continuum of Care refers to specialized residential mental health units that work together, in conjunction with the inpatient system, to provide augmented outpatient mental health treatment and habilitation services in a protective environment for inmates with serious psychological impairment associated with a historical inability to successfully adjust to daily living.  In general, RCC units include Cognitive Treatment Units (CTU), Diversion Treatment Units (DTU) and/or Secure Treatment Units (STU).

Plaintiffs have requested documents regarding all three units.  However, only one of those units relates to the issues in this case and that is the STU.  The STU refers to a specialized outpatient mental health unit designed to serve inmates on Close Management status that are diagnosed with a mental illness associated with serious impairment in psychological or behavioral functioning that substantially interferes with the ability to meet the ordinary demands of daily living.

However, the CTU and DTU do not relate to any form of restrictive housing and are instead for inmates with a diagnosed neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily

living (CTU) and inmates whose mental illness is associated with serious impairment in psychological or behavioral functioning that substantially interferes with the ability to meet the ordinary demands of daily living in general population (DTU).  Information as to whether the conditions of confinement are constitutional is not going to be found in discovery regarding the CTU and DTU as those inmates are not in restrictive housing.  Further, information as to whether Defendants' policies regarding inmates with a disability who are housed in restrictive housing is likewise not going to be found in discovery related to the CTU and DTU.

Further, to the extent Plaintiffs claim that inmates are being assigned to restrictive housing as a result of their disability, such a claim is not presently being made in the Section 1983 claim against Defendant Inch which concerns the conditions of confinement, not the reasons for confinement. (Doc. 54 at p. 18).

Defendants' objections to the below discovery requests should be sustained:

*Request for Production to Inch*

**RFP 77**: All minutes, recordings, summaries, OR reports of meetings, whether informal or informal, REGARDING any meeting where the development, inception, creation, AND need for a Secure Treatment Unit, Diversion Treatment Unit, OR Cognitive Treatment Unit were discussed from January 1, 2016 through the present.

**RESPONSE**: FDC will produce meeting minutes from any meeting discussing the development of the STU. Otherwise, Defendants objects to this request to the extent it asks for information about the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU). These two units are not relevant to the issues set forth in the Complaint, namely the "isolation" of inmates for 22 hours a day on

average. Further, these two units do not house inmates who are classified as Close Management inmates. Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavioral function that substantially interferes with the ability to meet the ordinary demands of daily living in general population. Thus the production of documents regarding these two units would not be proportional to the needs of this case, as well as overly broad and burdensome.

**RFP 78**: ALL DOCUMENTS RELATED TO the development, inception, creation AND need for a Secure Treatment Unit, Diversion Treatment Unit, OR Cognitive Treatment Unit.

**RESPONSE**: See Responses to Requests No. 77 and 132.

*Interrogatories to FDC*

**INTERROGATORY 7**: Describe in detail all criteria for any PRISONER to be admitted to a Secure Treatment Unit, the Diversion Treatment Unit, AND the Cognitive Treatment Unit at any FACILITY. The timeframe for these Interrogatories is from January 1, 2014, through the present, so if the criteria changed during that time period, provide all versions of the criteria.

**RESPONSE**: The FDC objects to this interrogatory to the extent it asks for information about the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU). These two units are not relevant to the issues set forth in the Complaint, namely the "isolation" of inmates for 22 hours a day on average. Further, these two units do not house inmates who are classified as Close Management inmates. Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavioral function that substantially interferes with the ability to meet the ordinary demands of daily living in general population.

**INTERROGATORY 8**: For the FDC's Secure Treatment Unit, the Diversion Treatment Unit, AND the Cognitive Treatment Unit, state how many beds are available in each unit at each FACILITY that has each unit, how many PRISONERS are currently on a waiting list for each unit, AND the names AND DC numbers of each PRISONER currently waiting for each program.

**RESPONSE**: The FDC objects to this interrogatory to the extent it asks for information about the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU). These two units are not relevant to the issues set forth in the Amended Complaint, namely the "isolation" of inmates for 22 hours a day on average. Further, these two units do not house inmates who are classified as Close Management inmates. Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavior al function that substantially interferes with the ability to meet the ordinary demands of daily living in general population.

For the STU, as of September 10, 2019, there are 92 single-man beds at Wakulla. The waiting list for the STU as of September 10, 2019 is 45. FDC objects to providing the names of those inmates on the waiting list as an invasion of those inmates' privacy rights and not relevant to any issue in this case.

## XIII. <u>Video</u>

Defendants agreed to preserve video and audio for one 24-hour period in 11 different isolation units throughout Florida. Defendants have <u>not</u> agreed to produce these videos because the videos contain safety and security information. *See* Motion for Protective Order.

Plaintiffs also want communications regarding those preserved videos, arguing that they need this information to verify that the equipment was

functioning properly. This request is not relevant to any issue in this case, but rather only relevant to a planned spoliation or discovery dispute Plaintiffs hope to have in the future. Defendants should not be required to produce the "back-up" documents supporting their compliance with a preservation request. If at some point an issue is discovered, then discovery into that discrete issue may be allowed. But an indiscriminate request for all communications regarding this preservation effort is not relevant to any issue in this case and calls for attorney-client and work product communications.

Defendants' objections to the below Requests should be sustained:

*Request for Production to Inch*

**RFP 135:** All video and audio preserved by agreement between the parties in this Litigation.

**RESPONSE**: Defendants object to this request on the basis that requested video and audio contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**RFP 136**: All logs, maintenance work requests, memoranda, and COMMUNICATIONS related to the video and audio referenced in Request No. 135.

**RESPONSE**: Defendants object on the basis that Plaintiffs' requests for the "logs, maintenance work requests, memoranda and COMMUNICATIONS" related thereto are not proportional to the needs of the case and are not relevant to the claims and defenses in the case. Defendants further object on the basis that the request is vague and ambiguous and therefore Defendants do not understand what is

69

sought by Plaintiffs. Defendants also object to the extent this request seeks attorney-client and work product privileged information. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

## XIV. <u>Cell Identification</u>

Interrogatory Number 16 asks the FDC to: "Identify at each FACILITY the location of every ISOLATION cell, including the dorm, wing, cell number AND type of ISOLATION (Close Management II, II and III; Maximum Management; Disciplinary Confinement; AND Administrative Confinement)." Defendants responded:

> The FDC objects to this interrogatory as not relevant to any issue asserted in this case. This case concerns the constitutionality of the "conditions of confinement" based on the overarching policy of the FDC. The location of every cell, including the dorm, wing and cell number is not relevant to any issue in this case. A list of all cell locations, such as Y1 and G3, bears no relationship to the issues asserted in this case. …

Plaintiffs argue that they need this information in order to conduct inspections and to determine whether a document they have discussing an inmate discusses an event that occurred in isolation. (Doc. 65-1 at p. 96). However, it is not clear why Plaintiffs need the full listing of cell locations and names simply for these two issues. If Plaintiffs request inspections, then they should ask for an inspection. Plaintiffs do not need to know the location of the cell or cell and wing number in

70

order to request an inspection.  Likewise, if Plaintiffs want to know if an event occurred while an inmate was in restrictive housing, the answer should be clear as all discovery in this case should be tailored to inmates in restrictive housing. Defendants should not be forced to compile a list of all dorm, wing, and cell numbers and locations for every institution simply to satisfy this request.

## XV.   **Remaining Items**

Plaintiffs have moved to compel on several requests for production for which Defendants have agreed to respond. Therefore, it is not apparent what exactly Plaintiffs are moving to compel on or whether the dispute is now moot. Below are those requests:

*Request for Production to Inch*

**RFP 52**: ALL POLICIES RELATED TO any FDC Alternative Housing Program OR Alternative Housing Pilot Program.

**RFP 56:** ALL POLICIES RELATED TO any pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in isolation.

**RFP 57**: ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RFP 60**: ALL POLICIES RELATED TO any programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population. This request seeks

DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RFP 61**: ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

Defendants have provided documents responsive to these requests to Plaintiffs' counsel in response to a public records request. Following a meet and confer, Defendants have agreed to re-produce unredacted copies of these documents. To the extent Plaintiffs move to compel on these requests for the reasons outlined above (definition of "policy"), then Defendants incorporate their argument regarding that overly broad definition. *See* Section II. Otherwise, Plaintiffs' Motion to Compel regarding these requests appear moot.

**XVI**. **Defendants' Request for Status Conference to Discuss Phased Discovery**

Defendants oppose Plaintiffs' Motion to Compel and request that their objections be sustained by the Court. However, should this Court grant Plaintiffs' Motion to Compel, Defendants request a status conference to discuss the phasing of discovery in this case.

As discussed above, Plaintiffs have served extensive discovery seeking an extraordinary amount of documents. To date, Defendants have produced almost 40,000 pages of documents. Defendants are currently processing and reviewing

over 3 million e-mail communications and thousands of other documents in response to this first set of discovery.   Defendants are also requesting, processing, and reviewing thousands of other documents in response to the second and third sets of discovery served by Plaintiffs.  This is only counting those documents that Defendants have agreed to produce.  Should this Court grant Plaintiffs' Motion to Compel and require, for example, the policy of individual institutions for a five year period of time or "all documents" that report on the gender of an inmate in restrictive housing, then Defendants burden will increase exponentially.

Thus, in light of the upcoming deadlines, Defendants request, should this Court grant Plaintiffs' Motion to Compel, a status conference to discuss how discovery can be phased or prioritized in this case so that the actual documents that Plaintiffs need in order to support their class certification motion can be collected and processed first.

## XVII. **Plaintiffs' Request for Attorneys' Fees Should be Denied.**

Plaintiffs' request for reasonable attorney's fees and costs should be denied. Even if this Court grants Plaintiffs' Motion to Compel, Defendants objections were substantially justified. The Supreme court has clarified that discovery conduct should be found "substantially justified" under Rule 37 if it is a response to a "genuine dispute, or if reasonable people could differ as to the appropriateness of

the contested action." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988); *Devaney v. Continental American Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993).

Here, Defendants' objections are based in large part on the fact that Plaintiffs have represented that this is a case challenging a statewide policy promulgated and implemented in Tallahassee; therefore, Defendants objections are substantially justified under the circumstances.

## XVIII. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Compel Various Discovery Responses should be denied.

### CERTIFICATE OF WORD COUNT

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 18,558 words, excluding the parts exempted by said Local Rule.

Dated: January 13, 2020                    Respectfully submitted,

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

74

Email:  dgerber@rumberger.com
sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  nsmith@rumberger.com

**Attorneys for Defendants,**
 **Mark Inch and Florida**
 **Department of Corrections**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 13, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Jennifer Morrissey Painter at jennifer.painter@floridalegal.org;  Shalini  Goel  Agarwal  at shalini.agarwal@splcenter.org; Sumayya Saleh at sumayya.saleh@splcenter.org; Kelly  Jean  Knapp  at  Kelly.knapp@splcenter.org;  Lisa  S.  Graybill  at lisa.graybill@splcenter.org;  Dante  Pasquale  Trevisani  at dtrevisani@floridajusticeinstitute.org;  Laura  Anne  Ferro  at lferro@floridajusticeinstitute.org;  Sam  Thypin-Bermeo  at  sthypin-bermeo@floridajusticeinstitute.org;  Andrea  Costello  at  andrea@floridalegal.org;

Christopher M. Jones at Christopher@floridalegal.org; and Aimee Lim at

aimee.lim@floridalegal.org.

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
         sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants,**
  **Mark Inch and Florida**
  **Department of Corrections**

76

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; et al.,

      Plaintiffs,

vs.                    CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, et al.,

      Defendants.

                                /

**DEFENDANT MARK INCH'S RESPONSES TO PLAINTIFFS'**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**
**AND ELECTRONICALY [SIC] STORED INFORMATION**

Defendant, Mark Inch and Florida Department of Corrections ("FDC" or

"Defendants"), respond to Plaintiffs' First Request for Production of Documents

and Electronicaly [sic] Stored Information, served August 13, 2019, as follows:

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Defendants incorporate these objections to Plaintiffs' "Instructions" and

"Definitions" into each specific response to Plaintiffs' request for production listed

below:

1.     Defendants object to the "Instructions" as they require Defendants to

comply with ESI protocols different than what the parties have agreed upon and/or

are more burdensome than the requirements of the Federal Rules of Procedure.

2.      Defendants object to the "Instructions" as requiring Defendants to "identify" each person Defendants have reason to believe had or has knowledge of any Document or ESI not presently in FDC's possession or subject to its control. Rule 34 authorizes discovery of documents and things, and there is no requirement to respond as instructed by Plaintiffs.

3.      Defendants object to the instruction for a requested timeframe of January 1, 2014, through the present.  This action is for solely for injunctive relief; therefore, a time period of almost six years is vastly overly broad and not proportional to the needs of the case considering that the undue burden and expense of discovery for the requested time period outweighs the likely benefit. As such, unless otherwise indicated, FDC has limited its search to one year previous to the filing of the lawsuit, or May 8, 2018, through the present.  *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief").

4.      Defendants object to the definition of "communication(s)" as being overly broad and because it purports to include *oral* communications regardless of whether such oral communications are documented or otherwise recorded in some manner.  Rule 34 authorizes discovery of documents and things, and there is no requirement to produce oral communications as broadly defined by Plaintiffs. Defendants also object because the definition includes safety and security-sensitive

2

materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.

5.     Defendants object to the definition of "document" and "documents" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case, as electronic information stored in databases, such as OBIS, cannot be readily produced in any format other than print-screens.

6.     Defendants object to the definition of "disability" and "disabilities" as being overly broad in scope and different from the definition(s) contained in FDC's rules, policies, practices and/or procedures.  Defendants also object on the basis that "disability" and "disabilities" are not ascertainable on a class-wide basis, but instead must be determined on a case-by-case basis.

7.     Defendants object to the definition of "facility" and "facilities" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case at this stage, pre-class certification.  Plaintiffs have standing only to challenge the "conditions of confinement" related to their Close Management (CM) status, as none of the Plaintiffs were given the housing classification of Maximum Management, Disciplinary Confinement or Administrative Confinement at the time of the filing of the Complaint.  As such, Defendants object to the definition of "facility" and "facilities" to the extent it includes non-CM institutions. Additionally, Defendants object to the definition of "facility" and "facilities"

3

because it includes any institution "where there is ISOLATION." Such definition is overly broad and not relevant to the issues in this case, as "isolation" in turn "refers to Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management, as described in Chapters 33-601 and 33-603 of the Florida Administrative Code."

8.      Defendants object to the definition of "isolation," as it is different than the definition Plaintiffs set forth in the First Amended Class Action Complaint for Declaratory Relief and Injunctive Relief" ("Complaint"), overly broad in scope and not proportional to the needs of the case considering the undue burden and expense of discovery attendant to such a broad definition. Plaintiffs have standing only to challenge the "conditions of confinement" related to their Close Management (CM) status, as none of the Plaintiffs were given the housing classification of Maximum Management, Disciplinary Confinement or Administrative Confinement at the time of the filing of the Amended Complaint. As such, Defendants object to the definition of "isolation" to the extent it includes non-CM levels of confinement.

9.      Defendants object to the definition of "policy" and "policies" as including unwritten or otherwise unrecorded "policies." Rule 34 authorizes discovery of documents and things, and there is no requirement to create "policies" that have not been memorialized. Additionally, Defendants object to the relevance of "policies" that have not been officially approved. Defendants also object on the

4

basis of relevance and overbreadth because the definition includes "policies" in effect *only* at particular facilities, where the claims in this case "stem from one overarching policy and practice" of Defendants (D.E. 42, p.1), or stated another way, Defendants' "systematic *statewide* policy and practice of isolating people . . ." D.E. 42, pp. 2-3 (emphasis added), citing D.E. 13 ¶¶ 57-59.  Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.   Defendants further object to producing any "policy" that is no longer in effect as this is an action for injunctive relief and FDC's policies which are no longer in effect are not relevant to any issue asserted in this case.

10.     Defendants object to the definition of "staff" based upon overbreadth and relevance, as it includes non-employees of FDC, such as employees of vendors with whom FDC contracts, and "staff" at non-CM facilities.  *See* objection to "facility" and "facilities," at ¶ 6.

**Named Plaintiffs**

**REQUEST FOR PRODUCTION 1:**

The complete medical AND mental health records for Plaintiffs Jac'Quann Harvard, Jeremiah Hill, Angel Meddler, Juan Espinosa, Johnny Hill, James Kendrick, AND Jerome Burgess.

5

**RESPONSE:**

FDC will produce responsive documents.

**REQUEST FOR PRODUCTION 2:**

The complete correctional AND classification records, including those stored electronically AND in paper form, for Plaintiffs Jac'Quann Harvard, Jeremiah Hill, Angel Meddler, Juan Espinosa, Johnny Hill, James Kendrick, AND Jerome Burgess.

**RESPONSE:**

FDC will produce records from Plaintiffs' classification files. Defendants object to the term "correctional record" as vague and ambiguous.

**REQUEST FOR PRODUCTION 3:**

ALL GRIEVANCES RELATED TO Plaintiffs Jac'Quann Harvard, Jeremiah Hill, Angel Meddler, Juan Espinosa, Johnny Hill, James Kendrick, AND Jerome Burgess.

**RESPONSE:**

FDC will produce grievances submitted by Plaintiffs. To the extent such documents contain protected health information for any inmate who is not a plaintiff, such documents will be produced pursuant to the HIPAA Qualified Protective Order. Otherwise, Defendants object to producing information within such documents that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants also object that "ALL GRIEVANCES RELATED TO [Plaintiffs]" is vague,

6

ambiguous, overly broad and unduly burdensome, as the request encompasses grievances filed by non-plaintiff inmates that are irrelevant to the claims and defenses in this case.

**REQUEST FOR PRODUCTION 4:**

ALL DOCUMENTS RELATED TO any requests for reasonable accommodations or modifications, including but not limited to any Reasonable Modification or Accommodation Request for Inmates forms (Form DC2-530A), submitted by Plaintiffs Jac'Quann Harvard, Jeremiah Hill, Angel Meddler, Juan Espinosa, Johnny Hill, James Kendrick, AND Jerome Burgess.

**RESPONSE:**

FDC will produce records from Plaintiffs' classification and medical files, which will include all requests for reasonable accommodations or modifications submitted by Plaintiffs.  To the extent such documents contain protected health information for any inmate who is not a plaintiff, such documents will be produced pursuant to the HIPAA Qualified Protective Order.  Otherwise, Defendants object to producing information within such documents that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants also object that "ALL DOCUMENTS RELATED TO any requests [submitted by Plaintiffs]" is vague, ambiguous, overly broad and unduly burdensome, as the request encompasses requests for reasonable

7

accommodations or modifications submitted by non-plaintiff inmates that are irrelevant to the claims and defenses in this case.

**REQUEST FOR PRODUCTION 5:**

ALL COMMUNICATIONS to OR from any STAFF containing the search term "Harvard" and "JacQuann" or "L66795" from July 14, 2009, through the present, except for COMMUNICATIONS that solely report the names of all PRISONERS in ISOLATION.

**RESPONSE:**

See documents produced in response to requests 1-4. Additionally, FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of this request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 29,340 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants also object to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

8

**REQUEST FOR PRODUCTION 6:**

ALL COMMUNICATIONS to OR from any STAFF containing the search terms "Meddler" and "Angel" or "J54237" from November 9, 2015, through the present, except for COMMUNICATIONS that solely report the names of all PRISONERS in ISOLATION.

**RESPONSE:**

See documents produced in response to requests 1-4.  Additionally, FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of this request and to cost-sharing.  Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 16,746 items responsive to this request.  (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.)  Defendants also object to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 7:**

ALL COMMUNICATIONS to OR from any STAFF containing the search terms "Kendrick" and "James" or "Y06426" from June 1, 2018, through the present, except for COMMUNICATIONS that solely report the names of all PRISONERS in ISOLATION.

9

**RESPONSE:**

See documents produced in response to requests 1-4.  Additionally, FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of this request and to cost-sharing.  Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 4,770 items responsive to this request.  (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.)  Defendants also object to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 8:**

ALL COMMUNICATIONS to OR from any STAFF containing the search terms "Burgess" and "Jerome" or "990922" from January 1, 2017, through the present, except for COMMUNICATIONS that solely report the names of all PRISONERS in ISOLATION.

**RESPONSE:**

See documents produced in response to requests 1-4.  Additionally, FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of this request and to cost-sharing.  Otherwise, Defendants

10

object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 10,704 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants also object to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 9:

ALL COMMUNICATIONS to OR from any STAFF containing the search terms "Hill" and "Jeremiah" or "J56775" from July 6, 2016, through the present, except for COMMUNICATIONS that solely report the names of all PRISONERS in ISOLATION.

## RESPONSE:

See documents produced in response to requests 1-4. Additionally, FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of this request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 8,982 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants also object to the

11

extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 10:

ALL COMMUNICATIONS to OR from any STAFF containing the search terms "Espinosa" and "Juan" or "419680" from June 1, 2018, through the present, except for COMMUNICATIONS that solely report the names of all PRISONERS in ISOLATION.

## RESPONSE:

See documents produced in response to requests 1-4.  Additionally, FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of this request and to cost-sharing.  Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 3,937 items responsive to this request.  (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.)  Defendants also object to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e)

12

and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 11:

ALL COMMUNICATIONS to OR from any STAFF containing the search terms "Hill" and "Johnny" or "J33728" from April 29, 2008, through the present, except for COMMUNICATIONS that solely report the names of all PRISONERS in ISOLATION.

## RESPONSE:

See documents produced in response to requests 1-4. Additionally, FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of this request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 49,756 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants also object to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**Corrections Policies and Documents**

**REQUEST FOR PRODUCTION 12:**

ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Disciplinary Confinement.

**RESPONSE:**

See F.A.C. 33-601.800.   Otherwise, Defendants object on the basis of relevance in that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, as none of the Plaintiffs were in this housing classification at the time of the filing of the Complaint.   Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "policies." Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 13:**

ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Administrative Confinement.

**RESPONSE:**

Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Administrative Confinement, as none of the Plaintiffs were in this housing classification at the time of the filing of the Complaint.   Defendants also object based upon the

14

confidentiality, safety and security issues raised in the general objections to "Policies."  Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 14:**

ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Maximum Management.

**RESPONSE:**

Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Maximum Management, as none of the Plaintiffs were in this housing classification at the time of the filing of the Complaint.  Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "Policies."  Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 15:**

ALL POLICIES RELATED TO placement, retention, management, transfer, AND release of PRISONERS in Close Management.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce blanks of the following forms referenced in the Rule:  DC6-233C, DC6-265, DC6-128, DC6-229, DC6-229B,

DC6-221, DC4-643A, DC4-729, DC6-220, DC6-228, DC6-209, NI1-046.  FDC will also produce Procedures 601.211, 601.219, 601.220, 601.223, 602.013, 602.018, 602.028, 602.036, 602.043, 602.047, 602.051 and 602.053.  Otherwise, Defendants object based upon the confidentiality, safety and security issues raised in the general objections to "Policies" and Defendants' Response to Plaintiffs' Motion for Entry of Confidentiality Order.  Defendants further object that "ALL POLICIES RELATED TO" and "retention" and "management" are vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 16:**

ALL POLICIES RELATED TO HYGIENE ITEMS for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

16

**REQUEST FOR PRODUCTION 17:**

ALL POLICIES RELATED TO tablet computers for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce documents regarding the Interim Tablet and Kiosk Procedure and JPay Inc.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 18:**

ALL POLICIES RELATED TO radios AND batteries for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedure 602.047.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.

17

Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 19:**

ALL POLICIES RELATED TO PROPERTY RESTRICTION in all FACILITIES.

**RESPONSE:**

See F.A.C. 33-601.800. FDC will produce Procedures 602.018 and 602.047. Otherwise, Defendants objects on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants also object on the basis of proportionality and relevance because not "all FACILITIES" are at issue in this case. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 20:**

All unique versions of the form used for PROPERTY RESTRICTION in all FACILITIES. This request does not seek completed forms for individual PRISONERS, only all various form versions used.

**RESPONSE:**

FDC will produce blanks of the following forms: DC1-801, DC6-210, DC6-219, DC6-220 and DC6-229. Otherwise, Defendants object on the basis of

18

proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object on the basis of proportionality and relevance because not "all FACILITIES" are at issue in this case.

**REQUEST FOR PRODUCTION 21:**

ALL POLICIES RELATED TO the operation and functioning of plumbing in ISOLATION, including but not limited to the flushing of toilets.

**RESPONSE:**

See F.A.C. 33-601.800.   Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 22:**

ALL POLICIES RELATED TO the operation of lighting in ISOLATION, including schedules for turning lights off AND on inside cells.

19

**RESPONSE:**

See F.A.C. 33-601.800.   Otherwise, Defendants objects on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.  Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

**REQUEST FOR PRODUCTION 23:**

ALL POLICIES RELATED TO canteen services for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedures 204.005, 602.018 and 602.047.   Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.   Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

20

Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

**REQUEST FOR PRODUCTION 24:**

ALL POLICIES RELATED TO meal delivery for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedures 204.002, 401.009 and 503.006.   Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.   Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 25:**

ALL POLICIES RELATED TO programming for PRISONERS in ISOLATION, including but not limited to "Anger Management" and "Thinking for a Change."

**RESPONSE:**

See F.A.C. 33-601.800.   FDC will produce Procedure 504.001 and documents for programs regarding anger management and "Thinking for a Change."   Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding

21

Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 26:**

ALL POLICIES RELATED TO any academic education and adult education for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800. FDC will produce Procedures 501.106, 501.201, 502.001 and 504.001 and other documents regarding academic and adult education. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 27:**

ALL DOCUMENTS that report or describe the dates, days of the week, OR times that academic education AND adult education were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

22

**RESPONSE:**

Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  D.E. 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that adult education was scheduled or provided to individual inmates is not relevant to the claims being asserted.

**REQUEST FOR PRODUCTION 28:**

ALL POLICIES RELATED TO vocational education for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedure 501.106.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome

23

**REQUEST FOR PRODUCTION 29:**

ALL DOCUMENTS that report or describe the dates, days of the week, OR times that vocational education was scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that vocational education was scheduled or provided to individual inmates is not relevant to the claims being asserted.  Defendants also object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.

24

**REQUEST FOR PRODUCTION 30:**

ALL POLICIES RELATED TO chaplain services for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedure 503.002.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 31:**

ALL DOCUMENTS that report or describe the dates, days of the week, OR times that chaplain services were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.

25

The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that chaplain services were scheduled or provided to individual inmates is not relevant to the claims being asserted.  Defendants also object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.

**REQUEST FOR PRODUCTION 32:**

ALL POLICIES RELATED TO library services for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedures 501.301, 501.303, 501.304, 501.305 and 501.310.  Otherwise, Defendants objects on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 33:**

ALL DOCUMENTS that report or describe the dates, days of the week, OR times that library services were scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants objects to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that library services were scheduled or provided to individual inmates is not relevant to the claims being asserted. Defendants also object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.

27

**REQUEST FOR PRODUCTION 34:**

ALL POLICIES RELATED TO recreation for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedure 602.051.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.  Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

**REQUEST FOR PRODUCTION 35:**

ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that recreation was scheduled OR provided to PRISONERS in ISOLATION from January 1, 2018, through the present.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of

28

admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or describe the days of the week that recreation was scheduled or provided to individual inmates is not relevant to the claims being asserted.  Defendants also objects on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object to this request to the extent it seeks safety and security-sensitive materials, including but not limited to, post orders.

**REQUEST FOR PRODUCTION 36:**

ALL POLICIES RELATED TO job assignments for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedure 601.805.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs

29

were in these housing classifications at the time of the filing of the Complaint.

Defendants further object that "ALL POLICIES RELATED TO" is vague,

ambiguous, overly broad and burdensome.  Defendants also object to this request

to the extent it seeks safety and security-sensitive materials, including but not

limited to, post orders.

## REQUEST FOR PRODUCTION 37:

ALL DOCUMENTS that report OR describe the dates, days of the week, OR times that PRISONERS in ISOLATION were scheduled for job assignments from January 1, 2018, through the present.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object to this request as overly broad, not proportional to the

needs of this case, and not reasonably calculated to lead to the discovery of

admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-

wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.

The implementation of policy at the institution level and on an inmate-by-inmate

basis does not address whether the "overarching policy" is constitutional and/or

discriminatory.  Thus, Plaintiffs' request for "ALL DOCUMENTS" that report or

describe the days of the week that work assignments were scheduled or provided to

individual inmates is not relevant to the claims being asserted.  Defendants also

object on the basis of proportionality and relevance because Plaintiffs do not have

30

standing to assert claims regarding Disciplinary Confinement, Administrative

Confinement and Maximum Management as none of the Plaintiffs were in these

housing classifications at the time of the filing of the Complaint.  Defendants also

object to this request to the extent it seeks safety and security-sensitive materials,

including but not limited to, post orders.

## REQUEST FOR PRODUCTION 38:

ALL POLICIES RELATED TO orderly services for PRISONERS in
ISOLATION.

## RESPONSE:

Defendants cannot determine if "orderly services" is intended to cover

something other than "job assignments;" however, there is no separate policy

regarding orderly services.  Therefore, *see* Response to Request for Production No.

36.

## REQUEST FOR PRODUCTION 39:

ALL DOCUMENTS that report OR describe the dates, days of the week,
OR times that orderly services were scheduled or provided to PRISONERS in
ISOLATION from January 1, 2018, through the present.  This request seeks
DOCUMENTS in YOUR custody, control, OR possession except for
DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper
records.

## RESPONSE:

Defendants cannot determine if "orderly services" is intended to cover

something other than "job assignments;" however, there is no separate policy

regarding orderly services.  Therefore, *see* Response to Request for Production No. 37.

## REQUEST FOR PRODUCTION 40:

ALL POLICIES REGARDING PRISONERS who are minors, juveniles, OR youthful offenders.

## RESPONSE:

See F.A.C. 33-601.800.  FDC will produce Procedure 601.211 and 601.222. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object to providing policies unrelated to the issues in this case, namely the "isolation" of inmates in a cell for 22 hours a day on average. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

## REQUEST FOR PRODUCTION 41:

The contracts with all private FACILITIES where there are, have been, or will in the future be, PRISONERS in ISOLATION.

## RESPONSE:

None.

**REQUEST FOR PRODUCTION 42:**

ALL DOCUMENTS provided to the Association of State Correctional Administrators RELATED TO ISOLATION.

**RESPONSE:**

FDC will produce reports prepared by the Association of State Correctional Administrators, which reference documents relied upon by ASCA.   Otherwise, Defendants object that each and every document provided by FDC to ASCA is not relevant to the claims in this lawsuit, and it is disproportionate to the needs of this case to require FDC to search for and provide such documents.   Defendants also object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.   Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 43:**

ALL DOCUMENTS provided to the American Correctional Association RELATED TO ISOLATION.

**RESPONSE:**

FDC will produce audit reports prepared by the American Correctional Association, which reference documents relied upon by ACA.   Otherwise,

33

Defendants object that each and every document provided by FDC to ACA is not relevant to the claims in this lawsuit, and it is disproportionate to the needs of this case to require FDC to search for and provide such documents. Defendants also object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 44:**

ALL DOCUMENTS RELATED TO any conferences, gatherings, seminars, colloquiums, OR classes attended by STAFF REGARDING the use of solitary confinement, restrictive housing, OR isolation, including but not limited to the Arthur Liman Public Interest Colloquium in 2016 AND the "International and Interdisciplinary Perspectives on Prolonged Solitary Confinement" conference at the University of Pittsburgh School of Law in April 2016.

**RESPONSE:**

Defendants are searching for such documents and they will be provided to the extent they exist. Defendants further object that "ALL DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 45:**

All audits, reports, evaluations, OR studies authored by the American Correctional Association RELATED TO FDC.

**RESPONSE:**

FDC will produce audit reports prepared by the American Correctional Association.   Otherwise, Defendants object that each and every audit, report, evaluation and study prepared by ACA is not relevant to the claims in this lawsuit, and the request is therefore disproportionate to the needs of this case.   Defendants also object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.   Defendants further objects that "All audits, reports, evaluations, OR studies" "RELATED TO FDC" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 46:**

All Incident Reports RELATED TO PRISONERS in ISOLATION from February 2, 2019, through the present.

**RESPONSE:**

Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or

35

discriminatory. Thus, Plaintiffs' request for "[a]ll Incident Reports RELATED TO PRISONERS in ISOLATION" is not relevant to the claims being asserted. Defendants also object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendant also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object on the basis that this request will require a manual review of each facility's incident reports to determine the nature and relevance of the particular incident, which is unduly burdensome and not proportional to the needs of this case.

**REQUEST FOR PRODUCTION 47:**

ALL POLICIES RELATED TO correctional STAFFING levels, assignments, and schedules in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" "correctional STAFFING levels,

assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own post charts, daily rosters and other documents that are institution-specific. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**REQUEST FOR PRODUCTION 48:**

ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF.

**RESPONSE:**

See F.A.C. 33-601.800. FDC will produce Procedures 208.017, 208.018, 208.019, 208.020, 208.022, 208.063, 208.064 and 209.001. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants

further object that "ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of correctional STAFF" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance evaluation, and discipline of correctional staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**REQUEST FOR PRODUCTION 49:**

ALL POLICIES RELATED TO training for correctional STAFF in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800. FDC will produce Procedures 208.064, 209.001, 209.002, 209.003, 209.004 and 209.101. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing

38

classifications at the time of the filing of the Complaint.  Defendants further object

that "ALL POLICIES RELATED TO hiring, supervision, job performance

evaluation, AND discipline of correctional STAFF" is vague, ambiguous, overly

broad and burdensome.  Defendants also object to this request to the extent it seeks

safety and security-sensitive materials.  Defendants further object to this request as

overly broad, not proportional to the needs of this case, and not reasonably

calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as

alleged is a challenge to overarching state-wide policies, and not a "challenge to a

series of distinct incidents."  DE 42, p. 4.  The training of correctional staff at the

institution level does not address whether the "overarching policy" is constitutional

and/or discriminatory.  Thus, Plaintiffs' request is not relevant to the claims being

asserted.

**REQUEST FOR PRODUCTION 50:**

ALL DOCUMENTS that report, describe, summarize, analyze, discuss, or
comment on the job descriptions of correctional STAFF In ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedures 208.017, 208.018,

208.019, 208.020, 208.022, 208.063, 208.064, 209.001, 209.002, 209.003, 209.004

and 209.101.  Otherwise, Defendants objects on the basis of proportionality and

relevance because Plaintiffs do not have standing to assert claims regarding

Disciplinary Confinement, Administrative Confinement and Maximum

Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL DOCUMENTS that report, describe, summarize, analyze, discuss, or comment on the job descriptions" is vague, ambiguous, overly broad and burdensome. Defendants also object to this request to the extent it seeks safety and security-sensitive materials.

## REQUEST FOR PRODUCTION 51:

All work schedules for correctional STAFF who provided services in ISOLATION from January 1, 2018, through the present.

## RESPONSE:

Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request for work schedules is not relevant to the claims being asserted.  Defendants also object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary   Confinement,   Administrative   Confinement   and   Maximum

40

Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.

**REQUEST FOR PRODUCTION 52:**

ALL POLICIES RELATED TO any FDC Alternative Housing Program OR Alternative Housing Pilot Program.

**RESPONSE:**

The Alternative Housing Program did not apply to inmates in Close Management, therefore Defendants object to producing such documents because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Further, Defendants object that "ALL POLICIES RELATED TO any" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.  Defendants further object to producing documents regarding any program that is not in effect as this is an action for injunctive relief, and FDC's programs that are no longer in effect are not relevant to any issue asserted in this case.

**REQUEST FOR PRODUCTION 53:**

ALL POLICIES RELATED to the "Automated Discipline and Integrated Offender System".

41

**RESPONSE:**

Defendants object on the basis that the request seeks safety and security-sensitive materials that are highly-confidential in nature and not relevant to the claims in this case.  Defendants further object that "ALL POLICIES" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.  Defendants further object to producing any policy that is not in effect as this is an action for injunctive relief, and FDC's policies that are no longer in effect are not relevant to any issue asserted in this case.

**REQUEST FOR PRODUCTION 54:**

ALL DOCUMENTS entitled, "Technical Manual, Florida Department of Corrections, Bureau of Classification Management, Alternative Housing", including all drafts, versions, and editions.

**RESPONSE:**

Defendants object on the basis that the request seeks safety and security-sensitive materials that are highly-confidential in nature and not relevant to the claims in this case.  Defendants further object that "ALL DOCUMENTS" "including all drafts, versions, and editions" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.  Defendants further object to producing any manual or version thereof that is not in effect as this is an action for injunctive relief, and FDC's manuals/versions that are no longer in effect are not relevant to any issue asserted in this case.  Further, the Alternative Housing

42

Program did not apply to inmates in Close Management, therefore Defendants object to producing such documents because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.

**REQUEST FOR PRODUCTION 55:**

ALL DOCUMENTS attached to OR referenced in the DOCUMENTS requested in No. 54, including a Microsoft Word DOCUMENT with the file name "Alternative Confinement Rules".

**RESPONSE:**

See Response to Request for Production No. 54.

**REQUEST FOR PRODUCTION 56:**

ALL POLICIES RELATED TO any pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in isolation.

**RESPONSE:**

FDC will produce those documents previously produced by FDC in response to Plaintiffs' public record request asking for these same documents. Otherwise, Defendants object that "ALL POLICIES RELATED TO any" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case. Defendants further object to producing documents regarding any program that is not in effect as this is an action for injunctive relief, and FDC's

programs that are no longer in effect are not relevant to any issue asserted in this case.

## REQUEST FOR PRODUCTION 57:

ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on pilot projects or programs that attempt to reduce OR have the effect of reducing the population of PRISONERS in ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

See Response to No. 56.  Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on pilot projects or programs" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.

## REQUEST FOR PRODUCTION 58:

All minutes, recordings, summaries, OR reports of meetings, whether formal or informal, of the focus groups created for OR designed to consider methods of reducing the population of PRISONERS in ISOLATION.

## RESPONSE:

See Response to No. 56.

## REQUEST FOR PRODUCTION 59:

ALL DOCUMENTS entitled "Long Term Segregation – Team Report".

**RESPONSE:**

Defendants will search for and FDC will produce documents entitled "Long Term Segregation – Team Report" to the extent those documents reference or relate to Close Management.  To the extent the documents discuss any other form of restrictive housing, Defendants object to producing such documents because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.

**REQUEST FOR PRODUCTION 60:**

ALL POLICIES RELATED TO any programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

FDC will produce documents regarding such program(s).  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.

45

Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.

## REQUEST FOR PRODUCTION 61:

ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on programs created for OR designed to transition OR step-down PRISONERS from ISOLATION to the general population. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

See Response to No. 60. Additionally, Defendants object on the grounds that "report, describe, summarize, analyze, discuss, OR comment on programs" is vague, ambiguous, overly broad and burdensome, and not proportionate to the needs of this case.

## REQUEST FOR PRODUCTION 62:

ALL DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on the harms, effects, OR impact of ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

FDC has produced documents in response to more specific requests. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of

the Plaintiffs were in these housing classifications at the time of the filing of the

Complaint.  Additionally, Defendants object on the grounds that "report, describe,

summarize, analyze, discuss, OR comment on" and "harms, effects, OR impact"

are vague, ambiguous, overly broad and burdensome, and not proportionate to the

needs of this case.  Defendants also object on the grounds that certain discovery

may be protected by the self-critical analysis privilege.

## REQUEST FOR PRODUCTION 63:

ALL DOCUMENTS RELATED TO any investigations conducted by FDC or any FDC contractors REGARDING the harms, effects, or impact of ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

FDC has produced documents in response to more specific requests.

Otherwise, Defendants object on the basis of proportionality and relevance because

Plaintiffs do not have standing to assert claims regarding Disciplinary

Confinement, Administrative Confinement and Maximum Management as none of

the Plaintiffs were in these housing classifications at the time of the filing of the

Complaint.   Additionally, Defendants object on the grounds that "ALL

DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and

burdensome, and not proportionate to the needs of this case.  Defendants also

object on the grounds that certain discovery may be protected by the self-critical analysis privilege.

**Healthcare Policies and Documents**

**REQUEST FOR PRODUCTION 64:**

ALL POLICIES RELATED TO mental health care for PRISONERS in effect from January 1, 2019, through the present.

**RESPONSE:**

See F.A.C. 33-601.800. FDC will produce Health Services Bulletins 15.05.03, 15.05.08, 15.05.10, 15.05.11, 15.05.13, 15.05.14, 15.05.17, 15.05.18, 15.05.19, 15.05.20, 15.05.21, and Procedures 403.003, 404.001, 404.002, 404.003, 404.004 and 404.005. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

48

**REQUEST FOR PRODUCTION 65:**

ALL POLICIES RELATED TO medical care for PRISONERS in effect from January 1, 2019, through the present.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedures 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001. Otherwise, Defendants objects on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.  Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 66:**

The contracts with Centurion RELATED TO healthcare for PRISONERS.

**RESPONSE:**

FDC will produce the contracts.

49

**REQUEST FOR PRODUCTION 67:**

ALL DOCUMENTS, including POLICIES, bi-annual health services reports and summaries, preliminary and final reports, instruments, and corrective action plans, RELATED TO the healthcare quality management program from January 1, 2016, through the present.

**RESPONSE:**

FDC will produce the OHS Monitoring Reports for Centurion and any corrective action plans as a result of those reports to the extent those reports or corrective action plans relate to inmates in close management. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.  Defendants further object to the phrase "healthcare quality management program" as vague.  Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 68:**

ALL POLICIES RELATED TO medical care for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800. FDC will produce Procedures 401.011, 401.014, 401.016, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.  Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 69:**

ALL POLICIES RELATED TO mental health care for PRISONERS in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  FDC will produce Procedures 404.001, 404.002, 404.003 and 404.005 (unpublished) and Health Services Bulletins 15.05.03, 15.05.10, 15.05.11, 15.05.08, 15.05.14, 15.05.17, 15.05.18, 15.05.19 and 15.05.21. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary

Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 70:**

ALL POLICIES RELATED TO medical care for pregnant women in ISOLATION.

**RESPONSE:**

Defendants will produce Procedures 401.011, 401.014, 401.016, 403.003, 403.006, 403.007, 403.008, 403.011 and 406.001. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla.

52

Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 71:

ALL POLICIES RELATED TO transgender PRISONERS in ISOLATION.

## RESPONSE:

FDC will produce Procedure 403.012.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.  Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 72:

ALL POLICIES RELATED TO treatment for gender dysphoria for PRISONERS in ISOLATION.

## RESPONSE:

See Response to No. 71.

**REQUEST FOR PRODUCTION 73:**

ALL POLICIES RELATED TO the Residential Continuum of Care.

**RESPONSE:**

FDC will produce draft Procedure 404.005, which has not yet been put into effect.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.  Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 74:**

ALL POLICIES RELATED TO group therapy for PRISONERS in ISOLATION.

**RESPONSE:**

FDC will produce Procedures 403.003, 404.005 (not yet in effect) and 403.012 and Health Services Bulletins 15.05.14, 15.05.18 and 15.05.08.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary

Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.  Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 75:**

ALL POLICIES RELATED TO outpatient mental health care for PRISONERS in ISOLATION.

**RESPONSE:**

FDC will produce Procedure 403.003 and Health Services Bulletin 15.05.08. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome.  Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 76:**

ALL POLICIES RELATED TO transfers of PRISONERS to OR from ISOLATION to isolation management rooms, hospitals, mental health treatment facilities, infirmaries, crisis stabilization units, transitional care units, secure treatment units, diversion treatment units, cognitive treatment units, OR other higher levels of care.

**RESPONSE:**

FDC will produce Procedure 404.003.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 77:**

All minutes, recordings, summaries, OR reports of meetings, whether informal or informal, REGARDING any meeting where the development, inception, creation, AND need for a Secure Treatment Unit, Diversion Treatment Unit, OR Cognitive Treatment Unit were discussed from January 1, 2016 through the present.

**RESPONSE:**

FDC will produce meeting minutes from any meeting discussing the development of the STU.  Otherwise, Defendants objects to this request to the extent it asks for information about the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU).  These two units are not relevant to the issues set forth in the Complaint, namely the "isolation" of inmates for 22 hours a day on average.  Further, these two units do not house inmates who are classified as Close Management inmates.  Those two units are for inmates diagnosed with a neurocognitive disorder that substantially interferes with the ability to meet the ordinary demands of daily living and inmates with a mental illness that is associated with serious impairment in psychological or behavioral function that substantially interferes with the ability to meet the ordinary demands of daily living in general population.  Thus the production of document regarding these two units would not be proportional to the needs of this case, as well as overly broad and burdensome.

**REQUEST FOR PRODUCTION 78:**

ALL DOCUMENTS RELATED TO the development, inception, creation AND need for a Secure Treatment Unit, Diversion Treatment Unit, OR Cognitive Treatment Unit.

**RESPONSE:**

See Responses to Requests No. 77 and 132.

57

**REQUEST FOR PRODUCTION 79:**

All "Physical and Mental Health Surveys" conducted by the Correctional Medical Authority.

**RESPONSE:**

Documents prepared by the Correctional Medical Authority are publicly available. *See* https://www.flgov.com/correctional-medical-authority-cma/. To the extent this request seeks more, Defendants object to this request as vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 80:**

All quarterly audits conducted to assess Centurion's contract compliance regarding the  following performance indicators AND outcomes:  Pre-Confinement Physicals for inmates in special housing; daily rounds by nursing staff in special housing, confinement evaluations (S3); confinement evaluations (S1/S2); weekly confinement rounds by mental health staff; and Behavioral Risk Assessments (BRA).

**RESPONSE:**

See Response to Request for Production No. 67.

**REQUEST FOR PRODUCTION 81:**

The document entitled, "Mental Illness in Corrections, An Inconvenient Truth, The Need for a Public Safety/Public Health Model", by Dr. Dean Aufderheide, including all versions AND drafts.

**RESPONSE:**

FDC will produce the article and drafts if they can be located.

**REQUEST FOR PRODUCTION 82:**

All lists of PRISONERS in ISOLATION who were patients in the chronic illness clinics from February 1, 2019, through the present.

**RESPONSE:**

To Defendants' knowledge, no such list exists.   Otherwise, Defendants object to this request to the extent it requires Defendants to create a list that otherwise does not exist.

**REQUEST FOR PRODUCTION 83:**

All forms OR DOCUMENTS that report problems OR errors discovered during monthly inspections of medication administration records for PRISONERS in ISOLATION FROM January 1, 2016, through the present.

**RESPONSE:**

These inspection reports are performed by Centurion; therefore none. Defendants object that "ALL DOCUMENTS" is vague, ambiguous, overly broad and burdensome.

**REQUEST FOR PRODUCTION 84:**

ALL POLICIES RELATED TO mental health STAFFING levels, assignments and schedules in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.   Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and

59

Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" "mental health STAFFING levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific.  Defendants also object to this request to the extent it seeks documents within the possession of a third-party, Centurion.  Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request is not relevant to the claims being asserted.

**REQUEST FOR PRODUCTION 85:**

ALL POLICIES RELATED TO medical STAFFING levels, assignments, and schedules in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and

Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" "medical STAFFING levels, assignments, and schedules" is vague, ambiguous, overly broad and burdensome.  Defendants further object as each facility has its own documents that are institution-specific. Defendants also object to this request to the extent it seeks documents within the possession of a third-party, Centurion.  Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  Staffing assignments and levels at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request is not relevant to the claims being asserted.

**REQUEST FOR PRODUCTION 86:**

ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of mental health STAFF.

**RESPONSE:**

See F.A.C. 33-601.800.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and

Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants further object that "ALL POLICIES RELATED TO" "hiring, supervision, job performance evaluation, and discipline" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific.  Defendants also object to this request to the extent it seeks documents within the possession of a third-party, Centurion.  Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."   DE 42, p. 4.   The hiring, supervision, job performance, and discipline of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory.   Thus, Plaintiffs' request is not relevant to the claims being asserted.

## REQUEST FOR PRODUCTION 87:

ALL POLICIES RELATED TO hiring, supervision, job performance evaluation, AND discipline of medical STAFF.

## RESPONSE:

See F.A.C. 33-601.800.  Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert

claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" "hiring, supervision, job performance evaluation, and discipline" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. Defendants also object to this request to the extent it seeks documents within the possession of a third-party, Centurion. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The hiring, supervision, job performance, and discipline of staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**REQUEST FOR PRODUCTION 88:**

ALL POLICIES RELATED TO training for mental health STAFF in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert

claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" "training" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. Defendants also object to this request to the extent it seeks documents within the possession of a third-party, Centurion. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**REQUEST FOR PRODUCTION 89:**

ALL POLICIES RELATED TO training for medical STAFF in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and

64

Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object that "ALL POLICIES RELATED TO" "training" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. Defendants also object to this request to the extent it seeks documents within the possession of a third-party, Centurion. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

**REQUEST FOR PRODUCTION 90:**

All DOCUMENTS that report, describe, summarize, analyze, discuss, OR comment on the job descriptions of mental health STAFF in ISOLATION.

**RESPONSE:**

See F.A.C. 33-601.800. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing

65

classifications at the time of the filing of the Complaint.  Defendants further object

that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and

burdensome.  Defendants further objects as each facility has its own documents

that are institution-specific.  Defendants also object to this request to the extent it

seeks documents within the possession of a third-party, Centurion.  Defendants

further object to this request as overly broad, not proportional to the needs of this

case, and not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not

a "challenge to a series of distinct incidents."  DE 42, p. 4.  Job descriptions of

staff at the institution level do not address whether the "overarching policy" is

constitutional and/or discriminatory.  Thus, Plaintiffs' request is not relevant to the

claims being asserted.

## REQUEST FOR PRODUCTION 91:

All DOCUMENTS that report, describe, summarize, analyze, discuss, OR
comment on the job descriptions of medical STAFF in ISOLATION.

## RESPONSE:

See F.A.C. 33-601.800.  Otherwise, Defendants object on the basis of

proportionality and relevance because Plaintiffs do not have standing to assert

claims regarding Disciplinary Confinement, Administrative Confinement and

Maximum Management as none of the Plaintiffs were in these housing

classifications at the time of the filing of the Complaint.  Defendants further object

66

that "ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and burdensome. Defendants further object as each facility has its own documents that are institution-specific. Defendants also object to this request to the extent it seeks documents within the possession of a third-party, Centurion. Defendants further objects to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Job descriptions of staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

## REQUEST FOR PRODUCTION 92:

All work schedules for mental health STAFF who provided services in ISOLATION from January 1, 2018, through the present.

## RESPONSE:

None. These documents are in the possession of Centurion. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object to this request as overly broad, not proportional to the

needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Work schedules for staff at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory. Thus, Plaintiffs' request is not relevant to the claims being asserted.

## REQUEST FOR PRODUCTION 93:

All work schedules for medical STAFF who provided services in ISOLATION from January 1, 2018, through the present.

## RESPONSE:

None. These documents are in the possession of Centurion. Otherwise, Defendants object on the basis of proportionality and relevance because Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants further object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. Work schedules for staff at the institution level do not address whether the

68

"overarching policy" is constitutional and/or discriminatory.    Thus, Plaintiffs'

request is not relevant to the claims being asserted.

**Suicide**

**REQUEST FOR PRODUCTION 94:**

ALL DOCUMENTS RELATED TO mortality reviews, including
psychological autopsies, in cases involving suspected suicide.

**RESPONSE:**

Defendants object to this request as irrelevant and an invasion of privacy.

Defendants further object that this request is not limited to restrictive housing or

close management.  Autopsies and mortality reviews of inmates that are suspected

to have committed suicide bear no relevance to the issues in this case and would

amount to a gross invasion of privacy rights. Defendants further object that "ALL

DOCUMENTS RELATED TO" is vague, ambiguous, overly broad and

burdensome.

**REQUEST FOR PRODUCTION 95:**

ALL POLICIES RELATED TO training about suicide prevention.

**RESPONSE:**

FDC will produce Procedures 404.001 and 404.002.  Defendants object that

"ALL POLICIES RELATED TO" is vague, ambiguous, overly broad and

burdensome. Defendants further object to this request as overly broad, not

proportional to the needs of this case, and not reasonably calculated to lead to the

discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  Training of staff at the institution level does not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request is not relevant to the claims being asserted.

## REQUEST FOR PRODUCTION 96:

ALL POLICIES RELATED TO suicide, suicide attempts, AND suicide prevention, including POLICIES RELATED TO self-harm observation status AND "isolation management rooms".

## RESPONSE:

See Response to Request No. 95.

## REQUEST FOR PRODUCTION 97:

All DOCUMENTS that report, describe, summarize, discuss, OR comment on suicide OR suicide attempts.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

See Responses to Request Nos. 98 and 99.  Otherwise, Defendants object to this request as overly broad, not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  All documents that "comment" on suicide, with no limit to restrictive housing or close management, is vastly over broad and burdensome.

**REQUEST FOR PRODUCTION 98:**

All MINS Reports RELATED TO suicide attempts by PRISONERS in ISOLATION from January 1, 2016, through the present.

**RESPONSE:**

FDC will produce MINS reports concerning inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.  Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.   Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendants have identified approximately 1990 MINS reports for inmates in Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management during the requested time period. Defendants further object that "RELATED TO suicide attempts" is vague ambiguous, unduly burdensome and overbroad.

**REQUEST FOR PRODUCTION 99:**

All MINS Reports RELATED TO any deaths by suicides.

**RESPONSE:**

FDC will produce MINS reports concerning inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.  Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendants have identified approximately 81 MINS reports for inmates during the requested time period.  Defendants further objects that "RELATED TO any deaths by suicide" is vague ambiguous, unduly burdensome and overbroad.

**REQUEST FOR PRODUCTION 100:**

All DOCUMENTS authored by the FDC Office of the Inspector General RELATED TO PRISONERS who died by suicide.

**RESPONSE:**

Defendants object to the extent death investigations are conducted by the Florida Department of Law Enforcement.  Defendants also object that "All DOCUMENTS authored by" is overbroad, vague and ambiguous.

**REQUEST FOR PRODUCTION 101:**

All DOCUMENTS authored by the Florida Department of Law Enforcement RELATED TO PRISONERS who died by suicide.

**RESPONSE:**

FDC will produce responsive documents within its possession subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court.

**REQUEST FOR PRODUCTION 102:**

All DOCUMENTS authored by the FDC Office of the Inspector General RELATED TO suicide attempts by PRISONERS.

**RESPONSE:**

Defendants object to the extent investigation of suicide attempts are not performed by the Office of the Inspector General absent some other qualifying condition requiring referral to the IG. Attempted suicides are investigated at the institution level. Defendants also object that "All DOCUMENTS authored by" is overbroad, vague and ambiguous.

**REQUEST FOR PRODUCTION 103:**

All DOCUMENTS authored by the Florida Department of Law Enforcement RELATED TO suicide attempts by PRISONERS.

**RESPONSE:**

None, to Defendants' knowledge. The FDLE does not investigate suicide attempts.

73

**REQUEST FOR PRODUCTION 104:**

The Overall Inmate Summary (DC 14) for each PRISONER who died by suicide.

**RESPONSE:**

Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate who died by suicide, regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

**REQUEST FOR PRODUCTION 105:**

The Overall Inmate Summary (DC 14) for each PRISONER who attempted suicide from January 1, 2016, through the present.

**RESPONSE:**

Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate who attempted suicide, regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

**Population Data**

**REQUEST FOR PRODUCTION 106:**

Current population lists, produced on a rolling monthly basis, of PRISONERS in Administrative Confinement, Close Management, Disciplinary Confinement, Disciplinary Confinement for six months or longer, AND Maximum Management with the same type of information AND in the same format as the population lists produced in response to Public Records Request Number 18-0639.

74

Please pull this data beginning the month this request is received and continue to pull and produce this data on the third Friday of each month.

**RESPONSE:**

FDC will produce the lists previously provided to Plaintiffs' counsel in response to their public records request. Otherwise, Defendants object to this request to the extent it requires Defendant to create a list that otherwise does not exist and on a schedule demanded by Plaintiffs. Otherwise, Defendants objects on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness.

**REQUEST FOR PRODUCTION 107:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the average duration of stay OR the length of time for PRISONERS in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and

75

Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**REQUEST FOR PRODUCTION 108:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the reasons that PRISONERS are placed OR retained in ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

76

**RESPONSE:**

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

77

## REQUEST FOR PRODUCTION 109:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who harmed themselves OR the frequency of self-harm behaviors by PRISONERS in ISOLATION.   This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "who harmed themselves" and "self-harm behaviors" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla.

78

Stat., without an agreement and/or order governing confidentiality.   Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

## REQUEST FOR PRODUCTION 110:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of violent incidents, cell extractions, disciplinary infractions, use of force incidents, OR PROPERTY RESTRICTIONS involving PRISONERS in ISOLATION as compared to PRISONERS not in ISOLATION.

## RESPONSE:

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.   Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "violent incidents, cell extractions, disciplinary infractions, use of force incidents OR PROPERTY RESTRICTIONS" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.   Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."   DE 42, p. 4.   The implementation of policy at the

79

institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.   Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

## REQUEST FOR PRODUCTION 111:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the total number of PRISONERS in ISOLATION on a daily, weekly, monthly, OR yearly basis.

## RESPONSE:

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "on a daily, weekly, monthly, OR yearly basis" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as

80

alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

**REQUEST FOR PRODUCTION 112:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the age of PRISONERS in ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report,

describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

## REQUEST FOR PRODUCTION 113:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS with mental illness in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and

Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

**REQUEST FOR PRODUCTION 114:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the gender of PRISONERS in ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality. Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal among other things highly-confidential information regarding inmates, housing, post orders and other security issues.

84

**REQUEST FOR PRODUCTION 115:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on pregnant PRISONERS in ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested

85

documents contain safety and security-sensitive information and reveal among

other things highly-confidential information regarding inmates, housing, post

orders and other security issues.

**REQUEST FOR PRODUCTION 116:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who leave their cells, OR the frequency that PRISONERS in ISOLATION leave their cells, for access to the dayroom, visits, phone calls, showers, programs, medical care, recreation, mental health care, academic education, OR adult education. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object on the basis that Plaintiffs do not have standing to assert

claims regarding Disciplinary Confinement, Administrative Confinement and

Maximum Management as none of the Plaintiffs were in these housing

classifications at the time of the filing of the Complaint. Defendants also object

that "ALL DOCUMENTS, including the contents of any databases, that report,

describe, summarize, analyze, discuss, calculate OR comment on" and "who leave

their cells, OR the frequency that PRISONERS in ISOLATION leave their cells,

for access to the dayroom, visits, phone calls, showers, programs, medical care,

recreation, mental health care, academic education, OR adult education" are vague,

ambiguous, overly broad, unduly burdensome and not proportional to the needs of

this case. Plaintiffs' case as alleged is a challenge to overarching state-wide

policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**REQUEST FOR PRODUCTION 117:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of PRISONERS in ISOLATION who receive, OR the frequency that PRISONERS in ISOLATION receive, academic education, adult education, mental health care, medical care, OR any programs inside their cells.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object

87

that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "receive, academic education, adult education, mental health care, medical care, OR any programs inside their cells" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The implementation of policy at the institution level and on an inmate-by-inmate basis does not address whether the "overarching policy" is constitutional and/or discriminatory.  Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.  Defendants object to this request on the basis that the requested documents contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**Grievances and Grievance Policies**

**REQUEST FOR PRODUCTION 118:**

ALL POLICIES RELATED TO the review of AND response to GRIEVANCES by any FDC staff.

**RESPONSE:**

See F.A.C. 33-103, et seq.

88

**REQUEST FOR PRODUCTION 119:**

All DOCUMENTS provided to PRISONERS to inform OR provide them notice of the Inmate Grievance Procedure described in Chapter 33-103 of the Florida Administrative Code.

**RESPONSE:**

FDC will produce (blank) Forms DC1-303, DC1-306, DC1-307 and DC6-236 and any documents provided to inmates regarding notice and procedures for inmate grievances.   Otherwise, Defendants object on the grounds that "ALL DOCUMENTS provide to PRISONERS" is overly broad and unduly burdensome.

**REQUEST FOR PRODUCTION 120:**

All GRIEVANCES submitted by PRISONERS in ISOLATION REGARDING medical care from February 1, 2019, through the present.

**RESPONSE:**

FDC will produce grievances submitted by inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.  Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.   Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue

89

burdensomeness, as Defendant has identified approximately 6,128 grievances (informal, formal and appeals) submitted by inmates in Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management during the time period from February 1, 2019, through July 31, 2019, pursuant to codes 7(a)-(v) [not including codes 7(c) and 7(l)].  Further, a manual search of the inmate's file must be conducted for all formal and informal grievances.  Defendants further object that "ALL GRIEVANCES" "REGARDING medical care" is vague ambiguous, unduly burdensome and overbroad.

**REQUEST FOR PRODUCTION 121:**

All GRIEVANCES submitted by PRISONERS in ISOLATION REGARDING mental health care from February 1, 2019, through the present.

**RESPONSE:**

FDC will produce grievances submitted by inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.  Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.  Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue

90

burdensomeness, as FDC has identified approximately 870 grievances (informal, formal and appeals) submitted by inmates in Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management during the time period from February 1, 2019, through July 31, 2019 ,pursuant to codes 7(c) and 7(l).  Further, a manual search of the inmate's file must be conducted for all formal and informal grievances.   Defendants further object that "ALL GRIEVANCES" "REGARDING mental health" is vague ambiguous, unduly burdensome and overbroad.

## REQUEST FOR PRODUCTION 122:

All GRIEVANCES submitted by PRISONERS in ISOLATION categorized as "Americans with Disability Act" from February 1, 2019, through the present.

## RESPONSE:

FDC will produce grievances submitted by inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.  Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint.   Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue

burdensomeness, as FDC has identified approximately 78 grievances (informal, formal and appeals) submitted by inmates in Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management during the time period from February 1, 2019, through July 31, 2019, pursuant to code 24(a)-(e). Further, a manual search of the inmate's file must be conducted for all formal and informal grievances.

**REQUEST FOR PRODUCTION 123:**

All GRIEVANCES submitted by PRISONERS in ISOLATION categorized as "Program Assignment" from February 1, 2019, through the present.

**RESPONSE:**

FDC will produce grievances submitted by inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 6,890 grievances (informal, formal and appeals) submitted by inmates in Administrative Confinement, Close

Management, Disciplinary Confinement and Maximum Management during the time period from February 1, 2019, through July 31, 2019, pursuant to code 2(a)-(q). Further, a manual search of the inmate's file must be conducted for all formal and informal grievances.

**Communications**

**REQUEST FOR PRODUCTION 124:**

All COMMUNICATIONS to OR from the FDC Secretary, Institutions Deputy Secretary, Institutions Assistant Deputy Secretary, Institutional Operations and Intelligence Director, Operations Deputy Director, AND Institutions Region Directors containing the search terms "confinement" or "special housing" or "restrictive housing" or "close management" or "maximum management" or "alternative housing" or "CM" or "AC" or "DC" or "MM" from January 1, 2016, through the present.

**RESPONSE:**

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 1,336,253 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants further object on the basis of relevance in that Plaintiffs do not have standing to assert claims regarding the housing classifications of Maximum Management, Disciplinary Confinement and Administrative Confinement. Defendants also

object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 125:

All COMMUNICATIONS to OR from the Health Services Director, Deputy Directors of Health Services, Chief Clinical Advisor, Chief of Health Services, Director of Nursing Services, Chief of Nursing, Director of Mental Health Services, Chief of Mental Health Services, Chief of Pharmaceutical Services, Regional Medical Executive Director, Regional Health Services Manager, Regional RN Consultants, Regional Directors of Mental Health, Regional Mental Health Consultants, Statewide Psychiatric Consultants, Chief Health Officers, AND Medical Executive Directors containing the search terms "confinement" or "special housing" or "restrictive housing" or "close management" or "maximum management" or "alternative housing" or "CM" or "AC" or "DC" or "MM" from January 1, 2016, through the present.

## RESPONSE:

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 315,479 items responsive to this request. (In total,

Plaintiffs' requests 5-11 and 124-134 seek over three million emails.)  Defendants further object on the basis of relevance in that Plaintiffs do not have standing to assert claims regarding the housing classifications of Maximum Management, Disciplinary Confinement and Administrative Confinement.   Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 126:**

All COMMUNICATIONS to OR from Dean Aufderheide that include the search term "suicide" from January 1, 2016, through the present.

**RESPONSE:**

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.   Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 8,368 items responsive to this request.   (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.)  Defendants

also object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 127:

All COMMUNICATIONS to OR from the FDC ADA Coordinators that include the search terms "confinement" or "special housing" or "restrictive housing" or "close management" or "maximum management" or "CM" or "AC" or "DC" or "MM" from January 1, 2016, through the present.

## RESPONSE:

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 1,807 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants further object on the basis of relevance in that Plaintiffs do not have standing to assert claims regarding the housing classifications of Maximum Management, Disciplinary Confinement or Administrative Confinement. Defendants also object

based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 128:**

All COMMUNICATIONS that include the search terms "ASCA" or "Association of State Correctional Administrators" and "restrictive housing" or "special housing" or "confinement" or "close management" or "maximum management" or "alternative housing" or "CM" or "AC" or "DC" or "MM".

**RESPONSE:**

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 6,692 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants further object on the basis of relevance in that Plaintiffs do not have standing to assert claims regarding the housing classifications of Maximum Management, Disciplinary Confinement and Administrative Confinement. Defendants also

97

object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 129:

All COMMUNICATIONS that include the search terms "American Correctional Association" or "ACA" and "restrictive housing" or "special housing" or "confinement" or "close management" or "maximum management" or "alternative housing" or "CM" or "AC" or "DC" or "MM".

## RESPONSE:

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 1,201,604 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants further object on the basis of relevance in that Plaintiffs do not have standing to assert claims regarding the housing classifications of Maximum Management, Disciplinary Confinement and Administrative Confinement. Defendants also

98

object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**<u>REQUEST FOR PRODUCTION 130</u>:**

All COMMUNICATIONS that include the search terms "Yale" or "Liman" from January 1, 2015, through the present.

**<u>RESPONSE</u>:**

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.   Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 73,904 items responsive to this request.   (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.)  Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is

exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 131:**

All COMMUNICATIONS that include the search terms "transgender" or "gender dysphoria" or transsexual" or "gender identify disorder" or "GID" and "special housing"  or "restrictive housing" or "close management" or "maximum management" or "confinement" or "CM" or "AC" or "DC" or "MM" from January 1, 2015, through the present.

**RESPONSE:**

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.  Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 213,535 items responsive to this request.  (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.)  Defendants further object on the basis of relevance in that Plaintiffs do not have standing to assert claims regarding the housing classifications of Maximum Management, Disciplinary Confinement and Administrative Confinement.  Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges

and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 132:**

All COMMUNICATIONS to OR from Dean Aufderheide RELATED TO the development, inception, creation, AND need for a Secure Treatment Unit, Diversion Treatment Unit, AND Cognitive Treatment Unit from January 1, 2016, through the present. This request seeks COMMUNICATIONS in YOUR custody, control, OR possession except for COMMUNICATIONS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.  Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 1,807 items responsive to this request.   (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.)  Defendants further object that "RELATED TO the development, inception, creation, AND need" is vague, ambiguous and overbroad.  Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information

101

with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 133:

All COMMUNICATIONS that include the search terms "Mental Illness in Corrections" or "An Inconvenient Truth" or "The Need for a Public Safety/Public Health Model".

## RESPONSE:

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 2,120 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla.

102

Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 134:**

All COMMUNICATIONS that include the search terms "alternative housing program" or "alternative housing pilot program."

**RESPONSE:**

FDC will produce responsive e-mails upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 1,254 items responsive to this request. (In total, Plaintiffs' requests 5-11 and 124-134 seek over three million emails.) Defendants also object based upon the confidentiality, safety and security issues raised in the general objections to "COMMUNICATIONS" and to the extent the request seeks communications protected by the attorney-client and work product privileges and/or information with the communication that is unrelated to Plaintiffs and is exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**Video/Audio**

**REQUEST FOR PRODUCTION 135:**

All video and audio preserved by agreement between the parties in this Litigation.

**RESPONSE:**

Defendants object to this request on the basis that requested video and audio contain safety and security-sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**REQUEST FOR PRODUCTION 136:**

All logs, maintenance work requests, memoranda, and COMMUNICATIONS related to the video and audio referenced in Request No. 135.

**RESPONSE:**

Defendants object on the basis that Plaintiffs' requests for the "logs, maintenance work requests, memoranda and COMMUNICATIONS" related thereto are not proportional to the needs of the case and are not relevant to the claims and defenses in the case. Defendants further object on the basis that the request is vague and ambiguous and therefore Defendants do not understand what is sought by Plaintiffs. Defendants also object to the extent this request seeks attorney-client and work product privileged information. Defendants object to this request on the basis that the requested documents contain safety and security-

sensitive information and reveal, among other things, highly-confidential information regarding inmates, housing, post orders and other security issues.

**General Requests**

**REQUEST FOR PRODUCTION 137:**

All DOCUMENTS that may support a claim, affirmative defense OR any other defense in this case.

**RESPONSE:**

See Defendants' non-privileged documents produced in response to the specific requests in Plaintiffs' requests for production. Otherwise, Defendants object to this request because it seeks the mental impressions and strategies of counsel protected by the work product doctrine. Defendants also object to this request on the grounds that it seeks documents protected by the attorney-client privilege and the disclosure of confidential information. Defendants further object that "ALL DOCUMENTS that may support" is overly broad in scope.

**REQUEST FOR PRODUCTION 138:**

All DOCUMENTS that you intend to use at trial, OR for any motion for this case.

**RESPONSE:**

Defendants have not determined what evidence they will use at trial, and such documents will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the

105

attorney-client and work product privileges.  Defendants also object on the basis

that there is no ongoing discovery obligation for Defendants to produce documents

they intend to use for "any motion" during the pendency of this case.

## REQUEST FOR PRODUCTION 139:

All DOCUMENTS identified in any DOCUMENT filed OR served by
Defendants in this matter, including but not limited to Defendants' motions,
Answer, responses to motions, replies, discovery requests, AND discovery
responses.

## RESPONSE:

See the documents filed in support of Defendants' Motion to Transfer (DE

27) and Defendants' Motion to Dismiss (DE 29) and served in response to

Plaintiffs' discovery.  Otherwise, Defendants object on the basis that there is no

ongoing discovery obligation for Defendants to produce documents they identify in

the papers they file and serve during the pendency of this case.  Otherwise, such an

obligation would be overly burdensome and may invade the attorney-client and

work product privileges.  Moreover, Plaintiffs already have in their possession

voluminous responses to public records requests.

## REQUEST FOR PRODUCTION 140:

All DOCUMENTS listed in your initial disclosures.

106

**RESPONSE:**

See FDC's non-privileged documents produced in response to the specific requests in Plaintiffs' requests for production.  Otherwise, Defendants object to the extent they identified categories of documents in their initial disclosures.

**REQUEST FOR PRODUCTION 141:**

All affidavits, declarations, OR statements in any written OR recorded form, including notes, from any person, RELATING TO this case (including any drafts of any of the foregoing).

**RESPONSE:**

See the affidavits in support of Defendants' Motion to Transfer (DE 27) and Defendants' Motion to Dismiss (DE 29).  Otherwise, Defendants object to this request on the grounds that "RELATING TO this case" is vague and overly broad. Defendants also object to this request on the grounds it seeks information protected by the attorney-client privilege and work product doctrine.

**REQUEST FOR PRODUCTION 142**

All DOCUMENTS received from a third party RELATING TO this case, whether through a subpoena OR otherwise.

**RESPONSE:**

Defendants have not issued any subpoenas in this case.  Otherwise, Defendants object on the basis of the attorney-client and work product privileges. Defendants also object to this request on the grounds that "RELATING TO this case" and "OR otherwise" are vague, ambiguous and overly broad.

**REQUEST FOR PRODUCTION 143:**

All COMMUNICATIONS with any expert OR potential expert.  If a COMMUNICATION was between an expert required to provide a report under Federal Rule of Civil Procedure 26(a)(2)(B) AND YOUR attorney, please produce it only if it (i) relates to compensation for the expert's study OR testimony; (ii) identifies facts OR data that the attorney provided AND that the expert considered in forming the opinions to be expressed; OR (iii) identifies assumptions that the party's attorney provided AND that the expert relied on in forming the opinions to be expressed.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to producing documents regarding "any expert" and "potential experts" to the extent this request seeks documents for non-testifying and consulting experts.  Defendants also object to this request as premature because the disclosure deadlines for expert opinions have not occurred.

**REQUEST FOR PRODUCTION 144:**

The current resume and curriculum vitae for any expert whose testimony OR declaration you will be using for any purpose, including any motion, hearing, OR trial, whether OR not the expert is required to produce an expert report.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be

produced according to the Court's orders and the Federal Rules of Civil Procedure.

Otherwise, Defendants object on the basis of the attorney-client and work product

privileges to producing documents regarding "any expert" to the extent this request

seeks documents for non-testifying and consulting experts.  Defendants also object

to this request as premature because the disclosure deadlines for expert opinions

have not yet occurred.

## REQUEST FOR PRODUCTION 145:

All treatises, publications, periodicals, pamphlets, and authorities on which any expert has relied upon OR intends to rely upon for his OR her opinion, report, OR testimony.

## RESPONSE:

Defendants state that, at this early stage of litigation, they do not have a

testifying expert witness, and documents responsive to this request will be

produced according to the Court's orders and the Federal Rules of Civil Procedure.

Otherwise, Defendants object on the basis of the attorney-client and work product

privileges to producing documents regarding "any expert" to the extent this request

seeks documents for non-testifying and consulting experts.  Defendants also object

to this request as premature because the disclosure deadlines for expert opinions

have not occurred.

## REQUEST FOR PRODUCTION 146

All DOCUMENTS, including notes, in the file of any expert whose testimony OR declaration you will be using for any purpose, including any motion,

hearing, OR trial, whether OR not the expert is required to produce an expert report.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to producing documents regarding "any expert" to the extent this request seeks documents for non-testifying and consulting experts.  Defendants also object to this request as premature because the disclosure deadlines for expert opinions have not occurred.

**REQUEST FOR PRODUCTION 147:**

All DOCUMENTS provided to any expert whose testimony OR declaration you will be using for any purpose, including any motion, hearing, OR trial, whether OR not the expert is required to produce an expert report.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to producing documents regarding "any expert" to the extent this request seeks documents for non-testifying and consulting experts.  Defendants also object

to this request as premature because the disclosure deadlines for expert opinions have not occurred.

**REQUEST FOR PRODUCTION 148:**

All expert reports that any of your experts have written in the last five years.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to the extent this request seeks documents for non-testifying and consulting experts.

**REQUEST FOR PRODUCTION 149:**

All DOCUMENTS showing or reflecting payment made to an expert, including but not limited to retainers, contracts, invoices, AND other payment documents.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product

privileges to the extent this request seeks documents for non-testifying and consulting experts.

**REQUEST FOR PRODUCTION 150:**

If you deny any Request for Admission that Plaintiffs have served OR will serve, please produce all DOCUMENTS and COMMUNICATIONS that you relied on OR will rely on to support YOUR denial, and specify which DOCUMENT or COMMUNICATION pertains to which Request for Admission.

**RESPONSE:**

Defendants have not responded to a request for admission.  Otherwise, Defendants object on the basis of the attorney-client and work product privileges. Defendants also object on the basis that there is no discovery obligation for Defendants to produce such documents for Request for Admission that Plaintiffs have not and may never serve.

**REQUEST FOR PRODUCTION 151:**

All DOCUMENTS and COMMUNICATIONS that YOU relied on OR will rely on to answer any of Plaintiffs' Interrogatories, and specify which DOCUMENT or COMMUNICATION pertains to which Interrogatory.

**RESPONSE:**

Defendants have not responded to Plaintiffs' interrogatories.  Otherwise, Defendants object on the basis of the attorney-client and work product privileges.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been furnished

by e-mail to counsel of record listed on the attached service list, this 11th day of

October, 2019.

/ s / Nicole Smith

DANIEL J. GERBER
Florida Bar No. 0764957
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:        dgerber@rumberger.com

and

NICOLE SMITH
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
A Professional Association
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  nsmith@rumberger.com

Attorneys for Florida Department of
Corrections

113

# SERVICE LIST

Christopher Michael Jones, Esquire
Andrea Costello, Esquire
Florida Legal Services Inc. – Newberry FL
14260 W. Newberry Road, Suite 412
Newberry, FL  32669
christopher@floridalegal.org;
andrea@floridalegal.org

Jennifer Morrissey Painter, Esquire
Florida Legal Services
P.O. Box 533986
Orlando, FL  32853
jennifer.painter@floridalegal.org

Shalini Goel Agarwal, Esquire
Sumayya Saleh, Esquire
Kelly Jean Knapp, Esquire
Southern Poverty Law Center – Tallahassee FL
P.O. Box 10788
Tallahassee, FL  32302
shalini.agarwal@splcenter.org
sumayya.saleh@splcenter.org
kelly.knapp@splcenter.org

Lisa S. Graybill, Esquire
Southern Poverty Law Center – New Orleans LA
201 St. Charles Avenue, Suite 2000
New Orleans, LA  70170
lisa.graybill@splcenter.org

Dante Pasquale Trevisani, Esquire
Laura Anne Ferro, Esquire
Florida Justice Institute Inc. – Miami FL
100 SE 2nd Street
3750 Bank of America Tower
Miami, FL  33131
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org

114

150057548.1

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; et al.,

       Plaintiffs,

vs.                    CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, et al.,

       Defendants.

                              /

**DEFENDANT FLORIDA DEPARTMENT OF CORRECTIONS'
RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS AND ELECTRONICALY [SIC] STORED INFORMATION**

Defendant, Florida Department of Corrections ("FDC"), responds to

Plaintiffs' First Request for Production of Documents and Electronicaly [sic]

Stored Information, served August 13, 2019, as follows:

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

FDC incorporates these objections to Plaintiffs' "Instructions" and

"Definitions" into each specific response to Plaintiffs' request for production listed

below:

1.     FDC objects to the "Instructions" as they require Defendants to

comply with ESI protocols different than what the parties have agreed upon and/or

are more burdensome than the requirements of the Federal Rules of Procedure.

2.     FDC objects to the "Instructions" as requiring Defendant to "identify" each person it has reason to believe had or has knowledge of any Document or ESI not presently in FDC's possession or subject to its control. Rule 34 authorizes discovery of documents and things, and there is no requirement to respond as instructed by Plaintiffs.

3.     FDC objects to the instruction for a requested timeframe of January 1, 2014, through the present. This action is solely for injunctive relief; therefore, a time period of almost six years is vastly overly broad and not proportional to the needs of the case considering that the undue burden and expense of discovery for the requested time period outweighs the likely benefit. As such, unless otherwise indicated, FDC has limited its search to one year previous to the filing of the lawsuit, or May 8, 2018, through the present. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief").

4.     FDC objects to the definition of "communication(s)" as being overly broad and because it purports to include *oral* communications regardless of whether such oral communications are documented or otherwise recorded in some manner. Rule 34 authorizes discovery of documents and things, and there is no requirement to produce oral communications as broadly defined by Plaintiffs. FDC also objects because the definition includes safety and security-sensitive

2

materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.

5. Defendants object to the definition of "document" and "documents" as being overly broad in scope, unduly burdensome and not proportional to the needs, as electronic information stored on databases, such as OBIS, cannot be readily produced in any format other than print-screens.

6. FDC objects to the definition of "disability" and "disabilities" as being overly broad in scope and different from the definition(s) contained in FDC's rules, policies, practices and/or procedures. FDC also objects on the basis that "disability" and "disabilities" are not ascertainable on a class-wide basis, but instead must be determined on a case-by-case basis.

7. FDC objects to the definition of "facility" and "facilities" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case at this stage, pre-class certification. Plaintiffs have standing only to challenge the "conditions of confinement" related to their Close Management (CM) status, as none of the Plaintiffs were given the housing classification of Maximum Management, Disciplinary Confinement or Administrative Confinement at the time of the filing of the Complaint. As such, FDC objects to the definition of "facility" and "facilities" to the extent it includes non-CM institutions. Additionally, FDC objects to the definition of "facility" and "facilities" because it includes any

3

institution "where there is ISOLATION."  Such definition is overly broad and not relevant to the issues in this case, as "isolation" in turn "refers to Administrative Confinement, Close Management, Disciplinary Confinement, and Maximum Management, as described in Chapters 33-601 and 33-603 of the Florida Administrative Code."

8.      FDC objects to the definition of "isolation," as it is different than the definition Plaintiffs set forth in the First Amended Class Action Complaint for Declaratory Relief and Injunctive Relief" ("Complaint"), overly broad in scope and not proportional to the needs of the case considering the undue burden and expense of discovery attendant to such a broad definition.  Plaintiffs have standing only to challenge the "conditions of confinement" related to their Close Management (CM) status, as none of the Plaintiffs were given the housing classification of Maximum Management, Disciplinary Confinement or Administrative Confinement at the time of the filing of the Amended Complaint.  As such, FDC objects to the definition of "isolation" to the extent it includes non-CM levels of confinement.

9.      FDC objects to the definition of "policy" and "policies" as including unwritten or otherwise unrecorded "policies."  Rule 34 authorizes discovery of documents and things, and there is no requirement to create "policies" that have not been memorialized.  Additionally, FDC objects to the relevance of "policies" that have not been officially approved.  FDC also objects on the basis of relevance

4

and overbreadth because the definition includes "policies" in effect *only* at particular facilities, where the claims in this case "stem from one overarching policy and practice" of Defendants (DE 42, p. 1), or stated another way, Defendants' "systematic *statewide* policy and practice of isolating people . . ." DE 42, pp. 2-3 (emphasis added), citing DE 13 ¶¶ 57-59. FDC also objects because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature. FDC further objects to producing any "policy" that is no longer in effect as this is an action for injunctive relief and FDC's policies which are no longer in effect are not relevant to any issue asserted in this case.

10.    FDC objects to the definition of "staff" based upon overbreadth and relevance, as it includes non-employees of FDC, such as employees of vendors with whom FDC contracts, and "staff" at non-CM facilities. *See* objection to "facility" and "facilities," at ¶ 6.

## REQUEST FOR PRODUCTION 1:

ALL POLICIES RELATED TO reasonable modifications of POLICIES or reasonable accommodations for PRISONERS with DISABILITIES in ISOLATION.

5

**RESPONSE:**

FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013.  Otherwise, Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 2:**

ALL POLICIES RELATED TO PRISONERS with DISABILITIES in ISOLATION.

**RESPONSE:**

FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013.  Otherwise, Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 3:**

ALL POLICIES RELATED TO AUXILIARY AIDS AND SERVICES for PRISONERS in ISOLATION.

**RESPONSE:**

FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.008, 403.011 and 403.013; Health Services Bulletins (HSB)

6

15.03.25, 15.03.25.01, 15.03.25.02 and 15.03.25.03.  Otherwise, Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 4:

ALL POLICIES RELATED TO DURABLE MEDICAL EQUIPMENT for PRISONERS in ISOLATION.

## RESPONSE:

FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.008, 403.011 and 403.013; Health Services Bulletins (HSB) 15.03.25, 15.03.25.01, 15.03.25.02 and 15.03.25.03.  Otherwise, Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 5:

ALL POLICIES RELATED TO disposable medical supplies for PRISONERS in ISOLATION, including but not limited to catheters AND related supplies, gauze, tape, AND incontinence pads.

## RESPONSE:

FDC will produce Procedures 401.011, 401.014, 401.016, 401.017, 403.003, 403.006 and 403.008.  Otherwise, Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla.

Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

## REQUEST FOR PRODUCTION 6:

ALL DOCUMENTS that report, describe, summarize, discuss, OR comment on the number of PRISONERS with DISABILITIES in ISOLATION. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants state that the number of disabled prisoners in CM is fluid and can change daily or even hourly. Assuming Plaintiffs are seeking the number of disabled prisoners in confinement on a given date, upon the parties' agreement, FDC will produce a report showing the number of disabled prisoners in CM on the agreed-upon date. Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants also object that "ALL DOCUMENTS that report, describe, summarize, discuss, OR comment on the number of PRISONERS with DISABILITIES in ISOLATION" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Defendants also object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and

8

119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 7:**

ALL POLICIES RELATED TO the [sic] any staff review of AND response to the "Reasonable Modification or Accommodation Request for Inmates" (Form DC2-530A).

**RESPONSE:**

FDC will produce Procedures 604.101, 401.011, 401.014, 401.016, 401.017, 403.003, 403.006, 403.007, 403.008, 403.011 and 403.013.  Otherwise, Defendants object to producing documents that are exempt from public record and/or confidential under 945.10(1)(e) and (h), Fla. Stat., and 119.071(3)(1)a, Fla. Stat., without an agreement and/or order governing confidentiality.

**REQUEST FOR PRODUCTION 8:**

ALL DOCUMENTS provided to PRISONERS in [sic] inform OR provide them with notice about the procedures for requesting a reasonable modification or accommodation, including but not limited to the "Reasonable Modification or Accommodation Request for Inmates" (Form DC2-530A).

**RESPONSE:**

FDC will produce Form DC2-530A (blank) and any documents provided to inmates regarding notice and procedures regarding requests for reasonable modification or accommodation.  Otherwise, Defendants object on the grounds that "ALL DOCUMENTS provide to PRISONERS" is overly broad and unduly burdensome, as the request is not limited to inmates in confinement, and inmates

9

may be provided particular information regarding modifications/accommodations on a case-by-case basis, depending on the inmate's specific needs and circumstances.

**REQUEST FOR PRODUCTION 9:**

All "Reasonable Modification or Accommodation Request for Inmates" forms (Form DC2-530A), including written responses by STAFF, submitted by PRISONERS in ISOLATION from February 2, 2019, through the present.

**RESPONSE:**

FDC will produce this information subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing.  Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 923 requests for accommodation/modification submitted by inmates in Administrative Confinement, Close Management, Disciplinary Confinement, and Maximum Management during this time period.

10

**REQUEST FOR PRODUCTION 10:**

ALL GRIEVANCES submitted by PRISONERS in ISOLATION RELATING to a DISABILITY from February 2, 2019, through the present.

**RESPONSE:**

FDC will produce grievances submitted by inmates in CM subject to the protections of the HIPAA Qualified Protective Order and any other confidentiality order entered by the Court upon the parties' agreement to narrow the scope and/or time frame of the request and to cost-sharing. Otherwise, Defendants object on the basis that Plaintiffs do not have standing to assert claims regarding Disciplinary Confinement, Administrative Confinement and Maximum Management as none of the Plaintiffs were in these housing classifications at the time of the filing of the Complaint. Defendants also object on the grounds that the request is unduly burdensome and seeks information FDC is incapable of producing. More specifically, all inmate grievances are classified by grievance code. There is no code for a grievance "RELATING to a DISABILITY;" therefore, FDC does not have the ability to run a report seeking the requested information. Beyond this, grievances responsive to this Request should be responsive to the information sought in Plaintiffs' Request for Production No. 122 directed to the Secretary. Defendants also object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as FDC has identified approximately 5,776 grievances (informal, formal and appeals)

11

submitted by CM inmates during the time period from February 1, 2019, through July 31, 2019. (The total number of grievances submitted by inmates in Administrative Confinement, Close Management, Disciplinary Confinement, and Maximum Management during this time period is approximately 13,978.) Further, a manual search of the inmate's file must be conducted for all formal and informal grievances. Defendants further object that "ALL GRIEVANCES" and "RELATING to a DISABILITY" are vague ambiguous, unduly burdensome and overbroad.

**REQUEST FOR PRODUCTION 11:**

ALL DOCUMENTS that may support a claim, affirmative defense OR any other defense in this case.

**RESPONSE:**

See FDC's non-privileged documents produced in response to the specific requests in Plaintiffs' requests for production. Otherwise, Defendants object to this request because it seeks the mental impressions and strategies of counsel protected by the work product doctrine. Defendants also object to this request on the grounds that it seeks documents protected by the attorney-client privilege and the disclosure of confidential information. Defendants further object that "ALL DOCUMENTS that may support" is overly broad in scope.

## REQUEST FOR PRODUCTION 12:

ALL DOCUMENTS that you intend to use at trial, OR for any motion for this case.

## RESPONSE:

Defendants have not determined what evidence they will use at trial, and such documents will be produced according to the Court's orders and the Federal Rules of Civil Procedure.  Otherwise, Defendants object on the basis of the attorney-client and work product privileges.  Defendants also object on the basis that there is no ongoing discovery obligation for Defendants to produce documents they intend to use for "any motion" during the pendency of this case.

## REQUEST FOR PRODUCTION 13:

ALL DOCUMENTS identified in any DOCUMENT filed OR served by Defendants in this matter, including but not limited to Defendants' motions, Answer, responses to motions, replies, discovery requests, AND discovery responses.

## RESPONSE:

See the documents filed in support of Defendants' Motion to Transfer (DE 27) and Defendants' Motion to Dismiss (DE 29) and served in response to Plaintiffs' discovery.  Otherwise, Defendants object on the basis that there is no ongoing discovery obligation for Defendants to produce documents they identify in the papers they file and serve during the pendency of this case.  Otherwise, such an obligation would be overly burdensome and might invade the attorney-client and

work product privileges. Moreover, Plaintiffs already have in their possession voluminous responses to public records requests.

**REQUEST FOR PRODUCTION 14:**

ALL DOCUMENTS listed in your initial disclosures.

**RESPONSE:**

See FDC's non-privileged documents produced in response to the specific requests in Plaintiffs' requests for production. Otherwise, Defendants object to the extent they identified categories of documents in their initial disclosures.

**REQUEST FOR PRODUCTION 15:**

All affidavits, declarations, OR statements in any written OR recorded form, including notes, from any person, RELATING TO this case (including any drafts of any of the foregoing).

**RESPONSE:**

See the affidavits in support of Defendants' Motion to Transfer (DE 27) and Defendants' Motion to Dismiss (DE 29). Otherwise, Defendants object to this request on the grounds that "RELATING TO this case" is vague and overly broad. Defendants also object to this request on the grounds it seeks information protected by the attorney-client privilege and work product doctrine.

**REQUEST FOR PRODUCTION 16:**

ALL DOCUMENTS received from a third party RELATING TO this case, whether through a subpoena OR otherwise.

14

**RESPONSE:**

Defendants have not issued any subpoenas in this case.   Otherwise, Defendants object on the basis of the attorney-client and work product privileges. Defendants also object to this request on the grounds that "RELATING TO this case" and "OR otherwise" are vague, ambiguous and overly broad.

**REQUEST FOR PRODUCTION 17:**

ALL COMMUNICATIONS with any expert OR potential expert.   If a COMMUNICATION was between an expert required to provide a report under Federal Rule of Civil Procedure 26(a)(2)(B) AND YOUR attorney, please produce it only if it (i) relates to compensation for the expert's study OR testimony; (ii) identifies facts OR data that the attorney provided AND that the expert considered in forming the opinions to be expressed; OR (iii) identifies assumptions that the party's attorney provided AND that the expert relied on in forming the opinions to be expressed.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to producing documents regarding "any expert" and "potential experts" to the extent this request seeks documents for non-testifying and consulting experts.  Defendants also object to this request as premature because the disclosure deadlines for expert opinions have not occurred.

15

**REQUEST FOR PRODUCTION 18:**

The current resume and curriculum vitae for any expert whose testimony OR declaration you will be using for any purpose, including any motion, hearing, OR trial, whether OR not the expert is required to produce an expert report.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to producing documents regarding "any expert" to the extent this request seeks documents for non-testifying and consulting experts.  Defendants also object to this request as premature because the disclosure deadlines for expert opinions have not yet occurred.

**REQUEST FOR PRODUCTION 19:**

All treatises, publications, periodicals, pamphlets, and authorities on which any expert has relied upon OR intends to rely upon for his OR her opinion, report, OR testimony.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product

privileges to producing documents regarding "any expert" to the extent this request seeks documents for non-testifying and consulting experts.  Defendants also object to this request as premature because the disclosure deadlines for expert opinions have not occurred.

## REQUEST FOR PRODUCTION 20:

ALL DOCUMENTS, including notes, in the file of any expert whose testimony OR declaration you will be using for any purpose, including any motion, hearing, OR trial, whether OR not the expert is required to produce an expert report.

## RESPONSE:

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to producing documents regarding "any expert" to the extent this request seeks documents for non-testifying and consulting experts.  Defendants also object to this request as premature because the disclosure deadlines for expert opinions have not occurred.

## REQUEST FOR PRODUCTION 21:

ALL DOCUMENTS provided to any expert whose testimony OR declaration you will be using for any purpose, including any motion, hearing, OR trial, whether OR not the expert is required to produce an expert report.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to producing documents regarding "any expert" to the extent this request seeks documents for non-testifying and consulting experts. Defendants also object to this request as premature because the disclosure deadlines for expert opinions have not occurred.

**REQUEST FOR PRODUCTION 22:**

All expert reports that any of your experts have written in the last five years.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to the extent this request seeks documents for non-testifying and consulting experts.

**REQUEST FOR PRODUCTION 23:**

ALL DOCUMENTS showing or reflecting payment made to any expert, including but not limited to retainers, contracts, invoices, AND other payment documents.

**RESPONSE:**

Defendants state that, at this early stage of litigation, they do not have a testifying expert witness, and documents responsive to this request will be produced according to the Court's orders and the Federal Rules of Civil Procedure. Otherwise, Defendants object on the basis of the attorney-client and work product privileges to the extent this request seeks documents for non-testifying and consulting experts.

**REQUEST FOR PRODUCTION 24:**

If you deny any Request for Admission that Plaintiffs have served OR will serve, please produce all DOCUMENTS and COMMUNICATIONS that you relied on OR will rely on to support YOUR denial, and specify which DOCUMENT or COMMUNICATION pertains to which Request for Admission.

**RESPONSE:**

Defendants have not responded to a request for admission.  Otherwise, Defendants object on the basis of the attorney-client and work product privileges. Defendants also object on the basis that there is no discovery obligation for Defendants to produce such documents for Request for Admission that Plaintiffs have not and may never serve.

19

## REQUEST FOR PRODUCTION 25:

ALL DOCUMENTS and COMMUNICATIONS that YOU relied on or will rely on to answer any of Plaintiffs' Interrogatories, and specify which DOCUMENT or COMMUNICATION pertains to which Interrogatory.

## RESPONSE:

Defendants have not responded to Plaintiffs' interrogatories.   Otherwise,

Defendants object on the basis of the attorney-client and work product privileges.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by e-mail to counsel of record listed on the attached service list, this 11th day of October, 2019.

/ s / Nicole Smith

DANIEL J. GERBER
Florida Bar No. 0764957
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:        dgerber@rumberger.com

and

NICOLE SMITH
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
A Professional Association
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  nsmith@rumberger.com

Attorneys for Florida Department of Corrections

21

## SERVICE LIST

Christopher Michael Jones, Esquire
Andrea Costello, Esquire
Florida Legal Services Inc. – Newberry FL
14260 W. Newberry Road, Suite 412
Newberry, FL  32669
christopher@floridalegal.org;
andrea@floridalegal.org

Jennifer Morrissey Painter, Esquire
Florida Legal Services
P.O. Box 533986
Orlando, FL  32853
jennifer.painter@floridalegal.org

Shalini Goel Agarwal, Esquire
Sumayya Saleh, Esquire
Kelly Jean Knapp, Esquire
Southern Poverty Law Center – Tallahassee FL
P.O. Box 10788
Tallahassee, FL  32302
shalini.agarwal@splcenter.org
sumayya.saleh@splcenter.org
kelly.knapp@splcenter.org

Lisa S. Graybill, Esquire
Southern Poverty Law Center – New Orleans LA
201 St. Charles Avenue, Suite 2000
New Orleans, LA  70170
lisa.graybill@splcenter.org

Dante Pasquale Trevisani, Esquire
Laura Anne Ferro, Esquire
Florida Justice Institute Inc. – Miami FL
100 SE 2nd Street
3750 Bank of America Tower
Miami, FL  33131
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org

22

150056847.1

Exhibit 9

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | | |
|---|---|---|
| HARVARD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00212-MW-CAS |
| | ) | |
| | ) | |
| MARK S. INCH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO COMPEL DISCOVERY, ECF 83**

Plaintiffs, by and through their undersigned counsel, reply to Defendants'

Response to Plaintiffs' Motion to Compel Discovery (ECF 83).

## I.   INTRODUCTION

Defendants' misinterpretation of this case is impeding nearly all discovery.

*See, e.g.,* Ex. A and B.  Through meritless objections, Defendants maintain a hardline

stance that Plaintiffs cannot have information about what is happening to putative

class members in isolation at specific prisons.  Based on their responses and

production so far, Plaintiffs are concerned that Defendants are not searching for all

responsive documents because of their unreasonably narrow interpretation of

1

Plaintiffs' claims.[1]   For many specific requests, the Parties have been unable to productively meet and confer because there is no shared understanding of the issues in this case.  Discovery is stalled because Defendants refuse to accept the scale and complexity of this litigation.

Plaintiffs agree that "[t]his case is about statewide policies and practices related to isolation promulgated and enforced by Defendants in Tallahassee."  ECF 52 at 1.  But this case is also about how Defendants' implementation of these policies and practices lead to "specific conditions of confinement" that subject people to a substantial risk of serious harm and disability discrimination.  ECF 54 at 21.  There is no inconsistency, as Defendants claim.  ECF 83 at 4.  Plaintiffs' discovery is reasonably calculated to lead to admissible evidence about the specific conditions of confinement in isolation in at least 67 prisons throughout the state,[2] and the manifestation of the risk of harm and disability discrimination for the approximately

---

[1] The vast majority of the almost 40,000 pages that Defendants have produced in discovery since August 2019 (ECF 83 at 72) are documents they had already produced in response to Plaintiffs' public records requests or are Plaintiffs' individual healthcare and correctional records.  They have produced an average of approximately 6,680 pages of Plaintiffs' individual records over five productions, and an average of approximately 2,500 pages of other documents over four productions.

[2]  Defendants embellish that 143 facilities are at issue.  ECF 83 at 32.  To arrive at this figure, Defendants counted facilities such as work release and re-entry centers where, through their discovery responses, Defendants indicate there is no isolation.  *See* Florida Department of Corrections, *Institutions*, http://www.dc.state.fl.us/ci/index.html (last visited Jan. 16, 2020).

10,000 people living in those conditions.  To facilitate discovery, the Court should grant Plaintiffs' Motion to Compel (ECF 65-1).

## II.    ARGUMENT

### A. Plaintiffs' Discovery Seeks Relevant Information to Support their Eighth and Fourteenth Amendment and ADA/Section 504 Claims.

Defendants' Response betrays their misunderstanding of Eighth Amendment claims, generally.  Plaintiffs allege that the totality of the conditions in isolation violate the Eighth Amendment because they deprive people of basic human needs. Thus, contrary to Defendants' assertion, ECF 83 at 5, nearly all aspects of life in isolation are directly relevant.  *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (finding that conditions of confinement, "in combination," may violate the Eighth Amendment "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need…"); *Hutto v. Finney*, 437 U.S. 678, 687 (1978) (holding that "taken as a whole, conditions in the isolation cells continued to violate the prohibition against cruel and unusual punishment").

Defendants argue in response to Requests for Production (RFPs) 107 and 108 that the duration and reasons for isolation are not relevant.[3]  ECF 83 at 41; *see also*

---

[3] Defendants raise this particular relevance objection for the first time in their response.  As a result, they have waived it.  *Socas v. Nw. Mut. Life Ins. Co.*, No. 07-20336-CIV, 2008 WL 619322, at *6 (S.D. Fla. Mar. 4, 2008).

Ex A.[4]  Applying Defendants' logic, it matters not whether FDC holds someone in isolation for 30 minutes or 30 years, or because they murdered their cellmate or for no reason at all.  This logic is at odds with well-settled Eighth Amendment principles.  *Hutto,* 437 U.S. at 686 ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards."); *Quintanilla v. Bryson,* 730 F. App'x 738, 746-747 (11th Cir. 2018) (concluding that in evaluating the conditions of confinement in isolation, the court must consider the reasons for and duration of isolation); *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004) (explaining that the "Eighth Amendment is concerned with both the 'severity' and the 'duration' of the prisoner's exposure" to the allegedly unconstitutional condition); *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. Appx. 739, 754, 759 (10th Cir. 2014) (relying on the length of time and reasons for isolation to determine cruel and unusual conditions); *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1099 (E.D. Cal. 2014) (finding that placement of people with serious mental illness in isolation for non-disciplinary reasons longer than needed to effect transfer to other housing violates the Eighth Amendment).

Defendants further argue that Plaintiffs do not need policies dating back to January 1, 2015, because "pertinent state-wide policies, most of which are codified

---

[4] This includes Requests for Admissions (RFAs): 98, 105, 106, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 144, 145, 146, 180, and 181.

4

in the administrative code, have not been materially amended in the past five years."
ECF 83 at 13.  But Defendants' policies regarding isolation *have* changed in the past five years.  Ex. C at 7-8.  And even if the policies had not changed, Defendants do not operate their prisons solely based on the administrative code or "officially established" policies, ECF 83 at 9.  *See, e.g.,* Ex. D (email from 2016 directing reductions in the durations for isolation based on an unapproved change to the administrative code).[5]  Changes to official or unofficial policies, or a lack thereof, are highly relevant to Plaintiffs' deliberate indifference claims.  *G.H. v. Marstiller*, No. 4:19CV431-MW/CAS, 2019 WL 6694738, at *6 (N.D. Fla. Dec. 6, 2019) (finding that plaintiffs had adequately pleaded deliberate indifference based in part on the defendant's alleged refusal to change solitary confinement policy). Defendants' proposed timeframe for policies going back to only September 1, 2018, would impermissibly shield from discovery Defendants' policy reforms, if any, during the two years after Secretary Jones recommended changes to their isolation policies and practices.  ECF 65-3 at 10-13.

Also, the four-year statute of limitations Defendants invoke, ECF 83 at 13, is immaterial because Defendants' isolation policies and practices are a "continuing violation."  *Smith v. Shorstein*, 217 F. App'x 877, 881 (11th Cir. 2007) ("When the

---

[5] This is an example of a document that Defendants produced in response to a public records request before producing it in discovery.

5

violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases.").

For the reasons Plaintiffs have already described, Defendants' relevance objections regarding the Diversion Treatment Unit (DTU) and Cognitive Treatment Unit (CTU) are meritless.  ECF 83 at 65-66; ECF 65-1 at 60-61.  Plaintiffs add that, in response to an interrogatory, Defendant Inch demonstrated the relevance of these units—Defendants established the DTU and CTU for people with disabilities as a result of Secretary Jones' recommended changes to isolation policies and practices. Ex. C at 8; ECF 65-3.

### B. Plaintiffs' Requested Discovery is Proportional to the Needs of the Case.

Plaintiffs' requested discovery meets each of the factors in the Rule 26 proportionality test.  Fed. R. Civ. P. 26(b)(1); *Edmondson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV, 2016 WL 7048363, at *6, *11 (S.D. Fla. Dec. 5, 2016) (compelling discovery after applying Rule 26 proportionality factors).  First, the issues in this case (allegations of violations of constitutional and statutory rights) are important.  Second, the amount in controversy does not apply because Plaintiffs seek only injunctive relief.  Third, Defendants have exclusive access to and control of the information.  Fourth, Defendants have massive resources; FDC is the third largest

state prison system in the country with a $2.4 billion annual budget.[6]   Fifth, as Plaintiffs explained in their motion and below, each request seeks relevant information that will help resolve questions related to both class certification and the merits.   Sixth, also for the reasons stated in Plaintiffs' motion, the likely benefits of the discovery outweigh any burden.

Defendants have not met their burden to show with specificity why Plaintiffs' requests are unduly burdensome, overbroad, and disproportional.   *Young v. Hancock*, No. 17-21473-CIV, 2017 WL 3113417, at *2 (S.D. Fla. Apr. 24, 2017) ("[T]he burden is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable.").   Burden is assessed on a request-by-request basis, not globally as Defendants suggest, ECF 83 at 42.   *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.,* No. 2:10CV-753-FTM-36, 2011 WL 3841557, at *3 (M.D. Fla. Aug. 29, 2011) ("Defendant must state the specific grounds for each objection.").   To support their burden objections, Defendants have not submitted affidavits or offered evidence "revealing the nature of the burden" for each request.   *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005); *Russell v. Fast Payday Loans, Inc*., No. 4:07CV488-SPM/WCS,

---

[6] *See*, Florida Department of Corrections, *2017-2018 Annual Report,* at 3, http://www.dc.state.fl.us/pub/annual/1718/FDC_AR2017-18.pdf (last visited Jan. 18, 2020).

2008 WL 11338347, at *1 (N.D. Fla. June 27, 2008) ("Burden cannot be determined without knowing how the information is organized, how much there is, and where the information is kept.").

Defendants' overbreadth objection is also unsupported because it is primarily based on their misconception of this case. They complain, for example, that Plaintiffs refused to limit discovery to only those institutions where there is Close Management, ECF 83 at 34, even though this Court expressly rejected Defendants' argument that this case is only about Close Management, ECF 54 at 15. Defendants also argue that Plaintiffs' requests do not provide them with enough guidance to conduct reasonable searches. *See, e.g.,* ECF 83 at 11 (claiming there was no guidance for searches regarding meal delivery policies); ECF 83 at 41 (claiming to not understand the meaning of "impact of isolation"). But "[a] party does not meet its discovery obligations by sticking its head in the sand and refusing to look for documents." *Robinson v. Arkansas City*, No. 10-1431, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) (internal citation omitted). "Lawyers must do some thinking here, and apply the relevant legal concepts to the relevant facts. . . . The breadth of a discovery request cannot be determined without examining the issues in the suit." *Russell,* 2008 WL 11338347 at *1.

The allegations in the Amended Complaint, in conjunction with the discovery requests, provide Defendants with a roadmap to conduct their searches. *See*, *e.g.*,

8

ECF 13 ¶¶ 44, 89, 123 (specific allegations related to meal delivery policies); ECF 13 ¶¶ 128-132 (describing the impact of isolation to include worsening psychiatric symptoms and suicide).  If the Court compels discovery, the parties can meet and confer about the search terms and custodians for each request.

In sum, Plaintiffs' discovery requests are proportional to the needs of the case. Defendants' boilerplate objections should be rejected.

### C. Plaintiffs are Entitled to the Requested Discovery before Class Certification.

For the first time, in their Response, Defendants object to RFPs Nos. 27, 29, 31, 33, 35, 37, 39, 51, 92, and 93 to Defendant Inch and Interrogatory 15 to Defendant FDC, on the grounds that this discovery is not appropriate before class certification.  ECF 83 at 32, 63.  Regardless of whether this objection is valid, Defendants have waived it "by mentioning it for the first time in [their] response to the instant motion to compel and failing to timely raise it as an objection to [Plaintiffs'] original request for production."  *Socas*, 2008 WL 619322, at *6.  *See also* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

In addition to being untimely, this objection is invalid.  Courts have regularly overruled attempts to withhold merits discovery before class certification when there is no bifurcated discovery.  *See, e.g.*, *Bellenger v. Accounts Receivable Mgmt., Inc.*,

No. 19-60205-CIV, 2019 WL 4284070, at *6 (S.D. Fla. Sept. 10, 2019) (granting motion to compel because "[t]he Defendant did not move to bifurcate discovery in this case and the type of discovery sought is within the bounds of Rule 26(b)(1)"); *Cabrera v. CEICO*, No. 12-61390-CIV, 2014 WL 2999206, at *8 (S.D. Fla. July 3, 2014) ("Here, the District Court has chosen not to bifurcate class-certification discovery and merits discovery; instead, it has set one deadline for completion of all discovery.  The undersigned, therefore, will not limit class-based discovery nor delay merits discovery until the District Court has ruled on Plaintiff's class certification motion.").  The parties agreed not to bifurcate discovery,[7] and, so, the Court set one deadline for discovery.  ECF 43 at 4-5; ECF 44.

Even if the parties had bifurcated discovery, discovery related to whether staff provided services to putative class members, including whether staff were available to deliver those services, is appropriate before class certification.  Contrary to Defendants' assertion, ECF 83 at 35, class certification cannot turn on the files of just seven named Plaintiffs.[8]  *See, e.g., Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 356 (2011) (noting that evidence of discrimination against one named plaintiff

---

[7] "[B]ifurcation can actually increase the costs of litigation because of disputes over what constitutes merits and what constitutes class discovery." *Coleman v. Lennar Corp.*, No. 18-MC-20182, 2018 WL 3672251, at *6 (S.D. Fla. June 14, 2018) (internal citation omitted).

[8] Defendants seek to obstruct Plaintiffs' access to discovery related to specific individuals or staffing availability regardless of whether it supports Plaintiffs' class or merits-based claims. *See, e.g.,* Ex. A, RFA Nos. 62, 70, 76, and 79; Ex B, RFPs 163, 164, 190, and 191.

10

was insufficient to show that discriminatory treatment was typical of the employer's practices).

Plaintiffs bring class claims under Federal Rules of Civil Procedure 23(a). ECF 13 ¶ 161.  Defendants deny Plaintiffs' allegations of numerosity, commonality, typicality, and adequacy.  ECF 62 at ¶ ¶ 163–166, 170–173.  To make their claims and to challenge these defenses, Plaintiffs must "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

Often in systemic prison cases, "policies and practices are the 'glue' that holds together the putative class and the putative subclass." *Parsons v. Ryan*, 754 F.3d 657, 678, 684-85 (9th Cir. 2014).  Evidence of this glue can "run the gamut from those that have been expressly adopted (such as the mental-health staffing levels defendants set by contract) to others which constitute a failure to act that evinces deliberate indifference (such as the practice of failing to appropriately monitor or provide follow-up care for prisoners in crisis)." *Braggs v. Dunn*, 317 F.R.D. 634, 655 n. 25 (M.D. Ala. 2016).  Plaintiffs are therefore entitled to evidence of the services provided and staff available to provide those services to support class certification and the merits.

11

**D. Discovery Related to all People in Isolation is Appropriate.**

Also for the first time, in their Response, Defendants object to RFP 115 to Defendant Inch based on standing because it relates to pregnant women in isolation and none of the Named Plaintiffs are pregnant.[9]  ECF 83 at 41-42.  Defendants waived this objection.  *Socas*, 2008 WL 619322 at *6.

Regardless, it is meritless.  The Court has already held that Plaintiffs have standing to challenge Defendants' policies and practices for all types of isolation.  ECF 54 at 15.  This is because Plaintiffs allege a systemic, statewide policy of isolation and their claims do not rest on specific types of isolation at specific prisons.  *Id.*

The same rationale applies here.  Plaintiffs' claims do not rest on, for example, the delivery of specific pregnancy-related accommodations or healthcare.  Instead, Plaintiffs' claims stem from the cumulative effects of Defendants' isolation policies and practices that subject all people to the same risk of harm, albeit people with disabilities or health conditions (e.g., pregnancy) to a heightened risk.  *See Parsons,* 754 F.3d at 678 (noting that "every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide [prison] policy or practice that creates a substantial risk of serious harm.").  Plaintiffs' claims for people with disabilities

---

[9] Defendants also make a similar standing objection in response to RFAs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, and 74 (Ex. A).

12

also stem from the same injury of disability discrimination caused by Defendants' isolation policies and practices.   Given Plaintiffs' claims, discovery about Defendants' isolation of pregnant women falls squarely within the scope of permissible discovery.  *See* Fed. R. Civ. P. 26(b)(1).

Defendants' position is untenable because it would require countless individuals with every type of disability or health condition to represent the class of all people in isolation, or everyone would need to bring separate claims to challenge the same systemic policy and practice.[10]  But this question—whether Plaintiffs can represent class members with different disabilities or healthcare conditions—is for class certification, not discovery.  In other words, Defendants' standing objection is merely a premature and misplaced attack on commonality and typicality[11] that should be overruled.

---

[10] Defendants position is also inconsistent.  Although Defendants admit that Plaintiff Hill has a vision impairment, ECF 62 ¶ 47, Defendants refuse to respond to discovery regarding putative class members with vision impairments.  *See*, *e.g.,* Ex. A, RFAs 63, 64, 65, and 66.

[11]  Even if it were appropriate to resolve this question now, it is well established that commonality and typicality are not destroyed by factual variations in disabilities and healthcare conditions.  *See*, *e.g.*, *Braggs,* 317 F.R.D. at 660-61, 663 (certifying a class of incarcerated people with various mental health disorders because "the allegations in this case involve overarching inadequacies of staffing which, plaintiffs' experts have opined, contribute to a range of other systemic inadequacies that affect mentally ill prisoners irrespective of their particular diagnoses"); *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1038-39 (8th Cir. 2018); *Parsons,* 754 F.3d at 678, 686; *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

## III.   CONCLUSION

Defendants' Response reveals that their refusal to comply with discovery is rooted in their fundamental misunderstanding of Plaintiffs' claims.  Plaintiffs ask the Court to compel discovery on a request-by-request basis, but also to provide Defendants a clear mandate as it relates to the issues raised in the instant motion and Reply.  Without such clarification, Plaintiffs fear that Defendants will continue to recycle the same objections, impeding the flow of discovery and the orderly progression of this case.

Respectfully Submitted,

Dated: January 22, 2020

Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
2 South Biscayne Boulevard
Miami, FL 33131
Telephone: (786) 347-2056
kelly.knapp@splcenter.org

Sumayya Saleh
Fla. Bar No. 119372
Shalini Goel Agarwal
Fla. Bar No. 90843
Southern Poverty Law Center
106 East College Ave., #1010
Tallahassee, FL 32302
Telephone: (850) 521-3024
sumayya.saleh@splcenter.org
shalini.agarwal@splcenter.org

14

Lisa Graybill*
Texas Bar No. 24054454
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org

15

sthypin-bermeo@floridajusticeinstitute.org

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**

**<u>Local Rule 7.1(F) Certificate</u>**

Under Rule 7.1(F) of the Local Rules of the Northern District of Florida,

undersigned counsel certifies that this motion contains 3,116 words.

_____

Kelly Knapp

16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

      Plaintiffs,

vs.

      CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

      Defendants.

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS

Defendants, Mark Inch and Florida Department of Corrections (collectively the "Defendants"), hereby respond to the Plaintiffs' First Request for Admissions, served October 21, 2019, as follows:

## **OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Defendants incorporate these objections to Plaintiffs' "Instructions" and "Definitions" into each specific response to Plaintiffs' request for production listed below:

1.     Defendants object to the instructions to the extent they require anything other than what is required under the Federal Rules of Civil Procedure.

2.     Defendants object to the instruction for a requested timeframe of January 1, 2014, through the present.  This action is for solely for injunctive relief; therefore, a time period of almost six years is vastly overly broad and not proportional to the needs of the case considering that the undue burden and expense of discovery for the requested time period outweighs the likely benefit. As such, unless otherwise indicated, Defendants have limited their response to the present policies in effect as of the date of these responses.

3.     Defendants object to the definition of "communication(s)" as being overly broad and because it purports to include oral communications regardless of whether such oral communications are documented or otherwise recorded in some manner. Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.

4.     Defendants object to the definition of "document" and "documents" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case, as electronic information stored in databases, such as OBIS, cannot be readily produced in any format other than print-screens.

5.     Defendants object to the definition of "disability" and "disabilities" as being overly broad in scope and different from the definition(s) contained in FDC's rules, policies, practices and/or procedures.  Defendants also object on the basis that "disability" and "disabilities" are not ascertainable on a class-wide basis, but instead must be determined on a case-by-case basis.

6.     Defendants object to the definition of "facility" and "facilities" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case at this stage, pre-class certification. Defendants object to the definition of "facility" and "facilities" because it includes any institution "where there is ISOLATION."  Such definition is overly broad and not relevant to the issues in this case, as "isolation" in turn "refers to Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management, as described in Chapters 33-601 and 33-603 of the Florida Administrative Code."

7.     Defendants object to the definition of "isolation," as it is different than the definition Plaintiffs set forth in the First Amended Class Action Complaint for Declaratory Relief and Injunctive Relief" ("Complaint"), overly broad in scope and

not proportional to the needs of the case considering the undue burden and expense of discovery attendant to such a broad definition.

8.     Defendants object to the definition of "policy" and "policies" as this definition is overly broad and unduly burdensome. Defendants also object to this definition as including unwritten or otherwise unrecorded "policies." Additionally, Defendants object to the relevance of "policies" that have not been officially approved.   Defendants also object on the basis of relevance and overbreadth because the definition includes "policies" in effect only at particular facilities, where the claims in this case "stem from one overarching policy and practice" of Defendants (D.E. 42, p.1), or stated another way, Defendants' "systematic statewide policy and practice of isolating people . . ." D.E. 42, pp. 2-3 (emphasis added), citing D.E. 13 ¶¶ 57-59.  Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.  Defendants further object to producing any "policy" that is no longer in effect as this is an action for injunctive relief and FDC's policies which are no longer in effect are not relevant to any issue asserted in this case.

9.     Defendants object to the definition of "staff" based upon overbreadth and relevance, as it includes non-employees of FDC, such as employees of vendors

4

with whom FDC contracts, and "staff" at non-CM facilities.  See objection to "facility" and "facilities," at ¶ 6.

**REQUEST FOR ADMISSIONS NO. 1:**

Admit that all STAFF must follow Chapter 33 of the Florida Administrative Code.

**RESPONSE:**

Denied as phrased.  All "staff" as defined by Plaintiffs are not required to follow all provisions of Chapter 33 of the F.A.C. as some aspects of the code do not relate to certain staff members' job responsibilities or duties.

**REQUEST FOR ADMISSIONS NO. 2:**

Admit that all STAFF must follow FDC POLICIES.

**RESPONSE:**

Defendants object to this request because the term phrase "FDC POLICIES" is vague and ambiguous and not narrowly defined.  Defendants cannot respond as to whether "all" staff must follow such a vague and ambiguous definition.

**REQUEST FOR ADMISSIONS NO. 3:**

Admit that FDC houses only one PRISONER in each Administrative Confinement cell at Florida State Prison at a time.

**RESPONSE:**

Defendants object to this request on the basis of relevance because it seeks information as to a specific facility when the claims in this case are centered on "a

statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells." Doc. 54, p. 3.

## REQUEST FOR ADMISSIONS NO. 4:

Admit that FDC houses only one PRISONER in each Close Management cell at Florida State Prison at a time.

## RESPONSE:

Defendants object to this request on the basis of relevance because it seeks information as to a specific facility when the claims in this case are centered on "a statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells." Doc. 54, p. 3.

## REQUEST FOR ADMISSIONS NO. 5:

Admit that FDC houses only one PRISONER in each Maximum Management cell at Florida State Prison at a time.

## RESPONSE:

Defendants object to this request on the basis of relevance because it seeks information as to a specific facility when the claims in this case are centered on "a statewide policy and practice of isolating over 10,000 people for at least 22 hours a day in tiny, cramped cells." Doc. 54, p. 3.

## REQUEST FOR ADMISSIONS NO. 6:

Admit that FDC houses only one PRISONER in each Disciplinary Confinement cell at Florida State Prison at a time.

**RESPONSE:**

Defendants object to this request on the basis of relevance because it seeks

information as to a specific facility when the claims in this case are centered on "a

statewide policy and practice of isolating over 10,000 people for at least 22 hours a

day in tiny, cramped cells."  Doc. 54, p. 3.

**REQUEST FOR ADMISSIONS NO. 7:**

Admit that under FDC POLICIES, PRISONERS in Administrative
Confinement are locked in their cells for an average of at least 22 hours a day
during each week they spend in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous because it is not

sufficiently limited in time or scope. There is no statewide FDC "policy"

mandating that all inmates in administrative confinement be locked in their cells

for an average of at least 22 hours a day.  As a result, the length of time any

particular inmate spends in their cell on any particular day or week will depend on

that individual inmate's circumstances, including the length of time that inmate

was in administrative confinement, the privileges/ restrictions applying to that

particular inmate, the reasons that inmate was in administrative confinement, as

well as the particular facility in which that inmate was in administrative

confinement.

7

**REQUEST FOR ADMISSIONS NO. 8:**

Admit that under FDC POLICIES, PRISONERS in Disciplinary Confinement are locked in their cells for an average of at least 22 hours a day during each week they spend in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in disciplinary confinement be locked in their cells for an average of at least 22 hours a day. As a result, the length of time any particular inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in disciplinary confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in disciplinary confinement, as well as the particular facility in which that inmate was in disciplinary confinement.

**REQUEST FOR ADMISSIONS NO. 9:**

Admit that under FDC POLICIES, PRISONERS in Close Management I are locked in their cells for an average of at least 22 hours a day during each week they spend in Close Management I.

**RESPONSE:**

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in close management I be locked in their cells for an average of at least 22 hours a day. As a result, the length of time any particular

inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in close management I confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in close management I confinement, as well as the particular facility in which that inmate was in close management I confinement.

## REQUEST FOR ADMISSIONS NO. 10:

Admit that under FDC POLICIES, PRISONERS in Close Management II are locked in their cells for an average of at least 22 hours a day during each week they spend in Close Management II.

## RESPONSE:

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in close management II be locked in their cells for an average of at least 22 hours a day.  As a result, the length of time any particular inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in close management II confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in close management II confinement, as well as the particular facility in which that inmate was in close management II confinement.

**REQUEST FOR ADMISSIONS NO. 11:**

Admit that under FDC POLICIES, PRISONERS in Maximum Management are locked in their cells for an average of at least 22 hours a day during each week they spend in Maximum Management.

**RESPONSE:**

Defendants object to this request as vague and ambiguous because it is not sufficiently limited in time or scope. There is no statewide FDC "policy" mandating that all inmates in maximum management be locked in their cells for an average of at least 22 hours a day. As a result, the length of time any particular inmate spends in their cell on any particular day or week will depend on that individual inmate's circumstances, including the length of time that inmate was in maximum management confinement, the privileges/ restrictions applying to that particular inmate, the reasons that inmate was in maximum management confinement, as well as the particular facility in which that inmate was in maximum management confinement.

**REQUEST FOR ADMISSIONS NO. 12:**

Admit that no written POLICY requires the senior correctional officer who "places" OR exercises his OR her authority to "place" a PRISONER in Administrative Confinement," as REFERENCED in Section 33-602.220, to review the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.03.04.

**RESPONSE:**

Defendants object to this request as vague and ambiguous. There is no reference in Health Services Bulletin ("HSB") No. 15.03.04 to a "Special Housing

10

Health Screening" that can be reviewed.  Therefore, Defendants cannot respond to this request.

**REQUEST FOR ADMISSIONS NO. 13:**

Admit that no written POLICY requires the Institutional Classification Team to review the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.03.04.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can be reviewed.  Therefore, Defendants cannot respond to this request.

**REQUEST FOR ADMISSIONS NO. 14:**

Admit that the State Classification Office STAFF members do not include medical STAFF.

**RESPONSE:**

Defendants object to this request as vague and ambiguous as the term "staff" is so broadly defined.  Further, the term "medical staff" is further not sufficiently defined.

**REQUEST FOR ADMISSIONS NO. 15:**

Admit that the State Classification Office STAFF members do not include mental health STAFF.

11

**RESPONSE:**

Defendants object to this request as vague and ambiguous as the term "staff" is so broadly defined.  Further, the term "medical staff" is further not sufficiently defined.

**REQUEST FOR ADMISSIONS NO. 16:**

Admit that no written POLICY requires the State Classification Office to review the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.03.04.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can be reviewed.  Therefore, Defendants cannot respond to this request.

**REQUEST FOR ADMISSIONS NO. 17:**

Admit that no written POLICY requires mental health STAFF to complete the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.03.04.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can completed.  Therefore, Defendants cannot respond to this request.

12

**REQUEST FOR ADMISSIONS NO. 18:**

Admit that no written POLICY requires mental health STAFF to perform a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, of every PRISONER in Administrative Confinement during the PRISONER'S first 29 days in Administrative Confinement.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 19:**

Admit that no written POLICY requires mental health STAFF to perform a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, of every PRISONER in Disciplinary Confinement during the PRISONER'S first 29 days in Disciplinary Confinement.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 20:**

Admit that no written POLICY requires mental health STAFF to perform a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, of every PRISONER in Close Management during the PRISONER'S first 29 days in Close Management.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 21:**

Admit that no written POLICY requires mental health STAFF to perform a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, of every PRISONER in Maximum Management during the PRISONER'S first 29 days in Maximum Management.

**RESPONSE:**

Denied.

13

**REQUEST FOR ADMISSIONS NO. 22:**

Admit that no written POLICY requires medical STAFF to perform any "screening," as REFERENCED in Health Services Bulletin No. 15.03.04, of every PRISONER in Administrative Confinement after the Special Housing Health Screening is completed, for as long as the PRISONER remains in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.   There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can be completed.  Subject to this objection, Defendants deny.

**REQUEST FOR ADMISSIONS NO. 23:**

Admit that no written POLICY requires medical STAFF to perform any "screening," as REFERENCED in Health Services Bulletin No. 15.03.04, of every PRISONER in Disciplinary Confinement after the Special Housing Health Screening is completed, for as long as the PRISONER remains in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.   There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can completed.  Subject to this objection, Defendants deny

**REQUEST FOR ADMISSIONS NO. 24:**

Admit that no written POLICY requires medical STAFF to perform any "screening," as referenced in Health Services Bulletin No. 15.03.04, of every PRISONER in Close Management after the Special Housing Health Screening is completed, for as long as the PRISONER remains in Close Management.

14

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in HSB No. 15.03.04 to a "Special Housing Health Screening" that can completed.  Subject to this objection, Defendants deny.

**REQUEST FOR ADMISSIONS NO. 25:**

Admit that no written POLICY requires medical STAFF to perform any "screening," as referenced in Health Services Bulletin No. 15.03.04, of every PRISONER in Maximum Management after the Special Housing Health Screening is completed, for as long as the PRISONER remains in Maximum Management.

**RESPONSE:**

Defendants object to this request as vague and ambiguous.  There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health Screening" that can completed.  Therefore, Defendants cannot respond to this request. Subject to this objection, Defendants deny.

**REQUEST FOR ADMISSIONS NO. 26:**

Admit that no written POLICY requires medical STAFF to perform a "physical examination" as REFERENCED in Health Services Bulletin 15.03.04, of every PRISONER in Administrative Confinement after the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.04.04, is completed, for as long as the PRISONER remains in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.  There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health Screening" that can completed.  Further, HSB No. 15.04.04 refers to "Dental

Entries in the Medical Record" and therefore it is not clear how that HSB relates to the issues asserted in this case.

**REQUEST FOR ADMISSIONS NO. 27:**

Admit that no written POLICY requires medical STAFF to perform a "physical examination" as REFERENCED in Health Services Bulletin 15.03.04, of every PRISONER in Disciplinary Confinement after the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.04.04, is completed, for as long as the PRISONER remains in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health Screening" that can completed. Further, HSB No. 15.04.04 refers to "Dental Entries in the Medical Record" and therefore it is not clear how that HSB relates to the issues asserted in this case.

**REQUEST FOR ADMISSIONS NO. 28:**

Admit that no written POLICY requires medical STAFF to perform a "physical examination" as REFERENCED in Health Services Bulletin 15.03.04, of every PRISONER in Close Management after the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.04.04, is completed, for as long as the PRISONER remains in Close Management.

**RESPONSE:**

Defendants object to this request as vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health

16

Screening" that can completed. Further, HSB No. 15.04.04 refers to "Dental Entries in the Medical Record" and therefore it is not clear how that HSB relates to the issues asserted in this case.

**REQUEST FOR ADMISSIONS NO. 29:**

Admit that no written POLICY requires medical STAFF to perform a "physical examination" as REFERENCED in Health Services Bulletin 15.03.04, of every PRISONER in Maximum Management after the Special Housing Health Screening, as REFERENCED in Health Services Bulletin No. 15.04.04, is completed, for as long as the PRISONER remains in Maximum Management.

**RESPONSE:**

Defendants object to this request as vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. There is no reference in Health Services Bulletin No. 15.03.04 to a "Special Housing Health Screening" that can completed. Further, HSB No. 15.04.04 refers to "Dental Entries in the Medical Record" and therefore it is not clear how that HSB relates to the issues asserted in this case.

**REQUEST FOR ADMISSIONS NO. 30:**

Admit that no written POLICY requires mental health STAFF to provide written OR verbal input to the disciplinary team prior to disciplinary action taken against any PRISONER in Administrative Confinement who has a diagnosed mental illness.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 31:**

Admit that no written POLICY requires mental health STAFF to provide written OR verbal input to the disciplinary team prior to disciplinary action taken against any PRISONER in Disciplinary Confinement who has a diagnosed mental illness.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 32:**

Admit that no written POLICY requires mental health STAFF to provide written OR verbal input to the disciplinary team prior to disciplinary action being taken against any PRISONER in Close Management who has a diagnosed mental illness.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 33:**

Admit that no written POLICY requires mental health STAFF to provide written OR verbal input to the disciplinary team prior to disciplinary action being taken against any PRISONER in Maximum Management who has a diagnosed mental illness.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 34:**

Admit that FDC POLICY permits STAFF to change a PRISONER's Close Management assignment to a more restrictive level of Close Management if the PRISONER commits a major rule violation while receiving in-patient mental health treatment.

**RESPONSE:**

Admitted.

18

**REQUEST FOR ADMISSIONS NO. 35:**

Admit that no written POLICY prohibits housing PRISONERS classified as mental health grade S-3 in Administrative Confinement.

**RESPONSE:**

Admitted there is no written statewide policy; the determination of the placement of any particular inmate in administrative confinement is performed on a case-by-case basis depending on that inmate's circumstances and particular mental health needs.

**REQUEST FOR ADMISSIONS NO. 36:**

Admit that no written POLICY prohibits housing PRISONERS classified as mental health grade S-3 in Close Management.

**RESPONSE:**

Admitted there is no written statewide policy; the determination of the placement of any particular inmate in close management is performed on a case by case basis depending on that inmate's circumstances and particular mental health needs.

**REQUEST FOR ADMISSIONS NO. 37:**

Admit that no written POLICY prohibits housing PRISONERS classified as mental health grade S-3 in Disciplinary Confinement.

**RESPONSE:**

Admitted there is no written statewide policy; the determination of the placement of any particular inmate in disciplinary confinement is performed on a

case by case basis depending on that inmate's circumstances and particular mental

health needs.

**REQUEST FOR ADMISSIONS NO. 38:**

Admit that no written POLICY prohibits housing PRISONERS classified as mental health grade S-3 in Maximum Management.

**RESPONSE:**

Admitted there is no written statewide policy; the determination of the

placement of any particular inmate in maximum management is performed on a

case by case basis depending on that inmate's circumstances and particular mental

health needs.

**REQUEST FOR ADMISSIONS NO. 39:**

Admit that no written POLICY prohibits housing PRISONERS with traumatic brain injury in Administrative Confinement.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named

Plaintiff claims to have suffered a traumatic brain injury; therefore, no named

plaintiff has standing to assert claims on behalf of inmates that may have a

traumatic brain injury.

**REQUEST FOR ADMISSIONS NO. 40:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with traumatic brain injury in Administrative Confinement.

20

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. Whether or not a single inmate with a traumatic brain injury was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 41:**

Admit that no written POLICY prohibits housing PRISONERS with traumatic brain injury in Close Management.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

21

**REQUEST FOR ADMISSIONS NO. 42:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with traumatic brain injury in Close Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time. Defendants also object to this request as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a traumatic brain injury was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 43:**

Admit that no written POLICY prohibits housing PRISONERS with traumatic brain injury in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

**REQUEST FOR ADMISSIONS NO. 44:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with traumatic brain injury in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a traumatic brain injury was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 45:**

Admit that no written POLICY prohibits housing PRISONERS with traumatic brain injury in Maximum Management.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

**REQUEST FOR ADMISSIONS NO. 46:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with traumatic brain injury in Maximum Management.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have suffered a traumatic brain injury; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a traumatic brain injury.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a traumatic brain

24

injury was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 47:

Admit that no written POLICY prohibits housing PRISONERS with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Administrative Confinement.

## RESPONSE:

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.  Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

## REQUEST FOR ADMISSIONS NO. 48:

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Administrative Confinement.

## RESPONSE:

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of

relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a developmental disability was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

**REQUEST FOR ADMISSIONS NO. 49:**

Admit that no written POLICY prohibits housing PRISONERS with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Close Management.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

26

Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

## REQUEST FOR ADMISSIONS NO. 50:

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Close Management.

## RESPONSE:

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a developmental disability was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act. Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

**REQUEST FOR ADMISSIONS NO. 51:**

Admit that no written POLICY prohibits housing PRISONERS with developmental disabilities, as REFERENCED in Health Services Bulletin 15.03.13, in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.  Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

**REQUEST FOR ADMISSIONS NO. 52:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging

28

in this case. See Doc. 54. Whether or not a single inmate with a developmental disability was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Further, HSB 15.04.13 relates to Dental Services therefore this request is vague and ambiguous.

## REQUEST FOR ADMISSIONS NO. 53:

Admit that no written POLICY prohibits housing PRISONERS with developmental disabilities, as REFERENCED in Health Services Bulletin 15.03.13, in Maximum Management.

## RESPONSE:

Defendants object to this request on the basis of relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

## REQUEST FOR ADMISSIONS NO. 54:

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with developmental disabilities, as REFERENCED in Health Services Bulletin 15.04.13, in Maximum Management.

## RESPONSE:

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.  Defendants also object to this request on the basis of

relevance as no named Plaintiff claims to have a developmental disability; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a developmental disability.

Defendants further object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a developmental disability was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 55:**

Admit that no written POLICY prohibits housing PRISONERS diagnosed with a seizure disorder in Close Management.

**RESPONSE:**

Admitted there is no written statewide policy prohibiting the housing of any inmate diagnosed with a seizure disorder in close management; the determination of the placement of an inmate in close management is performed on a case-by-case basis, taking into consideration the inmate's particular circumstances and medical needs.

**REQUEST FOR ADMISSIONS NO. 56:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with seizure disorders in Close Management.

30

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.   Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a seizure disorder was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 57:**

Admit that no written POLICY prohibits housing PRISONERS diagnosed with seizure disorders in Maximum Management.

**RESPONSE:**

Admitted there is no written statewide policy prohibiting the housing of any inmate diagnosed with a seizure disorder in maximum management; the determination of the placement of an inmate in maximum management is performed on a case-by-case basis, taking into consideration the inmate's particular circumstances and medical needs.

**REQUEST FOR ADMISSIONS NO. 58:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with seizure disorders in Maximum Management.

31

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.   Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a seizure disorder was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 59:**

Admit that no written POLICY prohibits housing PRISONERS diagnosed with seizure disorders in Administrative Confinement.

**RESPONSE:**

Admitted there is no statewide written policy prohibiting the housing of any inmate diagnosed with a seizure disorder in administrative confinement; the determination of the placement of an inmate in administrative confinement is performed on a case-by-case basis, taking into consideration the inmate's particular circumstances and medical needs.

**REQUEST FOR ADMISSIONS NO. 60:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with seizure disorders in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" and "STAFF" at a given point in time.   Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a seizure disorder was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 61:**

Admit that no written POLICY prohibits housing PRISONERS diagnosed with seizure disorders in Disciplinary Confinement.

**RESPONSE:**

Admitted there is no statewide policy prohibiting the housing of any inmate diagnosed with a seizure disorder in disciplinary confinement; the determination of the placement of an inmate in disciplinary confinement is performed on a case-by-case basis, taking into consideration the inmate's particular circumstances and medical needs.

**REQUEST FOR ADMISSIONS NO. 62:**

Admit that YOU have housed PRISONERS who STAFF knew were diagnosed with seizure disorders in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny the knowledge of thousands of employees encompassed within "YOU" at a given point in time.  Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a seizure disorder was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 63:**

Admit that YOU have housed PRISONERS classified as vision health grade ED5 (Total Blindness) in Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a vision health grade of ED5 was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act. Defendants also object to this request on the basis of relevance as no named Plaintiff claims to a vision health grade of ED5; therefore, no named

plaintiff has standing to assert claims on behalf of inmates that may have this health grade.

**REQUEST FOR ADMISSIONS NO. 64:**

Admit that YOU have housed PRISONERS classified as vision health grade ED5 (Total Blindness) in Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a vision health grade of ED5 was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act. Defendants also object to this request on the basis of relevance as no named Plaintiff claims to a vision health grade of ED5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have this health grade.

**REQUEST FOR ADMISSIONS NO. 65:**

Admit that PRISONERS classified as vision health grade ED5 (Total Blindness) have been housed in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a vision health grade of ED5 was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act. Defendants also object to this request on the basis of relevance as no named Plaintiff claims to a vision health grade of ED5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have this health grade.

**REQUEST FOR ADMISSIONS NO. 66:**

Admit that YOU have housed PRISONERS classified as vision health grade ED5 (Total Blindness) in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a vision

health grade of ED5 was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants also object to this request on the basis of relevance as no named Plaintiff claims to a vision health grade of ED5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have this health grade.

**REQUEST FOR ADMISSIONS NO. 67:**

Admit that YOU have housed PRISONERS classified as hearing health grade HD5 (Profound hearing loss or deaf) in Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a hearing health grade of HD5 was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have a hearing health grade HD5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a hearing health grade HD5.

37

**REQUEST FOR ADMISSIONS NO. 68:**

Admit that YOU have housed PRISONERS classified as hearing health grade HD5 (Profound hearing loss or deaf) in Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a hearing health grade of HD5 was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have a hearing health grade HD5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a hearing health grade HD5.

**REQUEST FOR ADMISSIONS NO. 69:**

Admit that YOU have housed PRISONERS classified as hearing health grade HD5 (Profound hearing loss or deaf) in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a hearing health grade of HD5 was housed in close management says nothing as to whether or not the

"statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have a hearing health grade HD5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a hearing health grade HD5.

**REQUEST FOR ADMISSIONS NO. 70:**

Admit that YOU have housed PRISONERS classified as hearing health grade HD5 (Profound hearing loss or deaf) in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate with a hearing health grade of HD5 was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have a hearing health grade HD5; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have a hearing health grade HD5.

**REQUEST FOR ADMISSIONS NO. 71:**

Admit that YOU have housed PRISONERS who STAFF have identified as pregnant in Administrative Confinement while pregnant.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single pregnant inmate was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have been pregnant while in prison; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have been pregnant.

**REQUEST FOR ADMISSIONS NO. 72:**

Admit that YOU have housed PRISONERS who STAFF have identified as pregnant in Close Management while pregnant.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or

40

not a single pregnant inmate was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have been pregnant while in prison; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have been pregnant.

**REQUEST FOR ADMISSIONS NO. 73:**

Admit that YOU have housed PRISONERS who STAFF have identified as pregnant in Disciplinary Confinement while pregnant.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single pregnant inmate was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have been pregnant while in prison; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have been pregnant.

**REQUEST FOR ADMISSIONS NO. 74:**

Admit that YOU have housed PRISONERS who STAFF have identified as pregnant in Maximum Management while pregnant.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time. Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single pregnant inmate was housed in maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

Defendants further object to this request as no named Plaintiff claims to have been pregnant while in prison; therefore, no named plaintiff has standing to assert claims on behalf of inmates that may have been pregnant.

**REQUEST FOR ADMISSIONS NO. 75:**

Admit that YOU have housed PRISONERS who STAFF have identified as requiring the use of a wheelchair to ambulate in Administrative Confinement.

**RESPONSE:**

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF"

have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate requiring the use of a wheelchair to ambulate was housed in administrative confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 76:

Admit that YOU have housed PRISONERS who STAFF have identified as requiring the use of a wheelchair to ambulate in Close Management.

## RESPONSE:

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate requiring the use of a wheelchair to ambulate was housed in close management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 77:

Admit that YOU have housed PRISONERS who STAFF have identified as requiring the use of a wheelchair to ambulate in Disciplinary Confinement.

43

## RESPONSE:

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate requiring the use of a wheelchair to ambulate was housed in disciplinary confinement says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

## REQUEST FOR ADMISSIONS NO. 78:

Admit that YOU have housed PRISONERS who STAFF have identified as requiring the use of a wheelchair to ambulate in Maximum Management.

## RESPONSE:

Defendants object to this request as they are unable to admit or deny based on whether thousands of employees encompassed within "YOU" and "STAFF" have identified certain conditions at a given point in time.  Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a single inmate requiring the use of a wheelchair to ambulate was housed in

maximum management says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 79:**

Admit that FDC currently does not have enough correctional STAFF to fill all correctional officer positions.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not there are enough correctional staff to fill all correctional officer positions says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 80:**

Admit FDC currently does not have enough correctional STAFF to fill all Level I correctional officer positions.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not there are enough correctional staff to fill all correctional officer positions says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 81:**

Admit that FDC currently does not have enough correctional STAFF to fill all Level II correctional officer positions.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not there are enough correctional staff to fill all correctional officer positions says nothing as to whether or not the "statewide policies" that are being challenged are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 82:**

Admit that the only exercise area used for PRISONERS in Administrative Confinement is located outdoors at each FACILITY.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 83:**

Admit that the only exercise area used for PRISONERS in Disciplinary Confinement is located outdoors at each FACILITY.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 84:**

Admit that the only exercise area used for PRISONERS in Close Management is located outdoors at each FACILITY.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 85:**

Admit that the only exercise area used for PRISONERS in Maximum Management is located outdoors at each FACILITY.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 86:**

Admit that FDC has no written POLICY requiring that PRISONERS in Administrative Confinement be given access to exercise equipment inside their cells.

**RESPONSE:**

Defendants object to the extent "exercise equipment" is not defined, but

otherwise this request is denied.

**REQUEST FOR ADMISSIONS NO. 87:**

Admit that FDC has no written POLICY requiring that PRISONERS in Disciplinary Confinement be given access to exercise equipment inside their cells.

**RESPONSE:**

Defendants object to the extent "exercise equipment" is not defined, but

otherwise this request is denied

**REQUEST FOR ADMISSIONS NO. 88:**

Admit that FDC has no written POLICY requiring that PRISONERS in Close Management be given access to exercise equipment inside their cells.

47

**RESPONSE:**

Defendants object to the extent "exercise equipment" is not defined, but otherwise this request is denied

**REQUEST FOR ADMISSIONS NO. 89:**

Admit that FDC has no written POLICY requiring that PRISONERS in Maximum Management be given access to exercise equipment inside their cells.

**RESPONSE:**

Defendants object to the extent "exercise equipment" is not defined, but otherwise this request is denied

**REQUEST FOR ADMISSIONS NO. 90:**

Admit that the only equipment FDC provides for exercise to PRISONERS in Administrative Confinement is metal bars fixed to the ground in the designated exercise areas.

**RESPONSE:**

Defendants object to the extent "equipment . . . for exercise" is not defined, but otherwise this request is denied.

**REQUEST FOR ADMISSIONS NO. 91:**

Admit that the only equipment FDC provides for exercise to PRISONERS in Disciplinary Confinement is metal bars fixed to the ground in the designated exercise areas.

**RESPONSE:**

Defendants object to the extent "equipment . . . for exercise" is not defined, but otherwise this request is denied.

48

**REQUEST FOR ADMISSIONS NO. 92:**

Admit that the only equipment FDC provides for exercise to PRISONERS in Close Management is metal bars fixed to the ground in the designated exercise areas.

**RESPONSE:**

Defendants object to the extent "equipment  . . . for exercise" is not defined,

but otherwise this request is denied.


**REQUEST FOR ADMISSIONS NO. 93:**

Admit that the only equipment FDC provides for exercise to PRISONERS in Maximum Management is metal bars fixed to the ground in the designated exercise areas.

**RESPONSE:**

Defendants object to the extent "equipment  . . . for exercise" is not defined,

but otherwise this request is denied.

**REQUEST FOR ADMISSIONS NO. 94:**

Admit that for PRISONERS FDC identified as requiring the use of a wheelchair to ambulate in Administrative Confinement, FDC does not provide "exercise stations," as REFERENCED in Section 33-601.800, designed to take into account the PRISONER'S particular limitations.

**RESPONSE:**

Defendants object to this request as compound, vague and ambiguous.

Section 33-601.800 concerns close management, not administrative confinement.

Defendants otherwise deny that there is a state-wide policy, as each inmate

identified as having a disability is given an individualized Disabled Inmate

49

Management and Service Plan and their needs are determined on a case-by-case basis.

**REQUEST FOR ADMISSIONS NO. 95:**

Admit that for PRISONERS FDC identified as requiring the use of a wheelchair to ambulate in Disciplinary Confinement, FDC does not provide "exercise stations," as REFERENCED in Section 33-601.800, designed to take into account the PRISONER'S particular limitations.

**RESPONSE:**

Defendants object to this request as compound, vague and ambiguous. Section 33-601.800 concerns close management, not disciplinary confinement. Defendants otherwise deny that there is a state-wide policy, as each inmate identified as having a disability is given an individualized Disabled Inmate Management and Service Plan and their needs are determined on a case-by-case basis.

**REQUEST FOR ADMISSIONS NO. 96:**

Admit that for PRISONERS FDC identified as requiring the use of a wheelchair to ambulate in Close Management, FDC does not provide "exercise stations," as REFERENCED in Section 33-601.800, designed to take into account the PRISONER'S particular limitations.

**RESPONSE:**

Defendants object to this request to the extent is suggests that the "exercise stations" referenced in Section 33-601.800 are not provided to all close management inmates.   Defendants further object to this request as compound, vague and ambiguous as it is not clear whether it is asking whether the exercise

stations are provided to inmates identified as requiring the use of a wheelchair to ambulate or whether it is asking whether an alternative to those exercise stations is provided.   Defendants otherwise deny that there is a state-wide policy, as each inmate identified as having a disability is given an individualized Disabled Inmate Management and Service Plan and their needs are determined on a case-by-case basis.

**REQUEST FOR ADMISSIONS NO. 97:**

Admit that for PRISONERS FDC identified as requiring the use of a wheelchair to ambulate in Maximum Management, FDC does not provide "exercise stations," as REFERENCED in Section 33-601.800, designed to take into account the PRISONER'S particular limitations.

**RESPONSE:**

Defendants object to this request as vague and ambiguous. Section 33-601.800 concerns close management, not maximum management.   Defendants otherwise deny that there is a state-wide policy, as each inmate identified as having a disability is given an individualized Disabled Inmate Management and Service Plan and their needs are determined on a case-by-case basis.

**REQUEST FOR ADMISSIONS NO. 98:**

Admit that FDC POLICIES permit STAFF to concurrently assign PRISONERS to both Disciplinary Confinement AND Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. See Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 99:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their reading materials are restricted as described in Section 33-602.222(4)(o).

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 100:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their exercise is restricted as described in Section 33-602.222(4)(p).

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 101:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their visits are restricted under Section 33-602.222(4)(i).

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 102:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their personal property is restricted under Section 33-602.222(4)(c).

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 103:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their telephone privileges are restricted under Section 33-602.222(4)(l).

**RESPONSE:**

Admitted

**REQUEST FOR ADMISSIONS NO. 104:**

Admit that FDC POLICIES require that when PRISONERS are concurrently assigned to both Disciplinary Confinement AND Close Management, their canteen privilege are restricted under Section 33-602.222(4)(g).

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 105:**

Admit that FDC houses PRISONERS assigned to only Close Management, and not Disciplinary Confinement, in wings that are designated for Disciplinary Confinement because there are not enough cells in wings designated as Close Management for all PRISONERS assigned to Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular institution on a particular day as to a particular inmate houses that inmate assigned to Close Management in wings

designated for disciplinary confinement says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

Defendants also object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. See Doc. 54 p. 18.

## REQUEST FOR ADMISSIONS NO. 106:

Admit that FDC houses PRISONERS assigned to only Close Management, and not Administrative Confinement, in wings that are designated for Administrative Confinement because there are not enough cells in wings designated as Close Management for all PRISONERS assigned to Close Management.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular institution on a particular day as to a particular inmate houses that inmate assigned to Close Management in wings designated for administrative confinement says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

Defendants also object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. See Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 107:**

Admit that for PRISONERS assigned to Close Management but not housed at a FACILITY designated to house PRISONERS assigned to Close Management, FDC POLICIES do not require STAFF to provide all the privileges described in Section 33-601.800(10).

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 108:**

Admit that for PRISONERS assigned to Close Management but not housed at a FACILITY designated to house PRISONERS assigned to Close Management, FDC STAFF do not provide all the privileges described in Section 33-601.800(10).

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular institution on a particular day does not provide all the privileges described to an inmate assigned to Close Management says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 109:**

Admit that for PRISONERS assigned to Close Management but not housed in a wing designated to house PRISONERS assigned to Close Management, FDC POLICIES do not require STAFF to provide all privileges described in Section 33-601.800(10).

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 110:**

Admit that for PRISONERS assigned to Close Management but not housed at a FACILITY designated to house PRISONERS assigned to Close Management, FDC STAFF do not provide all the privileges described in Section 33-601.800(10).

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular institution on a particular day does not provide all the privileges described to an inmate assigned to Close Management says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 111:**

Admit that for PRISONERS assigned to Close Management but not housed at a wing designated to house PRISONERS assigned to Close Management, FDC STAFF do not provide all the privileges described in Section 33-601.800(10).

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular institution on a particular day does not provide all the privileges described to an inmate assigned to Close Management says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

56

**REQUEST FOR ADMISSIONS NO. 112:**

Admit that FDC POLICIES permit STAFF to find a PRISONER guilty of violating more than one department rule arising out of the same transaction, incident, OR occurrence.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 113:**

Admit that when PRISONERS are found guilty of violating more than one department rule arising out of the same transaction, incident, OR occurrence, FDC POLICIES permit STAFF to sentence them to a term of Disciplinary Confinement for each violation.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. See Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 114:**

Admit that FDC POLICIES permit STAFF to impose Disciplinary Confinement terms consecutively.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 115:**

Admit that FDC POLICIES permit a PRISONER to serve multiple Disciplinary Confinement terms consecutively for violating more than one department rule arising out of the same transaction, incident, OR occurrence.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 116:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than 60 continuous days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 117:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than six continuous months.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 118:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than 365 continuous days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 119:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than three continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 120:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than five continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 121:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than seven continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 122:**

Admit that there are PRISONERS who have been assigned to Disciplinary Confinement for more than ten continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 123:**

Admit that there is no written POLICY creating a maximum limit for the amount of time a PRISONER may be required to spend in Disciplinary Confinement for consecutive terms.

60

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 124:**

Admit that there is no written POLICY creating a maximum limit for the amount of time a PRISONER may be required to spend in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 125:**

Admit that there is no written POLICY creating a maximum limit for the amount of time a PRISONER may spend in any level of Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 126:**

Admit that there is no written POLICY creating a maximum limit for the amount of time a PRISONER may be required to spend in Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 127:**

Admit that there is no written POLICY creating maximum limit for the amount of time a PRISONER may spend in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 128:**

Admit that there are PRISONERS who have been assigned to Close Management for more than three continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 129:**

Admit that there are PRISONERS who have been assigned to Close Management for more than five continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 130:**

Admit that there are PRISONERS who have been assigned to Close Management for more than ten continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 131:**

Admit that there are PRISONERS who have been assigned to Close Management for more than 15 continuous years.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.


**REQUEST FOR ADMISSIONS NO. 132:**

Admit that there are PRISONERS who have been assigned to Maximum Management for more than 60 continuous days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.


**REQUEST FOR ADMISSIONS NO. 133:**

Admit that there are PRISONERS who have been assigned to Maximum Management for more than six continuous months.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

## REQUEST FOR ADMISSIONS NO. 134:

Admit that there are PRISONERS who have been assigned to Maximum Management for more than 365 continuous days.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

## REQUEST FOR ADMISSIONS NO. 135:

Admit that there are PRISONERS who have been assigned to Maximum Management for more than two continuous years.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

## REQUEST FOR ADMISSIONS NO. 136:

Admit that no written POLICY prohibits STAFF from finding a PRISONER guilty of violations of department rules RELATED TO the PRISONER's suicide attempt.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related to the prisoner's suicide attempt" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions.

**REQUEST FOR ADMISSIONS NO. 137:**

Admit that no written POLICY prohibits STAFF from finding a PRISONER guilty of violations of department rules RELATED TO the PRISONER's self-injurious behavior.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related to the prisoner's self-injurious behavior" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions.

**REQUEST FOR ADMISSIONS NO. 138:**

Admit that no written POLICY prohibits STAFF from placing a PRISONER in Disciplinary Confinement for violations of department rules RELATED TO the PRISONER'S suicide attempt.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related to the prisoner's suicide attempt" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions.

**REQUEST FOR ADMISSIONS NO. 139:**

Admit that no written POLICY prohibits STAFF from placing a PRISONER in Disciplinary Confinement for violations of department rules RELATED TO the PRISONER's self-injurious behavior.

66

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related to the prisoner's self-injurious behavior" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions.

**REQUEST FOR ADMISSIONS NO. 140:**

Admit that STAFF have placed PRISONERS in Disciplinary Confinement for disobeying a verbal order because the PRISONERS allegedly refused to comply with a demand to cease a suicide attempt.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.   Whether or not a particular staff member on a particular institution on a particular day placed an inmate in disciplinary confinement for disobeying a verbal order says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 141:**

Admit that STAFF have placed PRISONERS in Disciplinary Confinement for disobeying a verbal order because the PRISONERS allegedly refused to comply with a demand to cease a self-injurious behavior.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.   Whether or not a particular staff member on a particular

institution on a particular day placed an inmate in disciplinary confinement for disobeying a verbal order says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 142:**

Admit that STAFF have placed PRISONERS in Disciplinary Confinement for destruction of state property because the PRISONERS allegedly destroyed state property RELATED TO a suicide attempt.

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related to a suicide attempt" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions. Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular staff member on a particular institution on a particular day placed an inmate in disciplinary confinement for the destruction of property says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 143:**

Admit that STAFF have placed PRISONERS in Disciplinary Confinement for destruction of state property because the PRISONERS allegedly destroyed state property RELATED TO self-injurious behavior.

68

**RESPONSE:**

Defendants object to this Request as vague and ambiguous because "related to self-injurious behavior" is not clear based on the overly broad definition of "related to" in Plaintiffs' definitions.  Defendants also object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular staff member on a particular institution on a particular day placed an inmate in disciplinary confinement for the destruction of property says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 144:**

Admit that PRISONERS have been assigned to Administrative Confinement for more than 90 consecutive days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 145:**

Admit that PRISONERS have been assigned to Administrative Confinement for more than 180 consecutive days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 146:**

Admit that PRISONERS have been assigned to Administrative Confinement for more than 365 consecutive days.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 147:**

Admit that no written POLICY requires STAFF to open cell doors when chaplains visit PRISONERS in ISOLATION wings, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendants object to this request as compound and to the extent it suggests that prisoners in close management, maximum management, administrative confinement, and/or disciplinary confinement are not an "immediate" safety or security risk. There is no statewide written policy that allows for an ad hoc determination by "staff" that a prisoner who is in one of those classifications is not

70

an "immediate" safety or security risk thereby allowing unfettered access to staff, visitors and volunteers at the institution.

**REQUEST FOR ADMISSIONS NO. 148:**

Admit that chaplains communicate with PRISONERS in ISOLATION through locked cell doors when they come to ISOLATION wings unless correctional STAFF agree to open cell doors.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular chaplain at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 149:**

Admit that no written POLICY requires STAFF to open cell doors when education STAFF visit PRISONERS in ISOLATION wings, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendants object to this request as compound and to the extent it suggests that prisoners in close management, maximum management, administrative confinement, and/or disciplinary confinement are not an "immediate" safety or security risk.  There is no statewide written policy that allows for an ad hoc

71

determination by "staff" that a prisoner who is in one of those classifications is not an "immediate" safety or security risk thereby allowing unfettered access to staff, visitors and volunteers at the institution.

## REQUEST FOR ADMISSIONS NO. 150:

Admit that education STAFF communicate with PRISONERS in ISOLATION through locked cell doors when they come to ISOLATION wings unless correctional STAFF agree to open cell doors.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.   Whether or not a particular education staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 151:

Admit that no written POLICY requires STAFF to open cell doors when mental health STAFF perform mental health "rounds," as REFERENCED in Health Services Bulletin 15.05.08, in ISOLATION, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

## RESPONSE:

Defendants object to this request as compound and to the extent it suggests that prisoners in close management, maximum management, administrative confinement, and/or disciplinary confinement are not an "immediate" safety or

72

security risk.   There is no statewide written policy that allows for an ad hoc determination by "staff" that a prisoner who is in one of those classifications is not an "immediate" safety or security risk thereby allowing unfettered access to staff, visitors and volunteers at the institution.

## REQUEST FOR ADMISSIONS NO. 152:

Admit that mental health STAFF observe AND communicate with PRISONERS in ISOLATION during mental health "rounds," as REFERENCED in Health Services Bulletin 15.05.08, through locked cell doors unless correctional STAFF agree to open cell doors.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.   Whether or not a particular mental health staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 153:

Admit that no written POLICY requires STAFF to remove PRISONERS in ISOLATION from their cells to receive individual therapy from mental health STAFF, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

## RESPONSE:

Defendant objects to this request as compound.  Otherwise, denied.

73

**REQUEST FOR ADMISSIONS NO. 154:**

Admit that mental health STAFF provides individual therapy to PRISONERS in ISOLATION through locked cell doors unless correctional STAFF agree to remove PRISONERS from their cells.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.   Whether or not a particular mental health staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 155:**

Admit that no written POLICY requires STAFF to remove PRISONERS in ISOLATION from their cells to receive psychiatry services, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendant objects to this request as compound.  Otherwise, denied.

**REQUEST FOR ADMISSIONS NO. 156:**

Admit that mental health STAFF provide psychiatry services to PRISONERS in ISOLATION through locked cell doors unless correctional STAFF agree to remove PRISONERS from their cells.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this

case. See Doc. 54.  Whether or not a particular mental health staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 157:

Admit that no written POLICY requires STAFF to remove PRISONERS in ISOLATION from their cells to receive a "mental status examination," as REFERENCED in Health Services Bulletin No. 15.05.08, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

## RESPONSE:

Defendant objects to this request as compound.  Otherwise, denied.

## REQUEST FOR ADMISSIONS NO. 158:

Admit that mental health STAFF provide "mental status examinations," as REFERENCED in Health Services Bulletin No. 15.05.08, to PRISONERS in ISOLATION through locked cell doors unless correctional STAFF agree to remove PRISONERS from their cells.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular mental health staff member at a particular institution on a particular day communicated with a particular inmate through a locked cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 159:**

Admit that no written POLICY require STAFF to remove PRISONERS in ISOLATION from their cells to receive medical care, including when there is no immediate safety, security, or sanitation risk as determined by STAFF.

**RESPONSE:**

Defendant objects to this request as compound.  Otherwise, denied.

**REQUEST FOR ADMISSIONS NO. 160:**

Admit that healthcare STAFF have administered insulin injections to Plaintiff Kendrick in ISOLATION through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular medical staff member at a particular institution on a particular day administered insulin to Plaintiff Kendrick through the cuff/food port in the cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 161:**

Admit that healthcare STAFF administer insulin injections to PRISONERS in ISOLATION through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54.  Whether or not a particular medical staff member at a particular

institution on a particular day administered insulin to a particular inmate through the cuff/food port in the cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 162:

Admit that healthcare STAFF draw blood from PRISONERS in ISOLATION through the cuff/food port in the cell door.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular medical staff member at a particular institution on a particular day drew blood from a particular inmate through the cuff/food port in the cell door says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 163:

Admit that healthcare STAFF have requested to draw blood from Plaintiff KENDRICK in ISOLATION through the cuff/food port in the cell door.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Whether or not a particular medical staff member at a particular institution on a particular day requested to draw blood from Plaintiff Kendrick

through the cuff/food port in the cell door says nothing as to whether the statewide

policies being challenged violation the constitution or the ADA/Rehab Act.

## REQUEST FOR ADMISSIONS NO. 164:

Admit that FDC's Medication and Treatment Record form (FORM DC4-701A) does not require healthcare STAFF to document the actual time that each dose of insulin is administered.

## RESPONSE:

Defendants object to this Request because the form speaks for itself.

## REQUEST FOR ADMISSIONS NO. 165:

Admit that no written POLICY requires correctional STAFF to review the time that insulin was administered to PRISONERS with diabetes in ISOLATION.

## RESPONSE:

Denied.

## REQUEST FOR ADMISSIONS NO. 166:

Admit that PRISONERS in Administrative Confinement receive their meals in their cells through the cuff/food port in the cell door.

## RESPONSE:

Admitted.

## REQUEST FOR ADMISSIONS NO. 167:

Admit that PRISONERS in Maximum Management receive their meals in their cells through the cuff/food port in the cell door.

## RESPONSE:

Admitted.

## REQUEST FOR ADMISSIONS NO. 168:

Admit that PRISONERS in Close Management receive their meals in their cells through the cuff/food port in the cell door.

## RESPONSE:

Admitted.

## REQUEST FOR ADMISSIONS NO. 169:

Admit that PRISONERS in Disciplinary Confinement receive their meals in their cells through the cuff/food port in the cell door.

## RESPONSE:

Admitted.

## REQUEST FOR ADMISSIONS NO. 170:

Admit that STAFF have administered Oleoresin Capsicum in Administrative Confinement through the cuff/food port in the cell door.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. Whether or not a particular staff member administered Oleoresin Capsicum through the cuff/ food port in the cell door at a particular institution on a particular day says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 171:**

Admit that STAFF have administered Oleoresin Capsicum in Disciplinary Confinement through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54.  Whether or not a particular staff member administered Oleoresin Capsicum through the cuff/ food port in the cell door at a particular institution on a particular day says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 172:**

Admit that STAFF have administered Oleoresin Capsicum in Close Management through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54.  Whether or not a particular staff member administered Oleoresin Capsicum through the cuff/ food port in the cell door at a particular institution on a particular day says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 173:**

Admit that STAFF have administered Oleoresin Capsicum in Maximum Management through the cuff/food port in the cell door.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54.   Whether or not a particular staff member administered Oleoresin Capsicum through the cuff/ food port in the cell door at a particular institution on a particular day says nothing as to whether the statewide policies being challenged violation the constitution or the ADA/Rehab Act.

**REQUEST FOR ADMISSIONS NO. 174:**

Admit that correctional STAFF are responsible to ensure that meals are delivered to PRISONERS in ISOLATION.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54.   Defendants further object to this request as vague and ambiguous because "responsible to ensure" is unclear.

**REQUEST FOR ADMISSIONS NO. 175:**

Admit that there is no type of electronic alert system located inside any Close Management cells that PRISONERS can use to alert STAFF of an emergency.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 176:**

Admit that there is no type of electronic alert system located inside any Administrative Confinement cells that PRISONERS can use to alert STAFF of an emergency.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 177:**

Admit that there is no type of electronic alert system located inside any Disciplinary Confinement cells that PRISONERS can use to alert STAFF of an emergency.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 178:**

Admit that there is no type of electronic alert system located inside any Maximum Management cells that PRISONERS can use to alert STAFF of an emergency.

**RESPONSE:**

Admitted.

**REQUEST FOR ADMISSIONS NO. 179:**

Admit that FDC STAFF attended the International and Interdisciplinary Perspectives on Prolonged Solitary Confinement conference at the University of Pittsburg in April 2016.

**RESPONSE:**

Defendants cannot admit nor deny this Request at this time. Defendants' investigation is ongoing.

**REQUEST FOR ADMISSIONS NO. 180:**

Admit that if a PRISONER is released from FDC custody while assigned to Close Management and returns to the custody of FDC, FDC POLICY is to return that PRISONER to Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 181:**

Admit that if a PRISONER is released from FDC custody while assigned to Close Management, and returns to the custody of FDC within two years of her OR his release date, FDC POLICY is to return that PRISONER to Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern the "conditions of confinement" but rather the reasons a particular inmate may be confined and/or the length of time confined. *See* Doc. 54 p. 18.

**REQUEST FOR ADMISSIONS NO. 182:**

Admit that FDC has "assigned," as REFERENCED in Section 33-601.800, correctional STAFF on Temporary Employment Authorization Status to work in wings that contain cells designated for PRISONERS assigned to Close Management.

83

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. The particular assignment of a particular staff member at a particular institution says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 183:**

Admit that FDC has "assigned," as REFERENCED IN Section 33-601.800, correctional STAFF on Temporary Employment Authorization Status to work in wings that contain cells designated for PRISONERS assigned to Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. The particular assignment of a particular staff member at a particular institution says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 184:**

Admit that FDC has "assigned," as REFERENCED in Section 33-602.222, correctional STAFF on Temporary Employment Authorization Status to work in wings that contain cells designated for PRISONERS assigned to Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. The particular assignment of a particular staff member at a particular institution says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 185:**

Admit that FDC has "assigned," as REFERENCED in Section 33-602.220, correctional STAFF on Temporary Employment Authorization Status to work in wings that contain cells designated for PRISONERS assigned to Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. *See* Doc. 54. The particular assignment of a particular staff member at a particular institution says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 186:**

Admit that there is currently no "Alternative Housing Program" as REFERENCED in DOCUMENTS produced in response to Public Records Response Number 18-820, in any FACILITY.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this

case. *See* Doc. 54. Whether or not a particular facility is currently operating the

Alternative Housing Pilot Program says nothing about whether any statewide

policy being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab

Act.

## REQUEST FOR ADMISSIONS NO. 187:

Admit that there is currently no "Alternative Housing Pilot Program," as REFERENCED in DOCUMENTS produced in response to Public Records Response Number 18-820, in any FACILITY.

## RESPONSE:

Defendants object to this Request as irrelevant because it does not concern

"a statewide policy" which is what Plaintiffs are purportedly challenging in this

case. *See* Doc. 54. Whether or not a particular facility is currently operating the

Alternative Housing Pilot Program says nothing about whether any statewide

policy being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab

Act.

## REQUEST FOR ADMISSIONS NO. 188:

Admit that there is currently no Automated Discipline and Integrated Offender System in use at any FACILITY.

## RESPONSE:

Denied.

**REQUEST FOR ADMISSIONS NO. 189:**

Admit that there are currently no programs that attempt to reduce the population of PRISONERS in Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Programs are facility specific and whether or not a particular facility has a particular program says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 190:**

Admit that there are currently no programs that attempt to reduce the population of PRISONERS in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Programs are facility specific and whether or not a particular facility has a particular program says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 191:**

Admit that there are currently no programs that attempt to reduce the population of PRISONERS in Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Programs are facility specific and whether or not a particular facility has a particular program says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 192:**

Admit that there are currently no programs that attempt to reduce the population of PRISONERS in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Programs are facility specific and whether or not a particular facility has a particular program says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 193:**

Admit that there are currently no pilot projects that attempt to reduce the population of PRISONERS in Administrative Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Pilot projects are facility specific and whether or not a particular

facility has a pilot project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 194:**

Admit that there are currently no pilot projects that attempt to reduce the population of PRISONERS in Disciplinary Confinement.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Pilot projects are facility specific and whether or not a particular facility has a pilot project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 195:**

Admit that there are currently no pilot projects that attempt to reduce the population of PRISONERS in Close Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Pilot projects are facility specific and whether or not a particular facility has a pilot project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 196:**

Admit that there are currently no pilot projects that attempt to reduce the population of PRISONERS in Maximum Management.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Pilot projects are facility specific and whether or not a particular facility has a pilot project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 197:**

Admit that the Segregation Processes Project has ended.

**RESPONSE:**

Defendants object to this Request as irrelevant because it does not concern "a statewide policy" which is what Plaintiffs are purportedly challenging in this case. See Doc. 54. Projects are facility specific and whether or not a particular facility has a project says nothing about whether the statewide policies being challenged by Plaintiffs are constitutional or violate the ADA/ Rehab Act.

**REQUEST FOR ADMISSIONS NO. 198:**

Admit that YOU approved the DOCUMENT entitled, "Technical Manual: Alternative Housing," dated May 2016.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSIONS NO. 199:**

Admit that the DOCUMENT entitled, "Technical Manual: Alternative Housing," is not in effect.

**RESPONSE:**

Admitted.

Respectfully submitted,

/ s / Samantha C. Duke
DANIEL J. GERBER
Florida Bar No. 0764957
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:        dgerber@rumberger.com

and

NICOLE SMITH
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
A Professional Association
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  nsmith@rumberger.com

Attorneys for Florida Department of Corrections

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 20, 2019, I emailed the foregoing to: Christopher Michael Jones at cjones@filsinc.org; Jennifer Morrissey Painter at jennifer.painter@floridalegal.org; Shalini Goel Agarwal at shalini.agarwal@splcenter.org; Sumayya Saleh at sumayya.saleh@splcenter.org; Kelly Jean Knapp at Kelly.knapp@splcenter.org; Lisa S. Graybill at lisa.graybill@splcenter.org; Dante Pasquale Trevisani at dtrevisani@floridajusticeinstitute.org; and Laura Anne Ferro at lferro@floridajusticeinstitute.org.

/ s / Samantha C. Duke
DANIEL J. GERBER
Florida Bar No. 0764957
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:        dgerber@rumberger.com

and

NICOLE SMITH
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
A Professional Association
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  nsmith@rumberger.com

Attorneys for Florida Department of Corrections

93

Case 4:19-cv-00212-MW-CAS   Document 93-2   Filed 01/22/20   Page 1 of 32

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

        Plaintiffs,

vs.                      CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

        Defendants.
_____/

**DEFENDANT, MARK INCH'S**
**RESPONSE TO PLAINTIFFS' SECOND REQUEST FOR PRODUCTION**

Defendant, Mark Inch, in his official capacity as Secretary of the Florida

Department of Corrections, hereby responds to Plaintiffs' Second Request for

Production, served November 6, 2019, as follows:

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

Defendants incorporate these objections to Plaintiffs' "Instructions" and "Definitions" into each specific response to Plaintiffs' request for production listed below:

1.      Defendants object to the "Instructions" as they require Defendants to comply with ESI protocols different than what the parties have agreed upon and/or are more burdensome than the requirements of the Federal Rules of Procedure.

2.      Defendants object to the "Instructions" as requiring Defendants to "identify" each person Defendants have reason to believe had or has knowledge of any Document or ESI not presently in FDC's possession or subject to its control. Rule 34 authorizes discovery of documents and things, and there is no requirement to respond as instructed by Plaintiffs.

3.      Defendants object to the instruction for a requested timeframe of January 1, 2014, through the present.  This action is for solely for injunctive relief; therefore, a time period of almost six years is vastly overly broad and not proportional to the needs of the case considering that the undue burden and expense of discovery for the requested time period outweighs the likely benefit. As such, unless otherwise indicated, FDC has limited its search to one year previous to the filing of the lawsuit, or May 8, 2018, through the present.  *See*

*O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief").

4.      Defendants object to the definition of "communication(s)" as being overly broad and because it purports to include *oral* communications regardless of whether such oral communications are documented or otherwise recorded in some manner.  Rule 34 authorizes discovery of documents and things, and there is no requirement to produce oral communications as broadly defined by Plaintiffs. Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.

5.      Defendants object to the definition of "document" and "documents" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case, as electronic information stored in databases, such as OBIS, cannot be readily produced in any format other than print-screens. Additionally, Defendants object the inclusion of e-mails in the definition of "document" and "documents," and state that non-objectionable e-mails will be produced in response to those requests that seek "communications."

6.      Defendants object to the definition of "disability" and "disabilities" as being overly broad in scope and different from the definition(s) contained in FDC's rules, policies, practices and/or procedures.  Defendants also object on the basis

that "disability" and "disabilities" are not ascertainable on a class-wide basis, but instead must be determined on a case-by-case basis.

7.      Defendants object to the definition of "facility" and "facilities" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case at this stage, pre-class certification.  As such, Defendants object to the definition of "facility" and "facilities" to the extent it includes non-CM institutions. Additionally, Defendants object to the definition of "facility" and "facilities" because it includes any institution "where there is ISOLATION."  Such definition is overly broad and not relevant to the issues in this case, as "isolation" in turn "refers to Administrative Confinement, Close Management, Disciplinary Confinement and Maximum Management, as described in Chapters 33-601 and 33-603 of the Florida Administrative Code."

8.      Defendants object to the definition of "isolation," as it is different than the definition Plaintiffs set forth in the First Amended Class Action Complaint for Declaratory Relief and Injunctive Relief" ("Complaint"), overly broad in scope and not proportional to the needs of the case considering the undue burden and expense of discovery attendant to such a broad definition.

9.      Defendants object to the definition of "policy" and "policies" as including unwritten or otherwise unrecorded "policies."  Rule 34 authorizes discovery of documents and things, and there is no requirement to create "policies"

that have not been memorialized.  Additionally, Defendants object to the relevance of "policies" that have not been officially approved.  Defendants also object on the basis of relevance and overbreadth because the definition includes "policies" in effect *only* at particular facilities, where the claims in this case "stem from one overarching policy and practice" of Defendants (D.E. 42, p.1), or stated another way, Defendants' "systematic *statewide* policy and practice of isolating people . . ." D.E. 42, pp. 2-3 (emphasis added), citing D.E. 13 ¶¶ 57-59.  Defendants also object because the definition includes safety and security-sensitive materials, including but not limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.  Defendants further object to producing any "policy" that is no longer in effect as this is an action for injunctive relief and FDC's policies which are no longer in effect are not relevant to any issue asserted in this case.

10.    Defendants object to the definition of "staff" based upon overbreadth and relevance, as it includes non-employees of FDC, such as employees of vendors with whom FDC contracts, and "staff" at non-CM facilities.  *See* objection to "facility" and "facilities," at ¶ 6.

**REQUEST FOR PRODUCTION NO. 152:**

All DOCUMENTS that describe POLICIES; criteria for admission, completion, and removal from; programming; and curriculums for the "Restrictive Housing Program" referenced in YOUR response to Plaintiff Harvard's Interrogatory 5 to FDC.

**RESPONSE:**

Please see documents produced in response to requests 52, 56, 57, 60 and 61

to Inch (of which Defendants have agreed to produce unredacted copies).  FDC

will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 153:**

All DOCUMENTS that describe POLICIES; criteria for admission, completion, and removal from programming; and curriculums for the "New River Step-Down" referenced in YOUR response to Plaintiff Harvard's Interrogatory 5 to FDC.

**RESPONSE:**

Please see documents produced in response to requests 52, 56, 57, 60 and 61

to Inch (of which Defendants have agreed to produce unredacted copies).  FDC

will produce documents responsive to this request.  Otherwise, FDC objects that

the meaning of "removal" is vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 154:**

All DOCUMENTS and training materials provided to STAFF in paper or electronic form as part of "FDC's ADA training" referenced in YOUR response to Plaintiff Harvard's Interrogatory 6 to FDC.

6

**RESPONSE:**

Please see Master Training Plans produced in response to requests 49, 88, 89 and 95 to Inch. FDC will produce additional documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 155:**

All DOCUMENTS that describe programs available to PRISONERS in ISOLATION, including all DOCUMENTS that indicate the maximum number of PRISONERS in ISOLATION that each program has the capacity to accept in each program at each FACILITY. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records

**RESPONSE:**

Please see documents produced in response to requests 25, 26 and 60 to Inch. FDC will produce additional documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 156:**

All DOCUMENTS entitled, "Report of Administrative Confinement, DC6-233A," dated from August 1, 2019, through October 31, 2019.

**RESPONSE:**

Upon agreement of the parties, FDC will produce a log of such reports identifying the date, the inmate's name, DC number and facility, and the disposition, i.e., reason for placement in administrative confinement. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendant has identified approximately 28,000 reports, which are stored in an

electronic database from which the reports cannot be readily produced in any format other than print-screens.

**REQUEST FOR PRODUCTION NO. 157:**

All DOCUMENTS entitled, "Report of Close Management, DC6-233C," dated from August 1, 2019, through October 31, 2019.

**RESPONSE:**

Upon agreement of the parties, FDC will produce a log of such reports identifying the date, the inmate's name, DC number and facility, and the disposition, i.e., reason for placement in administrative confinement. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendant anticipated identifying thousands of these reports, which are stored in an electronic database from which the reports cannot be readily produced in any format other than print-screens.

**REQUEST FOR PRODUCTION NO. 158:**

All DOCUMENTS entitled, "Referral for Maximum Management, DC6-101," dated from November 1, 2018, through November 1, 2019.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 159:**

All DOCUMENTS entitled, "Report of Close Management, DC6-233C" dated from November 1, 2018, through July 31, 2019, and prepared for PRISONERS who were in Maximum Management at the time the report was prepared.

**RESPONSE:**

Defendants will search for such documents and provide any to the extent they exist.

**REQUEST FOR PRODUCTION NO. 160:**

All DOCUMENTS entitled, "Florida Department of Corrections Housing Unit Log", form DC6-209, from any housing unit where there is ISOLATION dated from August 1, 2019, through October 31, 2019.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 161:**

All DOCUMENTS entitled "Disciplinary Reports," dated from July 15, 2019, through July 22, 2019.

**RESPONSE:**

Upon agreement of the parties, FDC will produce a log of such reports identifying the date, the inmate's name, DC number and facility, and the type of disciplinary report, i.e., reason for disciplinary report. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendant has identified approximately 2,000 reports, which are stored in an electronic database from which the reports cannot be readily produced in any format other than print-screens.

**REQUEST FOR PRODUCTION NO. 162:**

All DOCUMENTS entitled, "Disciplinary Reports," prepared for violations of department rules arising out of transactions, occurrences, or incidents by PRISONERS assigned to ISOLATION during the time period of August 1, 2019, through October 31, 2019.

**RESPONSE:**

Upon agreement of the parties, FDC will produce a log of such reports identifying the date, the inmate's name, DC number, facility, and housing status at the time of the disciplinary report and the type of disciplinary report, i.e., reason for disciplinary charge. Otherwise, Defendants object on the grounds that the request is not proportional to the needs of the case and on the basis of overbreadth and undue burdensomeness, as Defendant has identified approximately 5,000 reports, which are stored in an electronic database from which the reports cannot be readily produced in any format other than print-screens.

**REQUEST FOR PRODUCTION NO. 163:**

All DOCUMENTS reporting or describing the number of PRISONERS who received, OR in the alternative provide any lists of the names of PRISONERS scheduled to receive, "group therapy" OR "group counseling" as referred to in Health Services Bulletin 15.05.08, in ISOLATION during the time period of August 1, 2019, through October 31, 2019.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants also object that "All DOCUMENTS reporting or describing the number of PRISONERS who received, OR in the alternative provide any lists of

the names of PRISONERS scheduled to receive, 'group therapy' OR 'group counseling' . . . in ISOLATION" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  Attendance at programs by specific inmates at the institution level do not address whether the "overarching policy" is constitutional and/or discriminatory.  Thus, Plaintiffs' request is not relevant to the claims being asserted.

## REQUEST FOR PRODUCTION NO. 164:

All DOCUMENTS showing the attendance at any programs available to PRISONERS in ISOLATION during the time period of August 1, 2019, through October 31, 2019.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants also object that "All DOCUMENTS showing the attendance at any programs available to PRISONERS in ISOLATION" is vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  Attendance at programs by specific inmates at the institution level do not address whether the

11

"overarching policy" is constitutional and/or discriminatory.   Thus, Plaintiffs'

request is not relevant to the claims being asserted.

## REQUEST FOR PRODUCTION NO. 165:

All tables of contents OR indexes of correctional, medical, mental health, and education procedures, post orders, technical instructions, and health service bulletins currently in effect.

## RESPONSE:

FDC will produce documents responsive to this request. Otherwise,

Defendants object to this request to the extent it seeks safety and security-sensitive

materials, including but not limited to, technical instructions and post orders.

## REQUEST FOR PRODUCTION NO. 166:

All written POLICIES that exclude PRISONERS with "intellectual disabilities," as defined by YOU in YOUR response to Plaintiff Harvard's Interrogatory 12 to FDC, from ISOLATION.

## RESPONSE:

FDC will produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 167:

The classification, medical, mental health, education, and substance abuse records for Delonte Miller, DC #C90119. A signed authorization to release these records is attached to these requests.

## RESPONSE:

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 168:**

The DOCUMENT entitled, "Restrictive Housing," that Daniel Gerber sent to Plaintiffs' counsel by email on August 23, 2019.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 169:**

The DOCUMENT entitled. "Florida Department of Corrections, Restrictive Housing, Short-term Confinement & Mental Health Designations," including all versions and drafts.

**RESPONSE:**

FDC will produce the document and drafts if they can be located.

**REQUEST FOR PRODUCTION NO. 170:**

All DOCUMENTS, including any data and survey responses, that YOU prepared, drafted, OR generated in response to any ASCA (Association of State Correctional Administrators)-Liman Restrictive Housing Surveys, including survey responses YOU completed in 2015.

**RESPONSE:**

Please see documents in response to request 42 to Inch.

**REQUEST FOR PRODUCTION NO. 171:**

All POLICIES that describe OR provide directives, guidelines, OR instructions to STAFF regarding the procedures for assigning mental health grades to PRISONERS.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the mental health grade" are vague, ambiguous, overly broad,

13

unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 172:**

All curriculums regarding, and DOCUMENTS provided to STAFF during, "suicide and self-injury prevention and response" trainings and in-service trainings referred to in Procedure 404.001.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 173:**

FDC Procedure 401.002, and all blank "Relevant DC Forms" listed in the Procedure.

**RESPONSE:**

Defendants object based upon relevance, as this procedure was rescinded in 2012.

**REQUEST FOR PRODUCTION NO. 174:**

FDC Procedure 403.009, and all blank "Relevant DC Forms" listed in the Procedure.

**RESPONSE:**

FDC will produce documents responsive to this request.

14

**REQUEST FOR PRODUCTION NO. 175:**

Health Services Bulletin 15.01.06, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 176:**

Health Services Bulletin 15.02.01.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 177:**

Health Services Bulletin 15.03.04, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 178:**

Health Services Bulletin 15.03.05, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 179:**

Health Services Bulletin 15.03.06.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 180:**

Health Services Bulletin 15.03.22, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 181:**

Health Services Bulletin 15.03.24, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 182:**

Health Services Bulletin 15.03.25, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

Please see documents produced in response to requests 65, 68 and 70 to Inch and requests 1-7 to FDC.  FDC will produce documents responsive to this request not previously produced.

**REQUEST FOR PRODUCTION NO. 183:**

Health Services Bulletin 15.03.26, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

**RESPONSE:**

FDC will produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 184:

Health Services Bulletin 15.03.29, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

## RESPONSE:

FDC will produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 185:

Health Services Bulletin 15.05.05, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

## RESPONSE:

FDC will produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 186:

Health Service Bulletin 15.06.04.

## RESPONSE:

FDC will produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 187:

Health Services Bulletin 15.09.04, and all "Relevant [blank] Forms and Documents" listed in the Bulletin.

## RESPONSE:

FDC will produce documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 188:

Technical Instruction 15.03.39.

## RESPONSE:

Defendants object to this request to the extent it seeks safety and security-

sensitive materials and is irrelevant to the claims in this case.

**REQUEST FOR PRODUCTION NO. 189:**

Nephrology Nursing Standards of Care.

**RESPONSE:**

FDC will produce documents responsive to this request to the extent they exist and are in FDC's possession.

**REQUEST FOR PRODUCTION NO. 190:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the mental health grade, as referenced in Health Services Bulletin 15.03.13, of PRISONERS in each type of ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the mental health grade" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 191:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the medical

grade, as referenced in Health Services Bulletin 15.03.13, of PRISONERS in each type of ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the medical grade" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 192:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the impairment grade, as referenced in Health Services Bulletin 15.03.13, of PRISONERS in each type of ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the impairment grade" are vague, ambiguous, overly broad,

unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 193:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on PRISONERS diagnosed with "mental retardation" as referenced in Health Services Bulletin 15.03.25; developmental disabilities; OR intellectual disabilities, as referenced in YOUR response to Interrogatory 12 to FDC; in ISOLATION.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "PRISONERS diagnosed with 'mental retardation' . . . developmental disabilities; OR intellectual disabilities," are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health,

medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 194:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of Inmate Sick Call Request Forms, DC4-698A, submitted by PRISONERS in ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the number of Inmate Sick Call Request Forms, DC4-698A, submitted by PRISONERS in ISOLATION" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 195:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the number of Inmate Sick Call Request Forms, DC4-698A, submitted by PRISONERS in the general population during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR

21

possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the number of Inmate Sick Call Request Forms, DC4-698A, submitted by PRISONERS in general population" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 196:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the frequency of or number of emergency responses by medical STAFF to PRISONERS in ISOLATION during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR

comment on" and "the frequency of or number of emergency responses by medical STAFF to PRISONERS in ISOLATION" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

## REQUEST FOR PRODUCTION NO. 197:

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the frequency of or number of "man-down drills," as referred to by the National Commission on Correctional Health Care, in ISOLATION during the time period of November 1, 2018, through the present.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

## RESPONSE:

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the frequency of or number of "man-down drills," as referred to by the National Commission on Correctional Health Care, in ISOLATION" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4. The request is broad enough that it would require the search of millions of

correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 198:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the frequency of or number of "man-down drills," as referred to by the National Commission on Correctional Health Care, in the general population during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the frequency of or number of "man-down drills," as referred to by the National Commission on Correctional Health Care, in the general population" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request is broad enough that it would require the search of millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 199:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the delivery, frequency, OR adequacy of "necessary mental health care," including interviews, mental health evaluations, scheduled appointments stemming from Individualized Service Plans, and mental status examinations, as referenced in Health Services Bulletin 15.05.08, for PRISONERS in ISOLATION during the time period of November 1, 2018, through the present, This request seeks DOCUMENTS in YOUR custody, control, OR possession except for  DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the delivery, frequency, OR adequacy of "necessary mental health care," including interviews, mental health evaluations, scheduled appointments stemming from Individualized Service Plans, and mental status examinations . . . for PRISONERS in ISOLATION" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 200:**

All DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate, OR comment on the transfers of PRISONERS to OR from ISOLATION to isolation management rooms, hospitals, mental health treatment facilities, infirmaries, crisis stabilization units, transitional care units, secure treatment units, diversion treatment units, cognitive treatment units, OR other higher levels of medical OR mental health care during the time period of November 1, 2018, through the present. This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "the transfers of PRISONERS to OR from ISOLATION to isolation management rooms, hospitals, mental health treatment facilities, infirmaries, crisis stabilization units, transitional care units, secure treatment units, diversion treatment units, cognitive treatment units, OR other higher levels of medical OR mental health care" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case. Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents." DE 42, p. 4. The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

26

**REQUEST FOR PRODUCTION NO. 201:**

All DOCUMENTS that report, describe, summarize, discuss, OR comment on self-injuries, as referred to in Procedure 404.001, by PRISONERS requiring medical treatment at a location outside of a FACILITY OR medical treatment at a FACILITY during the time period of November 1, 2018, through the present.  This request seeks DOCUMENTS in YOUR custody, control, OR possession except for DOCUMENTS that are solely kept in individual PRISONERS' electronic or paper records.

**RESPONSE:**

Defendants object that "ALL DOCUMENTS, including the contents of any databases, that report, describe, summarize, analyze, discuss, calculate OR comment on" and "self-injuries, as referred to in Procedure 404.001, by PRISONERS requiring medical treatment at a location outside of a FACILITY OR medical treatment at a FACILITY" are vague, ambiguous, overly broad, unduly burdensome and not proportional to the needs of this case.  Plaintiffs' case as alleged is a challenge to overarching state-wide policies, and not a "challenge to a series of distinct incidents."  DE 42, p. 4.  The request arguably encompasses millions of correctional, classification, education, mental health, medical and other records so that FDC cannot even begin to determine what is responsive.

**REQUEST FOR PRODUCTION NO. 202:**

All DOCUMENTS that report the number of self-injuries, as referred to in Procedure 404.001, by PRISONERS by month AND housing unit OR FACILTY during the time period of November 1, 2018, through the present.

**RESPONSE:**

There are no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 203:**

All MINS Reports RELATED TO self-injuries, as referred to in Procedure 404.001, by PRISONERS in ISOLATION requiring medical treatment at a location outside of a FACILITY OR medical care at a FACILITY during the time period of November 1, 2018, through the present.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 204:**

All DOCUMENTS authored by the FDC Office of the Inspector General that describe self-injuries, as referred to in Procedure 404.001, by PRISONERS requiring medical treatment outside of a FACILITY OR medical care at a FACILITY during the time period of November 1, 2018, through the present.

**RESPONSE:**

No documents are responsive to this request. Otherwise, Defendants object

that "All DOCUMENTS authored by" is overbroad, vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 205:**

All DOCUMENTS authored by the Florida Department of Law Enforcement that describe self-injuries, as referred to in Procedure 404.001, by PRISONERS requiring medical treatment outside of a FACILITY OR medical care at a FACILITY during the time period of November 1, 2018, through the present.

**RESPONSE:**

No documents are responsive to this request.  Otherwise, Defendants object

that "All DOCUMENTS authored by" is overbroad, vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 206:**

The Overall Inmate Summary (DC 14) for each PRISONER who committed self-injuries, as defined in Procedure 404.001, requiring medical treatment outside

of a FACILITY OR medical care at a FACILITY during the time period of January 1, 2018, through the present.

**RESPONSE:**

Defendants object to this request as irrelevant, not proportional to the needs of this case, overly broad, and burdensome. The Overall Inmate Summary for any inmate "who committed self-injuries . . . requiring medical treatment outside of a FACILITY OR medical care at a FACILITY," regardless of whether or not that inmate was in restrictive housing, bears no relevance to the issues asserted in this case.

**REQUEST FOR PRODUCTION NO. 207:**

All DOCUMENTS summarizing or describing job descriptions for all positions held by STAFF listed in "Defendants Mark Inch and Florida Department of Corrections' Initial Rule 26 Disclosures," dated October 3, 2019.

**RESPONSE:**

FDC will produce documents responsive to this request to the extent they exist.

**REQUEST FOR PRODUCTION NO. 208:**

The complete education files for Plaintiffs Jac'Quann Harvard, Jeremiah Hill, Angel Meddler, Juan Espinosa, Johnny Hill, James Kendrick, AND Jerome Burgess, as described in YOUR initial disclosures.

**RESPONSE:**

FDC will produce documents responsive to this request not previously produced to the extent they exist. Otherwise, Defendants object, as FDC is required to maintain only five years of education records.

**REQUEST FOR PRODUCTION NO. 209:**

The complete substance abuse files for Plaintiffs Jac'Quann Harvard, Jeremiah Hill, Angel Meddler, Juan Espinosa, Johnny Hill, James Kendrick, AND Jerome Burgess, as described in YOUR initial disclosures.

**RESPONSE:**

FDC will produce responsive documents not previously produced for Meddler and Jeremiah Hill.  There are no responsive documents for Hill and Kendrick.  Otherwise, Defendants object on the grounds that documents for the following Plaintiffs do not exist as they exceed the records retention period: Harvard, Espinosa and Johnny Hill.

**REQUEST FOR PRODUCTION NO. 210:**

Plaintiffs' visitor logs, including e-mail and phone logs, as described in YOUR initial disclosures.

**RESPONSE:**

FDC will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 211:**

Programming and education materials offered to inmates in restrictive housing, as described in YOUR initial disclosures.

**RESPONSE:**

Please see documents produced in response to requests 25, 26 and 60 to Inch.  FDC will produce additional documents responsive to this request.

Respectfully submitted,

/ s / Nicole Smith
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
         sduke@rumberger.com
and
NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:  nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and**
**Florida Department of Corrections**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 10, 2020, I emailed the foregoing to:

Christopher Michael Jones at cjones@filsinc.org; Jennifer Morrissey Painter at

jennifer.painter@floridalegal.org;       Shalini       Goel       Agarwal       at

shalini.agarwal@splcenter.org; Sumayya Saleh at sumayya.saleh@splcenter.org;

Kelly   Jean   Knapp   at   Kelly.knapp@splcenter.org;   Lisa   S.   Graybill   at

31

lisa.graybill@splcenter.org; Dante Pasquale Trevisani at dtrevisani@floridajusticeinstitute.org; Laura Anne Ferro at lferro@floridajusticeinstitute.org; Sam Thypin-Bermeo at sthypin-bermeo@floridajusticeinstitute.org; Andrea Costello at andrea@floridalegal.org; Christopher M. Jones at Christopher@floridalegal.org; Jennifer Painter at Jennifer.painter@floridalegal.org; and Aimee Lim at aimee.lim@floridalegal.org.

/ s / Nicole Smith

DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133
Email: dgerber@rumberger.com
        sduke@rumberger.com
and
NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida 32302-2507
Telephone: (850) 222-6550
Telecopier: (850) 222-8783
E-mail: nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and Florida Department of Corrections**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

      Plaintiffs,

vs.                     CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

      Defendants.

_____/

**DEFENDANT MARK INCH'S VERIFIED RESPONSES TO
PLAINTIFF HARVARD'S FIRST SET OF INTERROGATORIES**

Defendant, Mark Inch, in his official capacity as Secretary of the Florida

Department of Corrections and Florida Department of Corrections ("Defendant"),

hereby responds to the Plaintiff, Jac'quann (Admire) Harvard's First Set of

Interrogatories, served November 4, 2019, as follows:

## <u>OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS</u>

Defendant incorporates these objections to Plaintiff's "Instructions" and "Definitions" into each specific response to Plaintiff's request for production listed below:

1.     Defendant objects to the instruction for a requested timeframe of January 1, 2014, through the present.  This action is solely for injunctive relief; therefore, a time period of almost six years is vastly over broad and not proportional to the needs of the case considering that the undue burden and expense of discovery for the requested time period outweighs the likely benefit, and, as such, Defendant has limited its search to one year previous to the filing of the lawsuit, or May 8, 2018, through the present, unless otherwise indicated.  *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief").

2.     Defendant objects to the definition of "DISABILITY" and "DISABILITIES" as being overly broad in scope and different from the definition(s) contained in FDC's rules, policies, practices and/or procedures. Defendant also objects on the basis that "DISABILITY" and "DISABILITIES" are not ascertainable on a class-wide basis, but instead must be determined on a case-by-case basis.

3.     Defendant objects to the definition of "FACILITY" and "FACILITIES" as being overly broad in scope, unduly burdensome and not proportional to the needs of the case at this stage, pre-class certification. Additionally, Defendant objects to the definition of "FACILITY" and "FACILITIES" because it includes any institution "where there is ISOLATION." Such definition is overly broad and not relevant to the issues in this case, as "isolation" in turn "refers to Administrative Confinement, Close Management, Disciplinary Confinement, and Maximum Management, as described in Chapters 33-601 and 33-603 of the Florida Administrative Code."

4.     Defendant objects to the definition of "ISOLATION," as it is different than the definition Plaintiffs set forth in the First Amended Class Action Complaint for Declaratory Relief and Injunctive Relief" ("Complaint"), overly broad in scope and not proportional to the needs of the case considering the undue burden and expense of discovery attendant to such a broad definition.

5.     Defendant objects to the definition of "POLICY" and "POLICIES" as including unwritten or otherwise unrecorded "POLICIES." Defendant also objects on the basis of relevance and overbreadth because the definition includes "policies" in effect only at particular facilities, where the claims in this case "stem from one overarching policy and practice" of Defendants (D.E. 42, p.1), or stated another way, Defendants' "systematic statewide policy and practice of isolating

3

people . . ."  D.E. 42, pp. 2-3 (citing D.E. 13 ¶¶ 57-59).  Defendant also objects because the definition includes safety and security-sensitive materials, including but limited to, technical manuals, post orders, and other security-related procedures that are highly-confidential in nature.  Defendant further objects to producing any "policy" that is no longer in effect as this is an action for injunctive relief and FDC's policies which are no longer in effect are not relevant to any issue asserted in this case.

6.     Defendant objects to the definition of "STAFF" based upon overbreadth and relevance, as it includes non-employees of FDC.  *See* objection to "facility" and "facilities," at ¶ 3.

**INTERROGATORY NO. 1:**

Provide the name, job title, address, phone number, AND email address for each person who participated in answering these Interrogatories AND state which Interrogatory each person is answering.

**RESPONSE:**

These interrogatory responses were prepared by the Florida Department of Corrections ("FDC"), with the assistance of counsel, based on a review of documents kept by the FDC in the ordinary course of business. For specific interrogatories, the following persons directly participated in preparing the interrogatory responses:

4

- Name: Rusty McLaughlin
  Job Title: Bureau Chief-Classification Management
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1 thru 8, 12, 13, 25

- Name: Amber Vargas
  Job Title: Assistant Bureau Chief-Classification Management
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 5, 6, 12, 13

- Name: Ricky Dixon
  Job Title: Deputy Secretary
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 2, 5, 6, 9, 10, 11, 12, 23

- Name: Richard Comerford
  Job Title: Assistant Deputy Secretary of Institutions
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 2, 5, 6, 12, 13

- Name: Jeremy Edwards
  Job Title: Correctional Services Consultant-Classification Management
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 12, 13, 15 thru 22, 24

- Name: Ezri Rediker
  Job Title: Correctional Officer Captain
  c/o Rumberger, Kirk & Caldwell
  Interrogatories No.: 1, 14

**INTERROGATORY NO. 2:**

Provide the name, address, telephone number, email address, place of employment, AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the January 13, 2016 DOCUMENT, including all versions AND

drafts, entitled, "Analysis of Segregation Processes". For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

**RESPONSE:**

The following persons participated in the writing and editing of the referenced document and/or were provided a copy of the referenced document. Those involved could not recall specifically the exact timing of their involvement:

- Name: Rusty McLaughlin
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Bureau Chief-Classification Management
  Involvement: drafted and edited.

- Name: Sheryle (Sherry) Cosson (former employee)
  Address: Unknown
  Telephone Number: Unknown
  Place of Employment: Formerly Florida Department of Corrections
  Job Title: Former Assistant Bureau Chief- Classification Management
  Involvement: drafted and edited.

- Name: Richard Comerford
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Deputy Secretary of Institutions
  Involvement: edited.

- Name: Ricky Dixon
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Deputy Secretary
  Involvement: provided.

Defendant reserves the right to supplement this response should additional persons be identified.

## INTERROGATORY NO. 3:

Explain the basis for, OR describe the facts that YOU relied on to support, YOUR statement "[i]n the last several months, it has become apparent that there needed to be a thorough review and discussion regarding our Close Management process as it pertains to the initial placement of and the continued management (level modifications/reductions to include release from this status) of this particular inmate population" in the January 13, 2016 DOCUMENT entitled, "Analysis of Segregation Processes".

## RESPONSE:

The basis is provided in the document. Directly following the quote in the interrogatory, the document states: "[T]his need has become evident due to the number of inmates housed at non-close management institutions pending transfer to a close management institution and the number of inmates presently housed at designated close management institutions."

## INTERROGATORY NO. 4:

Describe in detail any AND all changes to POLICIES that resulted from the recommendations made in the January 13, 2016 DOCUMENT entitled, "Analysis of Segregation Processes".

## RESPONSE:

The following changes in policies were made following the recommendations made in the January 13, 2016 referenced document:

- Close Management 3 (CM3) will no longer be utilized as an entry point for close management. Instead, CM3 will be used as a "step-down" intended to be short-term with focus placed on programming to prepare the inmate for return to general population.

- Subsequent State Classification Office (SCO) reviews in conjunction with the Institutional Classification Team's interaction with the inmate will

7

shorten the time between reviews of the inmate's close management status when appropriate.  During a routine formal close management review conducted by the Classification Officer, Institutional Classification Team and State Classification Office, the inmate will be informed that if he completes a specified period of time (i.e. 60 days, 90 days, etc.) with no serious incidents that he/she will be reduced in CM level or released by the State Classification Office completing a subsequent decision entry.  The State Classification Office already has the ability to complete subsequent reviews to modify the CM level downward or to release the inmate from CM, but this will bring the inmate into the process by letting him/her know up front what will happen in the specified time period if they perform appropriately.  This process, while moving the inmate through the levels of close management faster without increasing the Classification Officer and Institutional Classification Team's current work load will increase the State Classification Officer's work load.

- Changes incorporated in the document entitled "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens dated October 26, 2016 and produced in PRR#18-0785.

- Changes incorporated in the document entitled "Disciplinary Process Follow up" with the attachments entitled "Proposed Penalty Changes attachment" and "Penalty Matrix-Updated" from Richard Comerford to Regional Directors, Wardens, Ricky Dixon, Rusty McLaughlin, Robert (Lee) Adams, Wes Kirkland, Bradford Locke, and Amber Vargas dated December 12, 2016.

- Enhanced close management programming when appropriate.

- Established the Residential Continuum of Care (RCC) Unit at Wakulla C.I.-Annex to provide outpatient mental health treatment and habilitation services in a protective environment. There are three residential mental health units within the RCC: Cognitive Treatment Unit, Diversion Treatment Unit and Secure Treatment Unit.

Defendant reserves the right to supplement this response should additional information be identified through discovery and/or its investigation.

8

**INTERROGATORY NO. 5:**

Provide the name, address, telephone number, email address, place of employment, AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENT, including all versions AND drafts, entitled "Disciplinary Confinement" from Ricky Dixon to Regional Directors and Wardens, and produced in response to PRR#18-0785. For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

**RESPONSE:**

The following persons participated in the writing and editing of the referenced document and/or were provided a copy of the referenced document. Those involved could not recall specifically the exact timing of their involvement:

- Name: Rusty McLaughlin
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Bureau Chief-Classification Management
  Involvement: wrote, edited.

- Name: Richard Comerford
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Deputy Secretary of Institutions
  Involvement: edited.

- Name: Ricky Dixon
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Deputy Secretary
  Involvement: provided.

- Name: Robert (Lee) Adams (former employee)
  Address: Unknown
  Telephone Number: Unknown
  Place of Employment: Formerly Florida Department of Corrections
  Job Title: Former Bureau Chief- Admission and Release

9

Involvement: edited.

- Name: Leah Berg
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Correctional Program Consultant
  Involvement: edited.

- Name: Amber Vargas
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Bureau Chief- Classification Management
  Involvement: provided.

Defendant reserves the right to supplement this response should additional persons be identified.

## INTERROGATORY NO. 6:

Provide the name, address, telephone number, email address, place of employment AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENTS, including all versions AND drafts, entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, and produced in response to PRR#18-0785. For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

## RESPONSE:

The following persons participated in the writing and editing of the referenced document and/or were provided a copy of the referenced document. Those involved could not recall specifically the exact timing of their involvement:

- Name: Rusty McLaughlin
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Bureau Chief-Classification Management

Involvement: wrote, edited.

- Name: Richard Comerford
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Deputy Secretary of Institutions
  Involvement: edited.

- Name: Ricky Dixon
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Deputy Secretary
  Involvement: provided.

- Name: Robert (Lee) Adams (former employee)
  Address: Unknown
  Telephone Number: Unknown
  Place of Employment: Formerly Florida Department of Corrections
  Involvement: edited.

- Name: Amber Vargas
  c/o Rumberger, Kirk & Caldwell
  Place of Employment: Florida Department of Corrections
  Job Title: Assistant Bureau Chief- Classification Management
  Involvement: provided.

Defendant reserves the right to supplement this response should additional persons be identified.

**INTERROGATORY NO. 7:**

Describe in detail the "practices" that are of "questionable value," as referenced in the following DOCUMENTS: Memorandum entitled, "Disciplinary Confinement" from Ricky Dixon, to Regional Directors and Wardens, dated September 26, 2016; Memorandum entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated

11

September 27, 2016; and Memorandum entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 4, 2016. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

This statement directly relates to the preceding sentence "we confine too many inmates for too long a period of time without adequate programming for the confined population."

**INTERROGATORY NO. 8:**

Describe in detail the "practices" that "undermine [FDC's] commitment to preparing inmates for their eventual release back into society," as referenced in the following DOCUMENTS: Memorandum entitled, "Disciplinary Confinement" from Ricky Dixon to Regional Directors and Wardens, dated September 26, 2016; Memorandum entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated September 27, 2016; and Memorandum entitled, "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 4, 2016. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

This statement directly relates to the preceding sentences "we confine too many inmates for too long a period of time without adequate programming for the confined population." And "[i]n terms of positive behavioral outcomes, these practices are of questionable value."

**INTERROGATORY NO. 9:**

Have YOU determined that there is a "nationwide effort to reduce the number of inmates in confinement status," as referenced in the DOCUMENT entitled, "Disciplinary Confinement" from Ricky Dixon to Regional Directors and Wardens, dated September 21, 2016, and produced in response to PRR#18-0785? Describe in detail the basis for this determination OR YOUR determination to the contrary.

**RESPONSE:**

No. The statement "nationwide effort to reduce the number of inmates in confinement status," is a generalized statement summarizing information provided and available through various sources (e.g. correctional/law enforcement conferences, media reports, statistical reports, etc.) regarding the topic of confinement (i.e. restrictive housing, solitary confinement, time-in-cell, segregation, etc.).

**INTERROGATORY NO. 10:**

Have YOU determined that "restrictive housing is under significant scrutiny nationwide," as referenced in the DOCUMENTS entitled: "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 4, 2016; "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 18, 2016; and "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 19, 2016? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "restrictive housing is under significant scrutiny nationwide," is a generalized statement summarizing information provided and available through various sources (e.g. correctional/law enforcement conferences, media reports, statistical reports, etc.) regarding the topic of confinement (i.e. restrictive housing, solitary confinement, time-in-cell, segregation, etc.).

**INTERROGATORY NO. 11:**

Have YOU determined that "Florida is among other states that are on the higher end of the spectrum in terms of utilization of this management tool," restrictive housing, as referenced in DOCUMENTS entitled: "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 4, 2016; "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated October 18, 2016; "Disciplinary Process and Confinement" from Ricky Dixon to Regional Directors and Wardens, dated

13

October 19, 2016? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "Florida is among other states that are on the higher end of the spectrum in terms of utilization of this management tool," is a generalized statement summarizing information provided and available through various sources (e.g. correctional/law enforcement conferences, media reports, statistical reports, etc.) regarding the topic of confinement (i.e. restrictive housing, solitary confinement, time-in-cell, segregation, etc.).

**INTERROGATORY NO. 12:**

Provide the name, address, telephone number, email address, place of employment AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENTS entitled, "Long Term Segregation – Team Report", including all versions AND drafts, with the subjects:

(a) "Reduced Restraint Requirement for Confinement Inmates";

(b) "Conduct review as to how we currently view CM inmates who are receiving in-patient mental health treatment";

(c) "Reduction of the use of confinement as a punitive sanction, including reducing DC during CM";

(d) "Provide release programming at 180 days from release and remove appropriate inmates from CM who are within 60 days of release from prison to a non-CM unit";

(e) "Close Management Programming"; and

(f) "Viable Alternatives for the Long-Term Segregation of Inmates".

For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

14

**RESPONSE:**

The following persons participated in the writing and editing of the referenced documents and/or were provided a copy of the referenced documents. Those involved could not recall specifically the exact timing of their involvement:

(a)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Amber Vargas. Assistant Bureau Chief- Classification Management
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Christopher Hodgson. Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

John Kolodziej. Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

Angela Gordon. Regional Director
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

Herberk Foskey. Former Assistant Warden (former employee).
Address: unknown

15

Involvement: wrote, drafted, edited, provided.

Carlos (Eddie) Norman. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

Marshall Herring. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided.

Bradford Locke. Bureau Chief – Applied Science and Research
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited, provided

Edward Hand (contract employee)
Address: unknown
Involvement: wrote, drafted, edited, provided.

William Gibson. Former Government Analyst II (former employee)
Address: unknown
Involvement: wrote, drafted, edited, provided.

(b)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

16

Stephen (Steve) Rossiter. Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

Vicki Newsome. Bureau Chief- Population Management
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

Stephanie Crawford. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

Michael Davis. Former classification supervisor (former employee)
Address: unknown
Involvement: wrote, drafted, edited.

Lee Messina (contract employee)
Address: unknown
Involvement: wrote, drafted, edited.

Eric Canida. Correctional Officer Sergeant.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

James (Jim) Friedle. Assistant Chief of Mental Health Services
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

(c)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell

Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Robert (Lee) Adams. Former Bureau Chief- Admission and Release
(former employee)
Address: unknown
Involvement: wrote, drafted, edited

Jeffrey McClellan. Assistant Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Christopher Lane. Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Randall Polk. Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Gina Gay. Classification Supervisor.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Tammy Roberts. Former classification supervisor (former employee)
Address: unknown.
Involvement: wrote, drafted, edited

Peggy Watkins-Ferrell (contract employee)
Address: unknown
Involvement: wrote, drafted, edited

Leah Berg. Correctional Program Consultant
c/o Rumberger, Kirk & Caldwell

Involvement: wrote, drafted, edited

Herman (Adam) Finch. Senior Classification Officer.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Michael Harrell. Bureau Chief- Security Operations
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Amber Vargas. Assistant Bureau Chief- Classification.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Tifani Knox. Assitant Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited


(d)


Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided


Hope Gartman. Director of Institutional Operations.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

19

Michael Booker. Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


Susan Dove. Classification Supervisor.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


Curtis (Bryant) Goodwin. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


Margaret (Maggie) Agerton. Assistant Bureau Chief- Readiness and
Community Transition.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


Michael (Mike) Workman. Correctional Program Administrator
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Kristina Hartman. Former Bureau Chief- Programs (former employee)
Address: unknown
Involvement: wrote, drafted, edited


Julie Jean. Correctional Program Consultant
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited


Peggy Watkins-Ferrell (contract employee)
Address: unknown
Involvement: wrote, drafted, and edited.


(e)

Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Hope Gartman. Director of Institutional Operations.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Michael Booker. Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited

Susan Dove. Classification Supervisor.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Curtis (Bryant) Goodwin. Assistant Warden
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Margaret (Maggie) Agerton. Assistant Bureau Chief- Readiness and
Community Transition.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Michael (Mike) Workman. Correctional Program Administrator
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Kristina Hartman. Former Bureau Chief- Programs (former employee)
Address: unknown
Involvement: wrote, drafted, edited


Julie Jean. Correctional Program Consultant
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited


Peggy Watkins-Ferrell (contract employee)
Address: unknown
Involvement: wrote, drafted, and edited.

(f)


Rusty McLaughlin. Bureau Chief-Classification Management.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: edited

Ricky Dixon. Deputy Secretary.
c/o Rumberger, Kirk & Caldwell
Involvement: provided

Robert (Lee) Adams. Former Bureau Chief-Admission and Release
(former employee)
Address: unknown
Involvement: edited


Richard Johnson. Former warden (former employee)
Address: unknown.
Involvement: wrote, drafted, and edited.

James Blackwood. Former warden (former employee).
Address: unknown
Involvement: wrote, drafted, and edited.


Jeremy Edwards. Correctional Services Consultant.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


Trampus Gray. Assistant Warden.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


James Sikes. Former Correctional Officer- Major (former employee)
Address: unknown
Involvement: wrote, drafted, and edited.


William Davis. Former Correctional Officer Sergeant (former employee)
Address: unknown
Involvement: wrote, drafted, and edited.


James Sikes. Former Correctional Officer- Major (former employee)
Address: unknown
Involvement: wrote, drafted, and edited.

Robert Everett Jr. Correctional Officer.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.


Steven Roddenberry. Former Assistant Warden (former employee).
Address: unknown
Involvement: wrote, drafted, and edited.

Mitchell Brown. Assistant Warden.

c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

William Schwarz III. Correctional officer major.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Jonathan Mullins. Correctional Officer Sergeant.
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, and edited.

Defendant reserves the right to supplement this response should additional persons be identified.

## INTERROGATORY NO. 13:

Provide the name, address, telephone number, email address, place of employment AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENTS entitled, "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing", provided in response to PRR#18-0785. For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

## RESPONSE:

The following persons participated in the writing and editing of the referenced document and/or were provided a copy of the referenced document. Those involved could not recall specifically the exact timing of their involvement:

- Jeremy Edwards. Correctional Services Consultant
  c/o Rumberger, Kirk & Caldwell
  Involvement: wrote, drafted, edited.

- Amber Vargas. Assistant Bureau Chief- Classification Management
  c/o Rumberger, Kirk & Caldwell

24

Involvement: wrote, drafted, edited.

- Rusty McLaughlin. Bureau Chief- Classification Management
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited.

- Richard Comerford. Assistant Deputy Secretary of Institutions
c/o Rumberger, Kirk & Caldwell
Involvement: wrote, drafted, edited

Defendant reserves the right to supplement this response should additional persons be identified.

## INTERROGATORY NO. 14:

Provide the name, address, telephone number, email address, place of employment AND job title of all persons who wrote, drafted, edited, OR to whom YOU provided the DOCUMENTS entitled, "Alternative Housing: Training Presentation", provided in response to PRR#18-0785. For each person listed, describe the nature AND timing of their involvement in the DOCUMENTS' creation OR revision.

## RESPONSE:

Ezri Rediker. Correctional Officer Captain.
c/o Rumberger, Kirk & Caldwell.
Involvement: wrote, drafted, edited.

Mr. Rediker cannot recall the specific date in 2017 in which he drafted the referenced document.

## INTERROGATORY NO. 15:

Identify the "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is exceptionally expensive," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections

25

Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

The statement "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time exceptionally expensive," was provided as a summary from various research sites (such as Bureau of Justice Statistics). The sites would need to identify the "Evidence-based research" as the FDC did not conduct the research.

**INTERROGATORY NO. 16:**

Have YOU determined that "holding people in isolation [in FDC custody] with minimal human contact for extended periods of time is exceptionally expensive," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates"? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "holding people in with minimal human contact for extended periods of time is exceptionally expensive," was provided as a summary from various research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The FDC has not made this determination on those in FDC custody.

**INTERROGATORY NO. 17:**

Identify the "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can create or exacerbate serious

mental health problems and antisocial behavior among incarcerated people," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

The statement "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people," was provided as a summary from various research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The sites would need to identify the "Evidence-based research" as the FDC did not conduct the research.

**INTERROGATORY NO. 18:**

Have YOU determined that "long-term segregation," defined for this Interrogatory as more than 60 consecutive days in "segregation," "can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people" in FDC custody, as referenced by the DOCUMENTS entitled: "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing" and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates"? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "can create or exacerbate serious mental health problems and antisocial behavior among incarcerated people" was provided as a summary from various research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The FDC has not conducted evidence-based research on "long-term segregation" as defined for this Interrogatory as more than 60 consecutive days in "segregation" and has not made a determination that it "can

create or exacerbate serious mental health problems and antisocial behavior among incarcerated people" in FDC custody

**INTERROGATORY NO. 19:**

Identify the "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can . . . have negative outcomes for institutional safety," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

The statement "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can . . . have negative outcomes for institutional safety," was provided as a summary from various statistical research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The sites would need to identify the "Evidence-based research" as the FDC did not conduct the research.

**INTERROGATORY NO. 20:**

Have YOU determined that "long-term segregation," defined for this Interrogatory as more than 60 consecutive days in "segregation," can "have negative outcomes for institutional safety" in FDC, as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing" and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates"? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "have negative outcomes for institutional safety" was provided as a summary from various statistical research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The FDC has not conducted evidence-based research on "long-term segregation" as defined for this Interrogatory as more than 60 consecutive days in "segregation" and has not made a determination that it can "have negative outcomes for institutional safety".

**INTERROGATORY NO. 21:**

Identify the "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can . . . increase the risk of recidivism after release," as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

The statement "Evidence-based research" that "shows that holding people in isolation with minimal human contact for extended periods of time is . . . in many cases counterproductive as long-term segregation can . . . increase the risk of recidivism after release," was provided as a summary from various statistical research sites (such as Bureau of Justice Statistics ) however they were not cited in the document. The sites would need to identify the "Evidence-based research" as the FDC did not conduct the research.

**INTERROGATORY NO. 22:**

Have YOU determined that "long-term segregation," defined for this Interrogatory as more than 60 consecutive days in "segregation," can "increase the risk of recidivism after release" from FDC, as referenced by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative

29

Housing" and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates"? Describe in detail the basis for this determination OR YOUR determination to the contrary. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

No. The statement "increase the risk of recidivism after release" was provided as summary from various statistical research sites (such as Bureau of Justice Statistics) however they were not cited in the document. The FDC has not conducted evidence-based research on "long-term segregation" as defined for this Interrogatory as more than 60 consecutive days in "segregation" and has not made a determination that it can "increase the risk of recidivism after release" of those in FDC custody

**INTERROGATORY NO. 23:**

Define "long-term segregation," as used by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

60 or more days.

**INTERROGATORY NO. 24:**

Define "isolation with minimal human contact" as used by the DOCUMENTS entitled: "Alternative Housing: Training Presentation"; "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing"; and "Long Term Segregation - Team Report" with the subject, "Viable Alternatives for the Long-Term Segregation of Inmates". All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

The statement "isolation with minimal human contact" was provided as summary from various statistical research sites (such as Bureau of Justice Statistics), however they were not cited in the document. The FDC does not have a definition for what the statistical research sites consider or any internal definition for "isolation with minimal human contact".

**INTERROGATORY NO. 25:**

Describe in detail the approval process, including but not limited to who approved it, when they approved it, AND what it means for the document to be "approved," for the "approved" "Technical Manual Florida Department of Corrections Bureau of Classification Management Alternative Housing", as referenced in the DOCUMENT entitled, "Alternative Housing Pilot Directive," dated May 9, 2016, and sent by Ricky Dixon. All DOCUMENTS referenced in this Interrogatory were provided in response to PRR#18-0785.

**RESPONSE:**

Rusty McLaughlin met with Richard Comerford and Ricky Dixon to discuss plans with moving forward with the Alternative Housing Pilot Directive. This included the referenced DOCUMENTS' in interrogatory number 25.

# VERIFICATION

Florida Department of Corrections

By: _(signature)_

Authorized Agent

STATE OF _Florida_

COUNTY OF _Leon_

_Amber Vargas_ says that he/she is authorized by Florida Department of Corrections under applicable law and rules to verify and does verify these Responses to Interrogatories on behalf of Florida Department of Corrections.

SWORN TO AND SUBSCRIBED before me this _17th_ day of _December_, 2019.

_(signature)_

Signature of Notary

FELICIA KAREN BLITCH
MY COMMISSION # FF948636
EXPIRES January 06, 2020
(407) 398-0153    FloridaNotaryService.com

PRINT, TYPE OR STAMP NAME OF NOTARY

Personally known _X_

OR Produced Identification _____

Type of Identification Produced _____

**Adams, Robert (Lee)**

| | |
|---|---|
| **From:** | McLaughlin, Rusty |
| **Sent:** | Wednesday, September 20, 2017 11:45 AM |
| **To:** | Gordon, Angela; Hummel, Erich; Riedl, Brian; Reid, Thomas |
| **Cc:** | Comerford, Richard; Adams, Robert (Lee); Becker, John; Vargas, Amber |
| **Subject:** | FW: Disciplinary Process Follow up |

Regional Directors

There have been concerns expressed about the below matrix and the fact that the 1-6 (Lewd or lascivious exhibition) and 4-1 (Escape or escape attempt ) infractions were not omitted from the matrix. The inclusion of these charges in the matrix simply means that written justification is required in order to impose a penalty outside the matrix framework. I want to emphasize that this does not limit in any way the disciplinary alternatives available to punish these infractions.  That is, you may continue to penalize these infractions *exactly as you have in the past*, based on the facts of the case. Staff discretion as to 1-6 and 4-1 remains *as it has always been*. The only difference is that now, to impose a penalty outside the matrix framework, you must provide written justification for the penalty.

The matrix structure was discussed by the team, comprised of field and central office staff, assigned with responsibly reducing the use of DC. The matrix is meant to guide discretion, not remove it, with the qualification that when the decision is to impose a sanction outside the matrix, it needs to be explained. The team felt this approach balanced the need to diminish the frequency of DC with the reality that some infractions absolutely warrant DC as a penalty regardless of the inmate's past conduct record. Requiring written justification will help ensure that we are making careful, well-considered decisions about handling these offenses which vary in scope considerably, depending on the facts of the case. In addition, this approach will create a much stronger record in the event we are called on to defend how we use confinement, especially when responding to non-assaultive offenses.

Florida's Classification system is complex and one of the cornerstones of the system is our ability to clearly articulate the reasons for our decisions. This is the foundation of a professional and credible system. Field staff are trusted to use their discretion wisely, but should be able to explain each decision made. Again, all that is required to exceed the matrix is a justification when these infractions occur.

Thanks
Rusty

**From:** Comerford, Richard
**Sent:** Monday, December 12, 2016 10:19 AM
**To:** RegionalDirectorsInstitutions <RegionalDirectors@mail.dc.state.fl.us>; Wardens-All <Wardens-All@mail.dc.state.fl.us>
**Cc:** Dixon, Ricky <Ricky.Dixon@fdc.myflorida.com>; McLaughlin, Rusty <Rusty.McLaughlin@fdc.myflorida.com>; Adams, Robert (Lee) <Robert.Adams2@fdc.myflorida.com>; Kirkland, Wes <Wes.Kirkland@fdc.myflorida.com>; Locke, Bradford <Bradford.Locke@fdc.myflorida.com>; Vargas, Amber <Amber.Vargas@fdc.myflorida.com>
**Subject:** Disciplinary Process Follow up

Regional Directors
Wardens

As a follow up to our conference call several weeks ago regarding the Disciplinary Process, the attached documents outline the proposed rule changes to certain penalties as well as the new matrix. Although the rule change has not officially occurred, this matrix and reduction in penalties is to be implemented immediately.

3

DHA00006853

**Penalty Changes**

The maximum penalty for a number of non-violent infractions is being reduced. As discussed, the change in the penalties only denotes the maximum allowed sanctions. The amount of confinement days or loss of gain time should still be decided on a case by case basis. The affected penalties are highlighted.

**Penalty Matrix**

In reference to the matrix, which pertains to non-violent infractions, the attached provides the exact wording for the rule and immediate use by the disciplinary team.   The only portion of the matrix that cannot be implemented is AH (Alternative Housing).  In the case of AH (Alternative Housing), a temporary alternative is provided in the gray highlighted area below and in the attached penalty matrix document.   Please keep in mind that once the rule is in effect, there will be database updates to assist with this process. Until such time as the database is updated, manual processing will be necessary.   Penalties imposed by the team will be guided by the inmate's disciplinary record, as measured by the time since the last infraction, and as is referenced in the matrix. However, if circumstances indicate that the presumptive sanction, based on disciplinary history, is inadequate to address the misconduct, the team may impose a penalty up to the maximum but such penalty must be accompanied by sufficient written justification. Our success in this effort will predominately depend on the local administration's critical evaluation of such written justification.

If you have any questions, please contact Amber Vargas at 850-717-3563.

Proposed Matrix in rule:

| Time since last infraction | 0-30 Days | 31-59 Days | 60-89 Days | 90-119 Days | 120-149 Days | 150-179 Days | 180+ Days; no prior infraction |
|---|---|---|---|---|---|---|---|
| Suggested Penalty | 30DC/30GT Or 30AH | 20DC/20GT or 30AH | 15DC/15GT or 30AH | 30AH/15GT | 30AH | 15AH | Other sanction authorized by 33-601.314. |

Temporary Matrix until AH (Alternative Housing) becomes available:  Gray areas denote temporary changes.

| Time since last infraction | 0-30 Days | 31-59 Days | 60-89 Days | 90-119 Days | 120-149 Days | 150-179 Days | 180+ Days; no prior infraction |
|---|---|---|---|---|---|---|---|
| Suggested Penalty | 30DC/30GT Or 30AH | 20DC/20GT or 30AH | 15DC/15GT or 30AH | 15DC/15GT | 15GT | Other sanction authorized by 33-601.314 | Other sanction authorized by 33-601.314. |

Thank you!!

*Richard D. Comerford*
Director of Institutional Operations
850-717-3037

4

DHA00006854

Our Vision: "Inspiring success by transforming one life at a time."
Our Vision: "Inspiring success by transforming one life at a time."

DHA00006855

# Exhibit 10

7629131.1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAC'QUANN (ADMIRE)
HARVARD; J.H., a minor, by and
Through his parent and natural
Guardian, Valentine Robinson;
ANGEL MEDDLER; JUAN
ESPINOSA; JEROME BURGESS
(a/k/a SHAM'LA GOD ALLAH);
JAMES W. KENDRICK, JR.; and
JOHNNY HILL; on behalf of
Themselves and all others similarly
Situated,

      Plaintiffs,

vs.                         CASE NO.:  4:19-cv-00212-MW-CAS

MARK INCH, in his official
Capacity as Secretary of the Florida
Department of Corrections, and
FLORIDA DEPARTMENT OF
CORRECTIONS, an Agency of the
State of Florida,

      Defendants.

_____/

**DEFENDANTS' MOTION TO STAY DISCOVERY REGARDING
CONFIDENTIAL PRISON SECURITY INFORMATION PENDING
RESOLUTION OF INTERLOCUTORY APPEAL
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

    Defendants, Mark Inch, in his official capacity as Secretary of the Florida

Department of Corrections, and the Florida Department of Corrections ("FDC"),

respectfully request a stay of all discovery of highly confidential prison security

information at issue in the Court's Order Denying Defendants' Motion for Entry of a Protective Order [Doc. 94], including such information included in the Court's Order on Motion to Compel [Doc. 98]—which requires the production of documents containing such information by **March 6, 2020**—to allow Defendants to obtain review by the Eleventh Circuit Court of Appeals through a petition for writ of mandamus and, alternatively, collateral order doctrine appeal. In support of a stay, Defendants state:

## BACKGROUND

On November 5, 2019, the Court entered a Confidentiality Order governing disclosure of confidential information. [Doc. 58] The Court declined to include in the Confidentiality Order an "Attorneys' Eyes Only" provision requested by Defendants to protect highly sensitive prison security information. *Id.* Defendants then moved the Court for entry of a protective order limiting disclosure of such highly sensitive information only to Plaintiffs' counsel. [Doc. 84] The Court denied that motion for entry of a protective order on January 22, 2020. [Doc. 94]

Plaintiffs also moved to compel, in part, disclosure of prison security information sought in particular discovery requests. [Doc. 65-1] The specific discovery at issue overlapping with the motion for protective order are Plaintiffs' First Requests for Production to Inch (including the definitions used therein), Request Numbers 12-15, 22, 23, 34-37, 46-49, 50, 51, 53, 54, 107-117, 135, 136,

and Plaintiff Harvard's First Set of Interrogatories to Defendant FDC, Interrogatory No. 16, to the extent that they seek highly confidential prison security information. [Doc. 83] On February 7, 2020, the Court granted Plaintiffs' motion to compel, requiring production of the information at issue by March 9, 2020. [Doc. 98]

Defendants now seek a temporary stay of the Court's orders denying Defendants' motion for protective order and granting Plaintiffs' motion to compel production of sensitive prison security information, as they relate to such information (the "Orders").[1] [Doc. 94 & 98] Defendants are filing a Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. Defendants are also filing a separate Petition for Writ of Mandamus with the Court of Appeals, as an alternative basis for jurisdiction.

## ARGUMENT

This Court has the inherent power to stay proceedings in the interest of judicial economy and fairness. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The following factors are considered when determining whether a stay pending an appeal is appropriate: (1) whether the petitioner is likely to prevail on

---

[1] Defendants do not seek a stay of the Court's order granting Plaintiffs' motion to compel in its entirety [Doc. 98], but only that portion of the order that overlaps with Defendants' motion for protective order.

the merits of the appeal or writ; (2) whether the petitioner will be irreparably harmed without the issuance of a stay; (3) whether the issuance of the stay will substantially harm other parties interested in the proceedings; and (4) whether the public interest will be disserved in granting the stay. *See, e.g., Florida ex rel. Bondi v. U.S. Dept. of Health and Human Services*, 780 F. Supp. 2d 1307, 1317 (N.D. Fla. 2011) (citing *Hilton v. Braunskill*, 481 U.S. 770 (1987)); *Nowak v. Lexington Ins. Co.*, No. 05-21682CIV-MORENO, 2006 WL 3613760, *2 (S.D. Fla. June 22, 2006). Pursuant to Federal Rule of Appellate Procedure 8(a)(1), a party must ordinarily first request a stay in the district court before requesting a stay from the appellate court.

Defendants file this motion, and their appeal and petition for writ, in good faith. In an analogous context, the Eleventh Circuit Court of Appeals has ruled that mandamus is appropriate for review of discovery orders that will "compromise a claim of privilege or invasion of privacy rights … due to the importance of the privilege, the seriousness of the injury if discovery is obtained, and the difficulty of obtaining effective review once the privileged information has been made public." *In re. Fink*, 876 F.2d 84, 84 (11th Cir. 1989). Here, if the highly sensitive confidential information regarding prison security is disclosed to Plaintiffs, other inmates, and possible consultants and experts whose identities are unknown, prisoner and public safety will be at significant risk. Additionally, the Court's

order denying Defendants' request for a protective order invades separation of powers by undermining Defendants' ability to effectively manage prison administration and security. *See, e.g., Turner v. Safley,* 482 U.S. 78, 84-85 (1987).

Irreparable harm will result if a stay is not granted. Without a temporary stay, Defendants would be compelled to produce the highly sensitive confidential information, posing a significant risk to prison inmates, prison personnel, and the public, before the Eleventh Circuit would be able to review the appeal or rule on same. As a result, without a stay, the appeal and petition would likely become moot and significant harm will already have occurred. At a minimum, it would be difficult or impossible to reverse the damage of disclosure regardless of a later Eleventh Circuit ruling. Courts have ruled that a stay pending appellate review is appropriate for this type of "cat out of the bag" discovery of privileged or confidential information. *See, e.g., Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-CV-80787-RYSKAMP/VITUNAC, 2010 WL 11505438, *2 (S.D. Fla. June 3, 2010) (granting stay despite finding the Eleventh Circuit was unlikely to grant writ of mandamus, where petitioner would likely suffer irreparable harm absent stay due to "cat out of the bag" nature of discovery of privileged information); *Nowak*, 2006 WL 3613760, *2 (same).

Further, issuance of a stay will not substantially harm Plaintiffs or other interested parties. Defendants anticipate that appellate review will not unduly delay

5

the proceedings and the requested temporary stay will not prejudice Plaintiffs. For appeals taken in civil cases before pretrial, the median time interval is 5.3 months from filing in the Eleventh Circuit to disposition during the 12-month period ending June 30, 2019.[2] Here, discovery is still ongoing and a stay concerning only this discrete issue will not undermine the progress of the case.

Finally, the public interest will be served by granting the stay. There is a significant public interest in maintaining prison safety and security. In addition, as noted above, the appeal presents issues of significant public importance concerning separation of powers and the effects of the district court's order on Defendants' ability to effectively manage the prison administration and security.

WHEREFORE, Defendants respectfully request that this Court grant Defendants' Motion to Stay Discovery Regarding Confidential Prison Security Information Pending Resolution of Interlocutory Appeal, and award such other relief as this Court deems appropriate.

## **CERTIFICATE OF WORD COUNT**

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 1,254 words, excluding the parts exempted by said Local Rule.

---

[2] *U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending June 30, 2019*, Table C-5, https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last visited Feb. 24, 2020).

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

I CERTIFY that I personally communicated with opposing counsel regarding the relief sought herein. Plaintiffs' counsel opposed the motion.

Dated: February 24, 2020        Respectfully submitted,

/ s / *Daniel J. Gerber*
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
            sduke@rumberger.com

and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and Florida Department of Corrections**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 24, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to the following: Shalini Goel Agarwal at shalini.agarwal@splcenter.org; Sumayya Saleh at sumayya.saleh@splcenter.org; Kelly Jean Knapp at Kelly.knapp@splcenter.org; Lisa S. Graybill at lisa.graybill@splcenter.org; Dante Pasquale Trevisani at dtrevisani@floridajusticeinstitute.org; Laura Anne Ferro at lferro@floridajusticeinstitute.org; Sam Thypin-Bermeo at sthypin-bermeo@floridajusticeinstitute.org; Marcel Lilavois, Jr., at mlilavois@floridajusticeinstitute.org; Jennifer Morrissey Painter at jennifer.painter@floridalegal.org; Andrea Costello at andrea@floridalegal.org; Christopher M. Jones at Christopher@floridalegal.org; and Aimee Lim at aimee.lim@floridalegal.org.

/ s / *Daniel J. Gerber*
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SAMANTHA C. DUKE, ESQUIRE
Florida Bar No. 091403
RUMBERGER, KIRK & CALDWELL
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
Email:  dgerber@rumberger.com
          sduke@rumberger.com
and

NICOLE SMITH, ESQUIRE
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507

8

Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

**Attorneys for Defendants, Mark Inch and
Florida Department of Corrections**

9

# Exhibit 11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

HARVARD, *et al*.,                    )
                                      )
            Plaintiffs,               )
                                      )
v.                                    )          Case No.: 4:19-cv-00212-MW-CAS
                                      )
                                      )
MARK S. INCH, *et al*.,               )
                                      )
            Defendants.               )
_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO STAY DISCOVERY**
**REGARDING CONFIDENTIAL PRISON SECURITY INFORMATION**
**PENDING RESOLUTION OF INTERLOCUTORY APPEAL (ECF 104)**

Defendants Mark Inch and the Florida Department of Corrections (FDC) refuse to accept the Court's proper exercise of its discretion in discovery matters.  In the instant motion, they seek a stay of two discovery orders implicating "highly confidential prison security information" pending the resolution of an interlocutory appeal and petition for writ of mandamus with the Eleventh Circuit.  But they have not satisfied the heavy legal burden required for such relief.

Defendants are unlikely to prevail in the court above.  In both orders at issue, the Court appropriately exercised its discretion after considering the Parties' competing interests.  And any harm to Defendants absent a stay is speculative at

1

best.  Conversely, a stay will delay Plaintiffs' ability to obtain redress for ongoing constitutional and statutory violations and is contrary to the public interest.  The Court should therefore deny Defendants' Motion to Stay Discovery (ECF 104).[1]

## Background

This case challenges the use of isolation for a putative class of approximately 10,000 people incarcerated in the Florida Department of Corrections.  Since the onset of this case, the Parties have recognized the need for a Confidentiality Order limiting the dissemination of information implicating safety and security concerns.  ECF 49, ¶¶ 2, 4.  But Defendants have repeatedly sought the ability to designate an amorphous subcategory of Confidential documents "Attorneys' Eyes Only."  ECF 84, at 2.  The Court has twice agreed with Plaintiffs on this point.  ECF 58, at 1-2; ECF 94, at 3-4.  An "Attorneys' Eyes Only" classification is overly restrictive, unnecessary, and impractical, and would hinder Plaintiffs' ability to prosecute this action.  ECF 49, ¶¶ 5-6; ECF 90, at 11.

On November 15, 2019, the Court entered a Confidentiality Order that does not allow Defendants to employ this overly restrictive designation.  ECF 58, at 1-2.  Dissatisfied with the Court's ruling, Defendants refused to produce discovery they

---

[1] If the Court finds that a stay is warranted, Plaintiffs respectfully request that the Court require Defendants to produce the disputed discovery under "Attorneys' Eyes Only" protections while the appeal and writ are pending.  Plaintiffs note that Defendants were previously willing to produce discovery subject to such restrictions but now seek to completely stay such discovery until the conclusion of the proceedings above. *See* ECF 104.

2

believed implicated highly confidential prison security information.  On January 13, 2020, more than two months after the Court entered the Confidentiality Order, Defendants moved the Court for a protective order requesting identical relief.  ECF 84, at 2.  The Court construed this motion as a request for reconsideration and denied relief.  ECF 94, at 2-3.  (In the same ruling, the Court also found that Defendants had not demonstrated good cause justifying a protective order.  *Id.* at 3-4.)  Then, in its Order on Plaintiffs' Motion to Compel, ECF 98, the Court overruled Defendants' safety and security objections and directed Defendants to produce discovery they had refused to produce without "Attorneys' Eyes Only" protections.

Instead of complying with the Court's orders, ECF 94 and ECF 98, Defendants are now asking the Eleventh Circuit to intervene by way of an interlocutory appeal and petition for writ of mandamus.  ECF 104, at 1-2.  In the instant motion, they ask the Court to stay all discovery involving "highly confidential prison security information" during the pendency of these proceedings. *Id.*  Defendants are unwilling to produce such discovery subject to "Attorneys' Eyes Only" protections in the interim.[2]  Declaration of Sumayya Saleh (Saleh Decl.), ¶ 10.

---

[2] Plaintiffs do not believe Defendants are entitled to a stay.  However, in the interests of continuing to timely prosecute this action, Plaintiffs asked Defendants if they would produce the contested discovery subject to "Attorneys' Eyes Only" protections during the pendency of these proceedings in the event the Court grants a stay.  Saleh Decl., ¶ 10.  Defendants have not agreed to do so, even though they have previously provided Plaintiffs' counsel an "Attorneys' Eyes Only" document without a governing court order.  *Id.*, ¶¶ 4, 10.

3

## Memorandum

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citations omitted).  Though the issuance of a stay is left to a court's discretion, a "heavy burden" lies with the moving party to demonstrate that the circumstances justify this "extraordinary relief." *Id.* at 433-34.  Defendants have not met their burden.

Defendants must show:  1) a strong likelihood of success on the merits of the appeal or writ, 2) an irreparable injury to Defendants absent a stay, 3) a lack of substantial prejudice to Plaintiffs, and 4) the stay would serve the public interest. *Id.* at 434.[3]

As detailed below, Defendants cannot make a "strong showing" that they are likely to succeed on the merits of their appeal or writ.  This is reason enough for the Court to decline to enter a stay.  *See Van Zant v. Fla. Parole Comm'n*, No. 5:05CV208/RS-EMT, 2009 WL 5067661, at *1 (N.D. Fla. Dec. 17, 2009) (denying motion for stay after concluding that the movant had failed to meet the first factor, without analyzing the remaining three factors).  Defendants have not carried their

---

[3] Though *Nken* deals with stays pending appeal, the same standard applies to motions to stay pending the resolution of a petition for writ of mandamus. *See Nowak v. Lexington Ins. Co.*, No. 05-21682CIV-MORENO, 2006 WL 3613760 (S. D. Fla. June 22, 2006).

burden with respect to the remaining three factors either.  The Court should therefore reject Defendants' request for a stay.

>    **1.    Defendants cannot demonstrate a likelihood of success on the merits because the Court's orders are not appealable under the collateral order doctrine and Defendants do not have a clear and indisputable right to the issuance of a writ.**

The question before the Court is whether Defendants have made a "strong showing" that they are likely to succeed on the merits, *Nken*, 556 U.S. at 434, not whether Defendants file their appeal and petition for writ "in good faith," as they suggest, ECF 104, at 4.  This is a high legal hurdle to clear, as the "mere possibility of relief does not demonstrate that the defendants are likely to prevail on the merits." *Fla. Pediatric Soc'y/The Fla. Chapter of the Am. Acad. of Pediatrics v. Benson for Health Care Admin.*, No. 05-23037-CIV, 2009 WL 10668677, at *1 (S.D. Fla. Nov. 12, 2009) (internal quotation marks omitted).  Defendants have not made the requisite showing.

First, there is no jurisdiction for Defendants' interlocutory appeal.[4] Discovery orders, like the ones at issue here, "generally do not present 'important questions' warranting collateral order review."  *Drummond Co., Inc. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1325 (11th Cir. 2016).  And, the Eleventh Circuit has "never exercised jurisdiction under the collateral order

---

[4] Plaintiffs note that the Eleventh Circuit has directed the parties to brief this jurisdictional question on an expedited basis.

doctrine to review any discovery order regarding privilege." *Carpenter v. Mohawk Indus., Inc.*, 541 F.3d 1048, 1053 (11th Cir. 2008), *aff'd sub nom*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).  So, district courts in Florida have denied requests for stays pending the appeal of discovery orders.  *See Cola Filho v. Mubarak*, No. 19-24553-Civ-Scola, 2019 WL 6699685, at \*3 (S.D. Fla. Dec. 9, 2019) (denying motion for stay because it found it "unlikely" that a reconsideration order on a discovery issue was "even appealable, never mind substantively meritorious"); *Van Zant*, 2009 WL 5067661, at \*1 (denying a motion to stay because "[t]he order denying discovery is    not    immediately appealable;    therefore, the appeal will likely be dismissed for lack of jurisdiction").  Defendants have not articulated why their attempt at an interlocutory appeal is any different.[5]

It is also unlikely that Defendants will succeed on their petition for writ of mandamus.  Mandamus is an "extraordinary remedy," appropriate only when "no other adequate means are available to remedy a clear usurpation of power or abuse of discretion by the district court."  *Carpenter*, 541 F.3d at 1055 (internal quotation marks and citation omitted).  Defendants must prove that their entitlement to the issuance of a writ is "clear and indisputable."  *Id.* (citation omitted).  This burden is onerous: only a "clear error of judgment or application of an incorrect legal standard

---

[5] Notably, Defendants do not directly address the likelihood of the success of their appeal, instead focusing this portion of their argument on the propriety of the writ.  ECF 104, at 4-5.

is an abuse of discretion." *Id.*; *see also In re Segal*, No. 11–10998–D, 2011 WL 1582517, at *2 (11th Cir. Apr. 21, 2011) (finding petitioners had failed to demonstrate entitlement to mandamus relief in part because the court below applied the correct legal standard).

Defendants have not demonstrated a clear and indisputable entitlement to the writ.  They do not even assert that the Court applied the incorrect legal standard. Regardless, the Court did not misapply the law.  It properly regarded Defendants' motion for protective order as a motion to reconsider a prior ruling and applied the appropriate legal standard to determine that Defendants had neither alleged nor established grounds for such extraordinary relief.  ECF 94, at 2-3.  The Court correctly considered and applied the "good cause" standard for evaluating a protective order motion as to the merits of Defendants' request, too.  ECF 94 at 3-4.

To the extent Defendants assert that the Court usurped judicial authority under *Turner v. Safley*, 482 U.S. 78 (1987), they are wrong.  Because an incarcerated person "does not surrender his constitutional rights at the prison gates," *Turner* does not vest prison administrators with unbridled discretion, nor does it require a court to rubber stamp every prisoner administrator's decision possibly implicating institutional operations.  *Pesci v. Budz,* 935 F.3d 1159, 1165 (11th Cir. 2019) (internal quotation marks and citation omitted).  Instead, *Turner* formulates a standard of review for constitutional complaints that accounts for the interests of

prison administrators in managing institutional operations. 482 U.S. at 84-85. Here, Defendants' safety and security concerns were part of the Court's calculus. *See* ECF 94, at 4.

Simply put, Defendants have not made a "strong showing" that they are likely to succeed on the merits. The collateral order doctrine precludes an appeal of the Court's discovery orders, and they do not have a clear and indisputable right to the issuance of a writ because the Court applied the correct legal standard.

> **2.     Defendants have failed to carry their burden to demonstrate that they will be irreparably harmed without a stay.**

Defendants make conclusory arguments that "[i]rreparable harm will result if a stay is not granted." ECF 104, at 5. This is insufficient to carry their burden. The harm that Defendants foreshadow—that highly sensitive security information will fall into the wrong hands—is purely hypothetical. An irreparable injury must be "neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted).[6] "[S]imply showing some possibility of irreparable injury fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35 (internal quotation marks and citation omitted).

---

[6] In this case, the Eleventh Circuit addressed irreparable harm in the context of preliminary injunctions. But the same test applies here. *See Fla. Pediatric Soc'y*, 2009 WL 10668677, at *1 (noting that there is "substantial overlap" between the factors governing a stay and those governing preliminary injunctions).

Objective facts belie Defendants' contentions as well. For example, before this litigation commenced, Defendants provided Plaintiffs' counsel technical manuals with some unredacted security information, as well as a list of "restrictive housing" dorms in all FDC prisons that they later claimed was produced by mistake because its release jeopardized prison security. Saleh Decl., ¶¶ 4-5. These documents have been in Plaintiffs' possession, not subject to the constraints of a Confidentiality Order, for at least seven months. Similarly, in response to a court order, ECF 81, Defendants showed Plaintiffs' counsel video footage from inside a facility, which they were permitted to discuss with Plaintiff Johnny Hill. Defendants have not identified any security breaches stemming from the disclosure of any of this information.

In other cases, Defendants have previously stipulated to confidentiality orders without an unnecessarily restrictive "Attorneys' Eyes Only" designation and produced the types of documents they now contend require heightened protections. ECF 49, at 6-7; 49-2; 49-3; 49-4. Defendants have not demonstrated any harm as a result of the exchange of discovery in these cases.

Also, Defendants' reliance on the "cat out of the bag theory" is misplaced. The cases they cite involve the disclosure of attorney-client communications. *See Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-CV-80787-RYSKAMP-VITUNAC, 2010 WL 11505438, at *1-2 (S.D. Fla. June 3,

9

2010); *Nowak v. Lexington Ins. Co.*, No. 05-21682CIV-MORENO, 2006 WL 3613760, at *1-2 (S.D. Fla. June 22, 2006).[7]  Notably, the disclosure of attorney-client communications is injurious in and of itself.  *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) (explaining that the underlying purpose of the attorney-client privilege is to protect against compelled disclosure).  Defendants cannot make a similar showing here: this dispute centers not on whether Defendants are willing to let the cat out of the bag, but how far they are willing to let the cat roam.  There is no *per se* harm stemming from the disclosure of "confidential prison security information" to anyone other than Plaintiffs' counsel.

### 3.      Plaintiffs will be harmed by a stay.

Defendants' pursuit of relief with the Eleventh Circuit is inherently "disruptive," *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276-77 (11th Cir. 2000), and their position that "a stay concerning only this discrete issue will not undermine the progress of the case," ECF 104, at 6, is abjectly false.  Defendants minimize the amount of discovery potentially implicated by their requested stay.  If the Court stays discovery regarding prison security information, Plaintiffs will incur substantial injury.

---

[7] What's more, the movants in these cases had much more colorable arguments regarding likelihood of success on the merits, where the district courts had to look to state law to decide an issue and where the applicable legal standard under state law was not clearly resolved. *Sandalwood*, 2010 WL 11505438, at *1; *Nowak*, 2006 WL 3613760, at *1.

To date, Defendants have not produced a privilege log or otherwise provided Plaintiffs a clear understanding of what qualifies as prison security information. By Plaintiffs' count, Defendants' safety and security objections implicate, at a minimum, 80 discovery requests, only 32 of which are subject to the Court's order on Plaintiffs' motion to compel, ECF 98. Saleh Decl., ¶ 6; ECF 104, at 2-3. The volume of impacted discovery is significant.

And though Defendants purportedly limit their objections to four categories of discovery—"(1) post orders; (2) technical manuals; (3) video surveillance of correctional facilities; and (4) information regarding cell locations, prison layout, and positioning of officers and cameras," ECF 84, at 2, it is clear that they construe these categories quite expansively. For example, Defendants have alerted Plaintiffs that internal reports critical of Defendants' long-term segregation practices are subject to the instant challenge.[8] Saleh Decl., ¶ 3. Defendants have also produced American Correctional Association reports with certain portions inexplicably redacted. *Id.*, ¶ 2. Neither fall within the four categories that Defendants assert require an "Attorneys' Eyes Only" designation.

Given the large number of pending discovery requests involved and Defendants' broad interpretation of "highly confidential security information," a

---

[8] Defendants previously produced redacted versions of these reports in response to public records requests.

11

stay will threaten Plaintiffs' ability to proceed with virtually all aspects of discovery. It will compromise Plaintiffs' ability to conduct inspections of various prison facilities with their experts beginning the week of March 23, 2020, or to conduct an impending deposition of a corporate representative on matters related to electronically stored information, as both of these matters ostensibly implicate prison security information.  Saleh Decl., ¶¶ 8-9.

A stay will also generally diminish Plaintiffs' ability to conduct complete discovery, both because they do not have access to the full panoply of discovery they have requested and because they will not be able to conduct any deposition at which security information may be discussed.  Plaintiffs will be unable to give their experts information they need to develop informed opinions about Defendants' policies and practices.  A stay will render it virtually impossible for Plaintiffs to comply with the Court's scheduling order, which sets Plaintiffs' deadline to file their motion for class certification on May 6, 2020, and the close of discovery on April 30, 2021.  ECF 44, at 1-2.

Finally, and most importantly, the resulting harm is more than just administrative delay.  Plaintiffs seek injunctive relief to redress serious violations of their constitutional and statutory rights resulting in a risk of harm and actual harm to them and the putative class—violations that are ongoing in nature.  ECF 13, ¶¶ 181, 191, 202.  While Defendants erect roadblocks to discovery in this case, Plaintiffs

and the putative class continue to suffer. *See Fla. Pediatric Soc'y*, 2009 WL 10668677, at \*2 (finding defendants failed to demonstrate that a stay would not substantially harm class members where class members alleged an on-going deprivation of their rights and a realistic danger of facing a direct injury in the near future). Accordingly, Defendants are incorrect in their contention that a stay concerning this "discrete" issue will not harm Plaintiffs.

### 4. The public interest militates against the issuance of a stay.

Defendants' argument regarding the public interest is similarly unavailing. As outlined above, the alarm bells Defendants ring are purely hypothetical. While there may be "significant public interest in maintaining prison safety and security," Defendants have not demonstrated how a stay of the Court's discovery orders would further those interests.

In fact, this factor tilts in Plaintiffs' favor. "[T]he public interest is served when constitutional rights are protected." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019). The issuance of a stay will have the opposite effect, as it will delay the progress of this case, undermining Plaintiffs' ability to vindicate their constitutional rights and those of the putative class. *See Fla. Pediatric Soc'y*, 2009 WL 10668677, at \*2. Under these circumstances, the issuance of a stay will also weaken the Court's gatekeeping function and erode judicial efficiency, as it will allow Defendants to stall the case without sound justification.

13

*See generally Carpenter*, 541 F.3d at 1054 (explaining that, to manage judicial efficiency, "there are powerful, prudential reasons to avoid commonplace interlocutory appeals").

### Conclusion

Defendants have not met their heavy burden of demonstrating that the Court should issue a stay of its Order Denying Defendants' Motion for Entry of Protective Order, ECF 94, and select portions of its Order on Motion to Compel, ECF 98.  The Court should therefore exercise its discretion in Plaintiffs' favor and deny the instant request.  If the Court deems that a stay is appropriate, however, Plaintiffs ask that the Court require Defendants to produce the "highly confidential prison security information" under "Attorneys' Eyes Only" protections during the pendency of the appeal and writ.

Respectfully Submitted,

Dated: February 27, 2020

_____

Sumayya Saleh
Fla. Bar No. 119372
Shalini Goel Agarwal
Fla. Bar No. 90843
Southern Poverty Law Center
106 East College Ave., #1010
Tallahassee, FL 32302
Telephone: (850) 521-3024
sumayya.saleh@splcenter.org
shalini.agarwal@splcenter.org

14

Kelly Knapp
Fla. Bar No. 1011018
Southern Poverty Law Center
2 S Biscayne Blvd., Suite 3750
Miami, FL 33131
Telephone: (786) 347-2056
kelly.knapp@splcenter.org

Lisa Graybill*
Texas Bar No. 24054454
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Andrea Costello
Fla. Bar No. 532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla. Bar No. 116209
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo

15

Fla. Bar No. 1019777
Marcel Lilavois, Jr.
Fla. Bar No. 1016175
Florida Justice Institute, Inc.
100 SE 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**

### Local Rule 7.1(F) Certificate

Under Rule 7.1(F) of the Local Rules of the Northern District of Florida, undersigned counsel certifies that this motion contains 3,206 words.

_____
Sumayya Saleh

16

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

| | | |
|---|---|---|
| JAC'QUANN (ADMIRE) HARVARD, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 4:19-cv-00212-MW-CAS |
| | ) ) | |
| MARK S. INCH, *et al.*, | ) ) | |
| Defendants. | ) | |

_____

## <u>DECLARATION OF SUMAYYA SALEH</u>

I, Sumayya Saleh, declare under penalty of perjury:

1.      I am a Staff Attorney at the Southern Poverty Law Center.  I am counsel of record for Plaintiffs in the above-referenced case.

2.      In December 2018, in response to Public Records Request (PRR) 18-0471, Defendants produced to Plaintiffs' counsel redacted audits prepared by the American Correctional Association regarding the Florida Department of Corrections ("ACA Audits").  On August 13, 2019, Plaintiffs requested these same audits through discovery.  Defendants produced them on January 10, 2020.  Certain portions of these audits are inexplicably redacted, even though the

1

Confidentiality Order does not provide a basis to redact discovery before production.  *See* ECF 58, at ¶ 4.

3.      In March 2019, Defendants produced to Plaintiffs' counsel in response to PRR 18-820 internal reports critical of Defendants' long-term segregation practices.  On August 13, 2019, Plaintiffs requested these same reports through discovery.  Defendants produced them on December 13, 2019, but then retracted them to address confidentiality issues.  On February 24, 2020, Defendants told Plaintiffs that they believed these reports fall within the ambit of their appeal and petition for writ of mandamus with the Eleventh Circuit regarding confidential prison security information.

4.      In January 2019, in response to PRR 18-625, Defendants produced to Plaintiffs' counsel a list of "restrictive housing" dorms in all FDC prisons.  After this litigation commenced, Defendants asserted that a chart including substantially the same information should be subject to an "Attorneys' Eyes Only" designation and claimed that this information was previously disclosed as a public record by mistake.  Still, Defendants provided the chart to Plaintiffs' counsel based on an agreement that they would treat it as an "Attorneys' Eyes Only" document.  There was no Confidentiality Order governing the exchange of confidential information at this time.

5.      In March and July 2019, Defendants produced to Plaintiffs' counsel in response to PRRs 18-820 and 18-0785 a number of technical manuals for programs called the alternative housing program and reduced restrictions program. These technical manuals are partially redacted. In several of them, Defendants had marked certain portions of the manuals for redactions but did not complete the redactions, giving Plaintiffs access to prison security information Defendants believe to be exempt from disclosure under Florida's public records law. Plaintiffs put Defendants on notice that they had these unredacted reports when they filed their opposition to Defendants' motion for protective order (ECF 90, at 8). Defendants have not tried to claw back these inadvertent disclosures, nor have they alerted Plaintiffs of any security breaches.

6.      Defendants have objected to at least 80 of Plaintiffs' discovery requests based on confidentiality, safety, and security issues:

a. Plaintiffs' First Request for Production (RFP) to Defendant Inch: RFPs 12-15, 22, 23, 34-37, 46 - 50, 53, 54, 107-117, and 124-136;

b. Plaintiffs' Second Request for Production to Defendant Inch: RFPs 165 and 188;

c. Plaintiffs' Second Request for Production to Defendant FDC: RFPs 37-38, 41, 42; and

   d.  Plaintiffs' Third Request for Production to Defendant Inch: RFPs 227-29, 233, 236, 240, 242-42, 253-54, 262, 264-65, 270-79, 281, 285, 313-19, and 337.

7.    Defendants did not make an objection based on safety and security when responding to Plaintiff Harvard's First Set of Interrogatories to Defendant FDC.  However, in response to Plaintiffs' Motion to Compel Discovery (ECF 65-1), Defendants raised this objection with respect to Interrogatory 16 to Defendant FDC.

8.    On February 4, 2020, Plaintiffs served Defendants with a Notice of Rule 34 Inspection, apprising Defendants of their intent to inspect specified areas of Florida State Prison and the Reception and Medical Center the week of March 23, 2020.  They also gave Defendants a proposed stipulation regarding the terms of inspections, including the locations Plaintiffs' counsel and their experts could inspect and with whom they could speak.  Defendants have not yet responded to this stipulation.

9.    On February 14, 2020, Plaintiffs served Defendants with a Notice of Deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure, listing deposition topics related to Defendants' electronically stored information and data collection capabilities.  Plaintiffs proposed three dates in March 2020 for this deposition.  Defendants have not yet responded.  But during a telephone

conference on February 24, 2020, Defendants indicated that the nature of the deposition topics may implicate the issues raised in their pending appeal and writ.

10.   Before they filed their Motion to Stay Discovery Regarding Confidential Prison Security Information Pending Resolution of Interlocutory Appeal, ECF 104, Defendants asked Plaintiffs if they objected to a stay.  Plaintiffs objected but asked, if the Court did grant a stay, whether Defendants would agree to produce the "highly sensitive prison security information" under "Attorneys' Eyes Only" protections while Defendants' appeal and writ were pending. Defendants responded that they could not agree to produce these documents without an order of protection.

Under 42 U.S.C. 1746, I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed on the 27th day of February, 2020.

_____
Sumayya Saleh